**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**PHILIP LITLE, et al.,**

                  **Plaintiffs,**     **OPINION AND ORDER**
                                                      **04-CV-5449 (NG)(VVP)**

   - against -

**ARAB BANK, PLC,**

                  **Defendant.**
-------------------------------------------------------x
**ORAN ALMOG, et al.,**

                  **Plaintiffs,**
                                                    **04-CV-5564 (NG)(VVP)**
   - against -

**ARAB BANK, PLC,**

                  **Defendant.**
-------------------------------------------------------x
**ROBERT L. COULTER, SR. et al.,**

                  **Plaintiffs,**
                                                    **05-CV-0365 (NG)(VVP)**
   - against -

**ARAB BANK, PLC,**

                  **Defendant.**
-------------------------------------------------------x
**GILA AFRIAT-KURTZER, et al.,**

                  **Plaintiffs,**
                                                    **05-CV-0388 (NG)(VVP)**
   - against -

**ARAB BANK, PLC,**

                  **Defendant.**
-------------------------------------------------------x
**GERSHON, United States District Judge:**

Plaintiffs in the above-captioned actions are the victims and the estates, heirs and survivors of victims who were either injured or killed in terrorist attacks that occurred on various dates in Israel. The plaintiffs whose claims are addressed in this opinion allege violations by defendant Arab Bank of the Anti-Terrorism Act ("ATA"), 18 U.S.C. §§ 2331 *et seq.*, for knowingly providing banking and administrative services to various organizations that sponsored suicide bombings and other attacks in Israel. This opinion addresses the motion by the *Litle* plaintiffs for leave to file a Third Amended Complaint and Arab Bank's motion to dismiss the other complaints as to certain plaintiffs, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that the claims of these plaintiffs are barred by the ATA's four year statute of limitations.

## I. THE PLAINTIFFS

Plaintiffs' theories of liability under the ATA with respect to Arab Bank's alleged conduct are fully set forth in *Linde v. Arab Bank*, *PLC*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005). Familiarity with the underlying facts is therefore presumed. Facts specific to individual plaintiffs that are the subject of the instant motions are set forth below.

**A.** *Litle* **Plaintiffs**

On May 27, 2005, the *Litle* plaintiffs filed a First Supplemental Complaint, which added several plaintiffs, including Shivi Keller ("Keller"), Chayim Brovender ("Brovender"), and Mattityahu Zachariash ("Zachariash").[1] All three plaintiffs are United States citizens. Keller was injured on February 14, 2001, when he was shot by armed terrorists near Hebron. Litle Compl.

---

[1] On May 26, 2005, the court so ordered a Stipulation and Consent Order, whereby the parties in *Linde*, *Litle*, *Almog*, *Afriat-Kurtzer*, and *Coulter* agreed that the "[c]laims on behalf of Plaintiffs added . . . [to these actions] will be considered to have been filed on the date of the supplemental filing and shall not relate back to the date of the filing of the original complaints."

¶¶ 377, 379.² Brovender was injured in October 2000, when he was pulled from his car and attacked by a group of Palestinian terrorists in Beit Jala, near Jerusalem. Litle Compl. ¶¶ 381, 383. Zachariash was injured on April 24, 2001, when a group of Palestinian terrorists opened fire on his car as he was traveling near Kfar Junia. Litle Compl. ¶ 384.

Having determined that the claims of these three plaintiffs were filed more than four years after their injuries occurred, and that plaintiffs were not entitled to delayed accrual under the diligence-discovery rule, Magistrate Judge Viktor V. Pohorelsky granted plaintiffs leave to replead to allege facts sufficient to establish that their claims were not time-barred. *Litle v. Arab Bank, PLC*, No. 04-CV-5449, 2007 WL 895504, at *3 (E.D.N.Y. Mar. 22, 2007). Plaintiffs have submitted a Proposed Third Amended Complaint, which includes, for the first time, allegations of fraudulent concealment against Arab Bank. Defendant argues that allowing the amendment would be futile because the allegations of fraudulent concealment are insufficient to overcome the four year statute of limitations.

**B.** *Coulter* **Plaintiffs**³

The *Coulter* complaint was filed on January 21, 2005. Defendant argues that the claims of twenty-three plaintiffs, namely the Gilmore, Biton, Assraf, and Guetta plaintiffs, are time-barred because their claims all arise from injuries that occurred prior to January 21, 2001.

