UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
COURTNEY LINDE, et al.,

                Plaintiffs,

      - v -                                                        CV-04-2799 (NG)(VVP)

ARAB BANK, PLC,                                    **AND ALL RELATED CASES**[1]

                Defendant.
-------------------------------------------------------------------x

## **MEMORANDUM AND ORDER**

        The defendant has moved for clarification of the court's May 7, 2007 Production Order on the ground that production of documents in accordance with the plaintiffs' interpretation of the Order would impose an undue burden on the defendant. The plaintiffs oppose the motion on a number of grounds.

        A brief history of discovery as it relates to the issue is necessary. Early in the discovery process, in response to the defendant's objections to the plaintiffs' initial discovery requests, the court issued an order dated March 3, 2006 which identified the documents the defendant was required to produce at that point in response to the plaintiffs' requests. Although the March 3 Order significantly narrowed the scope of documents that were to be produced in response to those requests, it did not rule out later production of documents sought by the requests but excluded from the scope of the March 3 Order. The March 3 Order also required the defendant to identify the jurisdictions whose bank secrecy laws prohibited production of any of the documents covered by the Order. That aspect of the Order anticipated litigation concerning the applicability of, and the effect to be given to, any such bank secrecy laws during the discovery process.

        The defendant identified four jurisdictions whose bank secrecy laws were implicated, and litigation indeed ensued with respect to the laws of three of those jurisdictions – Jordan,

---

      [1]The following related cases have been consolidated with the instant case for purposes of discovery and other pretrial proceedings: *Philip Litle, et al. v. Arab Bank, PLC*, CV-04-5449 (NG)(VVP), *Oran Almog, et al. v. Arab Bank, PLC*, CV-04-5564 (NG)(VVP), *Robert L. Coulter Sr., et al. v. Arab Bank, PLC*, CV-05-365 (NG)(VVP), *Gila Afriat-Kurtzer, et al. v. Arab Bank, PLC*, CV-05-388 (NG)(VVP), *Michael Bennett et al. v. Arab Bank, PLC*, CV-05-3183 (NG)(VVP), *Arnold Roth, et al. v. Arab Bank, PLC*, CV-05-3738 (NG)(VVP), *Stewart Weiss, et al. v. Arab Bank, PLC*, CV-06-1623 (NG)(VVP), and *Joseph Jesner, et al. v. Arab Bank, PLC*, CV-06-3869 (NG)(VVP).

Lebanon, and the Palestinian Monetary Authority. Ultimately, the court decided that the prohibitions of the bank secrecy laws of those jurisdictions had to give way to the plaintiffs' need for those records to prove their claims in this action. The defendant was provided the opportunity, however, to request approval from authorities in those jurisdictions to produce the documents, notwithstanding the bank secrecy laws, by means of letters rogatory. Before the defendant made those requests, the court directed the parties to attempt to further narrow the scope of documents to be produced on the theory that discovery obtained after the March 3 Order may have obviated the need for some of the documents or may have otherwise provided a basis for limiting the scope of documents to be produced.

In response, the plaintiffs prepared a proposed order which, upon the defendant's consent, the court entered on May 7, 2007. The May 7 Order was narrower than the March 3 Order in some respects, because it reduced the number of entities for which records were sought. The May 7 Order was significantly broader than the March 3 Order, however, because it expanded the types of transaction records to be produced in several ways.[2] First, whereas the March 3 Order required production of certain transaction records only if they were in electronic form, the May 7 Order contained no such limitation and thus requires production of paper records. Second, the March 3 Order required production of wire transfer records concerning transactions of certain Specially Designated Global Terrorists ("SDGT") that involved the New York branch of the defendant, while the May 7 Order required production of all wire transfer records of those SDGT's regardless of the branches involved. Finally, because the Order broadens the range of transaction records to be produced, it may require the production of records held at branches in jurisdictions other than those whose bank secrecy laws were implicated by the March 3 Order. The defendant contends that this broadening of the scope of production imposes a substantial burden on the defendant, at least in the abstract, because it would require the defendant to search manually through paper records, which were archived on a daily basis prior to 2001 and which are not electronically searchable, at all of its branches to track down records of the transactions to which the Order applies.

---

[2]The May 7 Order does not appear to have expanded the scope of production of non-transaction records.

