FILED
U.S. IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 6 - 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
COURTNEY LINDE, et al.,

        Plaintiffs,

- against -

ARAB BANK, PLC,

        Defendant,
-----------------------------------------------------------x

ORDER

04 CV 2799 (NG)(VVP)
and related cases[1]

NINA GERSHON, United States District Judge:

By order dated January 21, 2011, this court granted plaintiffs' request that the parties be allowed to file motions to exclude expert witnesses on the grounds of relevancy and prejudice, based upon their initial reports, prior to the submission of rebuttal reports or depositions. Plaintiffs now seek to exclude 16 of the defendant's 20 expert witnesses. This order does not address the banking experts Anne T. Vitale and Paul Allan Schott, who will be considered at the conference scheduled for December 19, 2011 at 2:30 p.m., but does address the remaining 14 witnesses who were the subject of plaintiffs' motion to exclude.

Under Rule 401 of the Federal Rules of Evidence, "[e]vidence is relevant if: a) it has any tendency to make a fact more or less probable than it would be without the evidence; and b) the fact is of consequence in determining the action." Under Rule 702 of the Federal Rules of Evidence, expert testimony must likewise "help the trier of fact to understand the evidence or to determine a fact in issue." Rule 403 of the Federal Rules of Evidence instructs that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of

---

[1] The following related cases have been consolidated with this case for the purposes of discovery and other pretrial proceedings: *Philip Litle, et al. v. Arab Bank, PLC*, 04-CV-5449; *Oran Almog, et al. v. Arab Bank, PLC*, 04-CV-5564; *Robert L. Coulter, Sr., et al. v. Arab Bank, PLC*, 05-CV-365; *Gila Afriat-Kurtzer, et al. v. Arab Bank, PLC*, 05-CV-388; *Michael Bennett, et al. v. Arab Bank, PLC*, 05-CV-3183; *Arnold Roth, et al. v. Arab Bank, PLC*, 05-CV-0378; *Stewart Weiss, et al. v. Arab Bank, PLC*, 06-CV-1623; *Joseph Jesner, et al. v. Arab Bank, PLC*, 06-CV-3869; *Yaffa Lev, et al. v. Arab Bank, PLC*, 08-CV-3251; and *Viktoria Agurenko, et al. v. Arab Bank, PLC*, 10-CV-626.

1

one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The issue in the first-scheduled trial of these cases is whether defendant Arab Bank (the "Bank") violated provisions of 18 U.S.C. §§ 2331 *et seq.*, the Anti-Terrorism Act ("ATA"), by, among other things, providing funds, financial services, or other material support to terrorists under 18 U.S.C. § 2339A, or to a U.S. government designated Foreign Terrorist Organization ("FTO") under 18 U.S.C. § 2339B, or engaged in the financing of terrorism under 18 U.S.C. § 2339C. *Linde v. Arab Bank*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005), discusses the elements of the various statutes, including the varying states of mind which plaintiffs must prove against the Bank to establish either direct liability or liability for conspiring or aiding and abetting under each of these statutes.

As an initial matter, defendant's effort to support the relevance of its challenged experts by pointing to the plaintiffs' experts' reports is of limited value. Defendant cannot bootstrap its way to relevance by claiming that plaintiffs are making the converse argument. Since defendant did not challenge plaintiffs' reports, whether or not what plaintiffs offer is relevant is yet to be determined. Further, as this court has stated in the past, that plaintiffs made certain allegations in their complaints does not mean that they will be permitted to prove every such allegation at trial, without regard to relevance. Tr. of July 22, 2010, 14:7-14:20. Similarly, that both parties took discovery on a broad range of issues does not mean that the subjects of such discovery are relevant for trial.

Turning to the reports of defendant's challenged experts, much of what they offer is simply an effort to enhance the image of Arab Bank, but defendant cannot defend against plaintiffs' claims by offering expert evidence as to its "character." Federal Rule of Evidence

404(a) provides that "evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." *See also* Federal Rule of Evidence 608(a) (limiting reputation or opinion evidence of a *witness* to the trait of truthfulness). For these reasons, the opinions of individuals, organizations, governments, or government officials, as either expressed by or reported by defendant's experts, regarding Arab Bank (or Jordan, or other countries in the Middle East); Arab Bank's role in Middle East banking; or even whether or not Arab Bank supported terrorism, are not relevant.

