UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| COURTNEY LINDE, et al.<br><br>Plaintiffs,<br><br>-against-<br><br>ARAB BANK, PLC,<br><br>Defendant. | : | Case No. CV 04 2799 (NG)(VVP) *and all related cases*[*] |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT WITNESS TESTIMONY OF ROBERT LACEY**

[*] *Litle, et al. v. Arab Bank, PLC,* No. CV-04-5449 (E.D.N.Y. 2004) (NG)(VVP); *Almog, et al. v. Arab Bank, PLC*, No. CV-04-5564 (E.D.N.Y. 2004) (NG)(VVP); *Coulter, et al. v. Arab Bank, PLC*, No. CV-05-365 (E.D.N.Y. 2005) (NG)(VVP); *Afriat-Kurtzer, et al. v. Arab Bank, PLC,* No. CV-05-388 (E.D.N.Y. 2005) (NG)(VVP); *Bennett, et al. v. Arab Bank, PLC,* No. CV-05-3183 (E.D.N.Y. 2005) (NG)(VVP); *Roth, et al. v. Arab Bank, PLC,* No. CV-05-3738 (E.D.N.Y. 2005) (NG)(VVP); *Weiss, et al. v. Arab Bank, PLC,* No. CV-06-1623 (E.D.N.Y. 2006) (NG)(VVP); *Jesner, et al. v. Arab Bank, PLC,* No. CV-06-3869 (E.D.N.Y.) (NG)(VVP); *Lev, et al. v. Arab Bank, PLC,* No. CV-08-3251 (E.D.N.Y. 2008) (NG)(VVP); and *Agurenko, et al. v. Arab Bank, PLC*, No. CV-10-626 (E.D.N.Y. 2010) (NG)(VVP).

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. LACEY'S OPINION REGARDING WHETHER THE SAUDI COMMITTEE IS TERRORIST-CONTROLLED IS IRRELEVANT TO THE ISSUES IN THESE CASES .......... 2

II. LACEY LACKS ANY DEMONSTRABLE EXPERTISE ON A FINANCIAL INSTITUTION'S OBLIGATIONS .......... 5

III. THE BANK'S ATTEMPTS TO RECAST LACEY'S OPINIONS AS SOMETHING OTHER THAN TESTIMONY REGARDING STATE OF MIND, INTENT, AND MOTIVE ARE UNAVAILING .......... 7

IV. LACEY LACKS THE SPECIALIZED KNOWLEDGE REQUIRED TO QUALIFY HIM AS AN EXPERT ON THE SAUDI COMMITTEE .......... 8

CONCLUSION .......... 10

CERTIFICATE OF SERVICE .......... 12

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Campbell ex rel. Campbell v. Metropolitan Property and Cas. Ins. Co.*, 239 F.3d 179 (2d Cir. 2001) .......... 9

*CDR-Wantaugh, Inc. v. Shell Oil Co.*, No. 07-CV-4497 (DRH)(ETB), 2011 U.S. Dist. LEXIS 19717 (E.D.N.Y., Feb. 28, 2011) .......... 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .......... 4, 10

*Deutsch v. Novartis Pharm. Corp.* 768 F. Supp. 2d 420 (E.D.N.Y. 2011) .......... 9

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) .......... 9

*LaSalle Bank N.A. v. CIBC Inc.*, No. 08-CV-8426, 2012 U.S. Dist. LEXIS 18503 (S.D.N.Y., Feb. 14, 2012) .......... 6

*Linde v. Arab Bank PLC*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005) .......... 3

*McCullock v. H.B. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995) .......... 8

*Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176 (2d Cir. 1992) .......... 9

**Federal Statutes**

18 U.S.C. § 2333(a) .......... 1

18 U.S.C. § 2339B .......... 1

**Federal Rules**

Fed. R. Evid. 702 .......... 4

## PRELIMINARY STATEMENT

Defendant Arab Bank's Opposition ("Def. Mem.") to Plaintiffs' motion ("Plaintiffs' Mem.") to exclude Robert Lacey's testimony and opinions fails to rebut Plaintiffs' arguments that his testimony is irrelevant, unreliable, and inadmissible. The Bank seeks to have Lacey offer testimony that directly conflicts with this Court's prior decisions, and – setting aside the Bank's failure to establish that Lacey is adequately qualified to offer his opinions, that he applied a reliable methodology, and/or accounted for relevant materials – would result in irrelevant and unfairly prejudicial testimony to the jury. The Bank claims that "*Plaintiffs must prove that the Saudi Committee [in Support of the Al-Quds Intifada] was controlled by Hamas*." Def.' Mem. at 1. This, however, is an inaccurate characterization of Plaintiffs' burden at trial with respect to facts concerning the Saudi Committee in Support of the Al-Quds Intifada ("Saudi Committee").

