UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

COURTNEY LINDE, et al.,

                Plaintiffs,

  - against -

ARAB BANK, PLC,

                Defendant.

CV-04-2799 (NG)(VVP)
and all related cases[1]

---

**REPLY MEMORANDUM OF LAW OF DEFENDANT ARAB BANK PLC
IN FURTHER SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE
PLAINTIFFS' PROPOSED EXPERT WITNESS TIMUR KURAN
<u>FROM TESTIFYING AND TO EXCLUDE HIS EXPERT REPORT</u>**

DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500
(212) 335-4501

---

[1] *Litle, et al. v. Arab Bank, PLC*, No. CV-04-5449 (E.D.N.Y. 2004) (NG) (VVP); *Almog v. Arab Bank, PLC*, No. CV-04-5564 (E.D.N.Y. 2004) (NG) (VVP); *Coulter, et al. v. Arab Bank, PLC*, No. CV-05-365 (E.D.N.Y. 2005) (NG) (VVP); *Afriat-Kurtzer v. Arab Bank, PLC*, No. CV-05-388 (E.D.N.Y. 2005) (NG) (VVP); *Bennett, et al. v. Arab Bank, PLC,* No. CV-05-3183 (E.D.N.Y. 2005) (NG) (VVP); *Roth, et al. v. Arab Bank, PLC*, No. CV-05-3738 (E.D.N.Y. 2005) (NG) (VVP); *Weiss, et al. v. Arab Bank, PLC,* No. CV-06-1623 (E.D.N.Y. 2006) (NG) (VVP); *Jesner, et al. v. Arab Bank, PLC*, No. CV-06-3869 (E.D.N.Y.) (NG) (VVP); *Lev, et al. v Arab Bank, PLC*, No. CV-08-3251 (E.D.N.Y. 2008) (NG) (VVP); and *Agurenko v. Arab Bank, PLC*, No. CV-10-626 (E.D.N.Y. 2010) (NG) (VVP).

## INTRODUCTION

Defendant Arab Bank respectfully submits this Reply Memorandum of Law in Further Support of its Motion *In Limine* to Preclude Plaintiffs' Proposed Expert Witness Timur Kuran from Testifying and to Exclude his Expert Report (ECF No. 817 ("Bank Mem.")), and in response to Plaintiffs' opposition brief (ECF No. 846 ("Pls.' Opp'n Mem.")).

Recognizing, as they must, that Mr. Kuran has absolutely no familiarity with zakat committees in the Palestinian Territories, Plaintiffs attempt to resurrect his testimony by claiming that he is intended only to rebut the testimony of Jonathan Benthall and Beverly Milton-Edwards and "to demonstrate the methodological flaws in [their] reports." (Pls.' Opp'n Mem. at 1). But the basis claimed by Mr. Kuran for his purported rebuttal testimony is his experience with zakat committees in Malaysia, Pakistan, India, Egypt, and Turkey – some dating back to the Seventh Century. Of course, Mr. Benthall and Professor Milton-Edwards do not mention any of these countries, nor are they concerned with zakat practices in the Seventh Century; instead, each focuses specifically on what zakat committees and other charitable organizations did in the Palestinian Territories between 2000 and 2004 and, in Professor Milton-Edwards' case, whether certain zakat committees and charitable organizations were controlled by Hamas during this period. Mr. Kuran is not only not qualified to rebut these opinions, he does not even try. Instead, he embarks on the very type of "lengthy history of social, political, economic, and diplomatic factors relating to a conflict" that this Court has concluded "goes well beyond the issues of this case." *See* Order at 7, *Linde v. Arab Bank, PLC*, No. 1:04-CV-02799 (NG) (VVP) (E.D.N.Y. Dec. 6, 2011) (ECF No. 773 (the "Dec. 6 Order")). Because this Court already has ruled that it will not permit such testimony, Mr. Kuran's report and testimony should

therefore be excluded.[2]

