

**DLA Piper** LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Kevin Walsh
kevin.walsh@dlapiper.com
T 212.335.4571
F 212.884.8463

April 22, 2013

**BY ECF & HAND DELIVERY**

Honorable Nina Gershon
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: ***Linde v. Arab Bank, PLC, No. CV-04-2799 (NG) (VVP) and related cases***

Dear Judge Gershon:

We write on behalf of Arab Bank plc ("Arab Bank" or "the Bank") in response to Plaintiffs' letter of April 19, 2013 ("Plaintiffs' Letter"). In their letter, the Plaintiffs have resorted to gross misrepresentation of both the relevant facts at issue in *In re Terrorist Attacks on Sept. 11, 2001 (Al Rajhi Bank et al.)*, 11-3294-cv(L), 2013 WL 1591883 (2d Cir. Apr. 16, 2013) ("*Al Rajhi Bank*") and *Weiss v. National Westminster Bank PLC*, Nos. 05-CV-4622, 07-CV-916 (DLI) (MDG), 2013 WL 1364170 (E.D.N.Y. Mar. 28, 2013), and the holdings of those cases. It is indisputable, however, that the Second Circuit has now definitively ruled that aiding and abetting claims are not cognizable under the Anti-Terrorism Act, 18 U.S.C. § 2333(a) ("ATA"), and that any claims asserting primary liability require a showing of proximate causation equivalent to that compelled under RICO and the Clayton Act. *Al Rajhi Bank*, 2013 WL 1591883, at *3 (relying on Supreme Court holding that "by reason of" statutory language has "well understood meaning" and should be interpreted consistently). Nor can the Plaintiffs escape the holding in *Al Rajhi Bank* that a bank should not be held liable "for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service," *id.* at *4, or the holding in *Weiss* that a foreign bank's adherence to foreign banking laws is highly probative of its innocent state of mind in processing foreign banking transactions, *Weiss*, 2013 WL 1364170, at *7.

## I. *Al Rajhi Bank* Requires Dismissal of Plaintiffs' Claims For Lack of Proximate Causation.

Despite the Plaintiffs' statements to the contrary, *Al Rajhi Bank* explicitly articulates the proximate causation standards that are applicable to ATA claims against financial institutions. Application of those standards here requires dismissal of all of the pending claims.





Since the beginning of this case, the Plaintiffs have argued that they can easily satisfy the requirements of proximate causation because money is "fungible." *See, e.g.*, Pls.' Mem. of Law in Opp'n to Def. Arab Bank plc's Mot. for Summ. J. (ECF No. 892 ("Pls.' Opp'n Mem.")) at 12-18. Even after Judge Rakoff found in *Rothstein v. UBS AG*, 772 F. Supp. 2d 511, 513 (S.D.N.Y. 2011) ("*Rothstein III*"), that the ATA requires a showing of "proximate cause" and "proximate cause narrowly defined at that," the Plaintiffs attempted to diminish the significance of that decision by characterizing it as "*a judicial outlier*" that was inconsistent with the legislative history of the ATA. Pls.' Opp'n Mem at 18, n.31 (emphasis supplied). *But see Rothstein v. UBS AG*, No. 11-0211-cv, 2013 WL 535770 (2d Cir. Feb. 14, 2013) ("*Rothstein IV*") (affirming *Rothstein III*).

*Al Rajhi Bank* and *Rothstein IV* now make clear beyond dispute that a financial institution may be found liable under the ATA *only* if its banking activities are a direct and substantial cause of a plaintiff's injuries. In adopting the *Rothstein* causation analysis, *Al Rajhi Bank* specifies exactly what must be alleged and proven by terror victims seeking to hold a foreign bank liable for allegedly providing financial services to terrorists or terrorist "front organizations." *Al Rajhi Bank*, 2013 WL 1364170, at *3-4.

