UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
COURTNEY LINDE, et al.,

        Plaintiffs,

- against -

ARAB BANK, PLC,

        Defendant.
-----------------------------------------------------------x

ORDER

04-CV-2799 (NG) (VVP)
and related cases[1]

NINA GERSHON, United States District Judge:

    This Order will address four motions challenging some of the banking experts in this case: defendant's experts Anne Vitale and Paul Schott, and plaintiff's experts Nelson Everhardt and Jonathan Winer. Prior rulings regarding expert testimony were made in written orders, *see Linde v. Arab Bank, PLC*, __ F. Supp. 2d __, 2011 WL 9974899 (E.D.N.Y. Dec. 6, 2011), and *Linde v. Arab Bank, PLC*, __ F. Supp. 2d __, 2013 WL 500637 (E.D.N.Y. Feb. 6, 2013), and orally on December 19, 2011. The principles set forth in those rulings are incorporated here.

    At the December 19, 2011 conference, prior reports of Ms. Vitale and Mr. Schott were rejected for various reasons. First, each violated the principle that expert testimony on issues of law is generally inadmissible. *See United States v. Bilzerian*, 926 F.2d 1285, 1294-95 (2d Cir. 1991). Ms. Vitale's report as to the Bank's compliance programs was also rejected as reflecting merely her opinion of deposition testimony and record evidence along with her factual inferences and legal analysis; as such, it was more akin to a lawyer's summation than expert opinion. In addition, her opinions regarding the propriety of federal regulatory actions taken against the

---

[1] The following related cases have been consolidated with this case for the purposes of discovery and other pretrial proceedings: *Philip Litle, et al. v. Arab Bank, PLC*, 04-CV-5449; *Oran Almog, et al. v. Arab Bank, PLC*, 04-CV-5564; *Robert L. Coulter, Sr., et al. v. Arab Bank, PLC*, 05-CV-365; *Gila Afriat-Kurtzer, et al. v. Arab Bank, PLC*, 05-CV-388; *Michael Bennett, et al. v. Arab Bank, PLC*, 05-CV-3183; *Arnold Roth, et al. v. Arab Bank, PLC*, 05-CV-0378; *Stewart Weiss, et al. v. Arab Bank, PLC*, 06-CV-1623; *Joseph Jesner, et al. v. Arab Bank, PLC*, 06-CV-3869; *Yaffa Lev, et al. v. Arab Bank, PLC*, 08-CV-3251; and *Viktoria Agurenko, et al. v. Arab Bank, PLC*, 10-CV-626.

Bank were found to be irrelevant and likely to confuse the jury. Mr. Schott's report, containing similar testimony, was rejected for substantially similar reasons. Notwithstanding that the reports may have contained some amount of admissible information, Ms. Vitale's and Mr. Schott's proposed testimony was rejected in whole because any admissible evidence was profoundly and inextricably merged with irrelevant and inadmissible material.

I observed at the December 19, 2011 conference that in this case "the fundamental issue is whether [the Anti-Terrorism Act, 18 U.S.C. §§ 2331 *et seq.* ("ATA")] was violated. Unless expert opinion regarding industry practice is related to a relevant issue in the case it's not helpful to the jury."

Defendant was given the opportunity to revise the reports to the extent that the experts might be able to "[explain] unfamiliar terms, concepts or practices[,] . . . describe industry practices and requirements of banking industry associations during the relevant time period . . . to help the jury understand banking transactions" and provide testimony regarding the "regulatory framework" during the relevant time period if it were relevant and helpful to the jury's understanding of the Bank's compliance practices.

Counsel were urged to study *Bilzerian*. *Bilzerian* held that expert testimony "must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Bilzerian*, 926 F.2d at 1294. In *Bilzerian*, the defense sought to elicit expert testimony concerning the phrase "personal funds," as the term was generally understood in the securities industry, to demonstrate the defendant's good faith in completing a disclosure form. *Id.* at 1295. The Second Circuit affirmed the district court's exclusion of the testimony because

it related directly to whether the defendant's actual disclosures complied with the legal requirements. The Court held that

> [a]lthough testimony concerning the ordinary practices in the securities industry may be received to enable the jury to evaluate a defendant's conduct against the standards of accepted practice . . . , testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice.

*Id.* (internal citation omitted).

Before turning to the specific testimony at issue here, there are two basic principles regarding the use of industry standards that merit recognition and which the parties seem to acknowledge. First, a violation of an industry standard is not necessarily a violation of the ATA. Nor does compliance with such a standard provide a defense against a charge of violation of the ATA. Put another way, compliance with industry standards neither establishes, nor shields from, liability under the ATA. The question is whether the plaintiffs can prove the *mens rea* requirements of the specific provisions of the ATA at issue.

