OSEN LLC
ATTORNEYS AT LAW
WWW.OSENLAW.COM

| | |
|---|---|
| 2 UNIVERSITY PLAZA, SUITE 201, HACKENSACK, NJ 07601<br>T. 201.265.6400   F. 201.265.0303 | 345 SEVENTH AVENUE, 21ST FLOOR, NEW YORK, NY 10001<br>T. 646.380.0470   F. 646.380.0471 |

July 29, 2014

<u>VIA ECF</u>

Hon. Brian M. Cogan
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: *Linde v. Arab Bank, PLC*, 04-CV-2799 (BMC)(VVP) and related cases
>
> **Plaintiffs' Response to Defendant's July 29, 2014 Letter Regarding Stipulation That Each of the 24 Attacks at Issue Constitute an Act of International Terrorism Within the Meaning of 18 U.S.C. §§2331 and 2333**

Dear Judge Cogan:

We write on Plaintiffs' behalf in response to Defendant Arab Bank plc's letter of even date ("AB Letter") in which Defendant: (1) states it "*will not dispute, and hereby stipulates and agrees, that the 24 attacks identified in paragraph 4 of Plaintiffs' July 18, 2014 Proposed Pre-Trial Order ("Plaintiffs PTO") are acts of international terrorism within the meaning of 28 U.S.C. §§ 2331 and 2333*" (AB Letter at 1); and (2) therefore requests that the Court exclude all the witnesses set forth on Exhibit A to the AB Letter, and all the documents listed on Exhibit B. As explained below, while Plaintiffs consent to the stipulation (and in fact offered to do so on numerous occasions), and are prepared to reduce the number of fact witnesses concerning the attacks, the Bank's claim that the witnesses and documents must be excluded is incorrect, and its request in that regard should be denied because each remaining witness possesses information directly relevant to attack attribution, one of the issues to which the Bank refuses to stipulate.

As our July 22, 2014 letter to the Court ("July 22 Letter", *Linde* ECF. No. 1039) documents, for over a decade the Bank refused to acknowledge the attacks that injured the Plaintiffs were acts of international terrorism. This engendered extensive, expensive, international discovery. After Your Honor issued the July 24, 2014 Order concerning the stipulation, the undersigned contacted Defendant's counsel that same evening, inquiring whether the Bank would, in fact, stipulate to the issue, and included proposed language for the stipulation. The Bank never responded to that e-mail. Aware that Defendant's July 21, 2014 omnibus "Motion *in Limine* to Exclude Certain Categories of Plaintiffs' Case-in-Chief Exhibits" concerned, *inter alia*, exhibits relating to attack attribution, and in light of the fact that Plaintiffs response to that Motion is being filed today, the undersigned wrote Defendant's counsel again this morning, requesting that the Bank advise us by 3 p.m. Eastern time whether it agrees to the stipulation set forth in our July 24, 2014 e-mail on that subject. Instead of meeting and

conferring with Plaintiffs' counsel in good faith, it has now, effectively, filed *another* motion *in limine*.

With that predicate, and in the interest of addressing the Court's practical concerns in light of the Bank's stipulation, Plaintiffs have again pared down their fact witness list to the *five* individuals listed below.[1] In each case, the witness will offer testimony directly relevant to the jury's consideration of attack attribution by Hamas, given that the Bank refuses to stipulate to Hamas's responsibility for *any* of the attacks.[2] For *all* witnesses, Defendant's argument rests on the false premise that because the witnesses do not have first-hand knowledge of Hamas's responsibility for the attack, their testimony is therefore irrelevant and unfairly prejudicial. But here, the fact that a witness may not possess knowledge concerning the ultimate *conclusion* that Hamas is responsible for any given attack does not make their testimony irrelevant or unfairly prejudicial. The remaining five witnesses can each testify about what they observed during or after the attack, thereby providing the jury with independent data points they can consider in evaluating what weight to assign to Mr. Kohlmann's and Mr. Shaked's testimony and data points.[3] Not only is the information highly relevant to who carried out various attacks, but it likewise provides helpful information to the jury in weighing the conclusions of the two expert witnesses (Messrs. Kohlmann and Shaked).

1. **Steven Averbach (*de bene esses* video deposition designated testimony).** Mr. Averbach (who died in June 2010) offers relevant eyewitness testimony regarding the suicide bomber's appearance and disguise in connection with the May 18, 203 bombing of Bus No. 6. His testimony is relevant to the jury's consideration of attack attribution and can be considered by the jury in evaluating whether it corroborates Mr. Shaked's analysis, including details set forth in materials Mr. Shaked evaluated such as the Apostilled verdict of Samar Ahmed Al-Atresh (PX3852), which describes the bomber's disguise, and which is, parenthetically, independently admissible because it has been authenticated, and is a judgment of prior conviction under Rule 803(22).

2. **Nachum Babkoff (live testimony).** As a police officer, Mr. Babkoff saw the immediate aftermath of the terror attacks at: (1) the Dolphinarium in Tel Aviv on June 1, 2001; and (2) Bus No. 4 on Allenby Street in Tel Aviv on September 19, 2002. Mr. Babkoff offers relevant testimony regarding the immediate aftermath of those two attacks, the recovery of the suicide bombers' remains and their subsequent identification

---

[1] As for the remaining 12 witnesses listed on AB Letter Ex. A, Plaintiffs will simply reserve the right to call them or play their designated testimony, if necessary, as rebuttal or impeachment witnesses.

