

DLA Piper **LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York  10020-1104
www.dlapiper.com

Shand S. Stephens
shand.stephens@dlapiper.com
T   212.335.4594
F   212.335.4501

September 7, 2014

**VIA ECF**

Honorable Brian M. Cogan
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   *Linde v. Arab Bank, PLC*, **04-CV-2799 (BMC) (VVP), and related cases**

Dear Judge Cogan:

At the close of trial proceedings on September 3, the Court issued the followed warning to the Bank, after Plaintiffs advised that the Bank had listed 21 defense witnesses:

> It's hard for me to believe the defendant has 21 witnesses.
>
> . . . .
>
> Okay.  Well, if you don't call them or I exclude a substantial number because they are cumulative or irrelevant, there is going to be a substantial sanction imposed, all right?

(Trial Tr., Sept. 3, 2014, at 1712.)   When defense counsel responded that the Bank has "employees from the various branches who worked there during the Intifada, many of whom you saw in those video clips [offered by Plaintiffs]," the Court again cautioned the defense:

> I'm not telling you, you can't call them.  I'm telling you, it's hard for me to believe that there are 21 witnesses that have relevant, admissible and noncumulative evidence.  . . . .  If that proves to be grossly off, there will be a consequence to that.

(*Id.*, at 1713.)

At the close of trial proceedings on September 4, as the Court considered directing the Bank to change its order of witness presentations after Plaintiffs sought an opportunity to request the exclusion of the Bank's expert Professor Milton-Edwards, the Court again took note of the number of witnesses identified by the Bank:

> You have 21 witnesses.  Fill the day.



Honorable Brian M. Cogan
September 7, 2014
Page Two

> . . . .
>
> You've got 21 witnesses. . . . You were going to call your first witness on Monday morning. That witness was going to go for several days. We're off Tuesday. Instead of Monday, you call her on Wednesday. You call some other of the 21 witnesses you designated on Monday.

(Trial Tr., Sept. 4, 2014, at 1854.)

The Court's reaction to the Bank's presentation of 21 witnesses stands in contrast to Plaintiffs' presentation of exactly the same number of witnesses, offering lengthy and cumulative evidence in their case in chief. In the parties' Joint Pre-Trial Order, Plaintiffs indicated their intent to call: 20 Bank personnel; 8 case-in-chief and rebuttal expert witnesses; 27 witnesses (principally to testify that each of the 24 attacks at issue was an act of terrorism); and one additional chain-of-custody witness—56 witnesses in all. The Court expressed no concern about the number of witnesses identified by Plaintiffs in their case against the Bank.

The Bank subsequently agreed to stipulate that each attack at issue was an act of terrorism, obviating the need for Plaintiffs to call all or most of the 27 "eye-witnesses" to the incidents at issue. A week before the commencement of trial, with that stipulation in hand, Plaintiffs then filed their "Planned Order of Witness Presentation," listing 24 case-in-chief witnesses. (*See Ltr.* dated Aug. 4, 2014 (ECF No. 1051), at Attach. 1.) Again, the Court expressed no concern about Plaintiffs' number of anticipated witnesses.

Plaintiffs subsequently dropped three witnesses and the Bank offered to stipulate to the precise facts that would be presented by two of their remaining witnesses, Messrs. Averbach (by deposition testimony) and Faudem, to avoid testimony that would be needlessly "cumulative, irrelevant and subject to Rule 403." But the Court rejected the Bank's offer as to each witness, stating as to Mr. Faudem: "I think the Plaintiffs can prove their case as they want"; and as to Mr. Averbach: "I think the plaintiffs are allowed to have that much leeway into how they prove their case." (*See* Trial Tr., Aug. 11, 2014, at 4-5; *id.*, Aug. 21, 2014, at 813-814.)

With that decision in hand, Plaintiffs presented 21 witnesses at trial—the same number now identified by the Bank—either live or by deposition testimony. Many of the latter were presented by the repeated showing of different clips of the same witnesses—some appearing as many as three, four and even five times. In all, Plaintiffs presented 35 separate selections of videotaped testimony. The highly cumulative nature of Plaintiffs' video witness testimony was self-evident. With regard to the Bank's alleged "knowledge of Hamas leaders," for example,



Honorable Brian M. Cogan
September 7, 2014
Page Three

Plaintiffs presented six witnesses; with regard to the Bank's alleged "awareness of . . . terrorist acts, the Second Intifada and terrorist group's glorifications of their deeds," Plaintiffs presented 10 witnesses; and with regard to the Bank's "provision of financial services to the Saudi Committee," Plaintiffs presented 11 witnesses. (*Id.*)

Much of the Bank's counter-designated testimony was rejected by the Court, pursuant to the rule of completeness. In doing so, the Court acknowledged the Bank's right, and in fact encouraged, the Bank to instead call those witnesses live if it wishes to introduce their testimony:

> I am only going to admit those portions necessary to complete the portions that the plaintiffs are offering. . . . [I]t is the best way to not confuse the [jury] and perhaps obviate plaintiffs' objections to the substance if the defendant decides to call the witnesses live . . . .

