

DLA Piper **LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York  10020-1104
www.dlapiper.com

Shand S. Stephens
shand.stephens@dlapiper.com
T   212.335.4594
F   212.335.4501

September 7, 2014

**VIA ECF**

Honorable Brian M. Cogan
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *Linde v. Arab Bank, PLC*, 04-CV-2799 (BMC) (VVP), and related cases

Dear Judge Cogan:

  On behalf of Defendant Arab Bank plc (the "Bank"), we move for the modification of this Court's order, *Linde v. Arab Bank, PLC*, 920 F. Supp. 2d 282, 286-87 (2011), excluding the testimony of Yair Dagan, an expert proffered by the Bank to offer an opinion regarding, among other things, the creation and distribution of the Israeli Unlawful Associations List (the "Israeli List") admitted into evidence over the Bank's objection as PX1078.  Adding Mr. Dagan to the Bank's witness list will not increase the length of trial, because having reviewed Mr. Spitzen's testimony, the Bank advises the Court that it no longer plans to call as witnesses either Barouch Yadid or Pinhas Shmilovitch.

  Plaintiffs placed the pronouncement of Israeli designations in issue from the outset—alleging dates when various charities at issue were designated as "unlawful organizations" by Israel (*see, e.g.*, *Linde* Am. Complt. (ECF No. 4), ¶¶ 349, 358) and further alleging that the Bank "facilitated the transfer of significant sums" "despite the fact" that certain organizations had been designated by Israel.  (*E.g.*, *id.*, ¶ 362.)  Plaintiffs' expert Arieh Spitzen testified, among other things, as to Israeli law on the "unlawful organization" designations and the prohibition under the designation imposed on banks.  He repeatedly referred to the unlawful designations, arguing that their purpose was to "announce to the public that a certain association was illegal" and to provide public "notice of condemnation."  (*See, e.g.,* Trial Tr., Sept. 2, at 1492, 1493-96.)

  To address these issues among others, the Bank proffered the testimony of Mr. Dagan, the founder and managing director of a company in Tel-Aviv that developed software used by Israeli banks to screen against Israeli designations.  With more than 20 years' experience assisting the banking community in related matters, Mr. Dagan, a noted lecturer, is also the author of a treatise on anti-money laundering and counter-terrorism financing, featuring forwards by a Justice of the Israeli Supreme Court and the former head of the Israeli Mossad.  Mr. Dagan also worked for six years as a systems analyst for the Israel Defense Forces.



Honorable Brian M. Cogan
September 7, 2014
Page Two

      Mr. Dagan's expert report set forth the genesis of the Israeli List and the manner in which it was first made public in May 2005 when it was posted on the website of the Israeli Ministry of Defense. (Dagan Report (ECF no. 723), at 8-9.)[1] Even then, it contained only a partial listing of designated organizations; and Arabic names "started appearing sporadically only in 2006." (*Id.*) As Mr. Dagan was prepared to further testify, the list continued to have many omissions. In February 2007, for example, "a group of charities declared on February 25, 2002," including charities at issue here, did not appear on the list, but subsequently appeared on a May 29, 2007 version of the list. (*Id.*, at 9-10.) PX1078 is dated June 17, 2007.

      The Court, however, granted Plaintiffs' motion to exclude Mr. Dagan, among other experts proffered by the Bank, stating "nothing in these reports will assist the trier of fact," and further noting:

> even if it could be said that some statements in some of the reports reference matters of marginal relevance to the discrete issues for trial in this case, the reports are so far afield from the specific allegations and statutory elements at issue that there is an appreciable risk of prejudice, jury confusion, and misleading the jury.

*Linde*, 920 F. Supp. 2d at 286.) The Court concluded that this exclusion was appropriate, because "[t]he trial, anticipated to be lengthy, cannot be burdened with extraneous issues." (*Id.*)

      The Bank subsequently designated Mr. Dagan as a fact witness and Plaintiffs opposed that proffer as well:

> Your statement that "*Plaintiffs have placed in issue whether the Bank should be deemed to have had knowledge of entities listed by Israel as 'Unlawful Organizations'*" is not entirely accurate. . . . Plaintiffs do not contend that the Bank should be "deemed to have had knowledge" of the list(s) . . . .

(Ltr., dated Feb. 21, 2012 (annexed as <u>Ex.</u> 2), at 6 (emphasis in original).) The Court granted Plaintiffs' motion. *Linde v. Arab Bank, PLC*, No. 04 Civ. 2799, 2013 WL 4516778, at *2 (E.D.N.Y. Aug. 23, 2013).

---

[1] The Dagan report and many other expert reports proffered by the Bank were jointly submitted to the Court on a DVD filed under seal. For the convenience and reference of the Court, a copy of the Dagan Report is annexed as Exhibit 1.



Honorable Brian M. Cogan
September 7, 2014
Page Three

Prior to the commencement of Mr. Spitzen's testimony, Plaintiffs advised that they would seek to introduce PX 1078 and the Bank objected on relevance and other grounds. The Court overruled the Bank's objection, but stated that it would:

> instruct the jury that it is only to consider the Israeli blacklist as evidence that the specific charities listed therein were connected to Hamas, and not defendant's knowledge that they were."

(Order, dated September 1, 2014 (ECF No. 1118), at 6-7.)

