**OSEN LLC**
ATTORNEYS AT LAW
WWW.OSENLAW.COM

2 UNIVERSITY PLAZA, SUITE 201, HACKENSACK, NJ 07601
T. 201.265.6400   F. 201.265.0303

345 SEVENTH AVENUE, 21ST FLOOR, NEW YORK, NY 10001
T. 646.380.0470   F. 646.380.0471

September 9, 2014

**VIA ECF**

Hon. Brian M. Cogan
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Linde, et al. v. Arab Bank, PLC*, **04-cv-2799 (BMC)(VVP) and related cases**

Dear Judge Cogan:

Pursuant to the Court's direction on September 8, 2014 (*see* Sept. 8, 2014 Tr. at 2157:25 – 2158:8) Plaintiffs respond in opposition to: (1) Arab Bank's September 7 letter (*Linde* ECF No. 1133) seeking to strike Mr. Spitzen's testimony based on the fact that he conducted an additional 1,000 hours of work since submitting his expert report; and (2) Defendant's September 7 letter (*Linde* ECF No. 1134) requesting that the Court reconsider its prior Order excluding Yair Dagan from testifying.[1]

**Defendant's Request to Strike Mr. Spitzen's Testimony**

This request is frivolous. Defendant claims Mr. Spitzen's testimony should be stricken entirely because after he submitted his Fed. R. Civ. P. 26(a)(2)(B) expert report, he expended an additional 1,000 hours of time. Had defense counsel probed the matter further with Mr. Spitzen during cross-examination, he would have learned that the additional time was spent in preparation for deposition and trial testimony, including re-reviewing thousands of exhibits and transactions, creating and revising multiple demonstrative slides, reviewing translations of materials, analyzing Defendant's rebuttal expert witnesses' criticisms, and other expected and logical post-report work. None of that constitutes work Mr. Spitzen "relied" upon to arrive at his opinions other than for the purpose of ensuring that his prior work was accurate and properly reflected in materials he introduced during his extensive and detailed trial testimony. Thus, Mr. Spitzen's testimony at trial (and preparation for same) tracked his voluminous report and appendices, and reflects the same opinions he has provided in painstaking detail since 2010. In sharp contrast, Arab Bank had proposed to elicit testimony from Dr. Milton-Edwards that was

---

[1] *See Linde v. Arab Bank, PLC*, 920 F. Supp. 2d 282, 286-87 (E.D.N.Y. 2011) (excluding Mr. Dagan as expert witness); *Linde v. Arab Bank, PLC*, 2013 WL 4516778, at *2 (E.D.N.Y. Aug. 23, 2013) (excluding Mr. Dagan as fact witness).

Hon. Brian M. Cogan, U.S.D.J.
September 9, 2014
Page 2 of 3

based entirely upon new "evidence" she gathered years after she drafted her reports and that Arab Bank disclosed to Plaintiffs on the eve of trial in an improper attempt to bolster the deficient opinions expressed in the those reports.

**Defendant's Motion to Reconsider Mr. Dagan's Exclusion**

Mr. Spitzen offered testimony that: (1) he relied upon the Israeli Unlawful Organizations List ("Israeli Blacklist") as one data point in determining whether an organization was controlled by Hamas; (2) the Israeli Blacklist was not "secret" but was published in the Israeli equivalent of the Federal Register and disseminated; and (3) that he understood that the Israeli Blacklist had been published to announce that the associations were illegal. *See* Sept. 2, 2014 Tr. at 1490:2 – 1492:14. Mr. Spitzen offered no opinions regarding the Bank's knowledge of, or obligations with respect to, the Israeli Blacklist. Nor did he offer opinions or explanations regarding whether it was, or would have been, physically received by the Defendant. He also did not opine whether the Blacklist should have been disseminated more broadly, converted to an electronically-searchable format, or which sectors of the public were expected to take affirmative action. The Israeli Blacklist is simply one *non-exclusive* factor Mr. Spitzen considered in assessing whether an organization is connected to Hamas. Dr. Milton-Edwards has since testified regarding *her* understanding regarding the degree to which the Israeli Blacklist was publicly available or disseminated (Sept. 9. Tr. at 2127:2-212:5), which, as Your Honor recognized (*see id.* at 2158:3-5), effectively moots the Bank's need to call Mr. Dagan.[2]

Defendant cannot dispute that the Israeli Blacklist was published in Israel's "Official Gazette," analogously similar to the Federal Register. The Bank's argument that such publication does not render the Israeli Blacklist publicly available falls flat. *See, e.g., Inner City Press/Community on the Move v. Board of Governors of Federal Reserve System*, 2005 WL 2560396, at *3 (S.D.N.Y. Oct. 11, 2005) (rejecting argument that materials filed with SEC are not publicly available). *Compare* 44 U.S.C. § 1507 (publication in Federal Register "is sufficient to give notice of the contents of the document to a person subject to or affected by it"); *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947) ("Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents.").

Consequently, the Bank has failed to establish a good faith basis for the Court to modify and reconsider its decision to exclude Mr. Dagan's testimony on this or any other issue in his expansive and improper report.

---

[2] Moreover, at his deposition, Mr. Dagan disclaimed any knowledge regarding Arab Bank or the Palestinian banking sector – *i.e.* his opinions were limited to Israeli AML and banking practices. *See* Aug. 7, 2013 letter from Aitan D. Goelman, Esq. to Hon. Brian M. Cogan, at 7-8 (*Linde* ECF No. 975), citing Mar. 20, 2012 deposition of Yair Dagan at 27:1-6. *See also* Dagan Dep. Tr. at 27:9-29:7 (disclaiming personal knowledge regarding Arab Bank's processing of transactions, customers of Arab Bank alleged to be pertinent to lawsuit, how Arab Bank dealt with funds of the Saudi Committee for the Support of the Intifada al Quds, what Arab Bank did before rendering financial services to various customers, Arab Bank's state of mind, or alleged compliance steps and anti-money laundering and anti-terror financing that Arab Bank allegedly took at any point in time). Mr. Dagan's referenced deposition testimony is attached hereto as Exhibit "A".

Hon. Brian M. Cogan, U.S.D.J.
September 9, 2014
Page 3 of 3

                                          Respectfully submitted,

                                          /s/ Gary M. Osen

Enclosure

cc:     All Counsel