

DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York  10020-1104
www.dlapiper.com

Shand S. Stephens
shand.stephens@dlapiper.com
T   212.335.4594
F   212.335.4501

*VIA ECF*                                                September 11, 2014

Honorable Brian M. Cogan
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:    Linde v. Arab Bank, PLC, 04-CV-2799 (BMC) (VVP), and related ATA cases**

Dear Judge Cogan:

On behalf of defendant Arab Bank, plc (the "Bank"), we are responding to Plaintiffs' letter dated September 10, 2014 (the "Letter") on anticipated testimony of the Bank's witnesses. Plaintiffs seek to preclude evidence the Court has specifically allowed and that is not precluded under Judge Gershon's sanctions order (July 12, 2010, ECF No. 625), and also seeks to bar the Bank from asking the same questions about alleged Hamas leaders that Plaintiffs themselves insisted on presenting to the jury through deposition designations displayed to the jury.

As the Court explained today, "the starting point for analyzing the question of what can happen with the witnesses – again, from Judge Gershon's order – quote, the bank cannot argue that it had no knowledge a certain bank customer was a terrorist if it did not produce that person's complete records."  (Trial Tr. 2359:3-8.)  But the Bank's witnesses will not be asked about this.  The Bank's witnesses will testify in general terms about the Bank's general policies, compliance programs, and operations, and about transactions reflected in produced documents, all of which is specifically permitted by the Court's orders.  The Court has ruled that "[w]hen it comes to the Middle East, defendant may describe its compliance program in general terms.  It may also describe industry standards in general terms."  (Order filed 8/26/14, ECF No. 1103, at p. 2.)  The Court has also ruled that "defendant may provide testimony and evidence that tends to rebut inferences that plaintiffs seek to draw about defendant's compliance programs."  (Order filed 8/1/14, ECF No. 986, at p. 1.)  In her sanctions order, Judge Gershon specifically explained that the Bank is "entitled to rely on the documents it did produce to make its case that it did not have the required state of mind."  (ECF No. 625 at p. 29 (*Linde v. Arab Bank, Plc*, 269 F.R.D. 186, 204 (E.D.N.Y. 2010)).)  When Plaintiffs quote Judge Gershon's order, they simply omit by ellipsis this part of her order on state of mind.  (Letter at fn. 1.)

As explained below, Plaintiffs' specific requested preclusions are inconsistent with the Court's orders or should be rejected because Plaintiffs themselves have already opened the door or waived objection by asking about matters they now claim should be barred.



Honorable Brian M. Cogan
September 11, 2014
Page Two

**1.     Exhibits explaining the Bank's policies on compliance**.  Plaintiffs claim they can use exhibit PX 1, which is a Bank document titled General Banking Instructions on Money Laundering, but that the Bank cannot have its witnesses testify about it because it is "inadmissible character evidence under Fed. R. Evid. 404."  (Letter p. 2.)  But PX 1 (which is identical with DX 42) doesn't say anything about character.  On its face it is part of the Bank's general policies and compliance programs that the Court has specifically allowed (ECF No. 1103, at p. 2).  The jury is entitled to weigh that evidence, as the Court recognized in the ruling quoted above that the Bank is "entitled to rely on the documents it did produce to make its case that it did not have the required state of mind."  (ECF No. 625 at p. 29.)  General policy is not about specific accounts, it is not an argument that compliance with foreign law proves the Bank complied with U.S. law, it is not an argument that the Bank complied with foreign law, and it is not character evidence.  General policies against money laundering and terrorist financing are relevant to the Bank's intent and state of mind and are admissible under the Court's orders quoted above.

Other exhibits listed in Plaintiffs' Letter are relevant evidence showing why the Bank had its policies and compliance program, and are therefore admissible under the Court's ruling that the Bank can "describe its compliance program in general terms" as well as industry standards.  (ECF No. 1103, p. 2.)  DX 7, for example, is a 1995 notice to the Bank from the newly created Palestine Monetary Authority ("PMA") that all foreign banks operating in Palestine must now (as of 1995) be licensed by the PMA and must pursue banking activities in accordance with PMA directions.  DX 41 is a direction from the Bank's headquarters to regional management to appoint a money laundering reporting officer.  It is part of the Bank's compliance program.  DX 76 through DX 88 concern directions to the Bank's branches in Palestine on implementing the Bank's General Banking Instructions on Money Laundering (PX1 and DX 42).

