UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

COURTNEY LINDE, et al.,

                      Plaintiffs,

     - against -

ARAB BANK, PLC,

                    Defendant.

-------------------------------------------------------------------

CV-04-2799 (BMC)(VVP)
and all related cases[*]


# [CORRECTED] MEMORANDUM OF LAW OF DEFENDANT ARAB BANK PLC IN SUPPORT OF ITS MOTION FOR A NEW TRIAL PURSUANT TO FED. R. CIV. P. 59

---

[*]     *Philip Litle, et al. v. Arab Bank, PLC,* 04-CV-5449 (BMC)(VVP)*; Oran Almog, et al. v. Arab Bank, PLC,* 04-CV-5564 (BMC)(VVP)*; Robert L. Coulter, Sr., et al. v. Arab Bank, PLC,* 05-CV-365 (BMC)(VVP) Gila Afriat-Kurtzer, et al. v. Arab Bank, PLC,* 05-CV-388 (BMC)(VVP)*; Michael Bennett, et al. v. Arab Bank, PLC,* 05-CV-3183 (BMC)(VVP)*; Arnold Roth, et al. v. Arab Bank, PLC,* 05-CV-03738 (BMC)(VVP)*; Stewart Weiss, et al. v. Arab Bank, PLC,* 06-CV-1623 (BMC)(VVP).

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ........................................................................................................... 2

I.   THE COURT MADE PREJUDICIAL ERRORS OF LAW IN INSTRUCTING
     THE JURY AND APPLYING THE SANCTIONS ORDER.................................. 3

     A.   It Was Error For The Court To Eliminate The "But For" Factual Causation
          And "Direct" Proximate Causation Elements Of Plaintiffs' Claims. ................... 3

     B.   It Was Error For The Court To Instruct The Jury That A Violation Of 18
          U.S.C. 2339B(a)(1) Is An "Act Of International Terrorism" Under 18
          U.S.C. 2331(1)(A)-(C). ...................................................................................... 6

     C.   It Was Error For The Court To Apply The Sanctions Order Broadly To
          Preclude The Bank From Having A Fair Opportunity To Defend Itself. .............. 7

     D.   It Was Error For The Court To Relieve The Plaintiffs Of Their Burden Of
          Proving That The Bank Provided Financial Services With An "Evil
          Motive" Or An "Intent To Harm" Someone....................................................... 10

     E.   It Was Error For The Court To Instruct The Jury On Respondeat Superior
          Liability........................................................................................................... 11

II.  THE COURT MADE PREJUDICIAL ERRORS IN ADMITTING AND
     EXCLUDING EVIDENCE. ......................................................................... 12

     A.   It Was Error For The Court To Preclude All Evidence Of Foreign Law
          Proffered By The Bank To Demonstrate Its Innocent State Of Mind. ............... 12

     B.   It Was Error For The Court To Admit Out Of Court Statements By
          Alleged Members Of Hamas. ........................................................................... 14

     C.   The Court Erred When It Allowed Plaintiffs To Use The FinCEN
          Settlement For Impeachment. ........................................................................... 17

     D.   The Court Erred By Excluding The Bank's Expert Witnesses On The
          Saudi Committee............................................................................................... 19

     E.   It Was Error For The Court To Admit Israel's List Of Prohibited
          Organizations. .................................................................................................. 21

III. THE TRIAL STRUCTURE ADOPTED BY THE COURT SEVERELY
     PREJUDICED THE BANK AND BADLY CONFUSED THE JURY. ...................... 22

CONCLUSION......................................................................................................... 25

# CASES

*Abecassis v. Wyatt*,
    09-CV-3884, 2014 WL 988846 (S.D. Tex. Mar. 12, 2014) ....................................................7

*Arnold v. E. Air Lines*,
    712 F.2d 899 (4th Cir. 1992) (*en banc*) ....................................................................24

*Banque Worms v. Luis A. Duque Pena E Hijos, Ltda.*,
    652 F. Supp. 770 (S.D.N.Y. 1986)..........................................................................11

*Boim v. Holy Land Found. for Relief & Dev.*,
    549 F.3d 685 (7th Cir. 2008) ...................................................................................10

*Boyko v. Parker*,
    960 F. Supp. 2d 1270 (D. Utah 2013)......................................................................17

*Burrage v. United States*,
    134 S. Ct. 881 (2014)..........................................................................................4, 5

*Carlisle Ventures, Inc. v. Banco Espanol de Credito, S.A.*,
    176 F.3d 601 (2d Cir. 1999)...................................................................................13

*Carpenters Health & Welfare Fund v. The Coca-Cola Co.*,
    00-CV-2838, 2008 WL 9358563 (N.D. Ga. Apr. 23, 2008)..................................18

*Gill v. Arab Bank, PLC*,
    893 F. Supp. 2d 474 (E.D.N.Y. 2012) .............................................................7, 12

*Gill v. Arab Bank, PLC*,
    893 F. Supp. 2d 523 (E.D.N.Y. 2012) ..................................................................20

*Gill* v. *Arab Bank, PLC*,
    893 F. Supp. 2d 542 (E.D.N.Y. 2012) .................................................12, 16, 18

*Gilmore v. Palestinian Interim Self-Gov't Auth.*,
    01-CV-853, 2014 WL 3719160 (D.D.C. July 28, 2014) .....................................16

*Gruber v. Prudential-Bache Secs., Inc.*,
    679 F. Supp. 165 (D. Conn. 1987).........................................................................11

*Hemi Group, LLC v. City of New York*,
    559 U.S. 1 (2010)....................................................................................................5

*Highland Capital Mgmt., L.P. v. Schneider*,
    551 F. Supp. 2d 173 (S.D.N.Y. 2008)....................................................................17

*Holmes v. Sec. Investor Prot. Corp.*,
    503 U.S. 258 (1992)..........................................................................................4, 5

*In re Repetitive Stress Injury Litig.*,
    11 F.3d 368 (2d Cir. 2013)........................................................................................24

*In re Terrorist Attacks on Sept. 11, 2001 (Al Rajhi Bank)*,
    714 F.3d 118 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2870....................................4, 5

*Kaplan v. Al Jazeera*,
    10-CV-5298, 2011 WL 2314783 (S.D.N.Y. June 7, 2011) ......................................10

*Krishanthi v. Rajaratnam*,
    09-CV-5395, 2014 WL 4677175 (D.N.J. Sept. 19, 2014) ..........................................5

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)........................................................................................6

*Lev v. Arab Bank, PLC*,
    08-CV-03251, 2010 WL 623636 (E.D.N.Y. Jan. 29, 2010) ......................................8

*Licci v. Lebanese Canadian Bank*,
    673 F.3d 50 (2d Cir. 2012)..........................................................................................6

*Linde v. Arab Bank, PLC*,
    353 F. Supp. 2d 327 (E.D.N.Y. 2004) ......................................................................11

*Linde v. Arab Bank, PLC*,
    920 F. Supp. 2d 282 (E.D.N.Y. 2011) ......................................................................21

*Linde v. Arab Bank, PLC*,
    922 F. Supp. 2d 316 (E.D.N.Y. 2013) ......................................................................19

*Litle v. Arab Bank, PLC*,
    611 F. Supp. 2d 233 (E.D.N.Y. 2009) ................................................................11, 12

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993)......................................................................................24

*Mazuma Holding Corp. v. Bethke*,
    13-CV-6458, 2014 WL 814960 (E.D.N.Y. Mar. 3, 2014)........................................19

*Nguyen v. Holder*,
    10-71050, 2014 WL 3953758 (9th Cir. Aug. 14, 2014) ..........................................10

