OSEN LLC
ATTORNEYS AT LAW
WWW.OSENLAW.COM

2 UNIVERSITY PLAZA, SUITE 201, HACKENSACK, NJ 07601          345 SEVENTH AVENUE, 21ST FLOOR, NEW YORK, NY 10001
T. 201.265.6400   F. 201.265.0303                             T. 646.380.0470  F. 646.380.0471

October 31, 2014

**VIA ECF**

Hon. Brian M. Cogan
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Linde v. Arab Bank, PLC*, **04-CV-2799 (BMC)(VVP) and related cases**

Dear Judge Cogan:

      We write on all behalf of all Plaintiffs in advance of the upcoming November 7, 2014 status conference to preview our suggestions regarding the next phase of trial, concerning damages for those Plaintiffs whose claims arise out of the 24 attacks for which the jury found Arab Bank liable.

      The proposals set forth below are aimed at commencing a damages trial in April or May 2015, and completing the trial in approximately 10 weeks. Many of our proposals are reflected in a letter we sent to Defendant's counsel on October 17, 2014, which (along with its attachment) is attached as <u>Exhibit A</u>. The parties engaged in a meet-and-confer teleconference on October 29, 2014 and Defendant's counsel has represented that the Bank will provide a written counter-proposal on Monday, November 3. Accordingly, our views may be subject to further revision and supplementation on November 7th depending on the Bank's response to our proposals.

      The damages phase of trial involves 311 Anti-Terrorism Act (ATA) claimants, seeking recovery for 6 different categories of injuries from the 24 attacks:

      1.    <u>**23**</u> claimants for whom wrongful death claims are pursued on behalf of an estate.

      2.    <u>**2**</u> claimants who suffered catastrophic physical injuries.

      3.    <u>**1**</u> claimant who suffered a physical brain injury.

      4.    <u>**39**</u> claimants who were physically injured in an attack, but who did not suffer a physical brain injury, or did not suffer a catastrophic physical injury (*e.g.* – were

        not left a quadriplegic, paraplegic, wholly or significantly partially paralyzed, continuing coma, etc.).

5. **15** claimants physically present at attacks, who did not require extensive medical attention for physical injuries (if any), but who are seeking damages for their emotional injuries.

6. **231** claimants who are family members of victims of attacks suffering from trauma and grief related injuries.

The damages phase warrants implementing methods and techniques that expeditiously, but fairly, resolve the claims. The proposals described below fall well within the Court's discretion under Fed. R. Civ. P. 42, and also stem from the flexibility the Court enjoys under Rule 1 and Rule 16(c)(2)(L), the latter of which permits district courts to "adopt[ ] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems."[1]

**Damages Discovery**

As a threshold matter, Arab Bank has no inherent right to take further damages discovery. As we advised the Bank in Exhibit A, Defendant had more than 10 years to undertake damages discovery. It has had Plaintiff Profile Forms ("PPF") in hand for years.[2] Furthermore, for nearly a decade, Defendant has been receiving the Plaintiffs' medical records and damages-related discovery documents on a rolling basis. The record reflects that, to date:

- The Bank deposed **108** of the Plaintiffs whose liability-side claims were the subject of the verdict.[3]

---

[1] See Simon v. Philip Morris Inc., 200 F.R.D. 21, 26-27 (E.D.N.Y. 2001) ("…the drafters of the Federal Rules of Civil Procedure insisted that trial judges have an affirmative duty to exercise their authority to ensure the availability of a fair and efficient remedy for every wrong so that "civil litigation is resolved not only fairly, but also without undue cost or delay) (quoting Fed. R. Civ. P. 1 Advisory Committee Note). See also Adinolfe v. United Technologies Corp., ___ F.3d ___, 2014 WL 4958080, at *4 (11th Cir. Oct. 6, 2014) (relying upon Rule 16(c)(2)(L) for principle that district courts have "broad discretion in deciding how best to manage the cases before them").

[2] Defense counsel originally advised that PPFs likely obviated the need to depose most individual Plaintiffs, but then withdrew that representation. See September 21, 2006 Conf. Tr. at 64:1-66:25 (attached hereto as Exhibit B).

[3] Arab Bank's prior tactics in conducting "damages" depositions in these cases (whether Plaintiffs from this trial or for Plaintiffs whose claims arose from other attacks) constituted outright harassment. For example, the deposition of Caroline Najar, the wife of an individual killed in a 2003 suicide bombing, included extensive questioning about events that allegedly took place in Haifa in 1947 and 1948 and which bore absolutely no relevance to her claims for damages for the loss of her husband. See attached Exhibit C (Deposition Transcript of Caroline Najar (July 20, 2008)). These same issues arose in the deposition of Fatina Karkabi, the wife of an individual killed in a 2003 suicide bombing in Haifa. See attached Exhibit D (Deposition Transcript of Fatina Karkabi (July 24, 2008)). In the deposition of Esther Avraham, whose husband was killed in a 2004 suicide bombing, defense counsel asked only approximately ten pages worth of questions concerning Ms. Avraham's

- The Bank received agreed-upon PPFs for **191** of the Plaintiffs whose liability-side claims were the subject of the verdict.[4]

- The Bank undertook no Rule 35 medical exams for any of the injured Plaintiffs whose liability-side claims were the subject of the verdict.

- The Bank did not seek to depose <u>any</u> Plaintiff's treating physician, despite the fact that they were disclosed in both PPFs and medical records.

