# Exhibit F

```
                                                                    1


 1                         UNITED STATES DISTRICT COURT
                           EASTERN DISTRICT OF NEW YORK
 2
     ---------------------------------X
 3   LINDE, et al.,                    :   CV-04-02799-NG-VVP
                    Plaintiffs,        :
 4         v.                          :   U.S. Courthouse
                                       :   Brooklyn, New York
 5   ARAB BANK, PLC,                   :
                                       :
 6                  Defendant.         :   TRANSCRIPT OF PROCEEDINGS
                                       :   June 3, 2009
 7   ---------------------------------X   2:40 p.m.
     LITLE, et al.,                    :   CV-04-05449-NG-VVP
 8                                     :
                    Plaintiffs,        :
 9         v.                          :
                                       :
10   ARAB BANK, PLC,                   :
                                       :
11                  Defendant.         :
     ---------------------------------X
12   ALMOG,, et al.,                   :   CV-04-05564-NG-VVP
                                       :
13                  Plaintiffs,        :
           v.                          :
14                                     :
     ARAB BANK, PLC,                   :
15                                     :
                    Defendant.         :
16   ---------------------------------X
     COULTER,, et al.,                 :   CV-05-00365-NG-VVP
17                                     :
                    Plaintiffs,        :
18         v.                          :
                                       :
19   ARAB BANK, PLC,                   :
                                       :
20                  Defendant.         :
     ---------------------------------X
21   AFRIAT-KURTZER, et al.,           :   CV-05-00388-NG-VVP
                                       :
22                  Plaintiffs,        :
           v.                          :
23                                     :
     ARAB BANK, PLC,                   :
24                                     :
                    Defendant.         :
25   ---------------------------------X


                                                    M. BRYMER, RPR, OCR
```

15

1  by order of the Court.
2         Now, going ahead to the rest of the depositions, I
3  reviewed the -- in detail the sample depositions that were
4  submitted to the Court.  What they showed to me was that
5  damages questions have been very limited and, as I say, easily
6  could have been done by questionnaire.  Questions, for
7  example, where did the decedent work, how much did he earn and
8  asking the witness who's the survivor do you work.  Questions
9  of that nature.  It may take two or three pages out of the
10 entire deposition.
11        The remainder of the deposition questions have been
12 with very few exceptions -- and I'll get to that -- improper
13 as seeking blatant hearsay and, also, are likely irrelevant.
14 Indeed, so irrelevant and inappropriate to be in my mind
15 harassing and improper.  That is the record that I have before
16 me.
17        Judge Pohorelsky in his questions to counsel in
18 September '08 at the hearing made clear that this was his view
19 as well and I agree with him.  He did not make any explicit
20 ruling to that effect, but I do so now.
21        The questioners acknowledge even as they ask the
22 questions that they don't expect the witnesses to have any
23 personal knowledge of the subject they ask about.  I am
24 talking in particular now here of the deposition of Carolyn
25 Majar (ph.) and of Bettina Karkabi, K-a-r-k-a-b-i.

                                               M. BRYMER, RPR, OCR

16

1       I could go through these depositions and identify
2  them, summarize it, but in the interest of saving our time I
3  won't do that.  I think suffice it to say that the defendant
4  in the opposition papers on the motion pending before me made
5  no effort to address the plaintiffs' argument as to the
6  impropriety and harassing nature of the questions.
7       Just to give a couple of examples, questions to
8  someone in their twenties:  Have you ever heard of some events
9  or others in 1948 or what have you heard about some subjects
10 that there's no reason to believe the witness knew anything
11 about.  So, this is not going to be permitted.  With respect
12 to the relevance of the questions, again, the defendant has
13 made no effort to establish the relevance.  The questions do
14 not go to the nature of the attacks themselves.
15      These two witnesses who I'm in particular referring
16 to were not present.  The questions going back into the
17 history, going back to 1948 I assume are justified in the
18 minds of the defendant on the grounds that the complaints
19 include allegations as to the history of the relations between
20 Israel and the Palestinians, but the fact the complaint
21 contains such allegations doesn't mean they will be relevant
22 on the trial of this case.
23      So, we need to focus on what is going to be relevant
24 here and to the extent that any history is relevant, we're
25 going to need to discuss what type of evidence the plaintiffs

