

DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York  10020-1104
www.dlapiper.com

Shand S. Stephens
shand.stephens@dlapiper.com
T   212.335.4594
F   212.335.4501

November 4, 2014

*VIA ECF*

Honorable Brian M. Cogan
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:**   *Linde v. Arab Bank, PLC*, **04-CV-2799 (BMC) (VVP), and related ATA cases**

Dear Judge Cogan:

On behalf of Arab Bank, PLC (the "Bank"), we write in anticipation of our November 7 status conference to propose a final resolution of the liability claims decided by the jury verdict, and with regard to the damages phase of trial.  We also write to respond to Plaintiffs' letter of October 31 to the Court.  That letter was sent to the Court in the middle of the parties' "meet and confer" process, which was to continue this week, as the letter itself acknowledges.  Plaintiffs' hastily filed letter contradicts earlier, accurate representations made to this Court and Judge Gershon about the status of damages phase discovery, and makes an unfairly prejudicial trial proposal that would, for instance, deny the Bank basic discovery of Plaintiffs' treating physicians, and fact witnesses—other than those Plaintiffs want to call at  trial.

**A.     Expediting Review of Liability Issues**

The Bank has moved under Rules 50 and 59 for judgment as a matter of law or a new trial, and in the alternative for certification for interlocutory appeal under 18 U.S.C. § 1292(b) if the Rule 50 and 59 motions are denied.  All motions will be fully briefed by December 12, 2014.  If the Court does not grant the Rule 50/59 motions, we believe it will materially advance the final resolution of this case to obtain prompt appellate review of the core issues raised in those motions, as there is no realistic prospect of any final resolution on the claims of any of the Plaintiffs until the liability issues are reviewed on appeal.  Interlocutory appeal under § 1292(b) is designed for situations in which the trial court believes it has ruled correctly but recognizes that there is "a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  The Bank's § 1292(b) motion focuses on three such issues:

1.  Whether the sanctions against the Bank for non-production of bank records (*Linde v. Arab Bank, PLC*, 269 F.R.D. 186 (E.D.N.Y. July 12, 2010)) were excessive.  As the Court



Honorable Brian M. Cogan
November 4, 2014
Page 2

knows, when the sanctions order was raised before trial in a mandamus petition by the Bank, the Supreme Court asked for the views of the Solicitor General. In the brief submitted on behalf of the United States, the Solicitor General advised the Supreme Court that the trial Court's international comity analysis was based on multiple material errors and that some of those errors worked against counter-terrorism efforts by the United States. (Brief for the U.S. as Amicus Curiae, pp. 9-21.) The United States was concerned, for example, about "the sanctions order's potential to harm counterterrorism efforts," and that "[t]he sanctions order could undermine the United States' vital interest in maintaining close cooperative relationships with Jordan and other key regional partners in the fight against terrorism." (*Id.* at 19.) The United States concluded that mandamus review was inappropriate before the liability trial clarified the scope of the sanction (*id.* at 21), but trial is now complete. The United States' views demonstrate substantial grounds for difference of opinion on the comity analysis that led to the sanctions order. The differences of opinion on sanctions against the Bank expressed by Judge Weinstein in *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 549-53 (E.D.N.Y. 2012), and by Magistrate Judge Pohorelsky in *Linde* (R. & R., ECF No. 560, at 15) prior to Judge Gershon's decision, also support interlocutory appeal under § 1292(b).

      2. Whether the Court erred in its jury instructions on causation. There is substantial ground for difference of opinion on this Court's decision not to instruct the jury that liability requires proof of "but for" and "direct" causation. As the Court is aware, this year the Supreme Court reaffirmed that as a matter of statutory interpretation, "the phrase, 'by reason of,' requires at least a showing of 'but for' causation." *Burrage v. United States*, 134 S. Ct. 881 (2014) (internal citation and quotation marks omitted); *see University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2525 (2013) ("but for" causation is textbook tort law). The ATA is no exception. (Arab Bank's Rule 50 Brief at 3-10; Arab Bank's Rule 59 Brief at 3-6.)

      3. Whether the Court erred in its jury instruction that as a matter of law a violation of 18 U.S.C. § 2339B(a)(1) is an act of "international terrorism" under 18 U.S.C. § 2331(1)(A)-(CC). (Bank Rule 59 Brief pp. 6-7; Bank Rule 50 Brief pp. 22-24.)

