UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————

COURTNEY LINDE, et al.,

                            *Plaintiffs*,

      - against -

ARAB BANK, PLC,

                           *Defendant*.

———————————————————————

04-CV-2799
and related cases[*]

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ARAB BANK PLC'S
MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL PURSUANT TO
28 U.S.C. § 1292(b)**

---

[*]      *Philip Litle, et al. v. Arab Bank, PLC*, 04-CV-5449 (BMC)(VVP); *Oran Almog, et al. v. Arab Bank*, PLC, 04-CV-5564 (BMC)(VVP); *Robert L. Coulter, Sr., et al. v. Arab Bank, PLC*, 05-CV-365 (BMC)(VVP); *Gila Afriat-Kurtzer, et al. v. Arab Bank, PLC*, 05-CV-388 (BMC)(VVP); *Michael Bennett, et al. v. Arab Bank, PLC*, 05-CV-3183 (BMC)(VVP); *Arnold Roth, et al. v. Arab Bank, PLC*, 05-CV-03738 (BMC)(VVP); *Stewart Weiss, et al. v. Arab Bank, PLC*, 06-CV-1623 (BMC)(VVP).

## **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 5

I.      The Court Should Certify The Sanctions Order For Immediate Interlocutory Review. ............................................................................................................. 5

      A.      The Sanctions Order Involves Controlling Questions of Law. ............................... 5

      B.      There is Substantial Ground for Difference of Opinion as to the Propriety of the Sanctions Order. ...................................................................... 6

      C.      Interlocutory Review of the Validity of the Sanctions Order will Materially Advance the Ultimate Termination of this Litigation. ........................ 10

II.     The Court Should Certify Its Decision That The ATA Does Not Require Proof Of "But For" And "Direct" Causation For Immediate Interlocutory Review. ................. 13

      A.      Whether Plaintiffs Must Prove "But For" And "Direct" Causation Is A Controlling Question of Law. ................................................................. 13

      B.      There is Substantial Ground for Difference of Opinion as to Whether the ATA Requires Civil Plaintiffs to Prove "But For" and "Direct" Causation. ....................................................................................... 13

      C.      Final Resolution of the Causation Standard will Materially Advance the Ultimate Termination of this Litigation. .......................................... 16

III.    The Court Should Certify Its Decision That A Violation Of 18 U.S.C. § 2339B Is Itself An "Act Of International Terrorism" For Immediate Interlocutory Review. ...................................................................................... 18

      A.      The Court's Decision That a Violation of 18 U.S.C. § 2339B Necessarily Constitutes a Violation of 18 U.S.C. § 2331(1) Involves a Controlling Question of Law. .............................................................. 18

      B.      There is Substantial Ground for Difference of Opinion as to Whether a Violation of 18 U.S.C. § 2339B Necessarily Constitutes a Violation of 18 U.S.C. § 2331(1). ........................................................................ 18

      C.      Resolving Now Whether a Violation of 18 U.S.C. § 2339B Necessarily Constitutes an "Act of International Terrorism" will Materially Advance this Litigation. ................................................... 21

CONCLUSION ........................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006)..................................................................................................15

*Aspen Ford, Inc. v. Ford Motor Co.*,
    Nos. 01-CV-4677, 99-CV-5978, 2008 WL 163695 (E.D.N.Y. Jan. 15, 2008) ..................5, 13

*Brown v. Bullock*,
    294 F.2d 415 (2d Cir. 1961) (Friendly, J.)...............................................................4

*Burrage v. United States*,
    134 S. Ct. 881 (2014).............................................................................................. 13-14

*Calderon v. GEICO Gen. Ins. Co.*,
    754 F.3d 201 (4th Cir. 2014) ...................................................................................11

*Estate of Roxas v. Pimentel*,
    No. 06-1039 (Letter to the Clerk, Sept. 7, 2007) ....................................................6

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
    542 U.S. 155 (2004)................................................................................................20

*Fahey v. Mallonee*,
    332 U.S. 245 (1947)................................................................................................21

*Gill v. Arab Bank, PLC*,
    893 F. Supp. 2d 542 (E.D.N.Y. 2012) ...................................................................6, 9

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009)................................................................................................13

*Hemi Group, LLC v. City of New York*,
    559 U.S. 1 (2010)....................................................................................................14

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010)....................................................................................................19

*Holmes v. Secs. Investor Prot. Corp.*,
    503 U.S. 258 ...........................................................................................................15

*In re Air crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975*,
    479 F. Supp. 1118 (E.D.N.Y. 1978) .......................................................................11

*In re Terrorist Attacks on Sept. 11, 2001,*
   714 F.3d 118 (2d Cir. 2013)..................................................................14-15, 19-20

*Isra Fruit Ltd. v. Agrexco Agric. Export Co.,*
   804 F.2d 24 (2d Cir. 1986).........................................................................................22

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,*
   313 F.3d 70 (2d Cir. 2002)...........................................................................................3

*Klinghoffer v. S.N.C. Achille Lauro,*
   921 F.2d 21 (2d Cir. 1990)...........................................................................................5

*Koehler v. Bank of Bermuda, Ltd.,*
   101 F.3d 863 (2d Cir. 1996)...................................................................................4, 10

*Krishanthi v. Rajaratnam,*
   09-CV-5395, 2014 WL 4677175 (D.N.J. Sept. 19, 2014)......................................16

*Laborers Local 17 v. Phillip Morris, Inc.,*
   191 F.3d 229 (2d Cir. 1999).......................................................................................15

*Licci v. Lebanese Canadian Bank, SAL,*
   673 F.3d 50 (2d Cir. 2012).........................................................................................19

*Linde v. Arab Bank, PLC,*
   706 F.3d 92 (2d Cir. 2013)...........................................................................................9

*Microsoft Corp. v. AT&T Corp.,*
   550 U.S. 437 (2007)...................................................................................................20