The Gilmore plaintiffs consist of the parents, siblings, wife and daughter of Esh Kodesh Gilmore, who was killed on October 30, 2000, when a terrorist opened fire in the offices of the

---

² All citations to the "Litle Compl." refer to the Proposed Third Amended Complaint.

³ Insofar as there remain common law claims for intentional infliction of emotional distress by the *Coulter* plaintiffs, those claims are dismissed for the reasons previously set forth in *Linde v. Arab Bank*, *PLC*, 384 F. Supp. 2d at 590-91 (E.D.N.Y. 2005).

National Insurance Institute in Jerusalem. Coulter Compl. ¶¶ 435-439. The Biton plaintiffs are the wife and children of Gavriel Biton, who was killed on November 20, 2000, when Palestinian terrorists threw a bomb at the Kfar Darom bus near the Magen Junction in Gaza.[4] Coulter Compl. ¶¶ 301-307. The Assraf plaintiffs include Rachel Assraf, who was also injured in the November 20, 2000 bus attack, and her husband and son. Coulter Compl. ¶¶ 308-322. The Guetta plaintiffs include Oz Joseph Guetta, who was injured on January 8, 2001, when four terrorists opened fire on the car in which he was traveling near Givat Zeev, and his mother and sister. Coulter Compl. ¶¶ 387-401.

On February 7, 2006, the parties entered into a Stipulation and Consent Order, whereby the claims of seven new plaintiffs (collectively the "Schertzman plaintiffs") were added to the *Coulter* complaint. Plaintiff Ilana Schertzman Cohen was injured on November 4, 2001, when a member of the Palestinian Islamic Jihad ("PIJ") opened fire on Egged Bus #25 in Jerusalem. Coulter Compl. ¶¶ 128a-128b. The six remaining Schertzman plaintiffs are the family members of Ilana Schertzman Cohen who assert claims for emotional injuries suffered as a result of the attack on November 4, 2001.[5] Coulter Compl. ¶¶ 128j-128aa. Defendant argues that the claims of the Schertzman

---

[4] The citizenship of Gavriel Biton is not alleged. Biton's wife, Avigail, is a dual citizen of the United States and Israel. Therefore, she can assert a claim under the ATA. His children, however, are all citizens of Israel. Thus, unless Biton is a United States national, his children cannot assert claims under the ATA. At oral argument, counsel for the *Coulter* plaintiffs was advised that, in *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp 2d 172, 181 (D.D.C. 2004), the court described Biton as "not a U.S. national." Counsel indicated that he would supplement the pleadings to allege Biton's citizenship; however, this has not yet occurred. In light of the failure to allege facts giving rise to an ATA claim by Biton's children, who are citizens of Israel, the court will treat their claims as arising under the ATS.

[5] To the extent that any of the Schertzman plaintiffs are attempting to assert a claim under the ATA for emotional injuries suffered as a result of the death of Shoshana Ben-Yishai, described as the "best friend" of plaintiff Ilana Schertzman Cohen and "dear friend" of the family, who was

4

plaintiffs, which arise from injuries that occurred prior to February 7, 2002, are time-barred pursuant to the ATA's four year statute of limitations.

## C. *Almog* Plaintiff

The original *Almog* complaint was filed on December 21, 2004.[6] Plaintiff Zeev Wiesner ("Wiesner"), a dual citizen of the United States and Israel, is the ex-husband of Ayelet Hashahar Levy, a citizen of Israel, who was killed on November 2, 2000, when a PIJ suicide bomber detonated a car bomb near the Mahane Yehuda market in Jerusalem. Almog Compl. ¶ 30(143). Defendant argues that Wiesner's claim arises under the ATA and therefore is time-barred. Plaintiff argues that his claim arises under the ATS. Section 2333(a) of the ATA authorizes civil actions on behalf of United States nationals, their estates, survivors, or heirs. 18 U.S.C. § 2333(a). Therefore, the claim of Wiesner, who is not an alien, arises under the ATA, not the ATS, and is subject to its four year statute of limitations.