The defendant admits that it misunderstood the plain import of the May 7 Order when giving consent to its entry by assuming that the scope of production in the May 7 Order was merely a subset of the documents covered by the March 3 Order. Promptly upon recognizing its error in discussions with the plaintiffs, the defendant addressed the issue to the court in a letter and then sought permission to make this motion in order to convince the court of the burden that would be imposed if the Order is not limited in some fashion.

Weighing the relevance of the additional information covered by the May 7 Order against the burden of its production, *see, e.g., Jones v. Goord*, No. 95 CIV. 8026 (GEL), 2002 WL 1007614, at *6 (S.D.N.Y. May 16, 2002), the expanded scope of the May 7 Order probably brings within its reach records of transactions of doubtful relevance to the issues here. It is difficult to know how much or how little relevance the transaction records actually possess, however. The bank has apparently produced few if any records disclosing whether it has any account relationship at all with the entities and organizations whose records are sought. The plaintiffs and the court are thus at a loss to determine what kinds of transaction records may exist and which ones may be relevant to the issues here. Ordinarily, in a case such as this, the court would have expected to limit the defendant's discovery burden through staged discovery in which disclosures in the earlier stages would assist the plaintiffs in thereafter targeting specific transactions for more in-depth discovery concerning the flow of specific funds to and from certain accounts. Largely because the defendant decided not to produce documents protected by bank secrecy laws, that has not happened. There is little doubt, however, of the relevance of at least some of the documents added to the defendant's production obligation by the May 7 Order. For instance, records of all wire transfers to and from any of the SDGT's, and records disclosing the trail of those funds as far as possible through the bank's records, are of obvious relevance to the plaintiff's proof on its claims regarding the bank's involvement in the financing of terrorist activities.

In examining the actual burden imposed by the May 7 Order, the court notes first that the production of paper transaction records will potentially impose a burden only to the extent that those records reside at branches outside the jurisdictions whose records were within the scope of production of the March 3 Order. As the defendant has decided not to produce any records from its branches in Lebanon, Jordan and the Palestinian territories because of the bank secrecy laws

in those jurisdictions, the May 7 Order adds no burden with respect to records maintained at those branches.[3] No further limitation of the May 7 Order is therefore required with respect to records maintained in those jurisdictions.

As for transaction records maintained at branches outside those jurisdictions, however, the defendant has established to the court's satisfaction that some limitation may be appropriate. There is no question that searching manually through ten-years' worth of paper records at 60 different branches to locate all transaction records relating to the numerous entities identified in the May 7 Order would pose a substantial burden. *Compare, e.g., In re Lloyd's American Trust Fund Litig.*, No. 96 CIV. 1262 (RWS), 1998 WL 50211, at *17 (S.D.N.Y. Feb. 6, 1998). But again, compliance with the May 7 Order will be burdensome only to the extent that the defendant does not raise bank secrecy laws as a bar to production of the documents called for in the Order. For if the defendant intends to withhold production of documents based on the bank secrecy laws of the 14 countries where records might be located, the Order imposes no burden at all.

Accordingly, because the defendant has not yet demonstrated that the potential burden of meeting the May 7 Order is one they will actually bear, the court declines to limit the scope of the May 7 Order at this time. The burden only becomes real if the defendant demonstrates that it is prepared to produce records subject to the Order either because the records are located in jurisdictions whose bank secrecy laws do not prohibit their production, or because the defendant has obtained authorization to disclose the records from jurisdictions whose laws would otherwise prohibit their production. The court therefore affords the defendant 15 days in which to identify any jurisdictions whose laws do not prohibit production of the records covered by the Order. Upon such identification, the court will enter an appropriate order limiting the reach of the May 7 Order with respect to transaction records maintained at branches in those jurisdictions.[4]

---

[3] The defendant operates approximately 180 branches around the world, roughly 60 of which are located in 14 countries outside those three jurisdictions. Def. Mem. at 4.

[4] The court contemplates that any such order will require production, as an initial matter, of only those transaction records that are maintained in electronic form or which can be readily identified through electronic searches. The entry of such an order would not preclude the plaintiffs from thereafter seeking production of other records covered by the May 7 Order upon a showing that their need for the records outweighs the burden of their production.

Similarly, once the defendant has actually obtained authorization to disclose the records covered by the May 7 Order from any jurisdiction whose laws would otherwise prohibit their disclosure, the court will enter an order limiting the reach of the May 7 Order, provided, however, that the defendant must make requests for any such authorizations within the next 30 days.

**SO ORDERED:**

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
December 10, 2007