For example, Dr. George Tewfic Al Abed, a former Governor and Chairman of the Board of the Palestine Monetary Authority (the "PMA") and a former Director at the International Monetary Fund (the "IMF"), was asked to opine on how the branches of Arab Bank in the Palestinian Territories were perceived by international organizations such as the IMF and the World Bank. The report also describes the history of banking regulation in the Palestinian Territories, the interaction of the PMA and Israeli banking authorities, and the policies instituted by them to protect against terrorist financing. The report speaks generally to Arab Bank's compliance. Essentially, this report is nothing more than a character reference. Similarly, The Honorable Edward W. Gnehm, Jr., a former U.S. ambassador to Jordan, was asked to opine on the strategic relationship between the U.S. and Jordan (a topic of no relevance to this case) and whether he believes that Jordan or Israel would allow misconduct on the part of the Bank. The opinions expressed in these reports are not relevant. Plaintiffs must prove their allegations concerning Arab Bank's conduct and state of mind. Defendant cannot rebut their proof with the opinions of prominent people who do not think that Arab Bank would finance terrorism but have no actual evidence, expert or otherwise, as to plaintiffs' allegations.

3

Opinions from defendant's experts Gen. Ma'ada Hasbani, Avi Kostelitz, Gen. Ilan Paz, and Gen. Uri Sagie regarding the capability of Israeli intelligence and whether the Israeli intelligence community formed a belief as to whether Arab Bank was engaged in the financing of terrorism are similarly not relevant. For example, Gen. Uri Sagie, the Director of Military Intelligence for the State of Israel from 1991-1995, opines that Israeli intelligence "should, could, and would have known about any organization or business enterprise that was engaged in aiding or supporting terrorist activities . . ." Sagie Report p.15. All of the experts asked to opine on Israeli security and intelligence give similar assessments. These opinions have no relevance to the claims in this case. It is the role of the jury to determine if Arab Bank committed the ATA violations charged. Nothing in the opinions of high ranking members of the Israeli intelligence community regarding the capabilities of Israeli intelligence meet the test of Rule 401.

Insofar as many of the expert reports submitted by the defendant express opinions as to the state of mind, intent, or motive of a government, a charitable entity, or a person, they do not contain relevant expert evidence. "Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004); *see also Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 730 (S.D.N.Y. 2011). Expert opinions regarding the motivations of suicide bombers and the charitable intentions of the Saudi Committee In Support of the Intifada Al Quds ("Saudi Committee") fall into this category. Narrative histories of economic and humanitarian assistance in the Palestinian Territories aimed at proving intent also fall into this category. For example, the opinion that the Kingdom of Saudi Arabia had a humanitarian purpose in giving aid and economic assistance generally to Palestinians during the Second Intifada, as described by Prof. Avi Shlaim, is fundamentally an attempt to paint a picture for the jury regarding the intent of the

Saudi Committee and the motivations of Saudi Arabia and Jordan. Such expert opinions amount to an attempt to "tell the jury the defendant's intentions through the mouths of witnesses other than [itself]." *United States v. Rahman*, 189 F.3d 88, 136 (2d Cir. 1999). Expert witnesses are not competent to testify to Arab Bank's intentions or beliefs or to those of the Saudi Committee. *Id.*

In addition to amounting to impermissible intent and motive opinions, the history of international assistance efforts in the Palestinian Territories and economic development of the region, as described particularly by David Rundell and The Honorable Edward Abington as well as others, is not relevant to whether or not certain bank transactions took place in violation of the ATA. In addition to being an inappropriate area for expert testimony, reviewed against the ATA's elements, these kinds of generalities do not go to any issues under the ATA.

An additional word is necessary specifically as to the motivations of suicide bombers. Three expert reports (those of Pinhas Shmilovitch, Rafael Lotan, and Avi Kostelitz) focus on the motivations of suicide bombers. The defendant, understandably, relies on a comment made by me at the conference on July 22, 2010, to the effect that it was acceptable to submit expert testimony on the motivations of suicide bombers. Tr. of July 22, 2010, 17:14-18:20. Upon review, that comment incorrectly focused on the intent of the bomber and not the activity of the Bank. Even if the subject of motive or intent were an appropriate one for expert testimony, as it is not (*see* supra), plaintiffs are correct that, under the ATA, they are not required to prove that the prospect of payment to their families motivated suicide bombers in any given attack or that the prospect of financial gain or remuneration motivates terrorists at all.[2]

---

[2] Plaintiffs do need to prove that the Bank, with the requisite mental state, "provided services to the particular group responsible for the attacks giving rise to their injuries." *Linde*, 384 F. Supp. 2d at 585 (E.D.N.Y. 2005). As I previously held with regard to whether plaintiffs need to prove