Plaintiffs' claims arise under 18 U.S.C. § 2333(a) and are premised on, *inter alia*, violations of 18 U.S.C. § 2339B which criminalizes the provision of "material support or resources" to designated foreign terrorist organizations. To establish tort liability for violations of Section 2339B, Plaintiffs must demonstrate that the Bank's role in connection with the Saudi Committee's disbursement program constituted knowing, intentional, willfully blind, or reckless provision of material support to Hamas. Plaintiffs bear no burden to prove that the Saudi Committee was controlled by Hamas (or any other terrorist entity), but simply that the Bank understood that the Saudi Committee program of martyr, wounded, and prisoner payments – regardless of who "controlled" the Saudi Committee – was channeling funds to, or at the direction of, Hamas members and organizations. By mischaracterizing and misinterpreting this Court's prior decisions setting forth Plaintiffs' burden at trial, the Bank now tries to introduce

Lacey's irrelevant (and unreliable) conclusions that the Saudi Committee "is not a Hamas-controlled organization." Def. Mem. at 3.

Not satisfied with eliciting irrelevant opinions from a putative expert with no specialized knowledge of the Saudi Committee before being approached by counsel (*see* Lacey Dep. at 87:20-87:23), the Bank seeks to introduce Lacey as an expert who can guide the jury through material that a jury is perfectly capable of comprehending without Lacey's elucidation. Worse, the Bank engages in this exercise in an improper attempt to have the jury draw an unwarranted inference that the information Lacey identified was the only type of information the Bank supposedly could have known about the Saudi Committee because the latter was a customer of its correspondent bank, Arab National Bank.[1] Leaving aside Lacey's lack of "specialized knowledge" – or knowledge of any kind regarding Arab Bank's extensive operations in the Palestinian Territories – Lacey possesses no expertise whatsoever on banking practice or what the Bank might have known from its position within the Palestinian Territories. There is no evidence that Arab Bank actually examined any public information regarding the Saudi Committee. Therefore, what was available is completely irrelevant as there is no evidence to suggest that the Bank reviewed or considered any such information. His testimony should be excluded in its entirety.

## ARGUMENT

### I. LACEY'S OPINION REGARDING WHETHER THE SAUDI COMMITTEE IS TERRORIST-CONTROLLED IS IRRELEVANT TO THE ISSUES IN THESE CASES

This Court has correctly recognized that Plaintiffs' claims in these cases reflect two theories (each of which, if proven, satisfies any causation requirement for all Plaintiffs' claims):

[1] *See* Def. Mem. at 4. Arab Bank fails to divulge that its correspondent bank, Arab National Bank, is 40%-owned by Arab Bank as listed on Arab Bank's own website at http://www.arabbank.com/en/gbnetwork.aspx?CSRT=4963101619002236574 (last accessed on July 12, 2012).

(1) that the Bank is liable because it knew that the payments and services it provided to or for the Saudi Committee and Committee beneficiaries incentivized terrorism and constituted support for Hamas and (2) that the Bank is liable because it maintained accounts, provided services, and/or transmitted funds and other material support to various organizations and individuals who were part of, controlled by, fronts for, or agents of Hamas. *See Linde v. Arab Bank PLC*, 384 F. Supp. 2d 571, 582 (E.D.N.Y. 2005). The Court has also held that "plaintiffs need not prove motive in order to succeed in their claims," and Your Honor has confirmed that "in order to prevail on their claims premised on the Bank's alleged administration of the death and dismemberment benefit plan, [Plaintiffs] must prove that each of the victims was in fact killed by terrorists (as defined in the statute and as opposed, for example, to apolitical criminals) and that each of the killers was within the coverage of the plan." *Id.* at 585.