## ARGUMENT

### I. MR. KURAN IS NOT QUALIFIED TO REBUT THE EXPERT TESTIMONY AT ISSUE.

Plaintiffs allege that Arab Bank provided banking services to various zakat committees and charitable organizations in the Palestinian Territories during the period 2000-2004 with knowledge that they were "fronts" for Hamas. In response, Arab Bank proffered the testimony of, among others, Mr. Benthall and Professor Milton-Edwards, who are both experts on how zakat committees and charitable organizations operated during the relevant time period in the Palestinian Territories. Both have extensive experience studying zakat committees and charitable giving in the Palestinian Territories. Mr. Benthall has been studying the subject for more than thirty years and has written extensively for a number of publications, contributing articles ("The Palestinian zakat committees 1993-2007 and their contested interpretations") and book chapters ("Islamic charities, faith-based organizations and the international aid system"). (*See* Def. Arab Bank's Mem. of Law in Opp'n to Pls.' Mot. to Exclude the Expert Testimony of Jonathan Benthall at 14-15 (ECF No. 860 ("Benthall Opp'n"))). Professor Milton-Edwards, for her part, has not only written extensively on the topic of Hamas and zakat committees, but personally visited and studied many of the zakat committees in the Palestinian Territories that Plaintiffs claim are controlled by Hamas. (Def. Arab Bank's Mem. of Law in Opp'n to Pls.' Mot. to Exclude the Expert Testimony of Beverly Milton-Edwards at 23-24 (ECF No. 861 ("Milton-Edwards Opp'n"))).

---

[2] Pls.' Opp'n Mem. lists both a "facts" section, which is largely argument, and an argument section that is largely duplicative of the facts section. The Bank's reply responds to Plaintiffs' "facts" and argument sections in one unified argument section in order to avoid the redundancy of Pls.' Opp'n Mem.

In response, Plaintiffs proffer Mr. Kuran to criticize the methodology of Mr. Benthall and Professor Milton-Edwards. But Mr. Kuran is not qualified to do so. He said it most succinctly himself at deposition:

> Q: Would you consider yourself an expert, Professor, on Zakat practices in the Palestinian territories?
>
> A: *No, I would not consider myself an expert on Zakat practices in the Palestinian territories per se in the sense that it would be very unlikely for somebody to invite me to speak on that particular subject.*
>
> Q: Why is that, Professor?
>
> A: Because I have studied Zakat practices over the past 14 centuries over a very wide geography and I'm quite familiar with general trends and the extent of variation across time and space, *but I'm not an expert on Zakat practices in the Palestinian territories per se.*

(See Ex. 1. at 51:9-23, (emphasis added))[3] Indeed, Mr. Kuran concludes his Report with the following declaration: "I have no extensive knowledge about the disbursement of zakat funds collected in the Palestinian Territories." (Expert Report of Professor Timur Kuran at 31, March 28, 2011 ("Kuran Report"), attached as Ex. 1 to the Bank Mem.).

Perhaps because, notwithstanding these disclaimers, Plaintiffs have "invite[d Mr. Kuran] to speak on [the] subject" of zakat committees in the Palestinian Territories, they attempt to bolster his qualifications by pointing to his experience with zakat committees in places like Malaysia, Pakistan, India, Egypt, and Turkey. But that experience has nothing to do with the issues presented in this case. And, again, Mr. Kuran himself confirmed at his deposition that his experience elsewhere in the Islamic world is not necessarily transferrable to the Palestinian Territories:

> Q: I believe you've written, Professor, that there's great variation in Zakat systems from geography to geography, have you not?

---

[3] Excerpts from the August 23, 2011 deposition of Timur Kuran are annexed as Exhibit 1 to the accompanying Declaration of Gassan A. Baloul ("Baloul Decl."). Hereafter, references to the exhibits to the Baloul Decl. are denoted simply as "Ex.__."

3

A: Yes.

(Ex. 1 at 25:20-23). Mr. Kuran reiterates this point in his Report: "It is of course possible that zakat as practiced in the Palestinian Territories has been widely divergent from its historical roots and its practice elsewhere throughout the Muslim world." (Kuran Report at 25, n.22).