Astonishingly, the Plaintiffs argue in their letter that *Rothstein IV* and *Al Rajhi Bank* simply reaffirm the proximate causation standards that have been previously applied by this Court. Pls.' Ltr. at 3-5. But that is certainly not the case. This Court has previously held, by way of example, that Plaintiffs must prove only that "they were injured 'by reason of' a crime that constitutes an act of international terrorism, as so defined" and that "Defendant's argument that plaintiffs must allege that they were injured by reason of Arab Bank's conduct simply misstates the statutory requirement." *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 580 (E.D.N.Y. 2005). This Court also held that "[t]here is no requirement of a finding that the suicide bomber would not, or could not, have acted but for the assistance of Arab Bank." *Id.* at 584-85. These holdings are, however, clearly contrary to the causation standards set forth in *Rothstein IV* and *Al Rajhi Bank*.

Nor is it the case, as the Plaintiffs argue, that the proximate causation standards required by *Al Rajhi Bank* and *Rothstein IV* fall short of "direct" causation of the sort that must be established under the RICO statutes. *See* Pls.' Ltr. at 5-6. The plain language of these decisions states otherwise. *Rothstein IV*, for instance, cites *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006), for the proposition that with respect to "proximate causation, the central question . . . is whether the alleged violation *led directly to the plaintiff's injuries*." *Rothstein IV*, 2013 WL 535770, at *8 (emphasis supplied). Indeed, the Second Circuit could not have been more clear in holding that Congress knew that the ATA's "by reason of" language had a "well-understood meaning" at the time the statute was enacted and in stating that "we can only assume





it intended them to have the same meaning that courts had already given them." *Id.* at *12 (citing *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). This "well-understood meaning" requires the Plaintiffs to demonstrate that there is a "direct relation between the injury asserted and the injurious conduct alleged," *Holmes*, 503 U.S. at 268 (1992), as they have conspicuously failed to do.[1]

The failure of the plaintiffs in *Rothstein IV* and *Al Rajhi Bank* to allege in non-conclusory fashion that the banking services at issue directly caused their injuries was fatal to their claims. In *Al Rajhi Bank*, the court held that it was "not persuaded" that the banks' services proximately caused plaintiffs' injuries because they had failed to assert that money "was transferred to al Qaeda *and* aided in the September 11, 2001 attacks." *Al Rajhi Bank*, 2013 WL 1591883, at *4 (emphasis supplied). In their letter, the Plaintiffs appear to recognize that this language requires them to prove both that monies transferred through Arab Bank went to terrorists *and* that these monies were used to commit the attacks at issue. They therefore resort to the feeble argument that the Court of Appeals did not mean what it wrote, and that the Bank's reliance on this language constitutes a "mechanical reading" less preferable than the "sensible and logical" interpretation that they propose. Pls.' Ltr. at 6. Yet Arab Bank's "mechanical reading" of this language in *Al Rajhi Bank* finds complete support in the virtually identical holding of the Court of Appeals in *Rothstein IV*: "[t]he plaintiffs did not allege that if UBS had not transferred U.S. currency to Iran, then Iran, with its billions of dollars in reserve, would not have funded the attacks in which plaintiffs were injured." *Rothstein IV*, 2013 WL 535770, at *14.

The requirement that a plaintiff prove that banking services were the direct and substantial cause of his injury conclusively puts to rest Plaintiffs' argument that, due to "fungibility of terrorist funds," proximate causation is satisfied so long as they can "establish that the Bank provided some assistance to HAMAS." Pls.' Opp'n Mem. at 12-18 (citing *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2725 (2010)). The Second Circuit has made it abundantly clear that a theory of liability premised on the fungibility of money is not sufficient to satisfy ATA causation standards. In *Rothstein III*, 772 F. Supp. 2d at 516, the district court rejected the contention that the Supreme Court's comment in *Holder* that "[m]oney is fungible" had any bearing on the ATA's proximate causation requirement. The Second Circuit agreed; it held that the Supreme Court's *dicta* did not justify the conclusion that "the most remote and

---

1 Plaintiffs' citation to *United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011), a criminal case with no proximate causation requirement, clearly has no bearing whatsoever on the issues in this case. Pls.' Ltr. at 3. Moreover, that case involved wiretap evidence submitted to prove that the defendants wanted to fund Hamas—evidence that clearly has no equivalent here.






tenuous connections . . . could subject potential defendants to ATA liability." *Rothstein IV*, 2013 WL 535770, at *6.