### A. Paul Schott

Mr. Schott has previously served both as Chief Counsel to the Office of the Comptroller of the Currency ("OCC") and Assistant General Counsel of the Treasury Department. Mr. Schott proffers testimony in three areas: on the civil and criminal legal framework for anti-money laundering ("AML") and countering the financing of terrorism ("CFT") programs applicable to the Bank's New York branch during 1995-2004 (the same question was addressed in his original report); the role of the OCC, the Financial Crimes Enforcement Network ("FinCEN"), and the Department of Justice ("DOJ") regarding financial institutions' efforts to combat money laundering and terrorist financing; and whether a financial institution's failure to

have adequate AML and CFT procedures in place means that it engaged in money laundering or terrorist financing activities.

Mr. Schott's testimony is inadmissible. The Bank's argument that Mr. Schott's explanation of the legal and regulatory background merely gives context to his opinions on industry standards and practices is rejected. An analysis of legal requirements is the heart of his proposed testimony.

The two examples offered by the Bank as examples of Mr. Schott's admissible testimony on industry standards show how deeply his testimony depends on inadmissible legal interpretations. Both examples do little more than explain obligations that various laws other than the ATA place on banks. In one example, Mr. Schott describes the role banks play in deterring and detecting money laundering and terrorist financing, but as his report makes clear, the "role" is one imposed upon banks by law. This testimony is inadmissible, *Bilzerian*, 926 F.2d at 1294, and it is not salvaged by labeling it an "industry standard." In the other example, even more explicit in its explanation of law, Mr. Schott compares common elements shared by international standards for AML and CFT and the U.S. regulatory regime, which has the consequence of explaining to the jury a bank's legal obligations. Insofar as he offers explanations of banking terms, that testimony is inextricable from his improper and inadmissible testimony on the law; moreover, it appears that the Bank has at least one other, unchallenged expert, William M. Isaac, who may explain banking terms to the jury.

The section of Mr. Schott's report dealing with the second and third areas of his proposed testimony, entitled "The Role of the OCC, FinCEN, and the DOJ in Connection with AML and CFT," is also inadmissible. This section reaches the conclusion that "even in the event of [an OCC enforcement action or cease-and-desist order], the failure to have adequate AML and CFT

procedures in place does not mean that a bank actually engaged in money laundering or terrorist financing." It is not presently known whether, or on what basis, plaintiffs may offer into evidence the OCC consent order and the FinCEN order. If these orders are admitted into evidence, their legal import is a matter for the court to explain to the jury, and it will be the province of the jury to decide what weight, if any, to give to them. If jury instructions are needed as to the role the orders play in this case, the court will give them, not an expert witness.

In sum, Mr. Schott has proffered no admissible testimony that is relevant to this case, and his testimony will be excluded.

**B. Anne Vitale**

Ms. Vitale, also a lawyer, has served as Managing Director of Republic National Bank of New York, where she headed the global AML compliance program. She has served as a consultant to financial institutions and government agencies regarding compliance with AML regulations and as an expert witness on AML for federal and state governmental entities.

Much of Ms. Vitale's proffered testimony is inadmissible for the same reasons stated on the record at the December 19, 2011 hearing, and for the same reasons Mr. Schott's testimony is excluded. Except for the testimony discussed below, it is interlaced with and, as she acknowledges, heavily reliant on, her legal opinions. Such testimony is improper expert testimony that invades the court's purview to determine the law applicable to the case and to explain it to the jury. *See Bilzerian*, 926 F.2d at 1294. Ms. Vitale's report and appendix are permeated by such opinions; as her report concludes, her opinions "can only be understood in the context of . . . the development of the regulatory framework in the U.S. and internationally . . . ." Moving the most obviously inadmissible material in the report, that which concerns her opinions as to the legal and regulatory framework used to deal with money laundering and terrorism

financing, to an appendix does not save the report; Ms. Vitale makes clear that the material in the appendix is necessary in order to understand the report itself. Such material, whether in the report or the appendix, is not provided for "mere context." This is because, with limited exceptions, the "standards" she discusses are not really industry standards but, like those discussed by Mr. Schott, legal obligations imposed upon banks by various laws. That all banks meet them does not make them "industry standards;" it means only that all banks must undertake the obligations or be in violation of those laws.

Insofar as she proffers areas of admissible testimony, Ms. Vitale's testimony must be cabined to avoid improper introduction of her legal opinions as opposed to her knowledge of banking industry standards or practices. She will be permitted to testify in accordance with the following direction. Since it appears that plaintiffs may proffer evidence of the Bank's conduct regarding the use of automated tools to detect suspicious accounts, Know Your Customer ("KYC") procedures, and the use of "blacklists" to screen account applications and financial transactions, the Bank is entitled to counter the inferences plaintiffs seek to draw as to the Bank's mental state with evidence regarding banking industry standards or practices on these subjects. Ms. Vitale may also describe both the international payment system used by financial institutions and international standard-setting bodies. For example, the Bank may proffer Ms. Vitale's testimony that, for banks operating in foreign countries, "it was not the custom and practice of banks to perform extensive KYC concerning background and source of funds in retail and correspondent banking prior to 2001;" that industry standards adhered around four KYC principles after 2001; and that "developing KYC guidance" recommended that banks review applications for accounts from charities more closely and check for official governmental charity licenses.