[2] *See United States v. Hammoud*, 381 F.3d 316, 342 n. 12 (4th Cir. 2004) (en banc) (where proffered stipulation "would not relieve the Government of the burden of demonstrating that [the defendant] knew that Hizballah engaged in terrorist activity," it did not have to be accepted), *vacated on other grounds*, 543 U.S. 1097 (2005). *See also United States v. Mehanna*, 735 F.3d 32, 64 n.10 (1st Cir. 2013).

[3] As discussed below, when Plaintiffs state that a witness will describe the "the immediate aftermath" of a bombing we are mindful that although such testimony should not be sanitized entirely, in light of Defendant's stipulation, it should and will be focused on *specific facts* observed which bear on Hamas's role in the attacks while keeping descriptions of the graphic nature of the crime scenes to a bare minimum.

by the police. His testimony is relevant to the jury's consideration of attack attribution and can be considered by the jury in evaluating whether it corroborates Messrs. Shaked's and Kohlmann's analyses concerning the reliability of both Israeli government identifications of these suicide bombers and Hamas's claims and self-identification of the perpetrators as Hamas operatives.

3. **Shukri Brif (live testimony).** As a volunteer for Israeli Ambulance/EMS services, Mr. Brif saw the immediate aftermath of the terror attacks at: (1) Sheffield Club, Rishon LeTzion, on May 7, 2002; (2) Mike's Place, Tel Aviv on April 30, 2003; (3) Bus #4 Tel Aviv, on September 19, 2002; and (4) Dolphinarium, Tel Aviv on June 1, 2001. With respect to the Dolphinarium attack, Mr. Brif testified specifically at his deposition that he saw the bomber's body (including his head) both at the attack site, and thereafter at the Abu Kabir Forensic Institute when it was being identified. Accordingly, Mr. Brif's testimony is relevant to attack attribution, and in particular corroborating Messrs. Shaked's and Kohlmann's testimony regarding the bomber's identity and Hamas's identification of the bomber as its operative.

4. **David "Dudi" Bar (live or by designated deposition testimony).** As a police officer, Mr. Bar observed the immediate aftermath of the attack at Mike's Place in Tel Aviv on April 30, 2003. Mr. Bar offers relevant testimony regarding facts he knows as an eyewitness to the immediate aftermath of the attack, including a detailed description of the attack scene and personal knowledge he acquired concerning the terrorists. As a police officer who conducted an investigation about the attack, Mr. Bar supervised the search of the suicide bombers' hotel room and the recovery of their personal effects. He also read, reviewed, and relied upon police and forensic reports in connection with his investigation, and thus can testify about the sequence of events, identity of the terrorists and confirm that they are the same individuals who appear in the video posted on Hamas's website. This is relevant testimony for the jury's consideration, including information it can consider as to whether it corroborates Messrs. Shaked's and Kohlmann's analyses.

5. **Joshua Faudem (live testimony).** Mr. Faudem was an eyewitness and victim of the April 30, 2003 Mike's Place bombing in Tel Aviv. Mr. Faudem saw the perpetrators outside the music club approximately 1.5 hours before the attack occurred, and thereafter saw the dead bomber's corpse after the attack occurred. His testimony is relevant to the jury's consideration of attack attribution, including corroborating Messr. Shaked's and Kohlmann's expert testimony.

With respect to the documents listed on AB Letter Exhibit B, Plaintiffs intend to now remove 27 of the 52 exhibits identified by Defendants and will so advise defense counsel,[4] but the Bank has not established good grounds to exclude many of the exhibits it has listed. For

---

[4] *E.g.* PX 3342 (Video of Sbarro aftermath); PX 3343 (Photos of the August 9, 2001 Sbarro Pizzeria bombing); PX 3302 (photo of Sbarro bombing). Within the next few days, Plaintiffs will identify for Defendant the 25 exhibits that we believe remain relevant in whole or in part.

example, PX4017 is a video taken at the scene after the Tel Romeda attack showing the terrorist gunman after he was shot wearing what Mr. Shaked opines is a green Hamas bandana. Plaintiffs have no interest in showing the graphic footage to the jury, but Defendant extensively challenged Mr. Shaked at deposition on this very issue and have argued the video's relevance to the Court as well:

> MR. OSEN: Your Honor, just in terms of the attacks, I believe our expert had only one instance in which he actually had video or photographic display of the attack, and that was one where the shooter was killed at the scene and was wearing a green bandana of the Hamas movement on his head at the time he was shot.
>
> THE COURT: Okay.
>
> MR. OSEN: But let me let my colleague --
>
> MR. STEPHENS: If he was wearing a New York Yankees cap, would we have a different attribution?
>
> THE COURT: A green bandana is not a New York Yankees cap when worn by someone who died or self-inflicted a wound in the Middle East. Okay? I think we can agree on that.[5]

Although Plaintiffs do not intend to have our experts narrate or present the contents of each and every exhibit, including documents on AB Letter Ex. B, we do not yet know whether the Bank will challenge the use of various demonstrative exhibits, or how the Court will resolve any such challenges. Plaintiffs have, therefore, preserved substantial materials on our exhibit list that may be presented solely in the event a specific proffer is required.

Accordingly, Plaintiffs request that the Defendant's further motion to exclude all witnesses and exhibits listed on Exhibits A and B to its letter be denied.

Respectfully submitted,

Gary M. Osen

cc: All Counsel

---

[5] July 30, 2013 Conf. Tr. at 139:16-140:4.