(Trial Tr., Aug. 21, 2014, at 809:24-810:3, 17-811:3.)

The testimony of Plaintiffs' experts has been as cumulative as its presentation of fact witnesses. Messrs. Spitzen and Levitt, Plaintiffs' zakat committee experts, for example, covered identical ground, relying on much of the same evidence with each identically concluding that 10 of the same zakats at issue were "fronts" for Hamas. With Mr. Spitzen alone, in the course of one day's testimony, Plaintiffs introduced the same exhibit, PX635 (an alleged "martyr payment" to the wife of an alleged Hamas operative), five separate times. (*See* Trial Tr., Sept. 3, 2014, at 1640:11, 1640:16, 1640:21, 1656:15, and 1661:4-5.) Many other exhibits were also shown repeatedly. (*See generally*, *id.*, at 17-16-17 ("Exhibits").)

During Mr. Spitzen's direct examination, over the Bank's objection, Plaintiffs repeatedly and cumulatively elicited the fact that the Bank did not produce requested account records. On August 28, the same two questions (Did you receive the account records of X? Why not?) were asked twice. On September 2, the same two questions were asked an additional eight times, at which point the Court overruled the Bank's objection but advised Plaintiff's counsel:

> Just to expedite the examination, but also to stop beating a dead horse, why don't you either ask him up front if he had any records of the accounts you are talking about, if not, why not, or all of the accounts, or just wait until you did all of the accounts, or ask him once, did he have records for any of these accounts, instead of doing that for every single account number.



Honorable Brian M. Cogan
September 7, 2014
Page Four

(Trial Tr., Sept. 2, 2014, at 1457-58 (emphasis supplied).)  Despite this, Plaintiffs repeated the identical set of questions eight more times that day, and then six more times during trial proceedings on September 3.  This elicited no threat of sanctions from the Court.  A listing of citations evidencing Plaintiffs' repetition of the identical set of questions 18 times during Mr. Spitzen's direct examination is annexed.

In light of this record, there should be no basis for threatening a "substantial sanction" if the Court deems a number of the Bank's 21 witnesses—the same number presented by Plaintiffs—to be cumulative.  Indeed, threats of sanction have been directed at the Bank previously in connection with its defense.  (*See*, *e.g.*, Hr'g Tr., July 30, 2013, at 5 (threatening sanctions against defense counsel for filings "you know will be pointless"); Hr'g Tr., July 14, 2014, at 7 (threatening "consequences" for an "unceasing stream of letter motions and requests for relief leading up to trial"); Trial Tr., Aug. 11, 2014, at 33 (threatening "consequences beyond non-admission" if "submissions fly in the face, as I suspect they do, of prior *in limine* rulings"); Trial Tr., Aug. 13, 201, at 143 (ruling as admissible a defense slide if an included picture is deleted, but then admonishing defense counsel that "it's outrageous that you even show it to me. . . . That's really sanctionable."); Trial Tr., Aug. 14, 2014, at 298 (striking part of defense counsel's opening statement as subject to the Court's preclusion order and then cautioning defense counsel that "you are hereby warned not to do that again . . . .") (emphasis supplied throughout).)

The Bank is entitled to a level playing field and to offer a full defense against Plaintiffs' allegations.  If the witnesses' testimony is subject to objection as cumulative, the Court can rule as the objection is stated.  It is respectfully submitted that the suggestion that offering the same number of witnesses for the defense as was called by Plaintiffs is grounds for a "serious sanction" is not warranted.

                                      Respectfully submitted,

                                      **DLA Piper LLP (US)**

                                      _____/s/_____
                                      Shand S. Stephens

cc:  all counsel (via ECF)



Honorable Brian M. Cogan
September 7, 2014
Page Five

**Plaintiffs' Repeated Elicitation That The Bank Did Not Produce
Request Account Records During Mr. Spitzen's Direct Examination**

**Trial Transcript**

| | |
|---|---|
| 1398:20-1399:5 | 1505:19-24 |
| 1404:5-9 | 1512:19-25 |
| 1437:8-13 | 1531:17-23 |
| 1441:13-22 | 1522:21-1523:2 |
| 1445:21-1446:2 | 1559:17-20 |
| 1450:17-22 | 1669:4-9 |
| 1453:15-21 | 1589:13-15 |
| 1455:15-19 | 1587:16-17 |
| 1456:15-19 | 1657:15-20 |
| 1457:18-22 | 1699:1-7 |
| 1459:8-11 | 1708:20-25 |
| 1475:7-14 | |