At trial on September 2, Plaintiffs asked Mr. Spitzen: "When between 2000 and 2005 did Israel outlaw some of these associations?" (Trial Tr., Sept. 2, 2014, at 1484.) Defense counsel requested that the Court issue its instruction to the jury, and the Court stated it would do so when Plaintiffs moved the List into evidence:

> I'm going to say they're to consider it solely as evidence tending to show that the charities mentioned therein were connected to Hamas. They are not to consider it as evidence that the defendant had any knowledge of this list, as there is no evidence that this list was made publicly available until after the attacks.

(*Id.*, at 1485.) Plaintiffs objected to the last sentence of the instruction, arguing that although "the witness doesn't offer any opinion on what the Bank knew about the lists . . . this is not a secret list . . . ." "The version that is in evidence is from 2007, but the actual list and the parts we're discussing were issued in February of 2002. (*Id.*, at 1486.) Responding to the Bank's further objection that "it wasn't publicly available," the Court cautioned that Plaintiffs would have to establish that or "I'll put back in that language." (*Id.*)

Mr. Spitzen acknowledged that the process of "designation itself was not done by COGAT" (the civilian authority by which he was employed), but Plaintiffs nevertheless elicited his testimony on the genesis of the designation process by the Ministry of Defense and a confused history of purported publication—first, by the publication of "outlying documents" of charitable organizations "in the site of the ministry of defense under the heading 'declarations,'" and "later . . . by the legal advisor of the central command of the army . . . published in the chief the MAG, the chief military advocacy," and "later, like any bylaw of any kind of legislation in Israel, it was published in the official gazette of Israel." (*Id.*, at 1490-91.)

When Plaintiffs then asked Mr. Spitzen to explain "the purpose of publishing this list publicly," the Court permitted, over the Bank's objection, the following response: "The publication is aimed at having people in the field made aware that no contact can be maintained with this organization, no money can be transferred to it, no support to be given to it, because, in


Honorable Brian M. Cogan
September 7, 2014
Page Four

effect, this is an illegal organization." (*Id.*, at 1491.) Similar testimony, over the Bank's objection, continued:

> Q. From the standpoint of the publication of this document, was this document kept secret within the Israeli government or was this something made available to anybody that was interested in knowing about who was on this list?
>
> A. The publication was aimed at announcing to the public, the general public, that a certain association was illegal. Each such act in Israel is public.

(*Id.*, at 1492.)

Plaintiffs then moved PX1078 into evidence and the Court, in sidebar, advised counsel that it had decided not to issue any instruction to the jury:

> [I]t seems to me the witness has testified that the document was publicly available.
>
> I guess what I'm not understanding is why I should be giving any limiting instruction at all since it was publicly available and since its purpose was to put the public on notice, why would it not be evidence from which the jury could infer that the defendant had knowledge of this list?

(*Id.*, at 1493.) Further noting that Mr. Spitzen "did say why it was published, to put the public on notice of condemnation so they wouldn't deal with these organizations," the Court overruled the Bank's continuing objection and admitted PX1078 into evidence, and permitted the jury to hear Mr. Spitzen's wide-ranging testimony about its purported public dissemination and purpose, with no limiting instruction. (*Id.*, at 1493-96.)

At trial on September 5, when Mr. Spitzen was asked in cross-examination to acknowledge that none of the charities at issue, during the relevant time period, was designated by the United States, Mr. Spitzen again chose to instead put the Israeli list at issue:

> I'm not that familiar with the American laws. But in Israel, certain organizations are designated. For example, when Hamas was designated by the State of Israel, any other organizations that is affiliated with it is immediately designated as unlawful association. So, I didn't know if by the very name of Mujama al Islami it was registered. But in 1995, when Hamas was designated by the United States as a terrorist organization, I would think that all of those that are affiliated with Hamas would be included as well. However, I'm not familiar with the American law.



Honorable Brian M. Cogan
September 7, 2014
Page Five

(Trial Tr., Sept. 5, 2014, at 1865; *see similarly*, *id.*, at 1971, 1981, 2000.)

The misleading testimony of Plaintiffs' expert would have been corrected by the contrary responsive testimony of Mr. Dagan—an expert who actually assisted the Israeli banks to whom the List applied to begin their compliance efforts when it was made publicly searchable in 2006.

The Bank does not waive its continuing objection that the Israeli List is irrelevant to whether the Bank complied with regulations issued by controlling authorities in the jurisdictions in which it operates. However, in light of the fact that PX1078 has been admitted into evidence, and the jury has repeatedly heard inaccurate and misleading testimony—which in the Court's own words will permit the jury "to infer that the defendant had knowledge of this list"—the Bank is entitled to call Mr. Dagan as the Bank's expert on these matters.

Without the corroborating testimony of a competing expert, cross-examination alone cannot reasonably offset the prejudice that will result from Mr. Spitzen's misleading testimony and the inference permitted by this Court,. In *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523, 539 (E.D.N.Y. 2012), on largely the same body of evidence, Judge Weinstein rejected the requested exclusion of the same expert testimony, expressly noting as relevant Mr. Dagan's testimony concerning "Israeli terrorist-designation lists that allegedly put the Bank on notice that certain zakat committees were front groups for Hamas." Respectfully, the record here requires the same result.

> Respectfully submitted,
>
> **DLA Piper LLP (US)**
>
> /s/
> Shand S. Stephens

cc: all counsel (via ECF)