Plaintiffs object to the introduction of DX 100, which is a PMA circular that requires banks to obtain the Palestinian Ministry of Interior's authorization for opening an account for a charitable society or committee the account, and to obtain a copy of the bylaws and authorized signatories of the society or committee as approved by the ministry.  But this circular, which applies to all banks in the Palestinian Territories, is admissible because it is part of a general explanation of the Bank's compliance policies and programs for dealing with charitable societies, and reflects the industry standard in the Palestinian Territories, all of which is allowed under the Court's order.  (ECF 1103, quoted above.)

DX 117 also helps explain why the Bank had its policies and programs.  DX 117 is a PMA circular requiring Palestinian banks to provide the PMA with incoming and outgoing



Honorable Brian M. Cogan
September 11, 2014
Page Three

transfers in excess of $10,000, and to suspend payment of such transfers for 24 hours to allow the PMA to review the transfers, including the name of the transferring party and beneficiary. Similarly, DX 836 is a PMA circular requiring banks to submit monthly reports relating to their accounts. These became part of the Bank's policies and programs, and are admissible as evidence of the Bank's intent and state of mind.

DX 901, which Plaintiffs also object to, is admissible under the Court's ruling that "[t]o the extent plaintiffs offer PMA circulars ordering the freezing of certain accounts as relevant to defendant's notice and knowledge, defendant may complete the story by offering PMA circulars showing those accounts were unfrozen." Plaintiffs have placed in issue the August 2003 freeze of the accounts of certain entities at issue, *see*, *e.g.*, Trial Tr. at 1995-96. The Bank is therefore entitled to introduce DX 901 to show that the August 2003 freeze was later lifted.

**2.     Questions on alleged Hamas leaders and members**.  Plaintiffs also claim that the sanctions order bars questions about what a witness "knew or knows about any of these individuals" who Plaintiffs claim were terrorists. (Letter at p. 3.) This is not what the sanctions order says. The sanctions order bars the Bank from arguing that it did not know whether or not a certain person was a terrorist. It does not bar questions limited to whether individual Bank employees had ever heard of a certain individual. Further, Plaintiffs have waived any such objection—and have opened the door to testimony on the knowledge of individuals—by playing deposition excerpts to the jury where these specific questions were asked.

In Plaintiffs' Deposition Designation Excerpt 9, Plaintiffs asked Bank employee Ghalib Hantoly, "do you know who Sheikh Yassin is?" (Hantoly Dep. 181:10-11.) In the excerpt they also showed him a picture they asserted was Sheikh Yassin and asked Mr. Hantoly, "do you recognize the photograph in front of you as Sheikh Ahmed Yassin?" (*Id.* 183:8-10.) In other deposition designation excerpts Plaintiffs asked George Kawwas, "have you heard of the name Ismail Haniyeh?" (Kawwas Dep. 284:11-12), and "Do you know which organization Mr. Haniyeh is affiliated with?" (*Id.* 284:18-19.) Plaintiffs elected to show the jury deposition excerpts in which they asked Bank witness Mohammad al-Tahan, "Were you, during the years 2001, 2003, while living in Jerusalem and working in Ramallah, aware of the name of Mr. Rantisi, an assistant to Sheikh Ahmad Yassin in Gaza?" (Al-Tahan Dep. 276:2-5.) In these examples and in other instances, Plaintiffs waived any objection to these questions being asked about persons Plaintiffs claim are leaders or members of Hamas. The Bank is entitled to ask the same questions by showing Bank witnesses pictures of the alleged Hamas members and asking whether they knew who they were in the relevant time period.



Honorable Brian M. Cogan
September 11, 2014
Page Four

      Finally, the Letter raises arguments about non-issues.  For instance, the Bank does not expect to ask non-New York witnesses about OFAC and does not expect to ask Mr. Hurani or other Bank witnesses anything about the Israeli list, other than potentially whether they were aware of it.  (Letter at 2.)

      The Bank therefore respectfully requests that the Court deny Plaintiffs' requests to exclude evidence that the Bank is proffering through its witnesses and exhibits on the Bank's general policies, compliance programs, operations, and transactions reflected in produced documents.

      Respectfully submitted,

      **DLA Piper LLP (US)**

      /s/
      Shand S. Stephens

cc:  all counsel (via ECF)