*Option Res. Grp. v. Chambers Dev. Co., Inc.*,
    967 F. Supp. 846 (W.D. Pa. 1996)............................................................................18

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013) ("*Rothstein IV*") ........................................................4, 5

*Rothstein v. UBS AG*,
    772 F. Supp. 2d 511 (S.D.N.Y. 2011)................................................................6, 10

*Rush v. Oppenheimer & Co.*,
    628 F. Supp. 1188 (S.D.N.Y. 1985)...............................................................11

*S.E.C. v. Pentagon Capital Mgmt., PLC*,
    08-CV-3324, 2010 WL 985205 (S.D.N.Y. Mar. 17, 2010)....................................19

*Song v. Ives Labs., Inc.*,
    957 F.2d 1041 (2d Cir. 1992)....................................................................2

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004)................................................................................8

*Stansell v. BGP, Inc.*,
    09-CV-2501, 2011 WL 1296881 (M.D. Fl. Mar. 31, 2011)...................................7

*Stevenson v. Union Pac. R.R. Co.*,
    354 F.3d 739 (8th Cir. 2010) ...................................................................13

*Strauss v. Credit Lyonnais, S.A.*
    925 F. Supp. 2d 414 (E.D.N.Y. 2013) .......................................................16

*Tepperwien v. Entergy Nuclear Operations, Inc.*,
    07-CV-433, 2010 WL 8938797 (S.D.N.Y. Mar. 16, 2010), *aff'd*, 663 F.3d 556 (2d Cir. 2011) .......................................................................................2

*University of Tex. Sw. Med. Ctr. v. Nassar*,
    133 S. Ct. 2517 (2013)...........................................................................4

*Weiss v. National Westminster Bank PLC*,
    13-CV-1618, 2014 WL 4667348 (2d Cir. Sept. 22, 2014) ...............................6, 7

*Whiteman v. Dorotheum GmbH & Co. KG*,
    431 F.3d 57 (2d Cir. 2005)......................................................................8

*Wultz v. Islamic Republic of Iran*,
    755 F. Supp. 2d 1 (D.D.C. 2010) ............................................................7

**STATUTES**

18 U.S.C. 1964(c) .....................................................................................11

Anti-Terrorism Act, 18 U.S.C. 2331, et seq. ................................................. *passim*

Now that the jury has resolved liability and been discharged, Arab Bank plc ("Arab Bank" or "the Bank") respectfully submits this memorandum of law in support of its motion for a new trial pursuant to Fed. R. Civ. P. 59, which is filed in the alternative to its motion for judgment pursuant to Fed. R. Civ. P. 50(b).

## PRELIMINARY STATEMENT

On September 22, 2014 the *Linde* jury found the Bank liable for injuries resulting from 24 separate terrorist attacks that occurred in Israel, the West Bank and Gaza between 2001 and 2004.  We respectfully submit that this verdict was the inevitable consequence of a series of incorrect and prejudicial rulings that:

- harshly sanctioned the Bank for its compliance with foreign privacy laws and the related demands of its foreign regulators;

- precluded the Bank from explaining to the jury why it did not produce certain foreign records—namely, due to the requirements of foreign law and government directives, and instead repeatedly instructed the jury that the Bank simply "refused" to comply with the Court's discovery orders;

- permitted plaintiffs' counsel to repeatedly tell the jury that the Bank withheld records in an attempt to conceal evidence of liability (without permitting the Bank to counter that charge);

- eliminated all of the Bank's Saudi Committee witnesses as unqualified or irrelevant but permitted plaintiffs to introduce the "expert" testimony of Messrs. Levitt and Spitzen to impugn the Saudi Committee as part of Hamas' "worldwide fundraising network," even though neither of them conducted any field research into the Committee's activities, leaders or beneficiaries;

- precluded the Bank from introducing evidence of its foreign compliance efforts to counter the financing of terrorism;

- precluded as irrelevant and inadmissible evidence of the Bank's compliance with foreign law in providing foreign financial services, but permitted plaintiffs to admit into evidence the alleged list of prohibited organizations maintained by Israel, despite the fact that the Bank does not operate a branch in that country;[1]

- permitted the plaintiffs to admit into evidence out-of-court hearsay statements that

---

[1]  This corrected memorandum is submitted for the limited purpose of inserting the word "not" into this sentence, which was missing from the original filing (ECF No. 1173).

appeared on alleged Hamas-affiliated Web sites, were made by alleged Hamas terrorists, or were contained in materials, including highly inflammatory video recordings, that were allegedly discovered by unnamed individuals at locations in the West Bank and Gaza;

- eliminated the plaintiffs' burden of proving that the financial services provided by the Bank were a "but for" factual cause of the plaintiffs' injuries;

- eliminated the plaintiffs' burden of proving that the financial services provided by the Bank were a "direct" proximate cause of the plaintiffs' injuries;

- instructed the jury that knowingly providing financial services to Hamas is itself "an act of international terrorism" under 18 U.S.C. 2331 and, correspondingly, eliminated the plaintiffs' burden of proving, *inter alia*, that the Bank's conduct appeared to be intended to "coerce or intimidate a civilian population";

- eliminated the plaintiffs' burden of proving that particular individuals at the Bank acted with an improper intent when they provided the financial services at issue; and

- aggregated 286 plaintiffs' claims arising from 24 separate Hamas attacks for trial in one mass proceeding.

The prejudice caused to the Bank by any one of these rulings merits relief under Rule 59. The overwhelming prejudice caused to the Bank by the combined force of *all of these rulings* as they were applied at trial is patent and requires the verdict issued by the *Linde* jury to be vacated and a new trial ordered that will afford the Bank a fair opportunity to defend itself and will hold plaintiffs to their burdens of proof on the essential elements of their ATA claims.

## ARGUMENT

A motion for a new trial should be granted when the trial court committed significant errors in charging the jury, improperly admitted or excluded evidence that may have had a substantial impact on the jury's deliberations, or where the jury has reached a seriously erroneous result such that the verdict constitutes a miscarriage of justice. *See, e.g., Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 07-CV-433, 2010 WL 8938797, at *9 (S.D.N.Y. Mar. 16, 2010), *aff'd*, 633 F.3d 556 (2d. Cir. 2011); *see also* Moore's Fed. Prac. (Matthew Bender 3d ed.), § 59.13(2)(b)(E). In

considering whether a new trial is warranted, the district court "need not view [the evidence] in the light most favorable to the verdict winner," and may order a new trial even if it believes that there is "substantial evidence" justifying the jury's verdict.  *Tepperwien*, 2010 WL 8938797, at *8-9 (internal citations omitted).

The conditions for ordering a new trial are easily satisfied here, where significant errors were made in charging the jury and in admitting and excluding evidence that would have meaningfully impacted a reasonable juror's deliberations.[2]  Moreover, as the Bank demonstrated in its renewed motion for judgment as a matter of law, which it respectfully incorporates herein, a new trial—if not judgment in the Bank's favor—is also warranted because the jury's verdict is not supported by the full evidentiary record and conflicts with controlling law.  Granting these orders now, at the close of the liability proceedings, has the added virtue of obviating the need for unnecessary follow-on trials concerning damages.

## I.   THE COURT MADE PREJUDICIAL ERRORS OF LAW IN  INSTRUCTING THE JURY AND APPLYING THE SANCTIONS ORDER.

### A.   It Was Error For The Court To Eliminate The "But For" Factual Causation And "Direct" Proximate Causation Elements Of Plaintiffs' Claims.