- The Bank did not seek to depose <u>any *other* fact witnesses</u>

During the October 29 meet and confer, Mr. Stephens estimated that the Bank would require approximately 18 months to complete additional damages discovery and anticipated deposing approximately 10 additional witnesses *per Plaintiff*.[5] Given the protracted history of the litigation, such a position is neither reasonable nor warranted. Thus, even if Defendant's anticipated proposal scaled back these costly, time-consuming proposals, as set forth in <u>Exhibit A</u>, Plaintiffs believe that any further damages discovery should proceed under the following proposed schedule:

a. 120 days following entry of a scheduling order, any retained expert reports, or Rule 26(a)(2)(C) disclosures submitted by either side would be exchanged. Upon review of the reports the parties would confer on whether there is a need to depose any retained experts,[6] and would complete any such depositions no later than 160 days after entry of the scheduling order.

b. 60 days after entry of a scheduling order, Plaintiffs would identify all treating physicians and other treating health professionals (*e.g.* – physical therapists, mental health professionals, occupational therapists) likely to testify at trial.

c. Defendant would complete depositions it chooses to conduct of identified treating physicians or treating health professionals in Paragraph "b" above within 100

---

injuries out of an 84-page transcript. *See* attached Exhibit E (Deposition Transcript of Esther Avraham (Oct. 24, 2007)). In June 2009, Judge Gershon observed that Defendant's deposition questions were frequently harassing, irrelevant, inappropriate, and improper. *See* Jun. 3, 2009 Conf. Tr. at 15:4-20:13 (attached as Exhibit F).

[4] Of the 191 plaintiffs who submitted a PPF, seven (7) were also deposed. Eight (8) Plaintiffs have neither been deposed nor provided a PPF. Plaintiffs are prepared to correct the oversight and arrange to provide PPFs for this group of Plaintiffs in the next 30 days.

[5] During the parties' meet-and-confer, defense counsel claimed that because that the attacks and injuries at issue span a 10-14 year period, the Bank is entitled to depose all Plaintiffs, all physicians, all family members with knowledge of Plaintiffs' injuries, and all employers where an economic loss claim is sought.

[6] *See* Fed. R. Civ. P. 26(a)(2)(B), 1993 Advisory Committee Notes ("Since depositions of experts required to prepare a written report may be taken only after the report has been served, the length of the deposition of such experts should be reduced, and in many cases the report may eliminate the need for a deposition.")

        days of Plaintiffs' identification. All such depositions would be conducted in the city in which such treating physicians or treating health professionals practice medicine.

    d.    Within 30 days of entry of a scheduling order, Plaintiffs would identify any additional fact witnesses (other than treating physicians or treating health professionals) who will testify at trial. Any such witnesses not already deposed will be made available for deposition in New York within 45 days after entry of a scheduling order.[7]

    e.    Plaintiffs have also proposed that the Bank stipulate to the authenticity of several categories of records likely to be offered at trial to obviate the need to present testimony on that subject, including: police records, medical records, school, wage and employment records; and forensic examiner's records. If the Defendant refuses to so consent, Plaintiffs would request that the Court convene a separate conference at least 30 days before trial to resolve such objections.[8]

As noted above, Defendant has had over <u>10 years</u> to initiate and address damages discovery. Other than reneging on its initial representation to rely upon PPFs, the Bank has taken no initiative to date. Indeed, the parties first learned that the Court intended to bifurcate the trial between liability and damages in June 2009, but apart from conducting often harassing depositions of the Plaintiffs, the Bank initiated no meaningful damages-related discovery for *five years*. In the five years since June 2009, the Bank has taken nine (9) additional Plaintiff depositions. Accordingly, the Bank should be required to establish good cause to proceed with any further discovery outside the universe of witnesses Plaintiffs will identify under the proposal set forth above,[9] and require the Bank to complete any such discovery in the next 160 days.

**<u>Damages Trial</u>**

Based on the proposed damages discovery schedule, trial could commence sometime in mid-April (or at such time as the Court's calendar permits). Plaintiffs believe that significant categories of evidence can be presented on behalf of <u>all</u> claimants to shorten the trial and increase efficiency. For example, in order to avoid duplication and unnecessarily prolonging the trial, expert testimony on such issues as the symptoms of PTSD and severe trauma that follow terrorist attacks could be presented on behalf of all Plaintiffs at the trial's outset prior to

---

[7] This is largely needed to ensure that there are sufficient witnesses for each attack who are available to testify during the actual trial (since that requires overseas travel for many of them), but Plaintiffs anticipate that the additional witnesses, if any, will not exceed 10 individuals.

[8] As the Court knows, Defendant has consistently refused to stipulate to the authenticity of patently authentic documents regardless of Fed. R. Evid. 901's liberal standards.

[9] Minimally, Defendant should be required to provide detailed proffers of the anticipated discovery testimony to demonstrate that it is not duplicative, burdensome, or cumulative. *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii) (permitting court to limit frequency and extent of discovery, in circumstances where the "party seeking discovery has had ample opportunity to obtain the information by discovery in the action.").

Hon. Brian M. Cogan, U.S.D.J.
October 31, 2014
Page 5 of 5

presenting evidence specific to individual injuries. Plaintiffs also anticipate presenting the testimony of certain fact witnesses who were on the scene of multiple attacks and can directly describe post-attack particulars regarding those attacks without need to recall them repeatedly.

**Conclusion**

The proposals set forth in our October 17, 2014 letter to defense counsel (Exhibit A) can be modified in a number of ways to reflect the Court's assessment of what would result in the most equitable and efficient trial. From Plaintiffs' perspective, what is most essential is that the Court implement a firm schedule that permits the jury to consider and issue a damages verdict expeditiously. Proceeding in that manner serves judicial economy by avoiding years of further contentious discovery and piecemeal trials. Expediting the final resolution of this matter makes particular sense because Plaintiffs initiated this action over 10 years ago and an unfortunate number of them have passed away before they could see justice rendered.

We look forward to receiving further guidance from the Court on November 7.

Respectfully submitted,

/s/ Gary M. Osen

Encl.

cc:     All Counsel