M. BRYMER, RPR, OCR

17

1  intend to offer or the defendant intends to offer and most
2  importantly for what purpose.  Certainly it's clear that a
3  survivor of a relative who's killed in the suicide bombing is
4  not a proper source of such evidence.  The mere fact they live
5  in Israel doesn't make their grossly hearsay information about
6  what happened in 1948 usable at the trial.
7           By the way, nobody has mentioned to me anything about
8  expert testimony.  I don't know if the parties are intending
9  to use that.  I assume that maybe there was some discussion
10 before Judge Pohorelsky about expert evidence.  I just don't
11 know.
12          Then, with respect to relevance, the whole point of
13 the ATA, similar to the international law violations which are
14 alleged in the ATS, is the protection of civilians from attack
15 directed to them.  In the ATA, an international law, as I have
16 described it in the Elmont decision, have already determined
17 that certain kinds of attacks are prohibited.  That issue is
18 not going to be revisited in the trials to come.  And it
19 struck me that some of these questions that are being asked
20 are an effort to suggest somehow to the witness that the
21 attack is not really an attack that's covered by the law or
22 some such thing, not that the witness has any idea what the
23 law is or is a proper person to ask.  It seems to me that
24 they're going very far afield.
25          Now, there is one area -- and that's why I asked

                                                                18

1   about whether there was ever any initial discovery in this

2   case, which I now know there wasn't, there is one area which

3   is precisely covered by the examples which Mr. Walsh gave

4   which is that the plaintiffs, if they weren't killed but were

5   injured, undoubtedly know something about the attack, they

6   were there.

7           So, it seems to me that where there's an issue about

8   personal knowledge by someone -- well, it could be a family

9   member, if they were present at the attack, such a person who

10  has personal knowledge of the attack and of the attacker is

11  properly deposed on that subject.  And what I want to know is

12  why we don't know who those plaintiffs are and who has such

13  information.  It seems to me that that is what we should have

14  and either the plaintiffs provide that information to the

15  defendant, which you should be able to do, and then the

16  defendant decides that those are the people that if he wants

17  to he can depose.  But short of personal knowledge of that

18  sort, I don't see the basis for deposition now as to

19  liability.

20          Mr. Walsh.

21          MR. WALSH:  May I respond very briefly, your Honor?

22          THE COURT:  Yes.

23          MR. WALSH:  First, most of these depositions have

24  been very brief, fewer than two or three hours.

25          THE COURT:  Let me say something.  I have to


                                                  M. BRYMER, RPR, OCR

19

```
 1  respond.  Two or three hours of harassment is two or three
 2  hours too much.
 3          MR. WALSH:   Your Honor, it has been --
 4          THE COURT:  So, the fact that they were short is
 5  irrelevant to me.  The same way, turning to the plaintiffs,
 6  the fact that these depositions are expensive, it is
 7  relevant.  Of course, we have to be concerned about expense,
 8  but the plaintiffs chose to bring all of these cases together
 9  in one complaint or a series of complaints, avoiding a very
10  expensive filing fee that we have in this court and saved tens
11  of thousands of dollars by doing that.  So, I'm not that
12  sympathetic to the cost argument that the plaintiff made and
13  I'm not at all sympathetic to the fact that the depositions
14  were short.
15          MR. WALSH:   May I only note, your Honor, that it has
16  been our intention to conduct these depositions with courtesy
17  and civility - this is important to me and my colleagues - and
18  that we wish to treat our adversaries with utmost respect.
19          There are some many hundreds of depositions, two that
20  were perhaps needed as inflammatory that were selected for
21  your consideration, but we invite the Court, because we take
22  the Court's observations very seriously, to consider a broader
23  spectrum so we can demonstrate to the Court that we have
24  conducted ourselves properly and would never have contemplated
25  harassing the plaintiffs in this case.
```

                                                    M. BRYMER, RPR, OCR

20

1          THE COURT: Let me just be clear, I'm not talking
2     about anybody shouting at a witness or being uncivil in that
3     way. I'm talking about the context and I adhere to my ruling.
4          Now, going on with what I'm saying about what we
5     really have to focus on here and it bears on the trial
6     structure as well, I think counsel need to focus in on this.
7     Arab Bank obviously is entitled to challenge whether certain
8     attacks were terrorist attacks or simply random crimes or
9     street crimes and is entitled to challenge whether or not a
10    perpetrator was an independent bad actor or part of the
11    terrorist group. I don't know how the defendant is intending
12    to make its defense on those issues, but it can't be by asking
13    hearsay questions of survivors.
14         Now, of course, Judge Pohorelsky did not have before
15    him at the time he made his ruling my ruling regarding
16    damages, so obviously these rulings do modify his order. I'm
17    just trying to think of what is the best way to have the
18    plaintiffs' counsel identify any plaintiffs who have personal
19    knowledge because they were injured in the attack or were
20    present or for any other reason might have personal knowledge,
21    which doesn't mean what they heard from the police. I mean it
22    means personal knowledge of the attacks. Mr. Elsner.
23         MR. ELSNER: I think that can be accomplished in the
24    profile form of the questionnaire. Simple question, whether
25    you were present or not at the attack and whether you have

                                                    M. BRYMER, RPR, OCR