      The effect of the Court's rulings on these issues goes well beyond the parties to this case. The rulings affect international banking, international comity, the perceptions of Jordan and other allies of the United States' fight against terrorism, and the United States' interest in effective counter-terrorism that the Solicitor General believes is put at risk by the Court's rulings. Prompt appellate review is in the public interest, and a decision on these issues by an appellate court will provide a practical legal framework for a global resolution that cannot be achieved without appellate finality. In our "meet and confer," Plaintiffs stated that they wanted



Honorable Brian M. Cogan
November 4, 2014
Page 3

to delay any appeal until after the damage trials. Not only does Plaintiffs' position make it unlikely that a prompt resolution of the case can be achieved, but it will result in unnecessary cost, expense and use of judicial resources. The Bank believes that the most efficient process is to obtain appellate review of the certified questions before embarking on the damages phase of trial.

      **B.**      **Discovery and Trials on Damages**

In any event, Plaintiffs' October 31 letter also contradicts the record in this case on the status of damages discovery. Plaintiffs write to the Court that "Arab Bank has no inherent right to take further damages discovery." This clearly is wrong. The issue of damages discovery was a matter that was raised by the parties and expressly addressed at the time the Pre-Trial Order for the liability trial was submitted to the Court. The Pre-Trial Order accurately reflects the parties agreement regarding damages-related discovery. In the Order, Plaintiffs state "the parties have not commenced or completed discovery on the issue of damages, including exchange of any expert reports." (July 1, 2013 Joint Pre-Trial Order ("Pre-Trial Order" or "PTO"), at 9.) This representation reflects the prior proceedings before Judge Gershon. *See* July 22, 2010 Minute Order which provides that "[t]he court agreed to a bifurcated trial" and that "fact discovery *regarding liability* shall be completed by December 21, 2010." (Minute Order dated July 22, 2010 (*emph. added*).)

To date, Plaintiffs have not yet provided any authorizations for release of their medical and health records, nor have they identified the health and other professionals who have treated each of the Plaintiffs. From time to time some medical records have been produced by Plaintiffs on a scattershot basis, but there has been nothing approximating an orderly and complete disclosure of all records for all ATA Plaintiffs. Further, the fact that the Bank has taken the depositions of some of the Plaintiffs as part of the *liability* case has little bearing on its need for damages discovery going forward. As is clear from Judge Gershon's Order and the PTO, the purpose of those depositions was not damages discovery, but rather to find out information relevant to liability, such as what the Plaintiffs knew about the Bank and the incidents in which they were allegedly injured. Indeed, the Bank has not yet received medical authorizations for the Plaintiffs' medical professionals, and it has not had the opportunity to undertake Rule 35 medical exams or depose any of the Plaintiffs' treating physicians. Plaintiffs' letter also misstates the purpose of the Profile Forms. The Profile Forms were not intended to replace damages depositions or other damages discovery. Rather, Judge Gershon directed Plaintiffs to fill out the Profile Forms because it was "important for the defendant to be aware of the scope of damages if there's to be any hope that the parties might try to amicably resolve any or all of this case . . . ."



(June 3, 2009 Hr'g Tr. at 14:12-17.) The purpose of the Profile Forms was to give the Bank a basic understanding of the scope of the damages at stake in light of the fact that full damages discovery would not take place for several years.

There is no legal basis for denying the Bank full discovery on the extent of damages for each of the Plaintiffs. Fed. R. Civ. P. 26(b)(1) (permitting a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"). The relevant cases are legion, and they are ignored by Plaintiffs' submission: "No judge is granted power . . . to completely deny a party all opportunity to take depositions or to get affidavits essentially needed to get a fair trial of his case." *First National Bank v. Cities Service Co.*, 391 U.S. 253, 306 (1968) (Black, J., dissenting). A court abuses its discretion "when the discovery is so limited as to affect a party's substantial rights." *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 102-03 (2d Cir. 2008) (quoting *Long Island Lighting Co. v. Barbash*, 779 F.2d 793, 795 (2d Cir. 1985)). Rather, "[a] party must be afforded a meaningful opportunity to establish the facts necessary to support his claim." *Id.*; *see also Gaines v. Ski Apache*, 8 F.3d 726, 730 (10th Cir. 1993) (a court abuses its discretion "when a denial of discovery precludes a fair trial"). In bifurcated proceedings, such as here, damages discovery is routinely postponed until after the liability phase is completed. *Wyeth v. Abbott Labs.*, CIV.A. 08-230 JAP, 2010 WL 4553545, at *2 (D.N.J. Nov. 3, 2010) ("Having found that bifurcation is warranted, the Court finds that a stay of discovery with respect to damages is appropriate."); *Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 90 C 6247, 1996 WL 66111 (N.D. Ill. Feb. 13, 1996) ("In the interest of economy or justice, courts may postpone discovery on damages if it is separately triable from the issue of liability."); *Haworth, Inc. v. Herman Miller, Inc.*, 1:92 CV 877, 1993 WL 761974, at *1 (W.D. Mich. July 20, 1993) ("Discovery on damages shall be stayed until after resolution of defendant's liability is established."). Both the July 22, 2010 Minute Order, setting a date only for the end of liability discovery, and Plaintiffs' representations to the Court in the Pre-Trial Order, confirm that this course was the one taken here.