*Pemberton v. State Farm Mut. Auto. Ins. Co.,*
   996 F.2d 789 (5th Cir. 1993) .....................................................................................11

*Rothstein v. UBS AG,*
   708 F.3d 82 (2d Cir. 2013)............................................................................13, 15, 19

*SEC v. Credit Bancorp, Ltd.,*
   103 F. Supp. 2d 223 (S.D.N.Y. 2000).........................................................................5

*Societe Internationale v. Rogers,*
   357 U.S. 197 (1958).....................................................................................................9

*Stutts v. De Dietrich Grp.,*
   No. 03-cv-4058, 2006 WL 1867060 (E.D.N.Y. June 30, 2006)...............................20

*Trans World Airlines, Inc. v. Hughes,*
   332 F.2d 602 (2d Cir. 1964).......................................................................................10

*United States v. Miller*,
  767 F.3d 585 (6th Cir. 2014) ..................................................................14

*University of Tex. Sw. Med. Ctr. v. Nassar*,
  133 S. Ct. 2517 (2013) ................................................................. 13-14, 16

*W. Geophysical Co. v. Bolt Assocs.*,
  463 F.2d 101 (2d Cir. 1972) ...............................................................11

*Weber v. United States*,
  484 F.3d 154 (2d Cir. 2007) ...................................................................6

*Weiss v. National Westminster Bank, Plc*,
  768 F.3d 202 (2d Cir. 2014) ..................................................................19

## STATUTES

18 U.S.C. § 2331, *et seq* ............................................................... passim

28 U.S.C. § 1292(b) ......................................................................... passim

## OTHER AUTHORITIES

Geoffrey Sant, *So Banks Are Terrorists Now?: The Misuse of the Civil Suit Provisions of the Anti-Terrorism Act*, 45 Ariz. St. L.J. 533 (2013) ............................................20

H.R. Rep. No. 102-1040 (1992) ..............................................................20

S. Rep. No. 102-342 (1992) ...................................................................20

Stephen M. Shapiro, *et al.*, Supreme Ct. Practice 519 (3d ed. 2013) ............................6

Wright & Miller, 15B Fed. Prac. & Proc. § 3915.2 ...................................................10

Defendant Arab Bank plc ("the Bank") has filed a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) and a motion for a new trial pursuant to Fed. R. Civ. P. 59 (ECF Nos. 1172 & 1175). Both of these motions are pending. The Bank respectfully requests that, in the event the Court denies those motions, it certify for immediate appeal pursuant to 28 U.S.C. § 1292(b) the following issues raised by that denial, by its July 12, 2010 Opinion and Order ("sanctions order") (ECF No. 625), and by the September 22, 2014 verdict regarding liability ("liability order") (ECF No. 1163):

(1) Whether the sanctions order—which, *inter alia*, allowed the jury to infer that the Bank "knowingly" "provided financial services to Hamas" and "processed and distributed payments on behalf of the Saudi Committee to terrorists" and precluded the Bank from introducing evidence of its innocent state of mind in providing financial services outside of the United States—is contrary to law and requires a new trial.

(2) Whether failing to instruct the jury that plaintiffs were required to prove that the Bank's conduct was a "but for" and "direct" cause of the terrorist attacks that gave rise to the plaintiffs' injuries is contrary to law and requires a new trial.

(3) Whether instructing the jury that "a violation of 18 U.S.C. § 2339B is itself an act of international terrorism" and "if you find that plaintiffs have proved" the Bank violated § 2339B, "you must find that plaintiffs have proved that defendant committed an act of international terrorism" was contrary to law and requires a new trial.[1]

## INTRODUCTION

The sanctions order had a debilitating effect on the Bank's ability to mount a defense and resulted in a liability verdict for the plaintiffs. The Court excluded evidence vital to the Bank's defense that it did not knowingly support terrorism and instructed the jury that because the Bank "refused to provide certain documents that the plaintiffs requested and to permit their witnesses to answer questions during depositions," the jury could infer that the Bank "provided financial services to Hamas, and to individuals affiliated with Hamas," "processed and distributed

---

[1]     The Bank raised all three issues in its post-trial motions. References here to "sanctions" and "liability" orders include any order the Court may issue resolving the post-trial motions.

payments on behalf of the Saudi Committee to terrorists, including those affiliated with Hamas," and "did these acts knowingly."  ECF No. 1162 at 13.  As this Court understands, whether the Bank acted "knowingly" was the critical element in dispute, and the evidentiary rulings and adverse inference instruction on this score effectively resolved that disputed issue in plaintiffs' favor.  *See id.* at 14.  The Court also precluded the Bank from explaining to the jury that it was prohibited by foreign bank secrecy laws from "provid[ing] certain documents that the plaintiffs requested."  *Id.* at 13.

Now that the sanctions order has been applied at trial, the case for Section 1292(b) certification is clear.  The propriety of these severe and concretely applied sanctions is a "controlling" legal issue, determining whether a new liability trial is necessary; it is an issue on which there is demonstrably "substantial ground for difference of opinion"; and, given upcoming damages proceedings and the prospect of a series of additional trials against the Bank involving other terrorist incidents and plaintiffs, immediate resolution of the issue will "materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

The situation now is different than when Judge Gershon denied certification of the sanctions order four years ago.  Then, "the exact impact of the sanctions on the remainder of the proceedings" could not "yet be determined."  ECF No 675 at 2.  Now, the sanctions' effect requires no speculation: we know how the sanctions led to exclusion of evidence critical to understanding the Bank's conduct, to an instruction that permitted the jury to infer that the Bank knowingly aided terrorists, and to a ruling that denied the Bank's right to rebut that inference by introducing evidence of its innocent state of mind in providing financial services outside of the United States.