## D. *Afriat-Kurtzer* Plaintiffs

Plaintiffs Gila Afriat-Kurtzer ("Afriat-Kurtzer") and Ronen Ben Haim ("Ben Haim"), both dual citizens of the United States and Israel, were injured on January 22, 1995, when PIJ suicide bombers detonated two bombs at the Beit Lid junction near Netanya. Afriat-Kurtzer Compl.

---

killed in the November 4, 2001 attack, that claim is dismissed. Recovery under the ATA is limited to injuries to United States nationals, their estates, survivors, or heirs. 18 U.S.C. § 2333. The Schertzman plaintiffs do not allege that they are heirs of decedent Ben-Yishai. As this court stated in *Linde*, "[t]he congressional purpose [of the ATA] was to grant a remedy to U.S. nationals and their *families* who suffered from injury to an individual or to property as a result of international terrorism." 384 F. Supp. 2d at 589 (emphasis added). *Cf. Weiss v. Nat'l Westminster Bank, PLC*, 453 F. Supp. 2d 609, 620 (E.D.N.Y. 2006) (to assert a claim under the ATA, it is not necessary for plaintiffs to use the terms "heir" or "survivor;" "it is sufficient for plaintiffs to allege a familial relationship").

[6] The *Almog* plaintiffs filed a First Amended Complaint on February 25, 2005.

¶ 30(1)-(2). The original *Afriat-Kurtzer* complaint was filed on January 21, 2005.[7] Defendant argues that, because the claims of these two plaintiffs arise from injuries that occurred prior to January 21, 2001, they are time-barred.

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations in the complaint are accepted as true. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998). The court's function is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks, citations, and alterations omitted). Indeed, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. This "plausibility standard" is a flexible one, "oblig[ing] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

### B. The Anti-Terrorism Act

Section 2333(a) of the ATA states that "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate,

---

[7] The *Afriat-Kurtzer* plaintiffs filed a First Amended Complaint on February 25, 2005.

6

survivors, or heirs, may sue therefor in any appropriate district court of the United States . . . ." 18 U.S.C. § 2333(a). The ATA provides that a suit for damages must be commenced "within 4 years after the date the cause of action accrued." 18 U.S.C. § 2335(a). The statute also states:

> The time of the absence of the defendant from the United States or from any jurisdiction in which the same or a similar action arising from the same facts may be maintained by the plaintiff, or of any concealment of the defendant's whereabouts, shall not be included in the 4-year period . . . .

18 U.S.C. § 2335(b).

Recognizing that the claims of the aforementioned plaintiffs are outside of the four year statute of limitations, plaintiffs contend that their claims are subject to the tolling provision set forth in 18 U.S.C. § 2335(b) and are therefore timely. Alternatively, certain plaintiffs argue that their claims are subject to delayed accrual under the diligence-discovery rule and/or equitable tolling based on defendant's fraudulent concealment.

## C. Statutory Tolling

All plaintiffs argue that the statute of limitations should be tolled pursuant to the ATA's concealment exception, which provides that, "concealment of the defendant's whereabouts[] shall not be included in the 4-year period . . . ." 18 U.S.C. § 2335(b). However, there is no claim that Arab Bank concealed its whereabouts. In essence, plaintiffs contend that Arab Bank's consistent denial of its role in aiding and abetting and conspiring to commit terrorist attacks is itself sufficient to toll the statute of limitations under the concealment exception. In support of their argument, plaintiffs cite to the Senate Report on the ATA, which states:

> This section provides for a 4-year statute of limitations, but in recognition of the peculiar characteristics of terrorism, it tolls the limitation during any periods when the terrorists have *concealed their acts or identities* or remain outside the United States.

S. Rep. No. 102-342, at 46 (1992) (emphasis added). Plaintiffs maintain that the "acts" in question are defendant's assistance and material support of known terrorist organizations and ask the court to interpret "concealment of the defendant's whereabouts" to include "concealment of the defendant's role" in the terrorist attacks.