In addition to containing inadmissible character testimony, the opinions of the four experts addressing foreign law, Dr. George Tewfic Al Abed, Yair Dagan, Dr. Marwan Nsouli, and Chakib Cortbaoui, are not relevant because questions of foreign law are not to be determined through a proffer of expert testimony given to the jury. Rule 44.1 of the Federal Rules of Civil Procedure provides that "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing" and specifies that a determination of foreign law "must be treated as a ruling on a question of law" and not as an issue to be presented to the jury. Therefore, nothing in these reports will assist the trier of fact. Moreover, defendant offers no legal authority to support the contention that compliance with Lebanese law, or any law other

---

"that the death and dismemberment benefit payments motivated the attacks which caused their injuries":
> [P]laintiffs need not prove motive in order to succeed in their claims. Plaintiffs acknowledge that they are unlikely to be able to prove the motive behind any particular attack. Their theory is that the death and dismemberment benefit plan, allegedly administered by Arab Bank, creates an incentive for suicide bombings, whether or not it is also a motive in any particular instance. The Bank's active participation in creating such an incentive is a sufficient basis for liability under the broad scope of the ATA, which imposes secondary liability on those who substantially assist acts of terrorism. *See Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1136 (9th Cir. 2000), *cert. denied*, 532 U.S. 904, 121 S. Ct. 1226, 149 L.Ed.2d 136 (2001) (noting that "even contributions earmarked for peaceful purposes can be used to give aid to the families of those killed while carrying out terrorist acts, thus making the decision to engage in terrorism more attractive"). Plaintiffs also argue that the willingness of Arab Bank, a major institution in the Middle East, to perform services for the terrorists helps to legitimize terrorism and, in that way as well, furthers its assistance to them.

*Linde*, 384 F. Supp. 2d at 585. The Supreme Court's recent decision in *Holder v. Humanitarian Law Project et al.*, --U.S.--, 130 S. Ct. 2705, 2725 (2010), addressing 18 U.S.C. § 2339B, confirms that the legitimizing effect of giving support to terrorists, even for "political activism" or "good works," is one that Congress sought to curb. In *Humanitarian Law Project*, the Supreme Court concluded that by using the word "knowingly," "Congress plainly spoke to the necessary mental state for a violation of § 2339B, and it chose knowledge about the organization's connection to terrorism, not specific intent to further the organization's terrorist activities." *Humanitarian Law Project*, 130 S. Ct. at 2717.

than American law, is relevant to whether it violated the ATA, nor does the Bank offer any legal authority that such compliance would provide an affirmative defense.

Finally, with regard to all of the expert reports addressed above, even if it could be said that some statements in some of the reports reference matters of marginal relevance to the discrete issues for trial in this case, the reports are so far afield from the specific allegations and statutory elements at issue that there is an appreciable risk of prejudice, jury confusion, and misleading the jury. The trial, anticipated to be lengthy, cannot be burdened with extraneous issues such as whether Arab Bank is widely regarded as a good actor in the Middle East, or the lengthy history of social, political, economic, and diplomatic factors relating to a conflict that goes well beyond the issues in this case. Nor can Arab Bank be permitted to invite the jury to decide this case based on factors that are not evidentiary in nature but are calculated to sway the jury's emotions, such as that Israeli intelligence, reputed to be excellent, was not aware of problems with the Bank. Therefore, applying Rule 403 of the Federal Rules of Evidence, the probative value of these reports is far outweighed by the danger of unfair prejudice, confusion of the issues, and undue delay.

The plaintiffs' motion to exclude specific expert witnesses is GRANTED in part and RESERVED in part. The motion to exclude is GRANTED with regard to the expert testimony of Dr. George Tewfic Al Abed, The Honorable Edward Abington Jr., Chakib Cortbaoui, Yair Dagan, The Honorable Edward W. Gnehm, Jr., Brig. Gen. (ret.) Ma'ada Hasbani, Avi Kostelitz, Rafael Lotan, Dr. Marwan Nsouli, Brig. Gen. (ret.) Ilan Paz, David Rundell, Maj. Gen. (ret.) Uri Sagie, Prof. Avi Shlaim, and Pinhas Shmilovitch (except as to the meaning and use of the word "Shahid" he provided at paragraphs 31-33 of his report). The motion to exclude the expert

reports of Anne T. Vitale and Paul Allan Schott will be addressed at the conference scheduled for December 19, 2011.

The parties are directed to confer and propose in writing an agenda for future scheduling dates to be discussed at the December 19, 2011 conference.

SO ORDERED.

s/NG

**NINA GERSHON**
**United States District Judge**

Dated: December 5, 2011
Brooklyn, New York