Thus, as far as the Bank's liability in connection with its Saudi Committee activities are concerned, none of these holdings requires Plaintiffs to prove that the Saudi Committee was "controlled" by Hamas. Plaintiffs simply must demonstrate (for attacks attributable to Hamas that will comprise a first trial) that the Bank's conduct constituted material support to Hamas. And that can (and will) be demonstrated by the fact that the preponderance of the evidence demonstrates that notorious Hamas organizations helped design the program and identify Saudi Committee beneficiaries and ensure that they received payment, *and* that the Committee routinely paid open, obvious, and often notorious Hamas members and their families. Indeed, Plaintiffs' expert Arieh Dan Spitzen has delivered a detailed, comprehensively-sourced analysis of those very issues. But, to reiterate, none of that turns on whether Hamas "controlled" the Saudi Committee. The fact that the Saudi Committee might be "independent" has no bearing on whether the Bank knew, deliberately ignored, or recklessly disregarded the risk that facilitating

payments under the Saudi Committee program provided material support to or for the benefit of Hamas in myriad ways.

Notwithstanding the law of this case, the Bank's Opposition touts the conclusions provided by Lacey stating that "the Saudi Committee was not a terrorist-controlled organization." *See generally* Def. Mem. Again, the relevant issue here is not whether Hamas – or any other specific terrorist organization – controlled the Saudi Committee but rather whether the Bank, though, *inter alia*,[2] the Saudi Committee program, provided material support or resources to terrorists, a designated Foreign Terrorist Organization (Hamas), or in a manner that (in whole or part) supported terrorism through the death-and-dismemberment scheme and what Arab Bank's state of mind was when it engaged in that conduct. Lacey's opinions are irrelevant, confusing, and fraught with the risk of unfairly prejudicing and misleading the jury regarding relevant issues for their consideration.

Expert evidence is admissible where it assists "the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702. Nevertheless, "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993). Whether or not the Saudi Committee is controlled by Hamas[3] is not relevant to the issues in this case addressing *Arab Bank's* conduct.

[2] Plaintiffs will also demonstrate that, separate and apart from the Saudi Committee program, the Bank maintained accounts for notorious Hamas members, leaders, and their families, and transmitted payments to them.

[3] Parenthetically, even assuming this issue was relevant, Lacey's analysis is methodologically unsound, having conceded at his deposition that he only reviewed approximately 50 or 60 wire-transfer records produced by Arab Bank (despite the fact that there are nearly 176,000 records) and only recalled reviewing a number of unspecified charts of recipients of Saudi Committee aid through Arab Bank. Plaintiffs' Mem. at 18. That is in obvious marked contrast to Mr. Spitzen's intensive analysis of thousands of records, recipients, and Saudi Committee program mechanics.

## II. LACEY LACKS ANY DEMONSTRABLE EXPERTISE ON A FINANCIAL INSTITUTION'S OBLIGATIONS

In addition to addressing the irrelevant question of whether Hamas "controlled" the Saudi Committee, Arab Bank also seeks to offer Lacey as an expert to inform the jury on what a financial institution supposedly would have known about the Saudi Committee through public-domain searches. *See* Def. Mem. at 12 (stating "Mr. Lacey's conclusion that a financial institution could reasonably have concluded, based on objective factual evidence, that the Saudi Committee was a charitable and humanitarian organization"). Putting aside, as discussed in Section III below, that this is an improper opinion regarding the Bank's state of mind and is barred by this Court's December 6, 2011 Order, the Bank's rationale collapses given that Lacey *conceded* at his deposition that his expertise:

> (1) "is *not* in the area of what the bank did" (Lacey Dep. 281:4-281:5 (emphasis added));
>
> (2) did *not* encompass what Arab Bank thought or knew when it processed wire transfers from the Saudi Committee (Lacey Dep. 278:23-295:5);
>
> (3) did *not* include knowledge of "account opening activities", "account document management", and "know your customer rules" (Lacey Dep. 272:9-273:23);
>
> (4) did *not* encompass money laundering (Lacey Dep. 270:20-270:22); and
>
> (5) did *not* extend to the subject of how terror organizations finance themselves (Lacey Dep. 116:7-116:10, 270:23-271:3).

In truth, Lacey has no idea what a reasonable financial institution would, or should, know about incoming wire transfers or the distribution of funds over-the-counter to non-accountholders of a financial institution, and no amount of citation to cases on reasonable reliance overcomes these deficiencies – especially in light of the Bank's continued refusal to produce account-opening information or cash-distribution documentation for the Saudi Committee payments distributed by the Bank in the Palestinian Territories.