Mr. Kuran's admission that the zakat practices in the Palestinian Territories might vary greatly from what he has observed elsewhere in the Islamic world might, one would think, have prompted him to investigate the ways in which these zakat practices were different. Yet he did nothing of the sort. He never visited a zakat committee in the Palestinian Territories, and only visited the West Bank and Gaza once in 1996 or 1997, as part of a tourist trip. (Ex. 1 at 101:16-102:6). He conceded that he "did not conduct a comprehensive study of Zakat committees in the Palestinian territories" (Ex. 1 at 58:22-24, 124:7-125:2) and "was not asked to undertake an independent investigation of Zakat practices in the Palestinian territories." (Ex. 1 at 177:20-22).

Mr. Kuran's lack of qualifications to opine on anything having to do with zakat committees and charitable giving in the Palestinian Territories was on full display during his deposition. He testified that:

- Turkey is the only country in which he has done extensive archival research (Ex. 1 at 24:11-13), and he does not know whether there are archives of records kept on zakat committees in the Palestinian Territories (Ex. 1 at 56:9-15);
- He does not know whether zakat committees in the Palestinian Territories acquire funding by means other than yearly contributions at the time of Ramadan (Ex. 1 at 31:7-15);
- He did not know that the United States, through its international development agencies, provided funding to zakat committees in the Palestinian Territories (Ex. 1 at 33:22-34:9);
- He has not studied the welfare system of the Palestinian Territories (Ex. 1 at 73:5-14);
- He does not know whether there are zakat committees in the Palestinian Territories after 2000 that were not affiliated with Hamas (Ex. 1 at 177:11-17);
- He has never seen the bylaws of a zakat committee operating in the Palestinian Territories. (Ex. 1 at 216:8-11);

4

- He does not know how charitable and non-governmental aid organizations are organized in the Palestinian Territories (Ex. 1 at 178:9-14).

The only information related in any way to zakat committees in the Palestinian Territories that was "reviewed" by Mr. Kuran was the work of Eli Berman and Larry Iannoccane. Of course, reviewing one or two books by other authors does not qualify Mr. Kuran as an expert on zakat practices in the Palestinian Territories, and in any event Berman and Iannoccane, according to Mr. Kuran, concluded that zakat committees in the Palestinian Territories have used their funds for military purposes—a conclusion that has nothing to do with Mr. Kuran's opinions in this case. Mr. Kuran's expert report states specifically: "I express no opinion as to whether any particular zakat committee or Islamic charitable organization, or any other organization, was a department of, controlled by, affiliated with, supportive of, or allied with Hamas." (Kuran Report at 2). In fact, at his deposition, Mr. Kuran explained that "[t]errorism is not an area that I'm specifically interested in." (Ex. 1 at 87:11-13).

Plaintiffs cavalierly brush aside Mr. Kuran's complete unfamiliarity with zakat committees and charitable giving in the Palestinian Territories and argue that Mr. Kuran nevertheless should be permitted to testify that "the Benthall and Milton-Edwards reports are methodologically flawed because neither report cites any peer-reviewed academic literature" to support their opinions. (Pls.' Opp'n Mem. at 8). But Plaintiffs put the cart before the horse. Before Mr. Kuran may be permitted to opine on the methodology by which Mr. Benthall and Professor Milton-Edwards reached their conclusions about zakat committees in the Palestinian Territories, this Court must first be convinced that Mr. Kuran knows something about zakat committees in the Palestinian Territories. He plainly does not, and for that reason alone this Court, acting as a gatekeeper, should not permit him to testify.

Lastly, Plaintiffs suggest that Mr. Kuran should be entitled to rebut "the various portions

5

of the Benthall and Milton-Edwards reports that deal with zakat practices generally." (Pls.' Opp'n Mem. at 8). But Mr. Benthall and Professor Milton-Edwards discuss zakat committee practices generally only in the context of those practices within the Palestinian Territories. Mr. Kuran's utter lack of experience, knowledge and expertise about zakat committees and charitable organizations in the Palestinian Territories renders him unqualified to rebut Mr. Benthall and Professor Milton-Edwards, even on "zakat committees practices generally."[4]