Plaintiffs also attempt to distinguish *Al Rajhi Bank* by falsely claiming that the complaint in that action did not include allegations that the defendant banks transmitted funds directly to Al Qaeda. Yet the allegations of the complaint read otherwise. The *Al Rajhi Bank* plaintiffs specifically alleged that "one of the hijackers in the September 11, 2001 attack, Abdulaziz al-Omari, who was aboard American Airlines Flight 11, held an account with al-Rajhi Banking & Investment Corporation." *Al Rajhi Bank*, 11-3294-cv(L) (2d Cir.) (*Al Rajhi Bank* ECF No. 272) at A-827-28; *see also id.* at A-844 ("Saudi American Bank financed . . . Sudanese works directly providing material support and assistance to Osama bin Ladin").[2] It is clear that the *Al Rajhi Bank* plaintiffs' claims were dismissed not because they failed to allege financial services for the benefit of Al Qaeda terrorists, but rather because they failed to allege that these services were the direct and substantial cause of the attacks that injured them.

Here, Plaintiffs have similarly failed to present any evidence whatsoever linking financial services performed by the Bank to the attacks in which they were injured. And just as there were no "factual allegations that the money allegedly donated by the [bank] defendants to the purported charities actually was transferred to Al Qaeda and aided in the September 11, 2001 attacks" in *Al Rajhi Bank*, 2013 WL 1591883, at *4, here the Plaintiffs can present no evidence that any one of the transfers to the charities at issue in this case was in turn provided to Hamas and used to fund the acts of terror that injured them. 56.1 Stmt. (ECF No. 887-2) at ¶¶ 392-401, 419-23, 429, 431. In fact, the Bank has proven, and Judge Weinstein has himself found, that the services at issue were absolutely routine: none of the charities at issue were designated by the United States—in fact, many were vetted by and received grants from the United States Government—and the Bank had every reason to believe that the Saudi Committee was a purely humanitarian organization.[3] *Id.* at ¶¶ 348-58, 369-71.

---

2 The *Al Rajhi Bank* plaintiffs claimed that the Al Rajhi Banking and Investment Corp. served as the "primary bank for a number of charities that serve as al Qaeda front groups" and that the Al Rajhi family had significant ties to Osama bin Laden. *Id.* at A-827-28. They also claimed that Saudi American Bank was "the main banker of the Saudi Binladin Group" and that it participated in the fund raising campaign in Saudi Arabia for collecting donations to the "heroes of the Al Quds uprising." *Id.* at A-844.

3 *Gill v. Arab Bank, PLC*, No. 11–CV–3706, 2012 WL 5395746, at *16 (Nov. 6, 2012) ("*Gill III*") ("There is no proof that anything but routine financial services to the charities alleged to be front organizations were provided, and none of the charities were designated by the United States as front groups when the charities received services from the Bank. . . . Many of the






Plaintiffs continued insistence that the provision of account services to individuals associated with Hamas is evidence of the Bank's provision of "millions of dollars directly to Hamas through its most senior leaders," is similarly false and has also been squarely rejected by Judge Weinstein: "Insufficient evidence is adduced to tie the personal bank accounts of individuals who may be affiliated with Hamas to Hamas itself," and "[m]ore is required to establish liability of the Bank." *Gill III*, 2012 WL 5395746, at *27. The Plaintiffs have not proven, and cannot prove, that the alleged account services provided to individuals they describe as "leaders" of Hamas inured to the benefit of the Hamas organization or were used to commit any of the attacks at issue; nor can the Plaintiffs prove, as *Rothstein IV* and *Al Rajhi Bank* require, that if the Bank had not provided these services Hamas would not have been able to commit the terrorist attacks at issue.