Ms. Vitale also offers testimony regarding the lack of a common industry standard in 2004 for foreign banks outside of the U.S. to screen against the Office of Foreign Assets Control ("OFAC") list. Ms. Vitale's testimony as to the state of industry standards or practices in 2004 may be admissible so long as her opinion is based on her knowledge of banking industry standards or practices. If it is not, but is based merely on her view of legal requirements and her assumption of common bank action in light of those requirements, her opinion is inadmissible. Her explanation as to *why* no such industry standard or practice existed in 2004, namely, that "the requirement to screen against the OFAC list applied only to U.S. banks," is an example of just such analysis. The Bank's suggestion that such testimony is admissible to provide the jury with context for the industry practice is rejected.

Finally, insofar as plaintiffs complain about other aspects of the Bank's compliance programs, the Bank may proffer expert testimony from Ms. Vitale about industry standards or practices. But again, her testimony must be limited to a description of industry practices and industry standard-setting bodies and not be rooted in her assumptions as to bank conduct in light of her interpretation of legal requirements.

The portion of Ms. Vitale's rebuttal report challenging Mr. Gurule's testimony is excluded as irrelevant as Mr. Gurule's expert testimony has either been withdrawn or previously precluded. *See Linde*, 2013 WL 500637, at *12-13.

Ms. Vitale's testimony in rebuttal to plaintiff's expert Mr. Everhardt will be admissible to the extent that it is consistent with the principles discussed above.

### C. Jonathan Winer

Plaintiffs offer Jonathan Winer as a rebuttal expert to Ms. Vitale and Mr. Schott. Mr. Winer, also a lawyer, served as Deputy United States Assistant Secretary of State for

International Law Enforcement, where he developed international financial policies with respect to money laundering, terrorist financing, and mutual legal assistance and international cooperation against terrorism. He also served as counsel to then-United States Senator John Kerry, where he helped to draft legislation to strengthen U.S. laws against international money laundering and financial crime, and he worked in private practice providing advice regarding anti-money laundering and terrorist finance enforcement and regulation in the United States and abroad.

Mr. Winer's rebuttal testimony with regard to Mr. Schott is irrelevant and excluded since Mr. Schott's expert opinion is precluded.

Mr. Winer's rebuttal testimony with regard to Ms. Vitale will be admissible only insofar as it addresses her opinions on banking industry standards set by standard-setting organizations such as the Financial Action Task Force, the Basel Group on Banking Supervision, or the Wolfsberg Group, consistent with the principles set forth above.[2] The remainder of his proposed testimony would violate various rulings on expert testimony previously made in this case, such as the prohibitions on expert testimony regarding legal obligations and on the state-of-mind or motivations of others; it is therefore precluded.

### D. Nelson Everhardt

Nelson Everhardt, whom plaintiffs offer to explain banking terms and concepts to the jury, will be permitted to offer his expert opinion to the extent described below. Mr. Everhardt has more than thirty years of banking experience, including fifteen years of management experience in international banking and global transfers. He has served as Senior Vice President and Corporate Compliance Executive for Bank of America. In this role he was responsible for

---

[2] As he acknowledged at his deposition, Mr. Winer is not qualified to opine on banking industry customs or practice, as opposed to banking industry standards.

corporate-wide compliance with the Bank Secrecy Act, 31 U.S.C. §§ 5311 *et seq.*, and with OFAC programs. He currently leads a consulting firm specializing in compliance services for the financial services industry. He collaborates with other companies to make internet-based compliance training programs and compliance software designed to detect suspicious activity.

The Bank's principle challenge to Mr. Everhardt's testimony is an attack on his qualifications to testify as an expert. It claims that he is not qualified because he does not have a college degree or other advanced education. This argument is rejected. In addition to his high level work experience at Bank of America, Mr. Everhardt's other professional experience, including speaking and participating in discussions on the topic of compliance and related subjects at various organizations, including the United Nations, Berkley Haas School of Business, and the American Bar Association Enforcement Conference, qualifies him as an expert in this case.

Mr. Everhardt's explanation of banking terms and concepts will be helpful to the jury. On the basis of previous rulings in this case, plaintiffs have withdrawn Mr. Everhardt's testimony regarding banking industry standards and have clarified the scope of his proffered testimony. *See* Ltr. From Joshua Glatter 2 (Mar. 30, 2012). However, they have reserved the right to proffer his testimony on industry standards if the Bank's witnesses are allowed to so opine. In light of this Order, and in the interests of fairness, Mr. Everhardt will be allowed to testify as to industry standards and practices consistent with the principles set forth above.

SO ORDERED.

**NINA GERSHON**
**United States District Judge**

Dated: May 24, 2013
  Brooklyn, New York