As the Bank has previously argued, the "by reason of" language incorporated into the civil remedies provision of the ATA requires proof that the defendant's conduct was a "but

---

[2]  The Bank's proposed jury instructions incorporated the points of law discussed herein (*see* ECF No. 1019); the Bank also objected to the plaintiffs' and Court's proposed contrary instructions (ECF No. 1020; *see generally* Tr. 3100-28 (charging conf.)).  Its objections have been fully preserved.  Tr. 3100.  The Bank also submitted arguments and objections with regard to the evidentiary points discussed herein (*see* Hr'g Tr., July 30, 2013, *passim*; Mem. of Law of Def. Arab Bank plc in Opp'n to Pls.' Mots. to Exclude Sixteen of the Bank's Case-In-Chief Expert Witnesses, dated Apr. 29, 2011 (filed under seal), at 34-48, 72-74; ECF Nos. 803, 807, 822, 842, 862, 863, 877, 878, 887, 908, 918, 923, 1033, 1034, 1037, 1050, 1081, 1096, 1114, 1135, 1144, 1145, 1147; Tr. 271, 298, 309-12, 363, 365, 366, 370-71, 372-73, 376-77, 416-20, 423, 425-27, 816-24, 945-90, 1014, 1022-23, 1065, 1078, 1081, 1088-90, 1099-1100, 1127-28, 1133-34, 1161, 1214-15, 1485-86, 1489, 1492-96, 1497-99, 2274-78, 2364-66, 2375-82, 2386-87, 2388-90, 2695-96, 2752-54, 2788-91, 2794-97, 2842-47).  These objections have been thoroughly preserved.  For the convenience of the Court, and consistent with past practices, the Bank respectfully incorporates these arguments and objections herein (hereinafter indicated by "incorp.").

for" factual cause and "direct" proximate cause of plaintiffs' injuries.  *E.g.,* ECF No. 53-1 at 17-22; ECF No. 157-1 at 5-8; ECF No. 942-1 at 5-14; ECF No. 1135-1 at 2-10 (collectively incorp.).  This argument is supported by an unbroken line of controlling Supreme Court and Second Circuit decisions.  *E.g., Burrage v. United States*, 134 S. Ct. 881, 889 (2014); *University of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2525 (2013); *In re Terrorist Attacks on Sept. 11, 2001 (Al Rajhi Bank)*, 714 F.3d 118, 123 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2870; *Rothstein v. UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013) ("*Rothstein IV*").

Nevertheless, this Court did not require the plaintiffs to prove factual causation.  ECF No. 1162.  Instead, it instructed the jury that the plaintiffs needed only to prove proximate causation, which it said could be satisfied through indirect evidence if they found that the Bank's financial services "substantially contributed" to the plaintiffs' injuries, even if other causes "significantly contributed as well."  *Id.* at 18.  These instructions were clear error.

With regard to factual causation, the Supreme Court has unequivocally instructed that "but for" causation is the "standard requirement of any tort claim" that must be applied "absent an *indication to the contrary in the statute* itself."  *Nassar*, 133 S. Ct. at 2524-25 (emphasis supplied).  Rather than containing any "indication to the contrary," the ATA incorporates the phrase "by reason of" which the Supreme Court has held "*requires at least a showing of 'but for' causation*[.]"  *Burrage*, 134 S. Ct. at 889-92 (rejecting "substantial" and "contributing factor" tests) (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 265-68 (1992)) (emphasis supplied) (other citations omitted).  The Second Circuit has interpreted the ATA consistently with this precedent to require a showing of both "but for" and proximate causation.  *Rothstein IV*, 708 F.3d at 95 (citing *Holmes*, 503 U.S. at 266-68); *Al Rajhi Bank*, 714 F.3d at 123-24 (citing *Holmes*, 503 U.S. at 266-68).

4

In eliminating "but for" causation, this Court opined that such a requirement would "eviscerate" plaintiffs' claims and "deprive the [ATA] of any force . . . in a case like this." Tr. 3118.  However, the role of a court is not to find a way to make a statute fit a particular set of facts, but rather "to apply the statute as it is written—even if [it] think[s] some other approach might accord with good policy."  *Burrage*, 134 S. Ct. at 892 (citation omitted); *see also Al Rajhi Bank*, 714 F.3d at 124 (dismissing ATA claims after concluding that banks are not liable "'for injuries done with money that passes through [their] hands'") (citation omitted)).  *Cf. Krishanthi v. Rajaratnam*, 09-CV-5395, 2014 WL 4677175, at *4-5 (D.N.J. Sept. 19, 2014) (finding no specific jurisdiction over alleged terrorist "front" charity absent allegations that its in-state fundraising was a "but for" cause of the terror attacks that injured plaintiffs).[3]

With regard to proximate causation, the Supreme Court has also found that the phrase "by reason of" requires a showing of "'some direct relation between the injury asserted and the injurious conduct alleged.'"  *E.g., Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes*, 503 U.S. at 268)).  Requiring proof that the defendant's conduct "directly caus[ed] the [plaintiffs'] harm," *Hemi Group*, 559 U.S. at 11, is consistent with the "general tendency of the law, in regard to damages at least, . . . not to go beyond the first step" in assigning liability.  *Holmes*, 503 U.S. at 271-72 (citation omitted).

In accordance with this precedent, the Second Circuit has repeatedly affirmed the dismissal of ATA claims against banks, citing the absence of a direct causal relationship between financial services and injuries incurred by terror victims.  *Rothstein IV*, 708 F.3d at 95-97; *Al Rajhi Bank*, 714 F.3d at 123-24.  Indeed, proof of proximate causation under a "by reason of"

---

[3]    As the Bank previously explained (*e.g.*, Bank's Rule 50(b) Mot., at 3 n.7 (Oct. 10, 2014) (incorp.)), plaintiffs' argument that they were not required to prove "but for" causation relies on inapposite authority; nor can they cite any authority supporting this Court's complete elimination of the factual causation element of their claims.

statute, like the ATA, is "a different showing of proximate cause—*one that is often more difficult to make*— . . . than when bringing a common-law cause of action." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 278 (2d Cir. 2006) (emphasis supplied) *accord Rothstein v. UBS AG*, 772 F. Supp. 2d 511, 513 (S.D.N.Y. 2011) (finding that the ATA's "'by reason of' language has typically been construed to be synonymous with . . . 'proximate cause narrowly defined'" (citation omitted)).

> This Court's elimination of the "but for" factual causation and "direct" proximate causation elements of plaintiffs' claims conflicts with controlling law and would have profoundly impacted any reasonable juror's deliberations such that a new trial is warranted.

**B.** **It Was Error For The Court To Instruct The Jury That A Violation Of 18 U.S.C. 2339B(a)(1) Is An "Act Of International Terrorism" Under 18 U.S.C. 2331(1)(A)-(C).**

> A plaintiff asserting an ATA claim must prove that *the defendant* committed "an act of international terrorism." 18 U.S.C. § 2333(a). "An act of international terrorism" is defined by the ATA to include activities that: (1) "involve violent acts or acts dangerous to human life"; (2) violate U.S. criminal law; (3) "appear to be intended" to "intimidate or coerce a civilian population," "influence the policy of a government by intimidation or coercion," or "affect the conduct of a government by mass destruction, assassination, or kidnapping"; and (4) "occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries[.]" 18 U.S.C. § 2331(1)(A)-(C). These are "four separate requirements." *Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 68 (2d Cir. 2012).