Plaintiffs[1] are seeking the broadest range of economic and noneconomic damages (Joint Pre-Trial Order at 9.) Accordingly, witnesses required for damages proceedings will include Plaintiffs, treating physicians, independent medical examiners for at least some of the Plaintiffs, other fact witnesses Plaintiffs may call (*e.g.*, witnesses on extent of injury), forensic experts on economic damages, psychological or emotional distress experts, and life-care planning experts. Discovery should therefore include:

---

[1] Although Plaintiffs' October 31 letter recites that there are 311 Plaintiffs, the PTO indicates that there are 286 Plaintiffs with liability claims decided in the first trial. (*PTO* at Revised Ex. A (ECF No. 984-1) (listing Plaintiffs).)



Honorable Brian M. Cogan
November 4, 2014
Page 5

(1) interrogatories focused on the names and locations of each of Plaintiffs' treating physicians, employers, and other fact witnesses with relevant information as to damages, and descriptions under oath of those damages;

(2) the prompt delivery of consent forms authorizing the release of hospital, medical and other health care records and relevant third-party records for each Plaintiff;

(3) updated document productions;

(4) Rule 35 medical exams;

(5) depositions of Plaintiffs and fact witnesses; and

(6) expert disclosures and expert depositions.

Many of the individuals are located in Israel, and the Bank anticipates requiring translators for depositions and for documents produced by Plaintiffs and by third-parties.  The Bank will need authorizations from Plaintiffs for release of medical records in the United States and Israel, including relevant Medicare records and records of the National Insurance Institute of Israel (Bituach Leumi).  The Bank will also need authorizations for release of employment records.  Third-parties must collect and produce the requested documents.  Experts must review records, prepare reports for each of the Plaintiffs, and be deposed.  Time must also be allowed for motion practice.  This may include motions addressing what types of injury are compensable and whether certain Plaintiffs have standing to assert damage claims.

The Bank believes that it is most efficient to stay the damages phase until the parties obtain appellate rulings on the seminal questions proposed for certification.  Even if damages discovery were to proceed now, however, it is likely that the appeal on those issues could be decided by the time damages discovery is completed but before the parties incur the expense of trial on damages.  Scheduling trials to follow appellate review of liability will avoid potential waste of resources by the parties and Court if a new liability trial is required or if judgment is granted as a matter of law.

Decisions on structuring damage trials will also benefit from discovery.  Plaintiffs have suggested that a single jury try 286 separate damage claims, but this is not realistic because of the number of witnesses testifying about facts unique to each Plaintiff.  Indeed, each Plaintiff is likely to require several witnesses, including treating physicians, independent medical examiners, and third-party fact witnesses (including any eyewitness testimony Plaintiffs seek to



Honorable Brian M. Cogan
November 4, 2014
Page 6


introduce, employers, friends, and experts). Moreover, the proposal in Plaintiffs' October 31 letter unfairly limits discovery only to those treating physicians and fact witnesses Plaintiffs want to call as witnesses at trial—denying the Bank the right to discovery of witnesses with knowledge of the facts that Plaintiffs do not want to testify at trial.

As noted, the Bank submits that the damages phase should be stayed pending certification of core, dispositive legal issues to the Second Circuit. If discovery nonetheless were to commence now, an orderly schedule would proceed as follows:

| | |
|---|---|
| November 15, 2014: | Service of first interrogatories on damages and requests for production of documents to Plaintiffs, including requests for signed authorizations for release of medical, employment, Israeli National Insurance Institute, and Medicare records from third parties. |
| January 16, 2015: | Response by Plaintiffs to interrogatories and requests for production, and production of documents and signed authorizations for release of medical, employment, and other records in the custody of third-parties. |
| February 18, 2015: | Depositions of Plaintiffs and other facts witnesses to begin. |
| August 5, 2015: | Fact depositions to be completed. |
| September 15, 2015: | All initial expert reports to be served. |
| October 1, 2015: | Expert depositions to begin. |
| December 1, 2015: | Discovery to be completed. |

The Bank looks forward to the November 7 conference, and further follow-up with Plaintiffs on our "meet and confer." In correspondence to us, for instance, Plaintiffs proposed that the parties agree to a Special Master to determine damages pursuant to Fed. Rule Civ. Pro. 53, subject to various parameters. We are evaluating Plaintiffs' proposal, and are amenable to further discussions on an orderly Special Master process for resolving the damages claims at the appropriate point in time.



Honorable Brian M. Cogan
November 4, 2014
Page 7

                        Respectfully submitted,

                        **DLA Piper LLP (US)**

                        /s/
                        Shand S. Stephens

cc: all counsel (via ECF)