2

It is also much clearer now than it was four years ago that there is substantial ground for difference of opinion regarding the controlling question of whether the sanctions order violates international comity and due process.  The substantial room for debate is evidenced by the Supreme Court's call for the views of the Solicitor General, a brief from the United States criticizing the sanctions order and underscoring its adverse effects on U.S. foreign policy, and filings from *amici curiae*, including the Kingdom of Jordan.  The Supreme Court does not seek the views of the Solicitor General in cases where the legal issues are straightforward and the subject of universal agreement.  Nor does the United States lightly inform the Supreme Court that a decision "was erroneous in important respects" because it failed to properly account for comity concerns and adverse foreign policy impacts.  Brief for the United States as *Amicus Curiae* ("U.S. Br.") at 9, *Arab Bank, PLC v. Linde, et al.*, No. 12-1485, ECF No. 1015-1.  The Second Circuit recognizes that issues affecting "foreign sovereign[ty]" and the "interaction" of U.S. and foreign law satisfy Section 1292(b).  *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 81 (2d Cir. 2002).

Certification also would facilitate appellate guidance on two other controlling questions as to which there is substantial ground for differing opinions.  This Court rejected the Bank's request that it instruct the jury that plaintiffs must prove "but for" and direct causation.  And instead of instructing the jury that plaintiffs must prove each element of the definition of international terrorism in 18 U.S.C. § 2331(1), as the Bank requested, the Court instructed that a violation of § 2339B is itself an act of international terrorism.  These instructions raise pure questions of law that should be resolved by the Second Circuit before this Court undertakes the substantial effort of conducting damages trials in this case that may prove unnecessary.

Indeed, courts have recognized that this juncture of litigation, after verdict but before burdensome damages proceedings, presents an ideal opportunity for interlocutory review. Appeal now will determine whether the verdict may stand or must be set aside. Without immediate appeal, complex, costly and time-consuming jury proceedings will be necessary to determine damages for some 286 claimants who were allegedly injured in 24 separate attacks. A post-judgment appeal vacating the verdict would render those protracted and contentious damages proceedings unnecessary. Furthermore, absent immediate appeal, litigation will continue in a host of additional cases against the Bank pending before this Court that raise similar claims. An immediate appeal will efficiently resolve key legal issues that otherwise will infect all of these cases at both the pre-trial and trial stage. Interlocutory review of the recurring questions presented will resolve in a single appeal issues that otherwise will be implicated in multiple trials and will, in turn, give rise to multiple appeals and multiple new trials, with the enormous waste of judicial and party resources that would entail.

In these circumstances, Section 1292(b)'s requirement that appeal "materially advance" the litigation is satisfied; indeed, this is just the sort of situation for which the statute was designed. *See Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996) ("The use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation."); *Brown v. Bullock*, 294 F.2d 415, 417 (2d Cir. 1961) (certifying appeal "to avoid a lengthy trial" that could be "futile") (Friendly, J.). And because continuing on to damages proceedings and additional trials will greatly exacerbate the very comity and foreign relations concerns that make the sanctions order so problematic, now is the time to resolve the issues presented. Because all of Section 1292(b)'s requirements are met, and because immediate

4

appeal will guide conduct of a host of upcoming proceedings, this Court should certify an immediate appeal.

## ARGUMENT

Certification for interlocutory appeal is appropriate when an order (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  These requirements are easily satisfied here.

**I.     The Court Should Certify The Sanctions Order For Immediate Interlocutory Review.**

**A.  The Sanctions Order Involves Controlling Questions of Law.**

"A question of law is controlling if reversal of the order would 'significantly affect the conduct of the action.'"  *Aspen Ford, Inc. v. Ford Motor Co.*, Nos. 01-CV-4677, 99-CV-5978, 2008 WL 163695, at *2 (E.D.N.Y. Jan. 15, 2008) (quoting *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000); *see Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (resolution of issue need not "terminate an action in order to be 'controlling'").  There is no doubt that reversal of the sanctions would "significantly affect the conduct of the action."

If the Second Circuit were to vacate or modify that order—now or after final judgment— the result would be a new liability trial in which the sanctions played no or a lesser part.  The order led to adverse inference instructions, the exclusion of evidence of the Bank's state of mind, and the preclusion of evidence showing that the Bank complied with its counter-terrorism policies and related local laws and regulations in handling accounts.  Together, these rulings essentially removed the element of *scienter* from the equation.[2]

---

[2]     Because this Court is very familiar with the effects of the sanctions on instructions and evidentiary rulings, we do not repeat them here.  *See* Bank Rule 59 Mot., ECF No. 1175-1, at 3-

**B.  There is Substantial Ground for Difference of Opinion as to the Propriety of the Sanctions Order.**

The sanctions order involves precisely the type of "knotty legal problems" for which § 1292(b) was designed.  *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007).  The Bank understands that this Court views the sanctions order and associated evidentiary and instructional rulings as correct.  But that is true of every order certified under § 1292(b).  The question for purposes of § 1292(b) is not whether the court that just entered the order believes it to be correct, but whether "there is substantial ground for difference of opinion" on the "controlling question[s] of law" "involve[d]" in the order.  Here, the actions of the U.S. Supreme Court and the views of the United States, the Kingdom of Jordan and other *amici*, Magistrate Judge Pohorelsky in this case (*see, e.g.,* ECF No. 560 at 20-22), and Judge Weinstein in a closely related case (*see, e.g., Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 549-53 (E.D.N.Y. 2012)), show that different views as to the propriety of the sanctions order exist.

In response to the Bank's petition for *certiorari* seeking review of the Second Circuit's denial of mandamus review of the sanctions order, the U.S. Supreme Court called for the views of the U.S. Solicitor General.  Such invitations are rare and are only "'extended in cases that present difficult questions of law.'"  Stephen M. Shapiro, *et al.*, Supreme Ct. Practice 519 (3d ed. 2013) (quoting *Estate of Roxas v. Pimentel*, No. 06-1039 (Letter to the Clerk, Sept. 7, 2007)).  That action powerfully underscores that there "is substantial ground for difference of opinion" as to the propriety of the sanctions order.