The court rejects plaintiffs' interpretation of the statute and finds that their claims are not subject to statutory tolling. Defendant's denial of any alleged wrongdoing is insufficient to warrant the application of the ATA's concealment exception. *See Strauss v. Credit Lyonnais, S.A.*, No. 06-CV-0702, 2006 WL 2862704, at *8 n.11 (E.D.N.Y. Oct. 5, 2006) ("*Strauss I*"). Otherwise, in every case a defendant's refusal to admit liability or denial of involvement in alleged wrongdoing would give rise to a statutory tolling argument under the concealment exception. *Cf. Statistical Phone Philly v. Nynex Corp.*, 116 F. Supp. 2d 468, 483 (S.D.N.Y. 2000) (finding no merit to plaintiff's argument that "so long as a defendant denies wrongdoing or characterizes the available evidence in its favor, the statute of limitations cannot begin to run"). Put another way, defendant's "denial" of its role, is something quite different from any purported "concealment" of its whereabouts. "[T]he statutory language is clear and precise and unambiguous . . . 'whereabouts' refers [to] the location of defendants who were concealing their whereabouts so as to avoid the exercise of jurisdiction by courts." *Strauss v. Credit Lyonnais, S.A.*, No. 06-CV-0702, 2007 WL 2296832, at *4 (E.D.N.Y. Aug. 6, 2007) ("*Strauss II*"). For that reason, I agree with Judge Sifton's analysis in *Strauss I* and *Strauss II* and find that the statutory toll is inapplicable. That toll does not encompass the concealment of a defendant's acts. Thus, although plaintiffs argue – not without reason – that it is impossible to know the whereabouts of any tortfeasor without first knowing its identity as a perpetrator of acts violating the ATA, their reading of the statutory toll in a way which includes the

identification of all potential defendants is not supported by the statutory language.

In sum, there is no basis for statutory tolling under the concealment exception of 18 U.S.C. § 2335(b) because plaintiffs have not alleged that Arab Bank concealed its whereabouts or that it was absent from the jurisdiction.

**D. Diligence-Discovery Rule**

Under federal law, a tort claim normally accrues at the time of injury. *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998) (citing *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982)). Plaintiffs rely on caselaw holding that, notwithstanding this general rule, accrual of a claim may be postponed "where plaintiff would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted." *Id.* Although most often applied in medical malpractice cases, the Second Circuit has held that this diligence-discovery rule "may be appropriate in non-malpractice cases where plaintiffs face comparable problems in discerning the fact and causes of their injuries . . . . Thus, any plaintiff who is blamelessly ignorant of the existence or cause of his injury should be accorded the benefits of the more liberal accrual standard." *Barrett*, 689 F.2d at 327 (citations omitted).

The *Coulter*, *Almog*, and *Afriat-Kurtzer* plaintiffs argue that their claims against Arab Bank are subject to delayed accrual under the diligence-discovery rule. Plaintiffs argue that, although they knew that they had been injured on the date of the terrorist attack giving rise to their respective claims, they did not know that Arab Bank was a cause of their injuries. In support of their argument, plaintiffs rely on *Kronisch*, which held that, for purposes of the diligence-discovery rule, a claim accrues when "plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." *Kronisch*, 150 F.3d at 121 (citation and internal quotation marks

9

omitted). In *Kronisch*, the Second Circuit stated:

> Discovery of the "critical facts" of injury and causation is not an exacting requirement, but requires only knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it . . . . [A] plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim. Rather, a claim will accrue when the plaintiff knows, or should know, *enough of the critical facts of injury and causation* to protect himself by seeking legal advice.

*Id.* (emphasis added). However, in *Rotella v. Wood*, the Supreme Court explained that "in applying a discovery accrual rule, we have been at pains to explain that *discovery of the injury*, not discovery of the other elements of a claim, is what starts the clock." 528 U.S. 549, 555 (2000) (rejecting the argument that a civil RICO claim accrues only when the claimant discovers, or should discover, both an injury and a pattern of RICO activity) (emphasis added). The court need not decide whether, as plaintiffs argue, *Rotella* is limited to RICO cases, an argument that was expressly rejected by Judge Pohorelsky in this very case. *See Litle*, 2001 WL 895504, at *2 (*Kronisch* is "plainly no longer viable after *Rotella*."). If *Rotella* is so read, clearly there is no argument for delayed accrual because plaintiffs' claims accrued at the time they were injured, *i.e.* on the date of the terrorist attacks giving rise to their respective claims.