The Bank cites *CDR-Wantaugh, Inc. v. Shell Oil Co.*, No. 07-CV-4497 (DRH)(ETB), 2011 U.S. Dist. LEXIS 19717 (E.D.N.Y., Feb. 28, 2011), to support the premise that an expert can "evaluate the reasonableness of a party's conclusions or apprehension of particular facts or circumstances." Def. Mem. at 11. In *CDR-Wantaugh*, the expert in question was an experienced real estate, land use, and zoning attorney with over 50 years of specialized experience who opined as to what a reasonable attorney would recommend to a client seeking to lease property that was subject to an open Department of Environmental Conservation case requiring remediation and re-testing efforts of the soil on the land. 2011 U.S. Dist. LEXIS 19717, at *14-*15. By contrast, Lacey is an author with no background whatsoever in financial services, banking, or what banks are expected to know, suspect, or investigate. Nevertheless, he is proffered as an expert on precisely such issues. The distinction between the circumstances is salient. The Bank's effort to deploy an unqualified expert offering irrelevant opinions to elicit unwarranted inference by a jury regarding Defendant's *mens rea* must be rejected.[4]

Lacey's opinion should also be excluded because Bank officials have testified that they never searched for any public information about the Saudi Committee.[5] Notwithstanding Lacey's lack of qualification in this area, in order for such evidence to be potentially admissible,

---

[4] The same is true of *LaSalle Bank N.A. v. CIBC Inc.*, No. 08-CV-8426, 2012 U.S. Dist. LEXIS 18503, at *5 (S.D.N.Y., Feb. 14, 2012), where Judge Pauley merely held that Fed. R. Evid. 702 permits "expert testimony describing relevant background information, such as customary and industry practice in a given field, ... if it will be helpful to the jury." Here, Lacey has no knowledge about industry practice in the banking field, and to permit him to provide testimony about what conclusions a reasonable financial institution would draw would be improper.

[5] For example, the Bank's Head of Operations and Regional General Manager in the Palestinian Territories testified he was unaware the Saudi Committee maintained a website. *See* Mohammad Al-Tahan Dep. Tr. (May 8, 2007) at 174:2-174:4; Mazen Abu Hamdan Dep. Tr. (Nov. 20, 2009) at 178:19-179:21 (also stating he did not believe that the Head of Compliance would have known this fact either). The Bank's former Regional Manager in the Palestinian Territories when the Saudi Committee began operating and former chief banking officer for the Bank also testified that the Bank did "[n]ot necessarily" do anything to determine the veracity of his statement that the "sole role [of the Saudi Committee] is to pass humanitarian and economic and relief aid to the Palestinian Territories." Shukri Bishara Dep. Tr. (Nov. 13, 2010) at 120:10-120:17. He also stated that he had never seen any "know your customer" material related to the Saudi Committee (*Id.* at 129:8-129:11) and, like his colleagues, had not seen the website of the Saudi Committee. Shukri Bishara Dep. Tr. (Nov. 15, 2010) at 483:2-483:3. Excerpts of this testimony have been appended to the Declaration of John M. Eubanks which is attached hereto.

there must be a showing to suggest an effort was made to determine whether the Saudi Committee was supporting terrorism. Here, no such effort was made, and the Bank relied on the word of its correspondent bank/affiliate, Arab National Bank, rather than independently investigating the Saudi Committee which funneled nearly $100 million through Arab Bank between December 2000 and 2005.

## III. THE BANK'S ATTEMPTS TO RECAST LACEY'S OPINIONS AS SOMETHING OTHER THAN TESTIMONY REGARDING STATE OF MIND, INTENT, AND MOTIVE ARE UNAVAILING