## II. MR. KURAN'S PROFFERED TESTIMONY AND HIS REPORT VIOLATE THE COURT'S DECEMBER 6 ORDER AND ARE OTHERWISE IRRELEVANT.

In their Opposition, Plaintiffs contend that Mr. Kuran's testimony is relevant for three reasons: (1) to demonstrate that zakat committees may use zakat funds for non-charitable purposes; (2) to rebut Professor Milton-Edwards' conclusion that the Palestinian public perceived zakat committees during the relevant period as providing legitimate charitable services without discriminating among needy beneficiaries; and (3) to rebut Mr. Benthall and Professor Milton-Edwards' views on the historical origins of zakat committees. (Pls.' Opp'n Mem. at 11). Mr. Kuran's lack of knowledge, experience and expertise about zakat committees in the Palestinian Territories, coupled with the directives of this Court's December 6 Order, however, are fatal to all of the Plaintiffs' claims of relevancy.

First, Mr. Kuran expresses "no opinion as to whether any particular zakat committee or Islamic charitable organization, or any other organization, was a department of, controlled by, affiliated with, supportive of, or allied with Hamas." (Kuran Report at 2). Instead, his testimony is focused on the history of zakat committees and Islamic practices dating back to the Seventh Century in countries *other than the Palestinian Territories*. He admittedly has no knowledge,

---

[4] As discussed in more detail below, allowing Mr. Kuran to rebut "zakat committee practices generally" by testifying about zakat committees from the Seventh Century in countries like Malaysia, Pakistan, India, Egypt, and Turkey will unnecessarily confuse, mislead, and unfairly prejudice the jury.

6

experience, or expertise about zakat committees or charitable giving in the Palestinian Territories, and therefore offers nothing relevant to the issues presented in this case. This Court already has ruled that the trial in this case "cannot be burdened with extraneous issues such as . . . the lengthy history of social, political, economic, and diplomatic factors relating to a conflict that goes well beyond the issues in this case." (Dec. 6 Order at 7). Indeed, Mr. Kuran's proffered testimony goes well beyond the Palestinian-Israeli conflict referenced by the Court's Order, and devolves into an historical dissertation on zakat practices in places like Malaysia, Pakistan, India, Egypt, and Turkey. Such testimony expressly violates this Court's December 6 Order and should be excluded.

Second, Mr. Kuran criticizes Mr. Benthall and Professor Milton-Edwards for focusing on the charitable activities of the zakat committees because the Quran states that zakat funds may be used for non-charitable purposes. But this observation is far afield from the issues before the Court. As a threshold matter, Mr. Kuran has no idea how zakat funds are utilized in the Palestinian Territories. His Report states specifically: "I have no extensive knowledge about the disbursement of zakat funds collected in the Palestinian Territories." (Kuran Report at 31). And perhaps more importantly, Mr. Kuran does not opine that any zakat funds are used to support any terrorist-controlled organizations, including Hamas. To the contrary, Mr. Kuran offers "no opinion as to whether any particular zakat committee or Islamic charitable organization, or any organization, was a department of, controlled by, affiliated with, supportive of, or allied with Hamas." (Kuran Report at 2). So whether the zakat committees in places other than the Palestinian Territories use their funds for non-charitable purposes unrelated to terrorism, such as air traffic control, is wholly irrelevant to any issue presented in this case.

Third, Plaintiffs claim that Mr. Kuran's testimony is necessary to rebut Professor Milton-

Edwards' opinion that zakat committees are viewed favorably by people living in the Palestinian Territories, citing to Mr. Kuran's deposition transcript at pages 82-86. (Pls.' Opp'n Mem. at 11). But Mr. Kuran offered no opinion—either in his Report or at his deposition—about the public perception of zakat committees in the Palestinian Territories. The cited pages to Mr. Kuran's deposition relate to his view about whether all Palestinians harbor ill-will against Israel and whether certain zakat committees (of which he could not name one) support the resistance against Israel. (*See* Ex. 1 at 82-86). Putting aside whether Mr. Kuran is qualified to make such a statement (which he is not), his cited testimony has nothing to do with the public perception of zakat committees in the Palestinian Territories, and directly violates this Court's December 6 Order precluding "the history of social, political, economic, and diplomatic factors relating to a conflict that goes well beyond the issues in this case." (Dec. 6 Order at 7).