## II. ***Weiss* Requires Dismissal of Plaintiffs' Claims For Lack of Scienter.**

Plaintiffs write that "nothing in *Weiss* renders it genuinely analogous to this case." Pls.' Ltr. at 10. Nothing could be further from the truth. *Weiss* involves the same plaintiffs, the same lawyers, the same theories of liability, and many of the same entities that Plaintiffs allege to be "front organizations" for Hamas. *Weiss* thus represents highly persuasive authority that the Plaintiffs cannot prove that the Bank—which, like National Westminster Bank, followed applicable banking laws in processing the transfers at issue—acted with an improper state of mind.

Plaintiffs instead rely on the sanctions imposed by the Court as a crutch to support their insufficient claims; they falsely claim—while noting in the same breath that they intend to pursue an appeal—that the *Weiss* court was in possession of types of evidence that was denied to them in this action. But the Plaintiffs have previously advised this Court that they "did not 'rely' upon the Sanctions Order in opposing summary judgment." Dec. 13, 2012 Ltr. from J. Israel, Esq., to Hon. Nina Gershon (ECF No. 912) at 7.

The Plaintiffs cannot rely upon a sanctions order to take the place of deficient proof. Judge Weinstein in *Gill III*, 2012 WL 5395746, at *6-8, made this abundantly clear; he held that "[u]nder the Federal Rules, disputes must be decided on the merits if at all practicable," and that even where an adverse inference is warranted, it cannot, without more, "satisfy a non-

---

entities at issue 'received grants from the United States Government' when they held accounts with the Bank.").






moving party's burden on summary judgment to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[4]

The fact remains that the Plaintiffs can provide no evidence that the Bank knew or had reason to believe that it was financially supporting acts of terrorism. While the Plaintiffs complain that the only record evidence on this issue consists of testimony by bank officials denying any such knowledge, it is the Plaintiffs who have the burden of proving, as they cannot, that the Bank harbored unlawful intentions. Pls.' Ltr. at 9. The Plaintiffs have presented no evidence that the Bank failed to adhere strictly to the banking regulations in each of the jurisdictions where it did business. In fact, the Plaintiffs have failed to respond in any respect to the Bank's evidence that it complied with applicable laws. *Compare* Apr. 18, 2013 Ltr. from K. Walsh, Esq., to Hon. Nina Gershon (ECF No. 930) at 7-11 *with* Pls.' Ltr. at 1-10. Nor can the Plaintiffs refute the fact that the Bank's decision to implement voluntary screening of foreign accounts and transactions against the U.S. OFAC list is definitive proof that its intentions were to prevent, rather than support, the financing of terrorist organizations.

For the reasons stated herein, and in the Bank's prior letters dated November 26, 2012, December 6, 2012, January 4, 2013, March 13, 2013, April 2, 2013 and April 18, 2013 (*Linde* ECF Nos. 908, 910, 914, 922, 927 and 930), and in the Bank's motion papers (ECF Nos. 887 and 895), the Bank's motion for summary judgment should be granted.

Respectfully submitted,

/DWM

Kevin Walsh

cc: Magistrate Judge Viktor V. Pohorelsky (by hand delivery)
All Counsel (by email)

---

4 Plaintiffs' contention that Court of Appeals affirmed the Sanctions Order ("the Second Circuit acted appropriately in issuing (and affirming) Rule 37 sanctions") is patently false. Pls.' Ltr. at 9. To the contrary, the Second Circuit held that "our conclusion today should not be read, however, to preclude a future court from holding that the district court erred in imposing sanctions," and that some of the district court's findings were "subject to legitimate debate." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 108, 114 (2d Cir. 2013).