> Yet this Court instructed the jury that "[a] violation of 18 U.S.C. § 2339B is itself an act of international terrorism." ECF No. 1162 at 15. That instruction was manifest error. While some courts have found that a violation of Section 2339B "involve[s] violent acts" and crimes, sufficient to satisfy Section 2331(1)(A) (a finding that the Bank disputes (ECF No. 1135-1 at 23-25 (incorp.)), plaintiffs should not have been relieved of their burden to prove that the

6

Bank's conduct satisfied the remaining elements of the "*definitional requirement*" of an act of "international terrorism" under Sections 2331(1)(B)-(C).  *Weiss v. Nat'l Westminster Bank PLC*, 13-CV-1618, 2014 WL 4667348, at *4 n.6 (2d Cir. Sept. 22, 2014) (emphasis supplied); *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 474, 493 (E.D.N.Y. 2012).

Courts have expressly held that a violation of Section 2339B is not, by itself, "an act of international terrorism" under Section 2331(1)(A)-(C).  *E.g.*, *Weiss*, 2014 WL 4667348, at *4 n.6; *Stansell v. BGP, Inc.,* 09-CV-2501, 2011 WL 1296881, at *6-9 (M.D. Fl. Mar. 31, 2011) (dismissing ATA claims for failure to plead adequately a violation of Section 2331(1)(B), despite allegations sufficient to plead violations of Sections 2331(1)(A) and 2339B); *Abecassis v. Wyatt*, 09-CV-3884, 2014 WL 988846, at *7 (S.D. Tex. Mar. 12, 2014) (pleading and proving a primary liability ATA claim premised on a violation of Section 2339B requires allegations and proof sufficient to satisfy, *inter alia*, the requirements of Section 2331(1)(B)); *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 46-48 (D.D.C. 2010) (same).

It was plain and substantial error for the Court to instruct the jury that proof of a violation of Section 2339B(a)(1) is equivalent to proof of "an act of international terrorism" under Sections 2331(1)(A)-(C).  This is especially true where, as here, the plaintiffs' evidence consisted largely of the Bank's routine processing of funds transfers, involving undesignated charities and individuals, with the participation of more than 50 other global banks (*see* ECF No. 1135-1 at 11-25).  By omitting essential elements of the plaintiffs' claims from the jury charge, this Court committed manifest error requiring a new trial.

**C.**      **It Was Error For The Court To Apply The Sanctions Order Broadly To Preclude The Bank From Having A Fair Opportunity To Defend Itself.**

This Court erred by refusing to modify or reconsider the sanctions order issued by Judge Gershon in 2010 prior to trial (*see* ECF Nos. 625 & 1041), as the Solicitor General of the

United States suggested in his brief to the Supreme Court (ECF No. 1015-1 at 23-24 (incorp.)), and by applying that order concretely and broadly to preclude the Bank from asserting a fair defense.

The Solicitor General concluded that Judge Gershon "erred in several significant respects" in issuing the sanctions order, including by performing an "erroneous" and "flawed" international comity analysis.  ECF No. 1015-1 at 8-9, 12.  He specifically criticized Judge Gershon for: (1) faulting the Bank for its compliance with U.S. requests for counter-terrorism cooperation (*id*. at 12-15); (2) concluding that the Bank faced no real penalty for violating foreign privacy law (*id.* at 15); (3) giving "scant weight" to the interests of foreign governments (*id.* at 16-17); (4) failing to consider the adverse impact of the sanctions order on the nation's counter-terrorism efforts (*id.* at 18-19); and (5) failing to consider the harm to U.S. foreign relations and Middle East stability of an adverse verdict driven by the sanctions order (*id.* at 21).

Judge Gershon was not privy to the views of the United States when she issued the sanctions order.[4]  Accordingly, this Court had the first opportunity to correct the "erroneous" sanctions order in light of the United States' views.  Instead, it summarily dismissed those views as "unpersuasive" (Hr'g Tr., at 3, July 14, 2014), even though they pertained to issues of national interest and foreign policy that fall squarely within the province of the Executive Branch.[5]

This Court recognized that the sanctions order "ha[d] a profound impact" on the trial (ECF No. 998), and made it "very difficult to defend the case" (Hr'g Tr. 37:22-24, July 30, 2013).  The inescapable force of these conclusions was manifest throughout the trial and denied

---

[4]     Arab Bank asked Judge Gershon to solicit the views of the United States with regard to this litigation on numerous occasions.  *E.g.*, *Almog*  ECF No. 192-1 at 2; *Almog* ECF No. 242 at 2; *Lev* ECF No. 11 at 5.  Each of those requests was denied.  *E.g., Lev v. Arab Bank, PLC*, No. 08-cv-03251, 2010 WL 623636, at *4 (E.D.N.Y. Jan. 29, 2010).

[5]     *E.g.*, *Whiteman v. Dorotheum GmbH & Co. KG*, 431 F.3d 57, 69 (2d Cir. 2005) ("[W]hen the United States Government submits statements of interest to federal courts, 'there is a strong argument that federal courts should give serious weight to the Executive Branch's view of the case's impact on foreign policy[.]'" (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 733 n.21 (2004))).

the Bank its due process right to defend itself. *Ins. Corp. v. Co. des Bauxites*, 456 U.S. 694, 707 (1982) (sanction that is not "'just'" violates "due process"); *Philip Morris v. Williams*, 549 U.S. 346, 353 (2007) (party cannot constitutionally be deprived of "an opportunity to present every available defense"). For example, the Court applied the sanctions order to preclude the Bank from introducing any evidence or testimony:

- to establish its innocent state of mind in providing any of the financial services at issue, other than those pertaining to one Lebanese account (*e.g.*, ECF No. 1060 at 1-3; ECF No. 1103 at 2; Tr. 2366, 2839-40, 2848, 3006-10, 3341);

- to demonstrate its efforts to counter the financing of terrorism at its foreign branches, where the vast majority of the financial services at issue occurred (*e.g.*, Tr. 2459-60, 2548, 3341; ECF No. 1103 at 2);

- to prove that its foreign anti-terrorism finance policies and protocols were more advanced than those of its regional peers during the relevant time period (Hr'g Tr. 7-22, July 30, 2014); and

- to respond to plaintiffs' use of the Bank's interrogatory response that it held 11 accounts for designated parties worldwide (including this Court's exclusion of the Bank's corresponding interrogatory response stating that it closed those 11 accounts pursuant to the designations (*e.g.*, Tr. 2769-70, 3179-82)).

Not only was the Bank broadly precluded from introducing any evidence or testimony that might find "proof or refutation in the withheld documents" (ECF No. 625 at 29), the Court also repeatedly instructed the jury that because the Bank "refused to provide certain documents" and "to answer questions," they were permitted to infer that the Bank knowingly provided financial services to Hamas terrorists (*see* ECF No. 1162 at 13; Tr. 1726-27, 3329-31).[6]

---

[6]     As discussed *infra* at II.A, this Court also improperly denied the Bank of any opportunity to explain that it did not produce certain foreign records due to the requirements of foreign law and the mandates of its foreign regulators. *E.g.,* Tr. 2796-97. Thus, the jury was only presented with this Court's repeated instruction that the Bank simply "refused" to comply with discovery orders, and plaintiffs' counsels' repeated suggestion that the Bank chose not to comply with those orders to hide evidence of misconduct (*e.g.,* Tr. 3252-54, 3258-60, 3277-78, 3285). This Court's instructions, combined with plaintiffs' counsels' false representations, and the Bank being precluded from offering evidence of its substantial efforts to comply with discovery orders despite the restrictions imposed by foreign privacy laws, were clear and substantial error and fatal to the Bank's opportunity to defend itself. *See, e.g., Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct.*, 482 U.S. 522, 546 (1987).