The United States' response to the Supreme Court's invitation confirms that the legal propriety of the sanctions is highly debatable.  The Solicitor General concluded that the sanctions

---

12.  Other rulings compounded these effects, together stripping the Bank of any defense.  *Id.* at 12-24.

order was made in error, but recommended that appellate review was "inappropriate" before the liability trial.  U.S. Br. at 21.  The Solicitor General explained that "[u]ntil the sanctions are implemented at trial, they remain subject to reconsideration or modification by the district court," and "[a]lthough the sanctions appear broad on their face, because they take the form of permissive jury inferences and preclusion of evidence, their precise scope will be determined by their implementation in jury instructions that have not yet been drafted, as well as evidentiary rulings made prior to and during the trial."  *Id*. at 23-24.  The sanctions order has now been implemented.  Section 1292(b) is now an appropriate procedure for raising with the Second Circuit the issues raised by the United States.

The United States identified three fatal legal errors with the sanctions order.  First, "[i]n analyzing whether the sanctions were consistent with principles of international comity," Judge Gershon "assum[ed] that" the Bank's "production of documents to United States government agencies reflected the sort of selective compliance with foreign bank secrecy laws that would support sanctions in this private litigation."  U.S. Br. 8.  But this assumption "fail[ed] to account for the distinct United States and foreign interests implicated when the government, as opposed to a private party, seeks disclosure."  *Id.* at 12.  That failure "also threatens to undermine important United States law-enforcement and national-security interests by deterring private entities and foreign jurisdictions from cooperating with government requests[.]"  *Id.*

Second, the order "fail[ed] adequately to consider the broad range of United States foreign-relations and anti-terrorism interests implicated by the sanctions order."  *Id.* at 8.  Those interests definitively "weighed in favor of a lesser sanction than the one the court imposed in this private litigation."  *Id.* at 9.  As just one example, the United States emphasized that "[t]he sanctions order could undermine the United States' vital interest in maintaining close cooperative

7

relationships with Jordan and other key regional partners in the fight against terrorism." *Id.* at 19. "Jordan in particular is an invaluable partner in the region," and the "United States relies on Jordan in accomplishing a host of critical security and foreign-policy interests, including combatting terrorism." *Id.* "The sanctions order may have an impact on these important counterterrorism relationships." *Id.*

Finally, the order "fail[ed] to accord sufficient weight to the foreign jurisdictions' interests in enforcing their bank secrecy laws." *Id.* at 8. It paid little heed to the laws of Jordan, and wrongly assumed the Bank would "not be subjected to penalties for producing documents in this private action solely because it apparently was not prosecuted for providing documents to the United States." *Id.* at 15. It also ignored "statements by the Palestine Monetary Authority that it views both bank secrecy laws and antiterrorism banking regulations in the West Bank and Gaza as serving important interests," as well as "interests of several jurisdictions whose bank secrecy laws were implicated, including Great Britain and France." *Id.* at 18 nn.5-6. The United States' criticisms of the sanctions order, even if this Court finds them unpersuasive, show that there is room to disagree about this controlling legal issue, which is all that Section 1292(b) requires.

So does "the unprecedented step" Jordan took in filing a brief supporting the Bank's certiorari petition. Br. of *Amicus Curiae* the Hashemite Kingdom of Jordan in Support of Petitioner 14, *Arab Bank, PLC v. Linde*, 2013 WL 3830458 (U.S.) ("Jordan Br."). In addition to explaining the great importance of the Bank to Jordan and the broader economy of the Middle East, Jordan argued that the sanctions order was legally erroneous. *Id.* at 15. Jordan explained that the "lower courts have struggled to determine when production orders and sanction orders are appropriate and when they are not" when there is a clash "between foreign criminal laws and

8

domestic discovery" obligations.  *Id.* at 15-16.  And Jordan argued that the sanctions order was irreconcilable with *Societe Internationale v. Rogers*, 357 U.S. 197 (1958), and "recent comity decisions." Jordan Br. 16.  *See also* Brief for *Amicus Curiae* the Union of Arab Banks, *Arab Bank, PLC v. Linde*, 2013 WL 3830457 at 16 (U.S.) ("UAB Br.") (organization with over 340 members, including the largest and most prestigious Arab banking, financial, and investment institutions, argued that the sanctions "violate[d] two bedrock legal principles," including "comity, which requires that courts 'exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position'").  Courts routinely grant § 1292(b) certification on far less substantial a showing of disagreement over controlling issues than that powerfully evidenced here by briefs from the United States, a foreign sovereign, and the largest organization of financial institutions in the Middle East.

The views of other judges in this district confirm that there is substantial ground for disagreement.  Magistrate Judge Pohorelsky, who oversaw 15 hearings addressing the sufficiency of the Bank's discovery efforts, would have imposed far more modest sanctions (*see, e.g.,* ECF No. 560 at 20-22).  Another judge in this district, reviewing the same factual record, rejected a plea for sanctions and dismissed the claims on the merits.  *Gill*, 893 F. Supp. 2d at 573. Judge Weinstein granted the Bank's motion for summary judgment after refusing to adopt the sanctions order and finding that "the evidence does not prove that the Bank acted with an improper state of mind or proximately caused plaintiff's injury." *Id.* at 547, 549-53.[3]  Of course,

---

[3]     The Second Circuit recognized that reasonable minds could differ on the legal analysis underlying the sanctions order when it stated that its denial of mandamus to review that order does not "preclude a future court from holding that the district court erred in imposing the sanctions." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 108 (2d Cir. 2013).

Judge Gershon viewed the matters differently, but that simply underscores that there are indeed substantial grounds for a difference of opinion.