Even if *Rotella* is not read as having altered the *Kronisch* rule, plaintiffs' argument for delayed accrual still fails. Here, plaintiffs knew of their injuries and of the immediate cause of those injuries. That is, they knew "enough of the critical facts of injury and causation to protect [themselves] by seeking legal advice." *Kronisch*, 150 F.3d at 121. Indeed, the complaints even identify the names of the terrorist groups that claimed responsibility for some of the attacks giving rise to plaintiffs' injuries. *See* Coulter Compl. ¶ 128b; Almog Compl. ¶ 30(143); Afriat-Kurtzer Compl. ¶ 30(1). "[T]he fact that they were not aware of all possible defendants is not determinative

10

of plaintiffs' awareness of their potential cause of action and does not delay the date of accrual, even if identification of other defendants was not immediately knowable." *Strauss II*, 2007 WL 2296832, at *7. The purpose of the diligence-discovery rule is to protect those plaintiffs who, despite having acted diligently, could not have brought an action earlier, not to delay accrual until optimal litigation conditions have been established.

Indeed, this is not a case where something so untoward has happened that there was no way for plaintiffs to have known about Arab Bank's involvement in providing banking and administrative services to various terrorist groups that sponsored suicide bombings.[8] It was not beyond the bounds of reasonableness for plaintiffs, or their counsel, to have inquired as to who may have been providing such services to these terrorist organizations in violation of the various provisions under which they are now suing. *See Strauss 1*, 2006 WL 2862704, at *8. The allegations in the complaints set forth facts stating that television and newspaper advertisements, as well as internet sites, widely publicized Arab Bank's role in providing banking and administrative services to terrorist organizations. These allegations demonstrate that there was more than sufficient evidence available from which plaintiffs could have learned of Arab Bank's involvement within the

---

[8] For example, plaintiffs cite *Liuzzo v. United States*, 485 F. Supp. 1274 (E.D. Mich. 1980) and *Barrett v. United States*, 689 F.2d 324 (2d Cir. 1982), where the courts applied the diligence-discovery rule to allow the plaintiffs to bring claims long after the statute of limitations expired. In *Liuzzo*, the plaintiffs sought to file suit against the United States, after learning that the FBI had concealed its involvement in the death of the plaintiffs' mother, who was killed by a member of the Klu Klux Klan. In *Barrett*, the daughter of a deceased psychiatric patient, commenced an action against the United States after discovering that the Army actively concealed its involvement in conducting a chemical warfare drug testing experiment without the knowledge or consent of the individual subjects. Unlike the current case, however, *Liuzzo* and *Barrett* both involved circumstances in which the government concealed its wrongdoing, resulting in a series of events that "justifiably led the plaintiffs to believe that those responsible for their parent[s'] death[s] had been punished." *Barrett*, 689 F.2d at 330.

limitations period.[9]

For example, plaintiffs allege that "the Bank's financial and ideological support for the . . . Intifada is a matter of public record." Litle Compl. ¶ 441; Coulter Compl. ¶ 527; Almog Compl. ¶ 191; Afriat-Kurtzer Compl. ¶ 190. Plaintiffs also allege that an October 3, 2000 television program on an Arabic cable television network showed a slide of the names of banks and account numbers where donations could be deposited for the Palestinians participating in the violent confrontation with Israel, including two bank accounts at Arab Bank branches located in Geneva, Switzerland and Amman, Jordan. Litle Compl. ¶ 534; Almog Compl. ¶ 40; Afriat-Kurtzer Compl. ¶ 40. The allegations in the complaints also state that, on October 7, 2000, "Arab Bank announced that it would make financial donations to Palestinians injured during the Intifada." Litle Compl. ¶ 449; Coulter Compl. ¶ 502; *see* Almog Compl. ¶ 3; Afriat-Kurtzer Compl.¶ 3. Plaintiffs further allege that, in a November 23, 2001 edition of a Palestinian newspaper, the Saudi Committee placed an announcement urging individuals who were injured in the Second Intifada, or their family members, "to go to the branches of the Arab Bank in their places of residence to receive their allocations donated by the Committee." Litle Compl. ¶ 479; Coulter Compl. ¶ 545; Almog Compl. ¶ 195; Afriat-Kurtzer Compl. ¶ 194. Additionally, plaintiffs allege that the February 18, 2002 edition of a Palestinian newspaper listed the names of "martyrs" and urged their family members to "go to a branch of the Arab Bank in their place of residence to receive the tenth payment offered