Defendant argues that because Lacey's Reports do not contain the words "state of mind" or "motive" his opinions cannot reflect testimony regarding state of mind, intent, or motive. As Plaintiffs' initial memorandum chronicled in detail, this argument is an ineffective smokescreen. Given that that Court's December 19, 2001 ruling struck Defendant's banking experts' efforts to offer opinions on Arab Bank's state of mind, it would be utterly incongruent to allow Lacey to deliver substantively similar state-of-mind opinions. *See* Dec. 19, 2011 Tr. at 6:20-7:14. Furthermore, the Court's December 6 Order holds "[i]nsofar as many of the expert reports submitted by the defendant express opinions as to the state of mind, intent, or motive of a government, a charitable entity, or a person, they do not contain relevant expert evidence." December 6 Order at 4. Nevertheless, this is precisely what Lacey attempts to do. Indeed, he conceded in his deposition that "my focus was on the motives of the Saudi Committee as expressed in what they said and in what they did." Lacey Dep. 288:6-288:8. The Bank's Opposition fails to convert Lacey's anticipated opinions to anything other than improper state-of-mind testimony and should be excluded for the reasons explained in Plaintiffs' Mem. at 5-12 (regarding Lacey's testimony on state of mind, intent, and motive).

## IV. LACEY LACKS THE SPECIALIZED KNOWLEDGE REQUIRED TO QUALIFY HIM AS AN EXPERT ON THE SAUDI COMMITTEE

Notwithstanding the Bank's citation-less declaration that Lacey "has been recognized as one of the foremost experts on Saudi Arabia, including its history, politics, culture, and government" (Def. Mem. at 16), the fact remains that he is serving as the Bank's expert witness on the Saudi Committee despite the fact that, before being approached by counsel in a consulting capacity, he had never heard of the Saudi Committee while it was in existence as the "Saudi Committee in Support of the Al-Quds Intifada." As he testified in his deposition, "I first learned about [the Saudi Committee in Support of the Al-Quds Intifada] when I was approached by representatives of counsel to see if I could tell them anything about Prince Naif and his charitable activities." Lacey Dep. 87:20-87:23. He also conceded that he had no files or research materials on the Saudi Committee prior to 2009. Lacey Dep. 88:4-88:18.

Nevertheless, the Bank argues that "[a]n expert may be deemed to possess specialized knowledge with regard to issues upon which he has not received formal training or with which he lacks experience." Def. Mem. at 18. In *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995), the case cited by Defendant to support this assertion, the expert at issue was asked to opine on the impact of hot-glue fumes on an employee of a book binder. The expert lacked academic qualifications; however, the court held that he was qualified based upon, *inter alia*, "background industrial experience with ventilation; and practical experience with fumes" causing his analysis to go "far beyond that of a layman." 61 F.3d at 1043.

Here, Lacey's "specialized knowledge" involves little more than living in Saudi Arabia outside of the relevant time period of this case[6] and writing two books that do not even mention –

[6] Defendant stresses that Lacey "is the only expert witness in this litigation, including Plaintiffs' expert on the Saudi Committee, Mr. Spitzen, to have lived in Saudi Arabia for extended periods of time … and to have conducted many interviews over the years with members of its citizenry and its official leadership." Def. Mem. at

much less discuss – the specific issue for which he is offering his expert opinion, the Saudi Committee. He has no prior experience with the subject matter, and a lay juror could review the documents he has allegedly reviewed without requiring expertise to do so. Allowing Lacey to provide "expert" testimony based almost exclusively on after-acquired data in the public domain of which he had no knowledge prior to his retention as an expert would be to "supplant … the role of the jury in interpreting the evidence." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004).[7]

Likely recognizing the weakness of its arguments, the Bank reverts to arguing that any issues that Plaintiffs have with Lacey's methodology go only to the weight and not the admissibility of his opinions. The cases cited by the Bank are inapposite. Each case is concerned with whether the experts' reports were unreliable because of analytical failings.[8] Here, by contrast, Lacey took official statements in the press from the Saudi Committee at face value and did not even attempt to consider "obvious alternative explanations." *See Deutsch v. Novartis Pharm. Corp.* 768 F. Supp. 2d 420, 426 (E.D.N.Y. 2011) (stating "whether the expert has adequately accounted for obvious alternative explanations" as one factor in determining reliability of an expert witness' opinions). Without any factual or analytical basis, he opined that he has "seen no evidence that such aid to families [from the Saudi Committee] – even to the

---

21. Even in this argument, though, the Bank concedes that Plaintiffs' expert on the Saudi Committee, Mr. Spitzen, actually "researched the Saudi Committee on the behalf of the Israeli government" during the time period relevant to the allegations in these cases. *Id.* at n.14. This is something that Lacey never did.

[7] Plaintiffs' arguments regarding the lack of rigor in Lacey's methodology were set forth in their initial memorandum. *See* Plaintiffs' Mem. at 12-20.