    Finally, Plaintiffs suggest that Mr. Kuran's testimony about the "historical origins of zakat outside of the Palestinian Territories . . . merely provides context" for rebutting Arab Bank's experts. But Mr. Benthall and Professor Milton-Edwards' opinions are focused on zakat committees and charitable organizations in the Palestinian Territories from 2000-2004. (Pls.' Opp'n Mem. at 11). To the extent their reports include background information on zakat committees, it is for the purpose of allowing the jury to understand the evolution of those committees *in the Palestinian Territories*. Mr. Kuran, on the other hand, has no knowledge, experience or expertise with respect to the Palestinian Territories, and therefore cannot tie his opinions about zakat elsewhere in the Islamic world to the Palestinian Territories. This is particularly true in light of Mr. Kuran's inescapable admission that "there's great variation in Zakat systems from geography to geography" (Ex. 1 at 25:21-22), and that he "would not consider [himself] an expert on Zakat practices in the Palestinian territories per se." (Kuran Dep.

8

at 51:12-14). Under these circumstances, it is beyond dispute that Mr. Kuran's testimony about zakat practices in Malaysia, Pakistan, India, Egypt, and Turkey dating back to the Seventh Century does not rebut the opinions of Mr. Benthall and Professor Milton-Edwards. Their opinions are firmly grounded in the conduct and practices of zakat committees and charitable organizations in the Palestinian Territories from 2000 to 2004, and his most certainly are not.

### III.   THE TESTIMONY AND REPORT OF MR. KURAN ARE MORE PREJUDICIAL THAN PROBATIVE

Plaintiffs purposely characterize Arab Bank's argument that Mr. Kuran's testimony is more prejudicial than probative as a "rehash of its relevancy argument." (Pls.' Opp'n Mem. at 12). While the irrelevance of Mr. Kuran's testimony does indeed contribute to its unduly prejudicial nature, the threatened prejudice represents an entirely separate deficiency.

As explained above, Mr. Kuran knows little to nothing about how zakat committees and charitable organizations operate in the Palestinian Territories. Toward the end of his Report, Mr. Kuran stated: "I have no extensive knowledge about the disbursement of zakat funds collected in the Palestinian Territories." (Kuran Report at 31). Instead, he focuses his testimony on the history of zakats elsewhere in the Islamic world dating back to the Seventh Century. Mr. Kuran explains that the Quran identifies eight categories for which zakat funds may be used, of which charity encompasses only three. Mr. Kuran then cites to examples of zakat practices in places like Malaysia, India, Pakistan, Egypt, and Turkey to demonstrate the non-charitable uses of zakat funds. Nowhere in his report or testimony, however, does Mr. Kuran state that these permissible non-charitable uses of zakat funds include financing terrorism. But the implication from his testimony is just the opposite. Mr. Kuran encourages this inference by citing to sources that concern what he calls, "Palestinian organizations considered by many (including the U.S. Government) to be terrorist organizations." (Kuran Report at 2). Of course, Mr. Kuran has no

9

facts or other data to support any inference or suggestion that zakat committees in the Palestinian Territories support terrorism, and in fact has expressly disclaimed any "opinion as to whether any particular zakat committee or Islamic charitable organization, or any organization, was a department of, controlled by, affiliated with, supportive of, or allied with Hamas." (Kuran Report at 2).

Mr. Kuran's testimony about the history of zakat committees outside of the Palestinian Territories, and the non-charitable activities of those zakat committees is therefore not only irrelevant, but easily could confuse the jury into thinking that zakat committees in the Palestinian Territories engage in non-charitable activities that include providing material support to Hamas, even where Mr. Kuran has expressly rejected such a conclusion. Accordingly, his report and testimony should be excluded.

## CONCLUSION

For all of the foregoing reasons, the Court should grant the Bank's motion *in limine* to preclude Plaintiffs' proposed expert witness Timor Kuran from testifying and to exclude his expert report.

Dated: July 16, 2012
New York, New York

Respectfully submitted,

By: Kevin Walsh

DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020-1104
(212) 335-4500

*Attorneys for Defendant Arab Bank plc*

OF COUNSEL:
Shand S. Stephens
Brett Ingerman
Gassan A. Baloul