These preclusions and adverse inferences severely prejudiced the Bank at trial and improperly deprived it of its right to a fair trial.  A new trial is warranted.

**D.     It Was Error For The Court To Relieve The Plaintiffs Of Their Burden Of Proving That The Bank Provided Financial Services With An "Evil Motive" Or An "Intent To Harm" Someone.**

This Court refused to require the plaintiffs to prove that the Bank acted with an "evil motive" or an "intent to harm someone" because, it found, a criminal violation of Section 2339B does not require a showing of intent. Tr. 3121.  This was also clear error.

Courts have recognized that Sections 2331 and 2333(a) have their own *mens rea* requirements that must be proven in addition to the *mens rea* requirement of Section 2339B. *Rothstein v. UBS AG*, 772 F. Supp. 2d 511, 516 (S.D.N.Y. 2011) (Section 2333(a) "expressly require[s] intent"); *Nguyen v. Holder*, 10-71050, 2014 WL 3953758, at *5 (9th Cir. Aug. 14, 2014) (violations of Section 2331(1)(A) necessarily require proof of "an intent to harm someone").  While a knowing donor of funds to an FTO may have an "evil intent" to harm someone by augmenting the resources available to the organization, a financial institution cannot be found to possess such intention by providing commercial banking services, for which it is *receiving* compensation, unless one of its officers or directors harbors such a state of mind (*see infra* I.E).  *Cf. Kaplan v. Al Jazeera*, 10-CV-5298, 2011 WL 2314783, at *6-7 (S.D.N.Y. June 7, 2011); *see also Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 692 (7th Cir. 2008).

The requirement for plaintiffs to prove that the Bank acted with an improper intent was especially important in this case, where it is not contested that plaintiffs' evidence consisted largely of the Bank's provision of financial services to organizations that were, in many cases, *funded by* the U.S. government and were engaged in providing social services in response to a humanitarian crisis (*see* ECF No. 1135-1 at 13-14 (incorp.)).  It is far from clear

that providing financial services to such organizations evidenced a malicious intention; that question should have been presented to, and answered by, the jury.

The Court's decision to relieve the plaintiffs of their burden of proving that the Bank acted with an improper intent warrants a new trial.

### E. It Was Error For The Court To Instruct The Jury On Respondeat Superior Liability.

This Court also erred by instructing the jury that it could find the Bank liable under the ATA for the conduct of its worldwide employees and agents. ECF No. 1162 at 19-20. Under prevailing case law interpreting the analogous RICO statute, the jury should have been instructed that the Bank's liability must relate to the conduct of its officers and directors. *See Gruber v. Prudential-Bache Sec., Inc.*, 679 F. Supp. 165, 181 (D. Conn. 1987).[7] In rejecting the idea that low level employees and agents can subject a corporation to RICO liability, courts have cited RICO's criminal nature and financially ruinous treble damages remedy. *See Banque Worms v. Luis A. Duque Pena E Hijos, Ltda.*, 652 F. Supp. 770, 771-72 (S.D.N.Y. 1986); *Rush v. Oppenheimer & Co.*, 628 F. Supp. 1188, 1194-95 (S.D.N.Y. 1985).

This body of RICO case law fits the ATA like a glove. Here, plaintiffs' claims rested on their ability to prove that certain financial services processed by the Bank violated 18 U.S.C. 2339B—a criminal statute. *Linde v. Arab Bank, PLC*, 353 F. Supp. 2d 327, 331 (E.D.N.Y. 2004) ("[T]here is no claim under Section 2333(a) absent a criminal act."); *see also* Hr'g Tr. 104:7, July 30, 2013 ("this is a kind of quasi-criminal case"). And the jury's verdict subjects the Bank to treble damages liability. 18 U.S.C. 2333(a); *Litle v. Arab Bank, PLC*, 611

---

[7]     The analogous properties of the RICO and ATA statutes are striking and their "by reason of" provisions have been interpreted consistently to require a showing of both "but for" and proximate causation (*see supra* at I.A). *Compare* 18 U.S.C. § 1964(c) *with* 18 U.S.C. § 2333(a).

11

F. Supp. 2d 233, 242 (E.D.N.Y. 2009) (the ATA's treble damages remedy "reveals an intent to punish . . . unlawful conduct" (citations omitted)).

Nevertheless, this court rejected the analogous RICO line of authority because "[t]here's so much in the history of the ATA that tells us that we are to apply traditional tort principles[.]"  Hr'g Tr. 71:19-23, Apr. 24, 2013 (ECF No. 943) (the "Apr. 24th Hr'g Tr."); *accord Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 558 (E.D.N.Y. 2012).  But this *exact* legal reasoning was rejected *by this court* when it reversed its denial of the Bank's motion to dismiss plaintiffs' aiding and abetting claims.  *Compare Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 583 (E.D.N.Y. 2005) *with* Apr. 24th Hr'g Tr. 4:24-5:1; 67:3-8.  In fact, the notion that the ATA encompasses all "traditional tort principles" has been squarely rejected as incompatible with the ATA's treble damages remedy.  *See Litle*, 611 F. Supp. 2d at 242-43 (rejecting contribution claims); *Gill*, 893 F. Supp. 2d at 497 (rejecting a negligence standard of liability); Apr. 24th Hr'g Tr. 71:14-15 (rejecting a "recklessness" standard of liability).

It was error for the Court to relieve the plaintiffs of their burden of proving that the Bank's officers or directors committed an ATA violation that caused plaintiffs' injuries, and that error undoubtedly had a significant impact on any reasonable juror's deliberations.

## II.   THE COURT MADE PREJUDICIAL ERRORS IN ADMITTING AND EXCLUDING EVIDENCE.

### A.   It Was Error For The Court To Preclude All Evidence Of Foreign Law Proffered By The Bank To Demonstrate Its Innocent State Of Mind.

The Bank proffered four experts to provide testimony to the jury regarding banking law, regulation and practice in foreign jurisdictions placed in issue by the plaintiffs.  In granting plaintiffs' motion to exclude such evidence at trial, the Court held, among other grounds, that pursuant to Fed. R. Civ. P. 44.1, "questions of foreign law are not to be determined through a proffer of expert testimony given to the jury."  ECF No. 773 at 6.

That decision was erroneous because, as the Bank had demonstrated, Rule 44.1 is properly invoked only when—unlike here—issues of foreign law control.  *See* Opp'n To Pls.' Mot. To Exclude 16 Bank Witnesses, at 45-46 (Apr. 29, 2011) (Filed Under Seal) (incorp.) (citing, *inter alia*, *Carlisle Ventures, Inc. v. Banco Espanol de Credito, S.A.*, 176 F.3d 601, 602 (2d Cir. 1999)).  Similarly in error was the Court's alternative finding that evidence of foreign law is properly precluded because "compliance with . . . any law other than American law, is [not] relevant to whether [the Bank] violated the ATA."  ECF No. 773 at 6-7.

The Bank subsequently moved, pursuant to Rule 44.1, to explain:  (a) the Bank's right to reasonably rebut the adverse inference sanction by providing evidence of foreign bank privacy law; (b) that compliance with foreign law and regulation in jurisdictions at issue is probative of the Bank's state of mind; and (c) that Lebanese law and regulation is probative of the Bank's state of mind in its closure of the Hamdan account.  ECF No. 803 (incorp.).