### C. Interlocutory Review of the Validity of the Sanctions Order will Materially Advance the Ultimate Termination of this Litigation.

Interlocutory review of the sanctions order will "materially advance the ultimate termination of the litigation." It will ensure that judicial and party resources are not wasted on complex damages trials if the liability verdict is set aside and a new trial is required.[4] It also will ensure that future trials of the many similar claims against the Bank that are pending in this Court proceed under the correct legal standards and do not have to be redone after the Second Circuit rules. The enormous burden to the judiciary, juries, and parties involved in redoing trials if the Second Circuit reverses the sanctions order can be avoided by an efficient interlocutory appeal pinpointed to critical legal issues.

Certification now, before damages trials, thus would squarely serve the purpose for which Section 1292(b) was designed: minimizing the burden of "protracted litigation." *Koehler,* 101 F.3d at 865-66. It is well established that § 1292(b) certification "is readily available to test a determination of liability before confronting issues of remedy." Wright & Miller, 15B Fed. Prac. & Proc. § 3915.2, especially where, as here, there is reason to suspect that "hearings on the question of damages might be prolonged." *Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602,

---

[4]     The United States' brief makes clear that a reviewing court, having found that the sanctions order and resulting evidentiary rulings and jury instructions were legally flawed, could not plausibly conclude that the sanctions' impact on the trial resulted in only harmless error. *See* U.S. Br. 21 ("The district court's sanctions order, by (among other things) permitting the jury to draw an adverse inference with respect to petitioner's mental state, increase[d] the likelihood that" the Bank would "be found liable at trial."); *id.* ("[T]he sanctions order ma[de] a finding of liability more likely by permitting the jury to draw inferences adverse to [the Bank] and by barring [the Bank] from presenting certain evidence."). This Court reached the same conclusion in its Order dated February 12, 2014: "The [Sanctions] Order has a profound impact on the way this case will be tried, and if the Supreme Court were to reverse or vacate it, the trial would no doubt look very different than it does now . . . ." ECF No. 998.

605 (2d Cir. 1964); *see, e.g.*, *W. Geophysical Co. v. Bolt Assocs.*, 463 F.2d 101, 105 (2d Cir. 1972) ("In a case where the hearing on damages will be truly prolonged, and the judge considers his ruling on liability to present 'a controlling question of law as to which there is substantial ground for difference of opinion,' a permissive interlocutory appeal under 28 U.S.C. § 1292(b) is available."). Precedent from other courts of appeals is in accord. *See, e.g.*, *Calderon v. GEICO Gen. Ins. Co.*, 754 F.3d 201, 207 (4th Cir. 2014) ("In a civil damage suit," a "judgment for the plaintiff that determines liability for, but does not fix the amount of, damages is appealable solely under 28 U.S.C. § 1292(b)") (citation omitted); *Pemberton v. State Farm Mut. Auto. Ins. Co.,* 996 F.2d 789, 791 (5th Cir. 1993) (same); *see also In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975*, 479 F. Supp. 1118, 1124-29 (E.D.N.Y. 1978) (certifying liability verdict for appellate review before damages determinations).

The end of the liability phase is a fitting juncture for interlocutory appeal even in an ordinary case. It is especially appropriate here, where the damages phase will involve complex, time-consuming proceedings to determine damages arising from 24 separate terrorist attacks and the claims of 286 plaintiffs. It makes little sense to leave the sanctions issue on a shelf collecting dust while this Court, plaintiffs, and the Bank expend the considerable time and resources necessary to litigate this case to a final judgment, especially when the result of appeal following that judgment may be that proceedings need to begin again from scratch. This Court acknowledged that "we have not finished our work here by a long shot" and "this case is a long way from over." Tr. 3386.

Appellate review of the sanctions order prior to damages trials is especially appropriate because further proceedings will only exacerbate the affront to Jordan's sovereignty and the interference with U.S. foreign policy that undergird the powerful comity arguments against the

11

sanctions.   Appeal now better addresses the United States' concerns that the sanctions "undermine" its "vital interest in maintaining close cooperative relationships" with "an invaluable partner in the region" than awaiting a final judgment that will be a thorn in the side of important international relations.   U.S. Br. 19; *see* Jordan Br. 15, 17 (the sanctions order is an "intolerable" "affront to Jordan's sovereignty" with "grave consequences").

Another important consideration that takes this case well outside the norm is that the trial here of claims arising out of 24 terrorist incidents is only the beginning.   This Court has before it approximately 250 additional ATA plaintiffs, asserting hundreds of additional claims against the Bank arising out of scores of other alleged terrorist attacks.   During the lengthy period it will take to conduct damages discovery, resolve damages-related motions, conduct damages trials in this case, and resolve an appeal after final judgment, these additional cases will proceed towards trials that will inevitably be informed by the sanctions rulings made in this case.   If the Second Circuit were ultimately to reverse the sanctions, the legal underpinnings of these trials would be destroyed and new trials would be necessary in those additional cases as well.   The truly extraordinary burdens associated with retrying multiple cases through both liability and damages phases, for all involved, strongly counsel in favor of resolving the sanctions issue by an efficient interlocutory appeal.

These same considerations apply with equal force to the other legal issues presented for certification discussed in Parts II and III below: the causation and international terrorism instructions, reversal of either of which would necessitate either dismissal of plaintiffs' claims or, at minimum, a new liability trial that would trigger the need for new damages proceedings in this case and either dismissal or retrials of all additional suits that have proceeded under the same understanding of the law.   Appeal after final judgment is too late to identify errors as to any of

the three issues presented here for certification, for a single legal error as to any of these issues would wipe out years of dedicated work by this Court and the parties and further delay resolution of these suits for hundreds of plaintiffs and the Bank.  A far better course for all concerned is to take advantage of the statutorily permitted interlocutory review.