---

[9] Although the *Afriat-Kurtzer* plaintiffs have not made any allegations regarding any publicity with respect to Arab Bank's conduct during the 1995-1999 limitations period, they allege that "a PIJ suicide bomber claimed responsibility for the attacks." Afriat-Kurtzer Compl. ¶ 30(1). Knowing that they had been injured, and the immediate cause of their injuries, plaintiffs were armed with "enough of the critical facts" to conduct an appropriate inquiry as to any other potential tortfeasors.

by the Saudi Committee in the amount of $5,316.06." Litle Compl. ¶ 479; Coulter Compl. ¶ 545; Almog Compl. ¶ 195; Afriat-Kurtzer Compl. ¶ 194. Plaintiffs also allege that, on May 3, 2004, the Voice of Al-Aqsa radio station, which served HAMAS, posted a message on its internet site, asking the public to help renew its broadcast following an Israeli attack on its station by donating funds into an account at an Arab Bank branch in Gaza. Litle Compl. ¶ 535; Almog Compl. ¶ 41; Afriat-Kurtzer Compl. ¶ 41. Finally, plaintiffs allege that, after the families of martyrs produced official certification establishing the bona fides of martyrs, Arab Bank issued receipts to the family members stating that benefits were paid. Litle Compl. ¶¶ 460-461; Coulter Compl. ¶¶ 518-519; Almog Compl. ¶¶ 208-209; Afriat-Kurtzer Compl. ¶¶ 207-208. For example, plaintiffs allege that, following a suicide bombing attack on March 27, 2001, the martyr's father "received a confirmatory receipt stating that the benefit was paid to his Arab Bank account in Ramallah." Litle Compl. ¶ 461; Coulter Compl. ¶ 519; Almog Compl. ¶ 209; Afriat-Kurtzer Compl. ¶ 208.

The foregoing facts, as alleged by plaintiffs, establish that Arab Bank's role in providing assistance and material support to terrorist organizations was open and not concealed, and that there was sufficient evidence in the public domain from which plaintiffs should have been able to adduce that Arab Bank was, or at the very least, may have been, involved in the alleged scheme. Plaintiffs cannot, on the one hand, allege that Arab Bank's participation was so well-publicized that it was virtually common knowledge, yet, on the other hand, argue that its conduct was self-concealing, thereby preventing plaintiffs from learning Arab Bank's identity and participation in the alleged conspiracy. Thus, plaintiffs' claims against Arab Bank are time-barred, unless equitable tolling applies.

**E. Equitable Tolling**

Unlike the diligence-discovery rule, which postpones accrual of a claim, the doctrine of equitable tolling suspends the statute of limitations once a claim has accrued. *Haekal v. Refco, Inc.*, 198 F.3d 37, 43 (2d Cir. 1999). The doctrine of equitable tolling is reserved for "rare and exceptional circumstance[s]." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *United States v. All Funds Distributed to Weiss*, 345 F.3d 49, 54 (2d Cir. 2003). "The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000); *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002). The Second Circuit has stated that it "will apply the equitable tolling doctrine 'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights,' . . . [and] made it clear that [it] had in mind a situation where a plaintiff 'could show that it would have been *impossible* for a reasonably prudent person to learn' about his or her cause of action." *Pearl v. City of Long Beach*, 296 F.3d 76, 85 (quoting *Miller v. Int'l Telephone & Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir. 1985) (emphasis in original).

The *Litle*, *Almog*, and *Afriat-Kurtzer* plaintiffs argue that the statute of limitations should be equitably tolled based on Arab Bank's fraudulent concealment of its conduct. To invoke this doctrine, plaintiffs must establish that: (1) the defendant wrongfully concealed material facts relating to its wrongdoing; (2) the concealment prevented plaintiffs' discovery of the nature of the claim within the limitations period; and (3) the plaintiffs exercised due diligence in pursuing the discovery of the claim during the period they seek to have tolled. *Corcoran v. New York Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999); *State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988). The policy underlying this doctrine "is to prevent a defendant from 'concealing a

14

fraud, or . . . committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it.'" *Hendrickson Bros.*, 840 F.2d at 1083 (quoting *Bailey v. Glover*, 88 U.S. 342, 349 (1874)).