[8] In *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176 (2d Cir. 1992), a wrongful termination case, Bethlehem Steel argued that plaintiff's damages expert should have been excluded because his testimony was based on two unfounded assumptions concerning how long the plaintiff would have continued working at Bethlehem Steel and what his annual raises would have been. The court stated that these assumptions were matters for the jury, and not the expert, to decide. *Id.* at 1188. Similarly, in *Campbell ex rel. Campbell v. Metropolitan Property and Cas. Ins. Co.*, 239 F.3d 179 (2d Cir. 2001), a case concerning lead-poisoned children, defendant moved to exclude plaintiffs' expert who testified that the poisoning occurred concurrently with the exposure, arguing that there were "gaps and inconsistencies" in his reasoning. *Id.* at 186. Denial of this motion was also upheld, as going to weight rather than admissibility. *Id.*

families of suicide bombers – 'strengthened the support for continuing the attacks'" (Lacey Report at ¶ 8) despite his admissions that he: (1) has never worked in or visited the Palestinian Territories (where the recipients of this aid resided) (Lacey Dep. 70:25-71:2); (2) has not studied in detail the activities of Hamas, the Palestinian Islamic Jihad, or the Al-Aqsa Martyrs' Brigades (Lacey Dep. 99:22-99:23); (3) is not an expert on how terror organizations finance themselves (Lacey Dep. 116:7-116:10, 270:23-271:3); and (4) had no "opportunity to understand or learn exactly how it was that those committees [in the Gaza Strip and the West Bank] selected who they selected to receive payments from the Saudi Committee" because his "expertise really stops at the Saudi end of things" (Lacey Dep. 119:7-119:13).  In short, the Bank seeks the benefit of the doubt to allow this simply to go to the weight rather than the admissibility of his testimony despite offering a witness with no adequate basis to assert the supposedly expert opinions he is asserting.  Allowing Lacey to testify would run contrary to the *Daubert* gatekeeping function.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' opening memorandum, Plaintiffs respectfully request that the Court exclude Robert Lacey as an expert witness in this case, together with such further relief as the Court may deem appropriate.

Dated: July 16, 2012                                          Respectfully submitted,

/S/ John M. Eubanks
Michael E. Elsner
John M. Eubanks
Vincent I. Parrett
Brian T. Frutig
P. Graham Maiden
MOTLEY RICE, LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
(843) 216-9000

Attorneys for the *Almog, Afriat-Kurtzer* and *Lev* Plaintiffs

OSEN LLC
Gary M. Osen
Joshua D. Glatter
Aaron Schlanger
Ari Ungar
Peter Raven-Hansen, Of Counsel
2 University Plaza, Suite 201
Hackensack, New Jersey 07601
(201) 265-6400

KOHN, SWIFT & GRAF, P.C.
Steven M. Steingard
Stephen H. Schwartz
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700

ZUCKERMAN SPAEDER LLP
Peter R. Kolker
Aitan D. Goelman
1800 M Street, NW, Suite 1000
Washington, DC 20036
(202) 778-1800

TURNER & ASSOCIATES, P.A.
C. Tab Turner
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
(501) 791-2277

Attorneys for the *Linde and Coulter* Plaintiffs

SAYLES WERBNER
Mark S. Werbner
Joel Israel
4400 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
(214) 939-8700

HEIDEMAN NUDELMAN & KALIK, P.C.
Richard D. Heideman
Noel J. Nudelman
Tracy Reichman Kalik
1146 19th Street, NW, 5th Floor
Washington, DC 20036
(202) 463-1818

STONE BONNER & ROCCO LLP
James P. Bonner
260 Madison Avenue, 17th Floor
New York, New York 10016
(212) 239-4340

Attorneys for the *Litle, Roth, Bennett, Weiss* and *Jesner* Plaintiffs

STONE AND MAGNANINI LLP
David S. Stone, Esq.
150 John F. Kennedy Pkwy, Fourth Floor
Short Hills, NJ 07040
(973) 218-1111

Attorneys for the *Agurenko* Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on July 16, 2012, a copy of the foregoing Reply Memorandum in Support of Plaintiffs' Motion to Exclude the Expert Testimony of Robert Lacey, was served by CM/ECF and email on all counsel of record in the above-referenced cases.

/S/ John M. Eubanks
John M. Eubanks