By its Order dated May 14, 2013, the Court denied the Bank's motion.  With regard to evidence of foreign bank confidentiality law, the Court held that controlling law requires only that a sanction be "just"—a standard that it found sufficiently met by "instruct[ing] the jury regarding permissive adverse inferences without allowing the Bank to introduce evidence of foreign financial privacy laws."  ECF No. 945 at 3.  That decision was contrary to a body of case law cited by the Bank and unrefuted by plaintiffs, holding that when a party subject to an adverse inference for non-production—even in instances of "bad faith"—is precluded from rebutting that inference, "an otherwise permissive inference easily becomes an irrebuttable presumption."  *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 750 (8th Cir. 2004).

The Court similarly erred in rejecting the Bank's well-supported "state of mind" argument that compliance with foreign law was evidence of the Bank's law-abiding state of mind as "an invitation to nullification," and in rejecting its arguments that the opening and closing of

the Hamdan account, as well as the processing of transactions in that account, were conducted in full compliance with Lebanese law.  With this decision compounding the earlier error committed by the Court, the wrongful exclusion of relevant foreign law evidence was repeated, over the Bank's objection, throughout trial.  *E.g.*, Tr. 820-24; 2364-66; 2752-54; 2842-47.

The relevance of foreign law to the Bank's state of mind was not lost, however, on the jury.  Despite the Court's admonition to the jury "not to consider whether any conduct was illegal or legal under the law of any other nation" (ECF No. 1162 at 20), the jurors inquired during their deliberation:  "What is the law regarding the return of money when the SIC [Lebanon's Special Investigation Commission] doesn't respond to an inquiry?" Ct. Ex. 3.  With irrefutable evidence now at hand that the jurors considered Lebanese law to be relevant to the Bank's state of mind in its return of account funds at issue, the Court committed further error by rejecting the Bank's request that it instruct the jury that the Bank's "witnesses would have testified" that "you have to return the money under Lebanese law." Tr. 3360.  Instead, the Court denied relevant information expressly requested by the jury, stating "I have instructed you on the law on the principles that I think you need to know," and reasoning—contrary to the jurors' express reference to the SIC—that "[t]hey may be thinking there is some US law about the return of the money." Tr. 3364-65.

**B.** **It Was Error For The Court To Admit Out Of Court Statements By Alleged Members Of Hamas.**

The Court's admission into evidence of claims of responsibility by Hamas for acts of terrorism was manifest error.  This issue first arose when plaintiffs stated their intent to introduce, through their expert Evan Kohlmann, "communiqués" from Hamas of statements of responsibility for attacks at issue, "video clips with respect to certain suicide bombers prior to

14

their attacks," and a purported Hamas website mentioning an Arab Bank account number—all of which plaintiffs contended fall within an 804(b)(3) hearsay exception.  Tr. 309-10.

Initially noting with regard to one alleged Hamas communiqué (PX289), "I am not seeing how it is against interest" (Tr. 310), the Court subsequently overruled the Bank's hearsay objection, reasoning that because it "is a violation of the Antiterrorism Act, it could subject them [Hamas] to criminal penalties."  Tr. 310, 312.  The Court next admitted, over the Bank's objection, another purported Hamas communiqué (PX4767), claiming credit for the Park Hotel bombing.  *Id.* 366, 372.  Ultimately, the Court ruled that "[f]or future reference, it is a declaration, if someone says I have done or I am about to commit a terrorist act, which this effectively is, then I am going to overrule the objection. . . .  We don't have to come up."  *Id.* 418; *see also id.* 372-73; 416-20; 423; 425-27 (admitting PX3580, 3912, 3807, 3826).

The Court next addressed this issue concerning PX4030, another alleged Hamas claim of responsibility.  Again, the Court acknowledged initially that it "did not really strike me as a declaration against interest."  Tr. 816-17.  The Court nonetheless admitted portions of the exhibit, reasoning "the fact that it's a glorification does not mean it is not an adoption or a statement of shared responsibility[.]"  *Id.* 817-18.  The Court similarly admitted PX3744, another website claim, even while acknowledging that the exhibit "for the most part, is purely a glorification."  Tr. 819.

Although the basis for the "statement against interest" exception is that people "do not make statements which are damaging to themselves unless satisfied for good reason that they are true," Fed. R. Evid. 804(b)(3) advisory committee note, "[t]his assumption is negated when the declarant has ulterior motives for admitting conduct."  *See* 5-804 Weinstein's Fed. Evid. § 804.06[iii] (2012) ("If the statement or any part of it serves the declarant's interest, it is not admissible as a statement against interest.").  Here, the conduct at issue took place entirely

outside the United States and no evidence was introduced at trial to suggest that any alleged assailant feared prosecution in the United States for violation of the ATA.  The "video wills" of suicide bombers, in particular, cannot conceivably imply any fear of post-suicide prosecution.

This issue was recently addressed in *Gilmore v. Palestinian Interim Self-Gov't Auth.*, CV 1-853 (GK), 2014 WL 3719160, at *9-10 (D.D.C. July 28, 2014), in which plaintiffs argued that a Fatah operative's claim of responsibility for an East Jerusalem attack was a statement against penal interest admissible under Rule 804(b)(3).  The court found that the operative's "desire to 'assume responsibility' for the . . . attack suggests that he perceived public attribution for the attack to be *in* his interest, not contrary to it."  *Id.* at *10.  The operative's statement was therefore best characterized as "a publicity-seeking effort that was not contrary to his perceived interests."  *Id.*; *see similarly Strauss v. Credit Lyonnais*, S.A., 925 F. Supp. 2d 414, 449 (E.D.N.Y. 2013) (noting that "the interests and motives of terrorists are far from typical"); *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 569 (E.D.N.Y. 2012) ("Under the perverse assumptions of terrorists . . . [t]aking 'credit' for such an attack is deemed a benefit, not a detriment, and is not reliable under the circumstances[.]").

Here, there were no "guarantees of trustworthiness," 30 Fed. Prac. & Proc. Evid. § 6332 (1st ed.), sufficient to support the introduction of such evidence.  Mr. Kohlmann conceded at trial that he was not offering an opinion that statements in alleged Hamas websites are true (Tr. 503) and that such claims are often unreliable (*id.* 505).  The Court acknowledged that concession, stating "he's already given you . . . that while he finds that Hamas is more credible than most organizations, that does not mean they're always credible or always telling the truth."  *Id.* 537.  Plaintiffs' other attribution expert, Ronni Shaked, similarly conceded that groups like Hamas have "an incentive to claim responsibility for terrorist attacks" for

propaganda purposes, to gain political clout, to increase their popularity and to raise money.  Tr. 1267-68.

In light of such concessions by Plaintiffs' own witnesses, it was manifest error for the Court to admit as hearsay exceptions out of court statements of alleged responsibility by Hamas.

**C.**  **The Court Erred When It Allowed Plaintiffs To Use The FinCEN Settlement For Impeachment.**

Over repeated objections by the Bank, the Court allowed Plaintiffs to use the FinCEN Assessment of Civil Money Penalty dated August 17, 2005 (PX11) "for the limited purpose of impeachment."  Tr. 2696; ECF No. 1156.  The Court's rejection of the Bank's argument that the FinCEN Assessment was a settlement and any use of it would be unfairly prejudicial, was clear error.  Tr. 2696; ECF No. 1145 (incorp.).

Federal Rule of Evidence 408(a) was amended in 2006 to prohibit the use of a settlement or compromise "to impeach by a prior inconsistent statement or a contradiction."  It is widely understood that Rule 408 "embodies the strong federal policy favoring settlement of disputes by precluding the use of settlement-related materials."  *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 198-99 (S.D.N.Y. 2008).  The Rule bars use of "completed compromises when offered against a party thereto."  *Boyko v. Parker*, 960 F. Supp. 2d 1270, 1275 (D. Utah 2013) (quoting Fed. R. Evid. 408 advisory comm.'s 1972 n.).  Use of a compromise settlement for impeachment "would tend to swallow the exclusionary rule and would impair the public policy of promoting settlements."  Fed. R. Evid. 408, advisory comm.'s 2006 n.