## II.   The Court Should Certify Its Decision That The ATA Does Not Require Proof Of "But For" And "Direct" Causation For Immediate Interlocutory Review.

### A. Whether Plaintiffs Must Prove "But For" And "Direct" Causation Is A Controlling Question of Law.

As with the sanctions order, this Court's causation rulings involve controlling questions of law.  Reversal of this Court's ruling that the ATA does not require a plaintiff to prove that a defendant's conduct was a "but for" and "direct" cause of their injuries "would 'significantly affect the conduct of the action,'"  *Aspen Ford,* 2008 WL 163695, at *2, because, all parties agree, no such causal showing can be made here.  *E.g.,* Tr. 3118.  Therefore, if this Court's decision was wrong, the result would be dismissal of all claims, or at minimum a new trial.

### B. There is Substantial Ground for Difference of Opinion as to Whether the ATA Requires Civil Plaintiffs to Prove "But For" and "Direct" Causation.

The ATA provides a cause of action to American citizens injured "*by reason of* an act of international terrorism."  18 U.S.C. § 2333(a) (emphasis supplied).  The Supreme Court has repeatedly held that the statutory "phrase 'by reason of' requires at *least a showing of 'but for' causation*."  *Burrage v. United States*, 134 S. Ct. 881, 889 (2014) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)) (emphasis supplied).  And "traditional principles of but-for causation" require plaintiffs to prove that their injuries "''would not have occurred' in the absence of—that is, but for—the defendant's conduct."  *University of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2525, 2533 (2013).  The Second Circuit recognizes that the ATA's "by reason of" language must be interpreted consistent with this precedent.  *See Rothstein v. UBS*

13

*AG*, 708 F.3d 82, 95, 97 (2d Cir. 2013) ("*Rothstein IV*") (affirming dismissal of ATA claims where plaintiffs failed to allege that the attacks that caused their injuries would not have been funded absent the financial services provided by the bank defendant); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) ("*Al Rajhi Bank*").

This Court did not instruct the jury that plaintiffs must prove "but for" causation because to do so would "deprive the [ATA] of any force . . . in a case like this." Tr. 3118. It instructed instead that "[i]t is enough if plaintiffs have proved that defendant's acts substantially contributed to their injury." ECF No. 1162 at 18. Whether that ruling ultimately is determined to be right or wrong, there is without doubt a strong argument, based on Supreme Court and Second Circuit precedent, that the ATA demands "at least a showing of 'but for' causation." *Burrage*, 134 S. Ct. at 889; *see Nassar*, 133 S. Ct. at 2525; *Al Rajhi Bank*, 714 F.3d at 123 ("by reason of" requires "a showing that the defendant's violation" was "a 'but for' cause" and "proximate cause as well"). There is no "indication to the contrary" in the ATA to displace this "common understanding of cause." *Burrage*, 134 S. Ct. at 888. And Congress could have said "contributes to," but instead chose the "by reason of" "language that imports but-for causality." *Id.* at 891. Statutory language and controlling precedent form the basis for reasonable and "substantial disagreement" over the correctness of this Court's instruction. *See, e.g.*, *United States v. Miller*, 767 F.3d 585, 591 (6th Cir. 2014) (failure to instruct the jury on "but for" causation is reversible error "in criminal and civil cases alike").

There also is substantial ground to question this Court's decision not to instruct the jury that plaintiffs must prove the Bank's conduct was a "direct" cause of their injuries. The "by reason of" language incorporated in the ATA has been consistently interpreted to require proof of "'some direct relation between the injury asserted and the injurious conduct alleged.'" *Hemi*

14

*Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (citation omitted); *see Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (With respect to "proximate causation, the central question . . . is whether the alleged violation led directly to the plaintiff's injuries."); *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268-69 (the "directness of relationship" between defendant's conduct and plaintiff's injury is "one of [the] central elements" of proximate causation).  That comports with the "general tendency of the law . . . not to go beyond the first step" in assigning damages liability.  *Id.* at 271-72 (citations omitted).

The Second Circuit also has held—applying the "by reason of" standard—that "direct injury is a key element" to establish proximate cause, "independent of and in addition to other traditional elements."  *Laborers Local 17 v. Phillip Morris, Inc.*, 191 F.3d 229, 235 (2d Cir. 1999).  Indeed, the lack of a direct causal relationship between defendants' provision of financial services and the specific terrorist attacks that caused plaintiffs' injuries has resulted in dismissals of claims like those at issue here.  *See Rothstein IV*, 708 F.3d at 97 (finding ATA plaintiffs' conclusory allegations insufficient "with respect to the need for a proximate causal relationship between the cash transferred by UBS to Iran and the terrorist attacks by Hizbollah and Hamas that injured plaintiffs");  *Al Rajhi Bank*, 714 F.3d at 124 ("We are also not persuaded that providing routine banking services to organizations and individuals said to be affiliated with al Qaeda . . . proximately caused the September 11, 2001 attacks or plaintiffs' injuries.").

This Court originally planned to instruct the jury on the need for proof of "direct" causation, but then rewrote the instruction and eliminated references to the words "direct" and "directly" from its charge.  *Compare* Tr. Mgmt. Order, Sept. 16, 2007, ECF No. 1160, at 18 *with*

Tr. 3337:11-3338:6.[5]  Instead, this Court instructed the jury that "plaintiffs must show that the defendant's unlawful acts were a substantial factor in the sequence of events responsible for causing plaintiffs' injuries and that plaintiffs' injuries were reasonably foreseeable or anticipated as a natural consequence of such acts."  Tr. 3337.  The Court also instructed the jury that "[i]t is enough if plaintiffs have proved that the defendant's acts substantially contributed to their injury, even though other factors may also have significantly contributed as well."  *Id.* at 3338.