A plaintiff can establish the concealment element by pleading "either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was . . . self-concealing." *Id.* at 1083. For a fraud to be self-concealing "must mean more than that the plaintiff is ignorant of the deception." *Long v. Abbott Mortgage Corp.,* 459 F. Supp. 108, 120 (D. Conn. 1978). "[T]he defendant must have engaged in 'some misleading, deceptive or otherwise contrived action or scheme, *in the course of committing the wrong,* that [was] designed to mask the cause of action.'" *S.E.C. v. Jones*, 476 F. Supp. 2d 374, 382 (S.D.N.Y. 2007) (quoting *Hobson v. Wilson,* 737 F.2d 1, 34 (D.C. Cir. 1984)) (emphasis and alteration in original); *see also Hendrickson Bros.*, 840 F.2d at 1083-84 (price-fixing and bid-rigging are self-concealing frauds and allegations of such are sufficient to satisfy the first prong of fraudulent concealment).

### 1. *Litle* **Plaintiffs**

The *Litle* plaintiffs – Keller, Brovender, and Zachariash – seek leave to file a Third Amended Complaint to add allegations of fraudulent concealment against Arab Bank. Although leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), " it is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao,* 336 F.3d 114, 127 (2d Cir. 2003). An amendment is futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Riccuiti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991). Thus, the decisive question is whether the proposed amendments sufficiently allege fraudulent concealment, so as to equitably toll the statute

15

of limitations.

The Proposed Third Amended Complaint alleges that Arab Bank: (1) failed to report to criminal and regulatory authorities transfers made to terrorist organizations in order to conceal its conduct from potential claimants and others; (2) concealed its participation in the financing of terrorism by refusing to allow the Saudi Committee and other sponsors of terrorism to locate their offices at Arab Bank facilities, choosing instead to provide covert and material support to those organizations; (3) caused its name to be omitted and removed from various website solicitations for funds to finance terrorism in order to conceal its material support for Palestinian terror organizations; and (4) did not make public, in any Hebrew or English publications, its support of terrorist organizations or the violent acts of terrorism committed against civilians.[10] Litle Compl. ¶¶ 542-544. The *Litle* plaintiffs contend that, as a result of defendant's fraudulent concealment, plaintiffs, despite their diligence, could not have been aware of Arab Bank's assistance and material support of known terrorist organizations until, at least, May 2002, when agents of the Israeli government seized, and made public, documents discussing the connection between HAMAS and various banks, including Arab Bank.

Assuming *arguendo* that plaintiffs have made sufficient allegations that Arab Bank either took affirmative steps to prevent plaintiffs' discovery of their claims, or that the wrong itself was self-concealing, other allegations by plaintiffs contradict any possible claim that the concealment prevented them from discovering the nature of their claims during the four year

---

[10] The *Litle* plaintiffs also allege several acts of fraudulent concealment by Arab Bank that post-date the filing of the *Linde* complaint on July 2, 2004. *See* Litle Compl. ¶¶ 545-549. These acts cannot serve as the basis for equitable tolling because, any acts of concealment by the defendant after that date could not have prevented plaintiffs from discovering their claims against Arab Bank.

16

limitations period. As discussed above, based upon the allegations in plaintiffs' complaint, there was sufficient evidence available in the public sphere, dating back to October 2000, from which plaintiffs could have learned about Arab Bank's role in providing banking and administrative services to terrorist organizations within the limitations period. *See* Litle Compl. ¶¶ 449; 460-461; 479; 534 -535. That these events may have been geographically remote, or in a foreign language, as plaintiffs argue, is of little consequence. There were hundreds, if not thousands, of plaintiffs in these consolidated actions who were able to file timely claims against Arab Bank.[11]