The FinCEN Assessment falls within Rule 408 because it is indisputably a settlement. It expressly states that it is part of a "settlement" (PX11 at 9), and explains (*id*. at 1) that the Bank has entered into this settlement "without admitting or denying" FinCEN's findings:

> In order to resolve this matter, and only for that purpose, the Federal Branch of Arab Bank plc, New York, New York ("Arab Bank – New York") has entered into a CONSENT TO THE ASSESSMENT OF CIVIL MONEY PENALTY ("CONSENT") dated August 17, 2005, without admitting or denying the determinations by the Financial Crimes Enforcement Network, as described in Sections III and IV below, except as to jurisdiction in Section II below, which is admitted.

The "CONSENT" referred to in this quotation is a separate document that is "incorporated into this ASSESSMENT OF CIVIL MONEY PENALTY [*i.e.*, the FinCEN Assessment] by this reference." *Id.* The incorporated CONSENT states that the "provisions of this Order constitute a settlement of the civil money penalty proceeding contemplated by the Comptroller." PX20 at 4.

When the Court repeated its erroneous ruling (ECF No. 1156), it ignored entirely the prior ruling by Judge Weinstein that this same FinCEN Assessment is not admissible:

> This evidence [the FinCEN Assessment] would not even support a finding of negligence, since it is inadmissible. *See* Fed. R. Evid. 408(a) ([such] evidence . . . is inadmissible 'on behalf of any party—either to prove or disprove the validity or amount of a disputed claim *or to impeach* by a prior inconsistent statement or a contradiction').

*Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 566 (E.D.N.Y. 2012) (emphasis added). It did so, moreover, by relying on case law that has either been disapproved or is irrelevant. The Court held that use of the settlement was proper because it included "factual findings that FinCEN made in the process of discharging its legal duty to investigate." ECF No. 1156 at 2. The case principally relied on by the Court, *Option Res. Grp. v. Chambers Dev. Co., Inc.*, 967 F. Supp. 846, 850 (W.D. Pa. 1996), held that SEC findings in a settlement could be introduced because the SEC had made those findings as part of its legal duty. But *Option Resource* has been held to be inconsistent with Rule 408. *Carpenters Health & Welfare Fund v. The Coca-Cola Co.*, No.

1:00-CV-2838, 2008 WL 9358563, at *3-4 (N.D. Ga. Apr. 23, 2008). Other cases cited by this Court, *Mazuma Holding Corp. v. Bethke*, No. 13-cv-6458, 2014 WL 814960, at *6 (E.D.N.Y. Mar. 3, 2014), and *S.E.C. v. Pentagon Capital Mgmt., PLC*, No. 08-CV-3324, 2010 WL 985205, at *4-5 (S.D.N.Y. Mar. 17, 2010), are irrelevant because, as those cases explain, they concern the permissible use of a settlement for the purposes of *defending* an action.

Finally, the FinCEN Assessment did not contradict anything stated at trial by the Bank's witness Brian Billard, and therefore was not relevant for impeachment. Mr. Billard testified that he did not agree with the FinCEN Settlement, consistent with the statement set forth in the FinCEN Assessment that the Bank consents as a settlement "without admitting" FinCEN's determinations. PX11 at 1. Plaintiffs did not use the FinCEN Assessment to impeach Mr. Billard, but simply to put before the jury inadmissible and unfairly prejudicial statements set forth in a settlement agreement. Use of those statements is barred by Rules 408 and 403, and it was manifestly erroneous to permit them to be heard by the jury.

### D.    The Court Erred By Excluding The Bank's Expert Witnesses On The Saudi Committee.

The Court excluded the testimony of Robert Lacey, the Bank's expert on the Saudi Committee's humanitarian activities, as "irrelevant" because it was "fundamentally an attempt to paint a picture for the jury regarding the intent of the Saudi Committee and the motivations of Saudi Arabia," and because Mr. Lacey is not "an expert on terrorism or terrorism financing." *Linde v. Arab Bank, PLC*, 922 F. Supp. 2d 316, 328, 329 n.2 (E.D.N.Y. 2013) (citation omitted). The Court also denied reconsideration on these rulings. *See* ECF Nos. 940 & 1156. These decisions are manifestly erroneous.

First, this Court's decision to preclude Mr. Lacey's testimony because he was not proffered as a terrorism expert improperly presupposed the truth of the plaintiffs' allegations that

the Saudi Committee—an official instrumentality of the Saudi Kingdom—was a terror-affiliated entity.  Mr. Lacey should have been permitted to share his contrary opinions, informed by first-hand experience and investigations, with the jury.  Lacey Expert Report ¶¶ 20-35, 40-52.

Second, the Court ignored the decision by Judge Weinstein in *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523, 542 (E.D.N.Y. 2012), that Mr. Lacey was fully qualified:

> Defendant proffers Mr. Lacey to testify as to the legitimacy of Saudi Arabian humanitarian efforts directed at helping Palestinians living in Gaza and the West Bank, including the Saudi Committee relief program.  He opines on the background and origins of the Saudi Committee and responds to plaintiff's allegations that the Saudi Committee was a Hamas supporting organization to which the Bank provided material support. . . . Mr. Lacey's background and professional experience qualify as "specialized knowledge" gained through "experience, training, or education." Fed. R. Evid. 702.  Mr. Lacey's books about Saudi Arabia are the products of extensive study of modern Saudi Arabia through research of news and academic articles, the Saudi Committee website, bank-documents produced in this litigation, and interviews.  Mr. Lacey's testimony bears directly on the Saudi Committee's conduct.  It will help the jury assess whether the Bank acted recklessly, knowingly, or intentionally in its provision of financial services to the Saudi Committee.

This Court has never attempted to distinguish Judge Weinstein's reasoned decision.

Third, this Court improperly applied a double-standard by allowing plaintiffs' experts to testify on these very same matters.  At trial, Arieh Spitzen was permitted to testify that the Saudi Committee worked hand-in-glove with the Union of Good to support Hamas.  Tr. 1570, 1576, 1586.  He also testified that the findings of his research were consistent with plaintiffs' contention that the Saudi Committee was part of the Union of Good, which in turn had a "primary purpose" of "divert[ing] charitable donations to support Hamas members and the families of terrorists operatives." *Id.* 1577, 1580.  He testified that the evidence he reviewed showed that the Saudi Committee transferred money for the purpose of supporting Hamas and that this evidence helped him reach his conclusion "regarding the relationship between the contribution made by the Saudi Committee to Hamas." *Id.* 1586.  He testified that the Saudi

Committee payments were allegedly inordinately high, and that this enabled him to conclude that "the payments by the Saudi Committee to different prisoners of Hamas suicide bombers and to injured operatives of Hamas were extremely significant to them." *Id*. 1591-92. All of this testimony would have been countered by Mr. Lacey, who opined that the activities of the Saudi Committee met humanitarian needs and were not controlled or coordinated by Hamas (*see* Lacey Expert Report ¶¶ 15-17, 19-26, 28, 30, 40-52, 55; Lacey Rebuttal Report ¶¶ 13, 15-26), but the Court allowed only plaintiffs' side of the story to be presented to the jury.