Supreme Court and Second Circuit precedent, as well as this Court's change of course on the jury instructions, underscore that there are, at the very least, reasonable grounds for disagreement over the need for proof of a direct causal link. In fact, elimination of the word "direct" from instructions on proximate cause appears to be without precedent in any federal tort case involving a "by reason of" statute.

## C. Final Resolution of the Causation Standard will Materially Advance the Ultimate Termination of this Litigation.

This Court understood that a "but for" causation requirement would "eviscerate" plaintiffs' claims.  Tr. 3118.  None of the evidence adduced by plaintiffs came close to proving that the 24 attacks that caused their injuries "'would not have occurred' in the absence of—that is, but for—the [Bank's financial services]."  *Nassar*, 133 S. Ct. at 2525; *see* Rule 50 Mot. (ECF No. 1172-1), at 2-11; *see also Krishanthi v. Rajaratnam,* 09-CV-5395, 2014 WL 4677175, at *4-5 (D.N.J. Sept. 19, 2014) (finding that plaintiffs failed to plead "but for" causation in the absence of allegations that funds raised by the defendant were used in the commission of the specific terrorist attacks that caused their injuries).  In the event that judgment is entered for the Bank on

---

[5]     The Court had initially proposed to charge the jury that plaintiffs must prove the Bank's conduct was "a direct, substantial, and identifiable cause" of their injuries, and that "if you find that plaintiffs' injuries were caused primarily by something other than defendant's acts, then you must find that plaintiffs have failed to prove [the proximate causation] element of their claim." Tr. Mgmt. Order, Sept. 16, 2007, at 18.

appeal because plaintiffs cannot satisfy the "but for" causation standard, the resources expended in complex damages proceedings in this case will have been wasted entirely. If the result is instead a new trial, the damages trials that were conducted based on a verdict that is set aside on appeal may prove unnecessary. And absent immediate appeal, other suits against the Bank involving other additional terrorist attacks and hundreds more plaintiffs will proceed under a causation standard the correctness of which is subject to substantial debate. Section 1292(b) review in these circumstances will clearly advance the ultimate termination of this litigation, resulting in a far more efficient resolution of claims than if appeal awaits a final judgment. *See* Part I.C, *supra*.

Likewise, the "direct" causation issue should be resolved by the Second Circuit now. Plaintiffs acknowledge that "no one has ever been injured directly by a wire transfer" and that they cannot trace any specific financial service provided by the Bank to any of the 24 attacks that caused their injuries. Tr. 3115-16. Plaintiffs also acknowledge that they will "never be able to prove—not just because of bank secrecy, but in general—that [a terrorist] used . . . money [that passed through Arab Bank] to purchase this car or this explosive" used to commit an attack. Summ. J. Hr'g Tr. 54, Apr. 24, 2013 (ECF No. 943). Arguably, therefore, under the correct legal standard, judgment must be entered for the Bank. At a minimum, there is a reasonable basis for the Bank to obtain a new trial. Appeal of this Court's highly contestable causation rulings should be resolved before far more resources are expended in this and other cases and before more time passes without a definitive resolution of a key legal issue.

**III.    The Court Should Certify Its Decision That A Violation Of 18 U.S.C. § 2339B Is Itself An "Act Of International Terrorism" For Immediate Interlocutory Review.**

    **A. The Court's Decision That a Violation of 18 U.S.C. § 2339B Necessarily Constitutes a Violation of 18 U.S.C. § 2331(1) Involves a Controlling Question of Law.**

Arab Bank requests certification of the question whether, as this Court instructed the jury, "a violation of 18 U.S.C. § 2339B is itself an act of international terrorism" such that "if you find that plaintiffs have proved" the Bank violated § 2339B, "you must find that plaintiffs have proved that defendant committed an act of international terrorism."   Tr. 3333.   That is a controlling issue of law because reversal on that issue would nullify a key basis for the verdict and require at least a new trial, and likely a directed verdict for the Bank.   Telling the jury that proof of a § 2339B violation also satisfied the § 2331(1) factors relieved plaintiffs of a significant part of their burden and requires, if the Bank is correct on the law, that the verdict be set aside.

    **B. There is Substantial Ground for Difference of Opinion as to Whether a Violation of 18 U.S.C. § 2339B Necessarily Constitutes a Violation of 18 U.S.C. § 2331(1).**

Based on the text of the ATA and binding precedent, substantial ground for difference of opinion exists regarding whether banking services that subject a bank to liability to the government under § 2339B's "material support" provision also automatically constitute acts of "international terrorism" under the ATA's provisions creating a narrow civil treble damages cause of action, as this Court instructed the jury.  18 U.S.C §§ 2331(1), 2333(a).

The ATA specifically defines "international terrorism," for which there may be civil liability under § 2333(a), to mean activities that (1) "involve violent acts or acts dangerous to human life," (2) "appear to be intended" "to intimidate or coerce a civilian population" or "the policy of a government," or "affect the conduct of a government by mass destruction, assassination, or kidnapping," (3) are crimes, and (4) take place abroad.  18 U.S.C. § 2331(1).

These are "four separate requirements."  *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 68 (2d Cir. 2012); *see also Weiss v. National Westminster Bank, Plc*, 768 F.3d 202, 207 & n.6 (2d Cir. 2014) (describing each of § 2331(1)'s prongs as "definitional requirement[s]" of the statute).

The disconnect between § 2339B and §§ 2331 and 2333 is stark.  Section 2339B— enacted years after §§ 2331 and 2333—criminalizes material support to designated foreign terrorists, but it does not provide that a violation of § 2339B is "international terrorism" under the specific requirements of § 2331(1).  Section 2339B does not use the words "international terrorism" or even cite the civil liability provisions of the ATA (though it cites other statutes); and the civil liability provisions of the ATA do not cite to §2339B.  And while § 2331(1) acts of terrorism must be criminal violations, not all criminal violations are acts of terrorism—and specifically not criminal acts that are in the nature of aiding and abetting a terrorist attack.  *See Rothstein IV*, 708 F.3d at 97-98 (holding there is no liability under the ATA for secondary actors or aiders and abettors).  By contrast, the Supreme Court has held that § 2339B "criminalizes not terrorist attacks themselves, but aid that makes the attacks more likely to occur."  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 35 (2010).