### 2. *Almog/Afriat-Kurtzer* Plaintiffs

The *Almog* and *Afriat-Kurtzer* plaintiffs have *not alleged* fraudulent concealment; however, they now rely on it as a basis for equitable tolling, and expressly rely on the arguments made by counsel for the other plaintiffs. *See* OA Tr. at 23. Although plaintiffs have not pled fraud, they contend that there was concealment, as evidenced by the investigative audit by the United States Office of the Comptroller of the Currency ("O.C.C."), which revealed deficiencies in Arab Bank's internal controls, particularly in the areas of Bank Secrecy Act and Anti-Money Laundering compliance. *See In the Matter of the Federal Branch of Arab Bank, PLC, New York, New York*, Consent Order, Enforcement Action No. 2005-14, 2005 WL 3967697 (O.C.C. Feb. 24, 2005); *In the Matter of the Federal Branch of Arab Bank, PLC, New York, New York*, Consent Order for Civil

---

[11] Even if this court were to look to the filing of the *Linde* complaint on July 2, 2004 as the latest date by which plaintiffs could have been aware of their claims against Arab Bank, the *Litle* plaintiffs still had several months after that date to assert timely claims. Brovender was injured in October 2000, Keller on February 14, 2001, and Zachariash on April 24, 2001. As of July 2, 2004, the date on which the *Linde* complaint was filed, all three plaintiffs had several months to commence timely actions against Arab Bank. Brovender had approximately three months, Keller had approximately seven months, and Zachariash had almost nine months remaining on the statute of limitations.

Money Penalty, Enforcement Action No. 2005-101, 2005 WL 3967695 (O.C.C. Aug. 17, 2005). According to plaintiffs, these deficiencies – which included, *inter alia*, Arab Bank's failure to adequately implement a program to monitor funds transfers for suspicious activities – prevented federal regulators and the public from being able to expose Arab Bank's misconduct. Additionally, plaintiffs argue that Arab Bank's role in making benefit payments to the family members of martyrs was inherently self-concealing.

Wiesner, a plaintiff in *Almog*, whose ex-wife was killed on November 2, 2000, had until November 2, 2004 to commence his action against Arab Bank. Like the *Litle* plaintiffs, even if Wiesner could establish the first prong of the fraudulent concealment analysis, he cannot establish that any purported concealment, either affirmative or self-concealing, prevented him from discovering the nature of his claims during the four year limitations period. As discussed above, there was ample evidence in the public domain, dating back to at least October 2000, from which he could have learned of Arab Bank's involvement in the alleged scheme during the four year limitations period. Thus, Wiesner's claims are not subject to equitable tolling and are untimely.

Afriat-Kurtzer and Ben Haim, plaintiffs in *Afriat-Kurtzer*, were injured in a terrorist attack on January 22, 1995, and therefore had until January 22, 1999 to file suit against Arab Bank. Plaintiffs did not file their complaint until January 21, 2005, six years after the expiration of the statute of limitations. Even if plaintiffs could make allegations of fraudulent concealment affecting the 1995-1999 limitations period – which they have not done – they have set forth no proposed allegations, nor could they, that would overcome the allegations of widespread publicity of Arab Bank's conduct contained in the companion complaints. They therefore have proffered no sound basis for equitably tolling their time to file until as late as January 2005. *Cf. Bodner v. Banque*

18

*Paribas*, 114 F. Supp. 2d 117, 135-36 (E.D.N.Y. 2000).[12]

### III. CONCLUSION

For the foregoing reasons, the motion of the *Litle* plaintiffs for leave to file a Third Amended Complaint is denied as futile because the claims of Shivi Keller, Chayim Brovender, and Mattityahu Zachariash are time-barred. Arab Bank's motion to dismiss the *Coulter*, *Almog*, and *Afriat-Kurtzer* complaints as to specific plaintiffs is granted. Accordingly, the claims of the Gilmore, Assraf, Guetta, and Schertzman families, and Avigail Lewis Biton (Coulter Complaint), Zeev Wiesner (Almog Complaint), and Gila Afriat-Kurtzer and Ronen Ben Haim (Afriat-Kurtzer Complaint) are dismissed as barred by the ATA's four year statute of limitations. Also, insofar as there remain common law claims for intentional infliction of emotional distress by the *Coulter* plaintiffs, those claims are also dismissed.

        **SO ORDERED.**

        /s/ *Nina Gershon*
        **NINA GERSHON**
        **United States District Judge**

Dated: September 7, 2007
      Brooklyn, New York

---

[12] Because these plaintiffs cannot satisfy the elements of fraudulent concealment, thereby making it futile to grant plaintiffs leave to amend, it is not necessary to offer plaintiffs such leave.