This Court also excluded Bank expert David Rundell from testifying about his understanding, as the former *chargé d'affaires* of the U.S. Embassy in Riyadh, of the legitimate humanitarian mission of the Saudi Committee. *Linde v. Arab Bank, PLC*, 920 F. Supp. 2d 282, 285 (E.D.N.Y. 2011). While Mr. Spitzen was allowed to offer opinions about the purpose of the Saudi Committee and testify about the purported significance of Saudi Committee payments in light of the per capita income in Palestine (Tr. 1579-81, 1591-92), Mr. Rundell was foreclosed from offering his opinions on these same subjects, on which he reached opposite conclusions (*see* Rundell Expert Report ¶¶ 38-43, 48-49). This was clear error.

Finally, it was also erred in refusing, without explanation, the Bank's request to proffer a new expert on the Saudi Committee after the Court excluded the Bank's only remaining Saudi Committee expert. ECF No. 940. The cumulative impact of these orders was to deprive the Bank from offering any affirmative evidence in support of the legitimacy of the Saudi Committee.

### E. It Was Error For The Court To Admit Israel's List Of Prohibited Organizations.

Over repeated objections by the Bank, the Court admitted Israel's list of prohibited and unlawful organizations (PX1078 (the "Israeli List")). Tr. 1492-96. The Israeli

List reports that certain organizations were declared "unlawful associations" by Israel at certain times.  The organizations the Israeli List (*dated 2007*) says were declared unlawful *in 2002* includes the alleged Hamas "front" charities at issue.  The Court explained at sidebar that "it seems to me the fact that the list was out there suggests that the jury could draw an inference that the bank knew or was reckless in not knowing about that list," and admitted it without any limiting instruction.  Tr. 1495-96.  The admission was both erroneous and prejudicial.

First, the Israeli List is a foreign document reporting on foreign law.  The Court previously ruled that "compliance with . . . any law other than American law" is not relevant to whether the Bank violated the ATA (ECF No. 773 at 6-7) and barred the Bank from introducing such evidence.  But the Court applied a different standard for plaintiffs, allowing them to introduce the foreign law designation reported in the Israeli List.  The Israeli List is irrelevant and inadmissible under the Court's rulings on foreign law.

Second, as admitted by plaintiffs, the Israeli List was not submitted with an authenticating apostille (Tr. 1489), and their expert Arieh Spitzen did not provide a proper foundation for its admission.  Mr. Spitzen is not a foreign official who can authenticate the alleged publication in 2002 of what is reported in the 2007 Israeli List or the 2007 List itself.

Third, admitting the Israeli List into evidence—which, as explained above, was done despite the fact that it is irrelevant, not properly authenticated, and barred by the Court's other rulings on foreign law—was unfairly prejudicial to the Bank.

## III.  THE TRIAL STRUCTURE ADOPTED BY THE COURT SEVERELY PREJUDICED THE BANK AND BADLY CONFUSED THE JURY.

At plaintiffs' request, and over the Bank's repeated objections, this Court aggregated the claims of 286 plaintiffs, from eight different complaints, who alleged injuries resulting from 24 separate Hamas attacks, carried out by more than 100 alleged Hamas

operatives over a period of three years, to be tried together in one mass proceeding.  *E.g.*, ECF No. 644.  As predicted, this trial structure severely prejudiced the Bank by permitting plaintiffs to present evidence to the jury pertaining to 24 separate Hamas attacks, even though that evidence was irrelevant to particular incidents.  ECF No. 946 (incorp.).

> For example, the first of the 24 attacks that the jury had to consider was a March 28, 2001 bombing near Nfar Saba.  Yet in deciding whether the Bank was liable for injuries resulting from that attack, the jury was presented with evidence of bank transactions pre-dating and post-dating that attack by many years (*e.g.*, Tr. 847-61; PX4747-53).  They even heard some evidence dating from as late as 2014 (*i.e.*, IRFAN's designation on April 28, 2014 (*see* Tr. 639)).  The jury also received evidence of thousands of Saudi Committee payments that post-dated the Nfar Saba incident by months and years (*e.g.*, Tr. 868-74; PX4759-62), and inflammatory evidence about the 23 other alleged Hamas attacks, including evidence relating to the 93 alleged perpetrators and accomplices involved in those attacks (*e.g.*, Tr. 1029-1249).  None of this evidence was relevant to the jury's consideration of whether the Bank was liable to the plaintiffs who were injured as a result of the Nfar Saba bombing.

> Nor was this Court's instruction to the jury that, *inter alia*, "[i]n considering whether a particular item of evidence is relevant to a particular attack, you should use your common sense" (ECF No. 1162 at 18-19), sufficient to cure the prejudice caused to the Bank by this mass proceeding.  No instruction to the jury could "unring the bell"; forcing the Bank to defend itself against the plaintiffs' inflammatory claims in this sprawling proceeding deprived it of its right to a fair defense.  *See* 8 Moore's Fed. Practice § 42.10[5][d][i] (3d ed. 2013) ("Consolidation is inappropriate when it will adversely affect the rights of the parties[.]").  As the Second Circuit has held, "[a]lthough consolidation may enhance judicial efficiency, [c]onsiderations of convenience and economy must yield to a paramount concern for a fair and

impartial trial." *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993), *on reh'g*, 35 F.3d 637 (2d Cir. 1994) (citation omitted). Thus, "aggregate litigation must not be allowed to trump . . . individual justice," and courts must "take care that each individual plaintiff's—and defendant's—cause not be lost in the shadow of a towering mass litigation." *Id.; accord Arnold v. E. Air Lines*, 712 F.2d 899, 906 (4th Cir. 1983) (*en banc*) (rejecting "convenience" of consolidation where the consequence is "harmful and serious prejudice").

The similarities among some of the alleged Hamas incidents prevented the jury from distinguishing the evidence pertinent to each. *See Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 349 (2d Cir. 1993) (48 injury claims consolidated for trial improperly presented the jury with "a dizzying amount of evidence"). The six week *Linde* trial, which aggregated evidence relating to 24 separate Hamas attacks, and thousands of banking transfers processed on behalf of hundreds of individuals and organizations over a ten year time period, presented the jury with a "dizzying amount of evidence" that doubtless muddled their deliberative process with regard to the Bank's alleged liability for each of the 286 plaintiffs' injuries.

As the Bank demonstrated in its motion papers in support of judgment (ECF No. 1135-2 (incorp.)), plaintiffs did not even identify the individuals responsible for committing certain attacks, not to mention any financial services that had any alleged connection, however attenuated and remote, to half of the incidents at issue. The jury's liability verdict can only have resulted from the extreme prejudice to the Bank caused by this mass proceeding, and the jury's inability to evaluate the evidence on an incident-by-incident basis.

A new trial is required to correct this miscarriage of justice.

## CONCLUSION

For the reasons stated herein and in the Solicitor General's brief (ECF No. 1015-1), the Bank respectfully submits that this Court committed substantial errors in conducting the trial, including by applying a sanctions order found to be "erroneous" by the United States, issuing flawed jury instructions that relieved plaintiffs of their burden to prove essential elements of their ATA claims, and improperly admitting and excluding evidence that was pertinent to the jury's deliberations.  With the liability proceeding completed, the time to correct these errors is now.  A new trial should be ordered pursuant to Fed. R. Civ. P. 59.

Dated: New York, New York
       October 10, 2014

Respectfully submitted,

**DLA Piper LLP (US)**


_____/s/_____
Shand S. Stephens
Anthony P. Coles
Brett Ingerman
1251 Avenue of the Americas
New York, New York 10020
(212) 835-6000
*Attorneys for Defendant Arab Bank plc*

OF COUNSEL:
Kevin Walsh
Douglas W. Mateyaschuk, II
Steven Young
Michael Hepworth