Consistent with this statutory language and structure, the Second Circuit confirmed in *Al Rajhi Bank* that providing banking services is not an act of terrorism under the ATA.  Plaintiffs there accused banks of causing the September 11 attacks.  They did not allege that the banks "participated in" the attacks or "provided money directly to al Qaeda."  714 F.3d at 124.  They claimed instead that the banks "'knowingly and intentionally provid[ed] financial [and bank account] services'" for "front charities that benefitted al Qaeda."  *Id.* at 123.  Affirming dismissal of these claims, the Second Circuit rejected "the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing

services, or any other routine banking service."  *Id.* at 124 (citation omitted).  The Court was "not persuaded" that "routine banking services to organizations and individuals said to be affiliated with al Qaeda" are actionable.  *Id.*; *see also Stutts v. De Dietrich Grp.*, No. 03-cv-4058, 2006 WL 1867060, at *2 (E.D.N.Y. June 30, 2006) (as a matter of law, "commercial banking activity . . . does not constitute international terrorism," because in contrast to *actual* terrorism, banking services are not "violent" or "dangerous to human life," nor do they appear "intended" to "intimidate or coerce" civilians or governments under the ordinary meaning of those statutory terms).[6]

Comity principles affirm that Congress never intended the ATA to reach banking services like those at issue here.  "[C]ourts should 'assume that legislators take account of the legitimate sovereign interests of other nations when they write American laws.'"  *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 455 (2007) (citation omitted).  This "prescriptive comity" ensures that "laws of different nations work together in harmony" in "today's highly interdependent commercial world" and that U.S. law does not "interfere with a foreign nation's ability independently to regulate its own commercial affairs."  *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164-65 (2004).  Interpreting the ATA to reach normal banking services violates that important rule of construction.  It is particularly absurd to treat as acts of international terrorism banking activities that are "subject to an extensive regulatory framework."  Br. of Inst. of Int'l Bankers as *Amicus Curiae*, *Jesner v. Arab Bank, PLC*, 2014 WL 3556298, at

---

[6]    Legislative history shows Congress meant the ATA to apply to *terrorists*, not banks.  *E.g.*, H.R. Rep. No. 102-1040, at 5 (1992) (statute would "facilitate civil actions against . . . terrorists"); S. Rep. No. 102-342, at 46 (1992); *see* Geoffrey Sant, *So Banks Are Terrorists Now?: The Misuse of the Civil Suit Provisions of the Anti-Terrorism Act*, 45 Ariz. St. L.J. 533, 536-45 (2013).

*17 (2d Cir. July 14, 2014).   Banking is "one of the longest regulated and most closely supervised of public callings."  *Fahey v. Mallonee*, 332 U.S. 245, 250 (1947).

Labeling Arab Bank a terrorist under § 2331(1) also cannot be reconciled with representations of the Departments of State and Treasury that the Bank is "a constructive partner with the United States in working to prevent terrorist financing,"  U.S. Br. 20, or with Jordan's explanation that this "highly regulated" bank "is an industry and regional leader" in "anti-money laundering and anti-terrorism efforts."  Jordan Br. 9, 19.

Accordingly, there is ample room to debate the legal propriety of this Court's key instruction that satisfying § 2339B automatically satisfies § 2331(1)'s definition of international terrorism, and its refusal to charge that each prong of that definition must be proved.

### C.  Resolving Now Whether a Violation of 18 U.S.C. § 2339B Necessarily Constitutes an "Act of International Terrorism" will Materially Advance this Litigation.

For the reasons set forth with regard to this Court's sanctions and causation rulings (*see* Parts I.C and II.C, *supra*), interlocutory review of this Court's instruction to the jury that a violation of 18 U.S.C. § 2339B is an act of international terrorism would materially advance the ultimate termination of the litigation, averting the potential for costly and lengthy damages and additional liability trials that in the end may have to be completely redone because they rested on a faulty instruction that goes to the heart of the case.

**CONCLUSION**

Arab Bank respectfully requests that the Court certify the liability and sanctions orders and any order denying its Rule 50(b) and 59 motions for immediate appellate review pursuant to 28 U.S.C. § 1292(b).  The Bank requests that the Court state "the controlling question(s) that the judge believes [are] presented by the order[s] being certified" (*Isra Fruit Ltd. v. Agrexco Agric. Export Co.*, 804 F.2d 24, 25 (2d Cir. 1986)) as the following:

1.      Whether the sanctions order—which, *inter alia*, allowed the jury to infer that the Bank "knowingly" "provided financial services to Hamas" and "processed and distributed payments on behalf of the Saudi Committee to terrorists" and precluded the Bank from introducing evidence of its innocent state of mind in providing financial services outside of the United States—is contrary to law and requires a new trial.

2.      Whether failing to instruct the jury that plaintiffs must prove that the Bank's conduct was a "but for" and "direct" cause of the terrorist attacks that gave rise to the plaintiffs' injuries is contrary to law and requires a new trial

3.      Whether instructing the jury that "a violation of 18 U.S.C. § 2339B is itself an act of international terrorism" and "if you find that plaintiffs have proved" the Bank violated § 2339B, "you must find that plaintiffs have proved that defendant committed an act of international terrorism" was contrary to law and requires a new trial.

Respectfully submitted,

**DLA Piper LLP (US)**

_____/s/_____
Shand S. Stephens
1251 Avenue of the Americas
New York, New York 10020
(212) 835-6000
*Attorneys for Defendant Arab Bank plc*

OF COUNSEL:
Kevin Walsh
Douglas W. Mateyaschuk, II