

**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York  10020-1104
www.dlapiper.com

Shand S. Stephens
shand.stephens@dlapiper.com
**T**  212.335.4594
**F**  212.335.4501

December 5, 2014

*VIA ECF*

Honorable Brian M. Cogan
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:**    *Linde v. Arab Bank, PLC*, **04-CV-2799 (BMC) (VVP), and related ATA cases**

Dear Judge Cogan:

On behalf of Arab Bank, PLC (the "Bank"), we are writing to provide the Bank's proposal for the damages stage of these proceedings and to respond to the proposals made by the separate groups of plaintiffs, who have been unable to come up with a unified view.

At the November 7 conference, the Court explained that because "there is a very large number of wrongful death claims, I might ask the parties to agree on a single wrongful death claim," and that "I want a four month discovery period essentially and then a trial."  (H'rg Tr. 11/7/14 at 9:24 – 10:1, & 15:21-22.)  The Court pointed out that "if it's a single personal injury, you can do that pretty quick."  (*Id.* 10:15-16.)  Trying claims for more than one plaintiff, however, created a "potential difficulty" because "once you introduce more than any one plaintiff into a bellwether trial, you then have multiple sets of doctors, multiple sets of damage witnesses and therefore an increased discovery period and you start to drift towards the proposal that you had which is a longer trial." (*Id.* 11:12-16.)  The Court's conclusion was that "my initial reaction is if we are going to do it, we should do it clean," without multiple plaintiffs.  (*Id.* 11:17-18.)  Your Honor explained that "It's typical for the parties either to agree on what the bellwether should be or if not, submit a few proposals to the Court which the Court then chooses as the most typical based on the advocacy of the parties and saying why they think this one is particularly typical." (*Id.* 11:18-22.)  Your Honor then told the parties "[l]et's try that." (*Id.* 11:24.)

Plaintiffs have not presented a coordinated view on damage proceedings, and our proposal to explore using a Special Master has not progressed.  The Bank proposed using a mediator to explore both procedure and possible damage metrics for a Special Master proceeding, but plaintiffs had no interest in starting those discussions.  (*See* Ex. 1, Stephens Letter to Osen, Werbner and Elsner dated November 24, 2014; Ex. 2, Osen Letter to Stephens dated December 1, 2014.)



Honorable Brian M. Cogan
December 5, 2014
Page Two

Plaintiffs have not followed the directions given by the Court on November 7 to discuss a bellwether damage trial limited to one estate.  What they have done instead is again to propose complicated joint trials with large numbers of individual plaintiffs, coupled with unreasonably restricted discovery that was rejected on November 7 by the Court.  Plaintiffs themselves do not agree on what individual plaintiffs should be included in these trials and, therefore, Mr. Osen and Mr. Werbner have made different proposals.  The problems with plaintiffs' proposals are explained below, followed by the Bank's proposal.  The Bank's preferred approach is explained in Point D, below.

### A.      The Osen Plaintiffs' Proposal of December 2

The most recent proposal from the Osen Plaintiffs was made in a letter from Mr. Osen dated December 2 (attached as Ex. 3, Osen Letter to Stephens dated December 2, 2014).  Mr. Osen proposes that the damage claims for 38 plaintiffs from five different attacks and 14 different families be tried in a first, single trial, followed by a second trial with 28 more individual plaintiffs.  The details of this proposal are set out in the chart attached to Mr. Osen's December 2 letter.  (Ex. 3.)

Concerning discovery, the Osen Plaintiffs claim that the first single trial of 38 plaintiffs will require "no more than 12 client depositions" and other limited discovery (Ex. 3 at p. 2), apparently because some of the plaintiffs were previously deposed on liability issues.  But as the Court has already made clear, the Bank has not waived its right to damages discovery.  (H'rg Tr. 11/7/14 at 2:25 – 3:3.)  Of the 38 Osen Plaintiffs, eight are deceased, leaving 30 plaintiffs to depose.  The Osen Plaintiffs also refer to seven plaintiffs' experts who will need to be deposed.  That means that under the Osen Plaintiffs' proposal, for the first trial, the Bank will need 37 depositions before getting to the treating physicians.  The Bank does not yet have information on the treating physicians and therefore is not in a position to determine how many there are, but a conservative estimate is that there will be at least one (including mental health professionals) for each of the living plaintiffs.  This means the Osen Plaintiffs' proposal includes at least 67 depositions, without any depositions as to employers or the experts for the defense.

Document discovery for the Osen Plaintiffs will also be significant.  According to the chart attached to the Osen Plaintiffs' December 2 letter, plaintiffs have yet to produce medical records for 32 of the 38 plaintiffs involved in these five incidents.  As far as we know, no employment records for these 38 plaintiffs have been produced or any other documents pertaining to their injuries or disabilities from the Israel National Insurance.



Honorable Brian M. Cogan
December 5, 2014
Page Three

The second trial proposed by Mr. Osen is another 28 individual plaintiffs from seven different families and four different attacks. The discovery here will involve at least 28 plaintiffs' depositions, 28 treating physicians, Bank experts, third-party witnesses and possibly Israel National Insurance personnel, for a total of 60-70 deponents.

The Osen Plaintiffs' Proposal does not appear to meet any of the goals set by the Court on November 7 for a trial limited to a single estate with full discovery, resulting in a final judgment that could be promptly reviewed in the Court of Appeals.

**B.      The Werbner Plaintiffs' Proposal of November 26**

The Werbner Plaintiffs made a proposal different from the Osen Plaintiffs in a letter dated November 26, 2014 (attached as Ex. 4, Werbner Letter to Stephens dated November 26, 2014). The Werbner Plaintiffs propose a damages trial for all of the plaintiffs from the Café Hillel and the Bus No. 37 attacks. These two attacks include three estates and 14 individual plaintiffs. According to Mr. Werbner, he believes "an efficient discovery and pretrial process will permit a jury to award damages for multiple families and several attacks in a three-week trial or less in April 2015." (Ex. 4, p. 1.) Aside from its inconsistency with the Court's direction on November 7, we believe Mr. Werbner is underestimating the amount of time and effort in preparing and trying a case on behalf of 17 plaintiffs from three different families.

The Café Hillel attack includes two estate claims (David Applebaum and Nava Applebaum), one injury (T. Cohen) and eight derivative claims from family members for a total of 11 plaintiffs. The Werbner Plaintiffs write that they will call two experts and one or two fact witnesses. This comes to a total of at least 14 depositions for this attack before treating physicians are included and, assuming only one physician for each of the nine living plaintiffs, which would bring the total to approximately 23 witnesses without counting any defense experts or other third parties the defense might identify.

The Bus No. 37 attack involves one estate and six derivative claims. According to the Werbner Plaintiffs, their case as to this attack would include one expert and one to two fact witnesses. This brings the total number of deponents for this claim to at least nine without regard to treating physicians. Assuming, once again, only one treating physician for each of the six living plaintiffs, the total is approximately 15, not including defense experts or witnesses as to the plaintiffs' employment or the Israel National Insurance.

In other words, the Werbner Plaintiffs' proposal for a first trial consisting of these two attacks would require no less than 43 depositions and likely several more than that. The



Honorable Brian M. Cogan
December 5, 2014
Page Four

Werbner Plaintiffs' proposal appears not to meet the goals urged by the Court for a trial limited to a single estate with full discovery, resulting in a final judgment that could be promptly reviewed in the Court of Appeals.

### C.  The Bank's alternative proposal for trial of one estate claim

If the Court were to pursue a bellwether trial of one estate as it indicated on November 7, the Bank believes that any one of the following wrongful death claims would be appropriate for a damages trial after expedited discovery:

<u>Estate of Bertin Tita</u>.  Bertin Tita died as a result of the bombing of Bus No. 14A on Jaffa Road, Jerusalem, on June 11, 2003.  Her estate is a plaintiff in the *Litle* action.  Her claims are typical because the bombing of Bus No. 14A is the basis for claims by a significant number of plaintiffs (18) made in more than one case (the *Coulter* case as well as the *Litle* case).  She is also typical because she lived in Israel, was married, and has two family members (spouse and child) who are also plaintiffs.

This trial would involve one estate and two family member deponents, perhaps two treating physicians and two-three experts, for a total of eight-10 deponents/witnesses.  Their claim is only one family and the document production should be more easily furnished.

<u>Estate of Diane Leslie Carter</u>.  Diane Leslie Carter died as a result of the bombing at the Frank Sinatra Cafeteria at Hebrew University on July 31, 2002.  Her estate is a plaintiff in the *Coulter* action.  Her claims are typical because the bombing at Hebrew University is the basis for claims by a significant number of plaintiffs (17) made in more than one case (the *Bennett* case as well as the *Coulter* case).  She is also typical because she lived in Israel and has family members (father and sister) who are also plaintiffs.

This is again one estate and two family members.  With treating physicians, plaintiffs and experts, there are probably only 10-12 witnesses/deponents.

<u>Estate of Hannah Rogen</u>.  Hannah Rogen died as a result of the bombing at the Park Hotel, Netanya, on March 27, 2002.  Her estate is a plaintiff in the *Coulter* action.  Her claims are typical because the bombing at the Park Hotel is the basis for claims by a number of plaintiffs (3) made in more than one case (the *Litle* case as well as the *Coulter* case).  She is also typical because she lived in Israel.



Honorable Brian M. Cogan
December 5, 2014
Page Five

If the trial is limited as the Court indicated to the wrongful death claim of a single plaintiff estate, the Bank believes discovery could be completed for a trial in May 2015 on the following schedule:

December 16, 2014:   Service of interrogatories on damages and requests for production of documents to the selected plaintiff estate, including requests for signed authorizations for release of medical, employment, Israeli National Insurance Institute, and other records from third parties.

January 16, 2015:   Response by plaintiff to interrogatories and requests for production, and full production of documents and signed authorizations for release of medical, employment, and other records in the custody of third-parties.

February 18, 2015   Depositions of fact witnesses to begin.

March 17, 2015   Fact depositions to be completed.

April 1, 2015   All expert reports to be served.

April 15, 2015   Expert depositions to begin.

April 30, 2015   Discovery to be completed.

May 2015   Trial.

**D.     The Bank's Proposal for the Bennett Action as the bellwether**

We believe there is an attractive option to discovery and trial of a bellwether case that eliminates the need for any trial at all and will bring about prompt appellate review.  The most efficient approach to achieve a speedy resolution of this action is to use existing damage awards to promptly enter a final judgment on the claims of the plaintiffs in *Bennett, et al. v. Arab Bank, plc*, No. CV-05-3183 (E.D.N.Y. 2005) (BMC) (the "Bennett Action"), without the need for discovery and a trial.  Damages for the same injuries at issue in the *Bennett* Action already were awarded to the Bennett plaintiffs in 2007 in *Bennett, et al. v. The Islamic Republic of Iran, et al.*, 1:03-cv-01486 (RCL) (D.D.C.) (the "D.C. Action").  The plaintiffs in the Bennett Action are the estate of Marla Bennett, Michael Bennett (the father of Marla Bennett), Linda Bennett (the mother of Marla Bennett), and Lisa Nies (sister of Marla Bennett) (together, the "Bennett



Honorable Brian M. Cogan
December 5, 2014
Page Six

Family").  The Bennett Family sued Arab Bank in the Bennett Action seeking damages based on the death of Marla Bennett caused by the July 31, 2002 bombing of the cafeteria at the Frank Sinatra Building of Hebrew University.

The same Bennett Family members also sued The Republic of Iran for the same injuries in the D.C. Action.  In an Order and Judgment entered August 30, 2007 after Iran's default in the D.C. Action, the Court awarded damages to the members of the Bennett Family consistent with the District of Columbia "on-default" damage metrics that the plaintiffs proposed to be used by the Special Master in correspondence to us dated October 17, 2014.  (*See* ECF No. 1177 at Exhibit A; Judgment (Docket No. 21) in the D.C. Action (D.D.C. Aug. 30, 2007); *see also* Mem. Opinion filed 8/30/2007 (Docket No. 20) in the D.C. Action.)

The Bennett Family members are the only plaintiffs in the Bennett Action.  The attack was at Hebrew University, the plaintiffs' preferred event according to Mr. Werbner at the November 7, 2014 hearing.  (H'rg Tr. 11/7/14 at 10.)

The Bennett Family is collaterally estopped from challenging the damage award in the D.C. Action.  A party is collaterally estopped from re-litigating an issue in a subsequent proceeding if "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issues was necessary to support a valid and final judgment on the merits."  *Interoceanica Corp. v.. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997).  "Collateral estoppel does not require that the parties be the same in both actions."  *Am. Motorist Ins. Co. v. Morris Goldman Real Estate Corp.*, No. 03 CIV. 374 (SAS), 2004 WL 1396260, at *3 (S.D.N.Y. June 18, 2004).  Because the Bennett Family fully participated in the D.C. Action in which their damages were determined, they cannot contest those damage awards in the Bennett Action.  The Bank is not bound by the awards in the D.C. Action because it was not a party to that action, but it can prevent the Bennett Family from re-litigating the damages issue here.  *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329 (1979) (discussing defensive non-mutual collateral estoppel).

The Bank is prepared to agree not to contest the damages awarded in the D.C. Action, which will allow entry of a judgment on liability and damages for the Bennett Family claims in the Bennett Action.  This approach will expedite final resolution, benefit all parties, and conserve Court resources.  It will eliminate the time and expense that would otherwise be incurred for document and deposition discovery as well as preparation for trial and trial itself.  For the Bennett Family, this means eliminating at least three depositions of the plaintiffs themselves;



Honorable Brian M. Cogan
December 5, 2014
Page Seven

depositions of all treating physicians for each of the plaintiffs; reports and depositions of experts on damage issues; and third-party depositions and document discovery.  If the liability judgment is affirmed after appeals, then the Bank would pay the damages amount; if the liability judgment is reversed after appeals, then the entire judgment also would be reversed.  Under this approach, no additional trial of any type would be necessary pending a resolution of the appeal of the Bennett Action.

At the November 7 conference, the Court showed a strong interest in finding an efficient way to reach a final judgment, and said it was considering a trial on a single death claim. (11/7/14 H'rg Tr. 9:24-10:2, 11:11-18.)  The Court was understandably concerned about the length of time damage trials would take.  (*Id.* 7:8-10.)  Using the existing damage awards to achieve a final judgment for the Bennett Family in the Bennett Action is consistent with the goal of all courts to facilitate "the just, speedy, and inexpensive determination of every action."  Fed. R. Civ. P. 1.

We are available, of course, if the Court would find a conference on these issues helpful.

Respectfully submitted,

**DLA Piper LLP (US)**


_____/s/_____
Shand S. Stephens

cc:  all counsel (via ECF)

DEC. 5, 2014 LETTER FROM S. STEPHENS TO HON. BRIAN M. COGAN

# EXHIBIT 1



**DLA PIPER** LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Shand S. Stephens
shand.stephens@dlapiper.com
**T** 212.335.4594
**F** 212.335.4501

*VIA EMAIL*                              November 24, 2014

Gary M. Osen, Esq.                      Michael E. Elsner, Esq.
Osen LLC                                Motley Rice LLC
2 University Plaza, Suite 201           28 Bridgeside Blvd.
Hackensack, NJ 07601                    Mt. Pleasant, SC 29464

Mark Werbner, Esq.
Sayles Werbner
4400 Renaissance Tower
Dallas, TX 75270

Re:     *Linde v. Arab Bank, PLC*, 2:04-cv-2799 (BMC)(VVP), and related cases

Dear Gary:

I am responding to your letter dated November 18, 2014. Your letter refuses to discuss using a Special Master to determine damages for the first-trial Plaintiffs because "it seems unlikely that the parties will agree on a damages framework." At the November 7 conference, Judge Cogan showed a strong interest in use of a Special Master and he instructed the parties to fully explore a wide variety of proposals using Special Masters. (H'rg Tr. 11/7/14 at 5:23-6:18, 8:15-25.) He was understandably concerned about the time damage trials would take and wanted the parties to consider this carefully. (*Id.* 7:8-10.) He emphasized that "I want to be sure everybody thoroughly thinks this over." (*Id.* 12:15.)

The Bank continues to believe there are advantages to all parties and the Court in expedited damage proceedings under the supervision of a Special Master, and therefore proposes that the parties involve a mediator to see if agreement can be reached on a framework for using a Special Master and reasonable damage award parameters. Your letter repeats plaintiffs' demand that the Bank agree to damage metrics applied in uncontested default proceedings in FSIA cases against defendants designated by the United States government as State Sponsors of Terrorism, but default judgments against designated State Sponsors of Terrorism are not like the present case. Mediation on these limited issues should not be a lengthy process. The Bank believes the Court also would welcome this approach.

Please let us know as soon as possible whether plaintiffs will agree to mediation on these issues.

Sincerely,

_____/s/_____
Shand S. Stephens

cc: All Counsel (via e-mail)

DEC. 5, 2014 LETTER FROM S. STEPHENS TO HON. BRIAN M. COGAN

# EXHIBIT 2

OSEN LLC

ATTORNEYS AT LAW

WWW.OSENLAW.COM

| | |
|---|---|
| 2 UNIVERSITY PLAZA, SUITE 201, HACKENSACK, NJ 07601 | 345 SEVENTH AVENUE, 21ST FLOOR, NEW YORK, NY 10001 |
| T. 201.265.6400   F. 201.265.0303 | T. 646.380.0470  F. 646.380.0471 |

December 1, 2014

**VIA E-MAIL**

Shand S. Stephens, Esq.
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020

**Re:** *Linde v. Arab Bank, PLC*, 04-CV-2799 (BMC) (VVP), and related cases

Dear Shand:

We appreciate your renewed interest in using the Special Master process to resolve the damages claims in this case and as previously noted, the *Linde/Coulter* and *Almog* and *Afriat-Kurtzer* plaintiffs favored such an approach subject to the parameters outlined in our prior correspondence. We also fully appreciate your desire to reduce your client's exposure and avoiding a trial and we therefore understand your efforts to arrive at a formulation that will accomplish both goals from your perspective. We have given close and careful consideration to 000the Bank's proposed Special Master Process, including whether to engage a mediator to establish such process's logistics, including metrics that would serve as guidelines for damages awards.

Ultimately, we don't think it efficient at this stage to engage in mediation on this issue. We also acknowledge your view that "uncontested default proceedings in FSIA cases" are not the appropriate damage metrics for these cases, but don't believe our respective views can be bridged without an objective benchmark. Therefore, we believe that judicial economy is best served by proceeding with a first damages trial commencing in late April. That is only a few months away and it will result in damages awards that will establish helpful metrics – or as the Court described it – "if not a [] benchmark, I believe a bellwether."

Once the general range of damages in these cases is established via jury trials, it may then be possible to more accurately value the remaining claims without necessitating additional trials. To that end, the Plaintiffs will soon provide you with one or more revised discovery and trial proposals in accordance with the Court's guidance.

Sincerely,

/s/ Gary M. Osen

cc:     All Counsel

DEC. 5, 2014 LETTER FROM S. STEPHENS TO HON. BRIAN M. COGAN

# EXHIBIT 3

**OSEN LLC**

ATTORNEYS AT LAW

WWW.OSENLAW.COM

<table>
<tr><td>2 UNIVERSITY PLAZA, SUITE 201, HACKENSACK, NJ 07601<br>T. 201.265.6400   F. 201.265.0303</td><td>345 SEVENTH AVENUE, 21ST FLOOR, NEW YORK, NY 10001<br>T. 646.380.0470   F. 646.380.0471</td></tr>
</table>

December 2, 2014

**VIA E-MAIL**

Shand S. Stephens, Esq.
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020

   **Re: *Linde v. Arab Bank, PLC*, 04-CV-2799 (BMC) (VVP), and related cases**

Dear Shand:

   Further to my November 18, 2014 letter, we write on behalf of the *Linde/Coulter* and *Almog/Afriat-Kurtzer* plaintiffs to elaborate on our proposal regarding the damages phase of the trial.

   <u>First</u>, we have carefully reviewed the parties' previous correspondence and the transcript of the November 7, 2014 status conference and the Court's directive to identify a framework affording a four month discovery and pre-trial process prior to jury selection.  We have also reviewed the 24 attacks, examined the nature of claims and damages categories for the attacks, and evaluated: (a) discovery completed to date; and (b) the universe of potential additional discovery that the Court might reasonably order.  Our proposal is set forth below.

   <u>Second</u>, we will suggest that the Court schedule an additional damages trial in August for an additional 4 attacks (affording Defendant additional time to complete discovery for those attacks) to provide further damage metrics.  At the same time, we agree that the parties should commit to a schedule to complete all further damages-related discovery by December 1, 2015 as set forth in your November 4, 2014 letter to the Court.

**First Damages Trial**

   For the initial damages trial to commence in late April 2015, we propose that all claims for the following five (5) attacks be adjudicated (and that the Court enter a Pre-trial Scheduling Order that imposes deadlines for fact and expert damages discovery, as well as processes for expediting resolution of any discovery disputes within the established time period):

   1.  December 12, 2001 – Bus No. 189 attack;

Shand S. Stephens, Esq.
December 2, 2014
Page 2 of 5

2.      March 27, 2002 – Park Hotel suicide bombing;

3.      May 7, 2002 – Sheffield Club bombing;

4.      June 18, 2002 – Bus No. 32-A suicide bombing; and

5.      July 31, 2002 – Hebrew University cafeteria bombing.

More specific information regarding the discovery posture for these attacks is set forth below.  We believe that these 5 attacks are appropriate for a first trial because our review concluded:

- Attack No.1 (Bus No. 189) involves one personal injury claim in which the victim was diagnosed with Post-Traumatic Stress Disorder (PTSD), and four of his family members are seeking damages for derivative injuries.  The victim has been deposed, and we do not object to his submitting to a Rule 35 exam.  His four family members who are also plaintiffs have not been deposed (a few of them are minors).   We have identified four treating physicians and will provide their available contact information to you as well, via a separate letter.   The other plaintiff (Avraham Eichental) asserting a claim for this attack has not been deposed.

- Attacks Nos. 2-5 are limited to wrongful death claims and/or a limited number of derivative claims for surviving family members arising from a wrongful death.  Accordingly, once these claims are adjudicated, the parties and the Court will have the benefit of an array of metrics that can be considered with respect to claims that arise or are derived from wrongful death.  Very minimal additional discovery should be necessary for each of these attacks.

- For the claims arising from deaths resulting from Attacks Nos. 2-5, there are only 8 plaintiffs who have not been deposed.  Plaintiffs will agree to make all of these plaintiffs available between now and January 31, 2015.

- Plaintiffs presently believe that 7 plaintiffs (including estates of 5 decedents) will be asserting economic loss that may require an expert report from a trained economist.

In sum, our proposal should require no more than 12 client depositions, 1 Rule 35 Examination, 3 medical experts, 1 economics expert who would submit expert reports and an additional 3-5 fact witnesses (to be identified before December 31st) who have not been deposed by Defendant.  More precise details are set forth in Exhibit A (attached).  We believe all of this discovery can be easily completed within the time-frame set by the Court.

Finally, and in light of the Court's expressed desire to expedite a first trial's resolution, we believe the parties should agree that the Pre-trial Scheduling Order should direct:

     a.     Any retained expert reports or Rule 26(a)(2)(C) disclosures submitted by either side will be exchanged on or before February 16, 2015.

     b.     Any retained expert rebuttal reports submitted by either side will be exchanged on or before March 16, 2015.

     c.     All Rule 26(a)(2)(B) retained experts will be deposed on or before April 10, 2015.

     d.     Defendant to complete depositions it chooses to conduct of identified treating physicians or treating health professionals by March 31, 2015.

     e.     Plaintiffs to identify any additional fact witnesses to testify at trial by December 31, 2014 and make them available for deposition by January 31, 2015.

In addition, we would propose the Court direct the parties to streamline the pre-trial process by:

     f.     Limiting all fact witness depositions conducted in English to 3 hours, and depositions requiring translation to 6 hours, absent a showing for cause.

     g.     Limiting all expert witness depositions conducted in English to one 7-hour deposition, and depositions requiring translation to 12 hours.

     h.     Requiring parties to establish good cause (by letter) for refusing to stipulate to the authenticity of categories of records such as medical, wage, school, employment, and police records (and thus obviate the need to burden the jury with superfluous jury testimony).

## Second Damages Trial

Subject to the Court's schedule, we would propose that the Court schedule a second damages trial to adjudicate damages claims for the following 4 attacks (and enter a Pre-trial Scheduling Order that imposes deadlines for fact and expert damages discovery):

     1.     March 10, 2002 – Café Moment suicide bombing;

     2.     March 5, 2003 – Bus No. 37 suicide bombing;

     3.     May 18, 2003 – Bus No. 6 suicide bombing; and

     4.     June 20, 2003 – Road 60 shooting attack.

In sum, our proposal for the second trial will require no more than 11 additional client depositions, 3 Rule 35 Examinations, 5 medical experts, one economics expert who would

Shand S. Stephens, Esq.
December 2, 2014
Page 4 of 5

submit expert reports and an additional 3-5 fact witnesses who have not been deposed by Defendant.  More precise details are set forth in Exhibit A.

Once a jury sets parameters for the full range of damages in these two initial trials, the parties may decide to revisit the possibility of utilizing Special Masters with the benefit of the metrics arrived at based on these contested proceedings.

**Discovery Process**

Your November 4, 2014 letter to the Court referenced "the prompt delivery of consent forms authorizing the release of hospital, medical and other health care records and relevant third-party records for each Plaintiff."  In general, plaintiffs have been providing complete medical records (on a rolling basis), but we have no objection in principle to having plaintiffs execute medical record consent forms for plaintiffs asserting physical injuries or PTSD claims and employment record consent forms for plaintiffs asserting lost wages claims (even where complete records have already been produced).  Accordingly, please send us the proposed forms as soon as possible for our review so we can reach agreement on the forms and begin promptly transmitting them to the affected plaintiffs.

As for the identification of treating physicians, the records (including Plaintiff Profile Forms – "PPFs") already produced should indicate the names of all treating physicians.  For the second damages trial, plaintiffs would propose updating the relevant PPFs by January 31, 2015 to identify all treating physicians relevant to those attacks and the plaintiffs affected thereby.  For all other plaintiffs, plaintiffs would propose updating the relevant PPFs by March 31, 2015.

**Discovery Timelines**

For all remaining plaintiffs, the discovery schedule would largely adhere to Defendant's prior proposal:

| | |
|---|---|
| August 5, 2015: | Fact depositions to be completed. |
| September 15, 2015: | All initial expert reports to be served. |
| October 1, 2015: | Expert depositions to begin. |
| December 1, 2015: | Discovery to be completed. |

Since we are obligated to submit a joint letter to the Court on December 5th, please let us know as soon as you can which parts (if any) of our approach you agree with and what alternatives you propose for any parts that you do not, so that we have sufficient time to prepare a joint letter to the Court.

**Shand S. Stephens, Esq.**
**December 2, 2014**
**Page 5 of 5**

Thank you in advance for your cooperation.

Sincerely,


/s/ Gary M. Osen


Enclosure


cc:     All Counsel

# FIRST DAMAGES TRIAL

| Attack Date | Attack | Plaintiff Group | Family Name | Plaintiff Full Name | Injury/Familial Relationship | Profile Form Provided | Plaintiff Aleardy Deposed | Anticipated Retained Expert Witness | Medical Records Provided |
|---|---|---|---|---|---|---|---|---|---|
| 2001-12-12 | Emmanuel Bus No. 189 | Almog cases | **Eichental** | Avraham Eichental | Spouse of non-U.S. victim-decedent | 12/16/2011 | No | | No |
| 2001-12-12 | Emmanuel Bus No. 189 | Almog cases | **Pilant** | Benyamin Pilant | Physically present at attack but not physically injured | No | 7/16/2007 | Medical | Yes |
| 2001-12-12 | Emmanuel Bus No. 189 | Almog cases | **Pilant** | Elizabeth Ann Hastings | Child of victim-parent | 11/16/2012 | No | | No |
| 2001-12-12 | Emmanuel Bus No. 189 | Almog cases | **Pilant** | Levy Izak Pilant | Child of victim-parent | 11/16/2012 | No | | No |
| 2001-12-12 | Emmanuel Bus No. 189 | Almog cases | **Pilant** | Robert Elliott Hastings | Child of victim-parent | 11/16/2012 | No | | No |
| 2001-12-12 | Emmanuel Bus No. 189 | Almog cases | **Pilant** | Samuel Philips Hastings | Child of victim-parent | 11/16/2012 | No | | No |
| 2002-03-27 | Park Hotel | Litle cases | **Naimi** | Moshe Naimi | Child of victim-decedent | No | 2/20/2007 | | No |
| 2002-03-27 | Park Hotel | Linde cases | **Rogen** | Estate of Hannah Rogen (Greta Geler as Estate Representative) | Estate of victim-decedent | No (deceased) | *Not Applicable* | | Yes |
| 2002-03-27 | Park Hotel | Almog cases | **Anachovich** | Akiva Anachovich | Child of victim-decedent | No | 12/5/2007 | | No |
| 2002-05-07 | Sheffield Club Bombing | Linde cases | **Bablar** | Esther Bablar (Jacqueline Chambers as Estate Representative) | Estate of victim-decedent | No (deceased) | *Not Applicable* | | Yes |
| 2002-05-07 | Sheffield Club Bombing | Linde cases | **Bablar** | Jacqueline Chambers | Child of victim-decedent | No | 3/6/2007 | | No |
| 2002-05-07 | Sheffield Club Bombing | Linde cases | **Bablar** | Levana Cohen Haroooch | Child of victim-decedent | Yes | No | | No |
| 2002-05-07 | Sheffield Club Bombing | Almog cases | **Massa** | Menashe Agababa | Sibling of victim-decedent | 12/9/2011 | No | | No |
| 2002-05-07 | Sheffield Club Bombing | Almog cases | **Massa** | Yehuda Agababa | Sibling of victim-decedent | 2/6/2013 | No | | No |

| Attack Date | Attack | Plaintiff Group | Family Name | Plaintiff Full Name | Injury/Familial Relationship | Profile Form Provided | Plaintiff Aleardy Deposed | Anticipated Retained Expert Witness | Medical Records Provided |
|---|---|---|---|---|---|---|---|---|---|
| **2002-05-07** | **Sheffield Club Bombing** | Almog cases | **Massa** | Yehezkel Agababa | Sibling of victim-decedent | 2/6/2013 | No | | No |
| **2002-06-18** | **Bus 32A** | Litle cases | **Gottlieb** | Moshe Gottlieb | Estate of victim-decedent | Yes | *Not Applicable* | | No |
| **2002-06-18** | **Bus 32A** | Litle cases | **Gottlieb** | Sheila Gottlieb | Spouse of victim-decedent | No | 3/21/2007 | | No |
| **2002-06-18** | **Bus 32A** | Litle cases | **Gottlieb** | Seymour Gottlieb | Child of victim-decedent | No | No | | No |
| **2002-06-18** | **Bus 32A** | Litle cases | **Gottlieb** | Faye Benjaminson | Child of victim-decedent | No | 3/12/2007 | | No |
| **2002-06-18** | **Bus 32A** | Linde cases | **Aluf** | Gila Aluf | Spouse of victim-decedent | No | 3/12/2008 | | No |
| **2002-07-31** | **Hebrew University** | Litle cases | **Bennett** | Marla Bennett | Estate of victim-decedent (Michael and Linda Bennett as Estate Representatives) | Yes | Not Applicable | Medical / Economic | No |
| **2002-07-31** | **Hebrew University** | Litle cases | **Bennett** | Michael Bennett | Parent of victim-decedent | No | 3/15/2007 | | No |
| **2002-07-31** | **Hebrew University** | Litle cases | **Bennett** | Linda Bennett | Parent of victim-decedent | No | 3/15/2007 | | No |
| **2002-07-31** | **Hebrew University** | Litle cases | **Bennett** | Lisa Nies | Sibling of victim-decedent | Yes | No | | No |
| **2002-07-31** | **Hebrew University** | Linde cases | **Blutstein** | Benjamin Blutstein (Richard Blutstein and Katherine Baker as Estate Representative) | Estate of victim-decedent | No (deceased) | *Not Applicable* | Economic | No |
| **2002-07-31** | **Hebrew University** | Linde cases | **Blutstein** | Richard Blutstein | Parent of victim-decedent | No | 2/6/2007 | | No |
| **2002-07-31** | **Hebrew University** | Linde cases | **Blutstein** | Katherine Baker | Parent of victim-decedent | No | 2/6/2007 | | Yes |
| **2002-07-31** | **Hebrew University** | Linde cases | **Blutstein** | Rebekah Blutstein | Sibling of victim-decedent | No | 11/19/2008 | | Yes |
| **2002-07-31** | **Hebrew University** | Linde cases | **Carter** | Dianne Carter (Larry Carter as Estate Representative) | Estate of victim-decedent | No | *Not Applicable* | Economic | No |
| **2002-07-31** | **Hebrew University** | Linde cases | **Carter** | Larry Carter | Parent of victim-decedent | Yes | 3/1/2007 | | No |
| **2002-07-31** | **Hebrew University** | Linde cases | **Carter** | Shaun Choffel | Sibling of victim-decedent | Yes | No | | No |

| Attack Date | Attack | Plaintiff Group | Family Name | Plaintiff Full Name | Injury/Familial Relationship | Profile Form Provided | Plaintiff Aleardy Deposed | Anticipated Retained Expert Witness | Medical Records Provided |
|---|---|---|---|---|---|---|---|---|---|
| **2002-07-31** | **Hebrew University** | Linde cases | **Coulter** | Janis Coulter (Robert Coulter, Sr. as Estate Representative) | Estate of victim-decedent | No (deceased) | *Not Applicable* | Economic | No |
| **2002-07-31** | **Hebrew University** | Linde cases | **Coulter** | Robert Coulter, Sr. | Parent of victim-decedent | No | 11/13/2008 | | Yes |
| **2002-07-31** | **Hebrew University** | Linde cases | **Coulter** | Robert Coulter, Jr. | Sibling of victim-decedent | No | 11/13/0208 | | No |
| **2002-07-31** | **Hebrew University** | Linde cases | **Coulter** | Dianne Miller | Sibling of victim-decedent | No | 1/16/2007 | | No |
| **2002-07-31** | **Hebrew University** | Linde cases | **Gritz** | David Gritz (Nevanka Gritz as as Estate Representative) | Estate of victim-decedent | No (deceased) | *Not Applicable* | Economic | No |
| **2002-07-31** | **Hebrew University** | Linde cases | **Gritz** | Nevenka Gritz | Parent of victim-decedent | No | 9/7/2007 | | No |
| **2002-07-31** | **Hebrew University** | Linde cases | **Gritz** | Norman Gritz | Parent of victim-decedent | No | No | | No |

3

# SECOND TRIAL

| Attack Date | Attack | Plaintiff Group | Family Name | Plaintiff Full Name | Injury/Familial Relationship | Profile Form Provided | Plaintiff Aleardy Deposed | Anticipated Retained Expert Witness | Medical Records Provided |
|---|---|---|---|---|---|---|---|---|---|
| 2002-03-09 | Café Moment, Jerusalem | Almog cases | Eliyahu | Ayelet Attias | Sibling of victim-decedent | 1/21/2011, 11/16/2009 | No | | No |
| 2002-03-09 | Café Moment, Jerusalem | Almog cases | Cohen | Yossef Cohen | Physically injured in attack | 11/16/2009 | 6/15/2010 | Medical | Yes |
| 2002-03-09 | Café Moment, Jerusalem | Almog cases | Eliyahu | Yehuda Eliyahu | Sibling of victim-decedent | 1/21/2011, 11/16/2009 | No | | No |
| 2003-03-05 | Bus No. 37, Haifa | Litle cases | Litle | Abigail Litle (Philip Litle as Estate Representative) | Estate of victim-decedent | Yes | Not Applicable | Economic | No |
| 2003-03-05 | Bus No. 37, Haifa | Litle cases | Litle | Philip Litle | Parent of victim-decedent | Yes | No | | Yes |
| 2003-03-05 | Bus No. 37, Haifa | Litle cases | Litle | Heidi Litle | Parent of victim-decedent | No | 6/2/2009 | | Yes |
| 2003-03-05 | Bus No. 37, Haifa | Litle cases | Litle | Elishua Litle | Sibling of victim-decedent | Yes | No | | No |
| 2003-03-05 | Bus No. 37, Haifa | Litle cases | Litle | Hannah Litle | Sibling of victim-decedent | Yes | No | | No |
| 2003-03-05 | Bus No. 37, Haifa | Litle cases | Litle | Josiah Litle | Sibling of victim-decedent | Yes | No | | No |
| 2003-03-05 | Bus No. 37, Haifa | Litle cases | Litle | Noah Litle | Sibling of victim-decedent | Yes | No | | No |
| 2003-03-05 | Bus No. 37, Haifa | Almog cases | Laham | Racheli Laham | Sibling of victim-decedent | 11/6/2009 | No | | No |
| 2003-05-18 | Bus No. 6 Bombing, French Hill | Linde cases | Averbach | Steven Averbach (Julie Averbach as Estate Representative) | Estate of victim-decedent | No | 3/1/2006 | Medical / Economic | Yes |
| 2003-05-18 | Bus No. 6 Bombing, French Hill | Linde cases | Averbach | Julie Averbach | Spouse of victim-decedent | No | 7/18/2008 | | Yes |

| Attack Date | Attack | Plaintiff Group | Family Name | Plaintiff Full Name | Injury/Familial Relationship | Profile Form Provided | Plaintiff Aleardy Deposed | Anticipated Retained Expert Witness | Medical Records Provided |
|---|---|---|---|---|---|---|---|---|---|
| 2003-05-18 | Bus No. 6 Bombing, French Hill | Linde cases | **Averbach** | Devir Averbach | Child of victim-decedent | No | 8/8/2008 | | Yes |
| 2003-05-18 | Bus No. 6 Bombing, French Hill | Linde cases | **Averbach** | Sean Averbach | Child of victim-decedent | Yes | No | | Yes |
| 2003-05-18 | Bus No. 6 Bombing, French Hill | Linde cases | **Averbach** | David Averbach | Parent of victim-decedent | No | 9/25/2008 | | No |
| 2003-05-18 | Bus No. 6 Bombing, French Hill | Linde cases | **Averbach** | Maida Averbach | Parent of victim-decedent | No | 9/25/2008 | | No |
| 2003-05-18 | Bus No. 6 Bombing, French Hill | Linde cases | **Averbach** | Michael Averbach | Sibling of victim-decedent | No | 12/16/2008 | | No |
| 2003-05-18 | Bus No. 6 Bombing, French Hill | Linde cases | **Averbach** | Tamir Averbach | Child of victim-decedent | No | 8/8/2008 | | No |
| 2003-05-18 | Bus No. 6 Bombing, French Hill | Linde cases | **Averbach** | Adam Averbach | Child of victim-decedent | Yes | No | | Yes |
| 2003-05-18 | Bus No. 6 Bombing, French Hill | Linde cases | **Averbach** | Eileen Sapadin | Sibling of victim-decedent | No | 12/11/2008 | | Yes |
| 2003-05-18 | Bus No. 6 Bombing, French Hill | Almog cases | **Israeli** | Adina Dabach | Sibling of victim-decedent | 11/16/2009 | No | | No |
| 2003-06-20 | Shooting Attack on Road 60 | Linde cases | **Goldstein** | Eugene Goldstein | Physically injured in attack, spouse of victim, parent of non-plaintiff decedent Howard Goldstein | No | 5/25/2007 | Medical | Yes |
| 2003-06-20 | Shooting Attack on Road 60 | Linde cases | **Goldstein** | Lorraine Goldstein | Physically injured in attack, spouse of victim, parent of non-plaintiff decedent Howard Goldstein | No | 5/25/2007 | Medical | Yes |
| 2003-06-20 | Shooting Attack on Road 60 | Linde cases | **Goldstein** | Richard Goldstein | Sibling of non-plaintiff decedent Howard Goldstein, Child of victim-parent | No | 10/14/2008 | | No |

| Attack Date | Attack | Plaintiff Group | Family Name | Plaintiff Full Name | Injury/Familial Relationship | Profile Form Provided | Plaintiff Aleardy Deposed | Anticipated Retained Expert Witness | Medical Records Provided |
|---|---|---|---|---|---|---|---|---|---|
| **2003-06-20** | **Shooting Attack on Road 60** | Linde cases | **Goldstein** | Michael Goldstein | Sibling of non-plaintiff decedent Howard Goldstein, Child of victim-parent | No | 7/1/2008 | | No |
| **2003-06-20** | **Shooting Attack on Road 60** | Linde cases | **Goldstein** | Barbara Goldstein-Ingardia | Sibling of non-plaintiff decedent Howard Goldstein, Child of victim-parent | No | 10/14/2008 | | No |
| **2003-06-20** | **Shooting Attack on Road 60** | Linde cases | **Goldstein** | Chana Freedman | Child of non-plaintiff decedent Howard Goldstein | No | 10/20/2008 | | No |

DEC. 5, 2014 LETTER FROM S. STEPHENS TO HON. BRIAN M. COGAN

# EXHIBIT 4

S A Y L E S | W E R B N E R

November 26, 2014

**Via Email**
Shand S. Stephens
DLA Piper, LLP
1251 Avenue of the Americas 27th Floor
New York, New York 10020-1104

   **RE:**  *Litle, et al. v. Arab Bank,* **and** *related cases*

Dear Shand:

   I write on behalf of the *Litle, Bennett,* and *Roth* Plaintiffs to share our views regarding the first damage trial.[1]

   I believe an efficient discovery and pretrial process will permit a jury to award damages for multiple families and several attacks in a three-week trial or less in April 2015. Our group will propose to the Court that our clients from the Café Hillel attack be included in the first trial along with those from the Bus No. 37 bombing in Haifa.[2]

   For these two attacks, there are seven surviving members of the Applebaum family, six surviving members of the Litle family, and Tzippy Cohen.  Ms. Cohen was deposed in 2007, and Heidi Litle was deposed in 2009.  For the remaining family members, we will make them available for depositions over a week in Israel in January, along with potentially one or two fact witnesses. During the time period when your colleagues and predecessors actively were deposing our clients in Israel, we completed as many as 40 Plaintiff depositions per week with a quadruple track (*i.e.*, four separate depositions occurring simultaneously) and two in each room per day. Particularly as those depositions included questions pertaining to liability that no longer are at issue, this small universe of Applebaum and Litle family members could be deposed in a very short time frame.

   In addition, we would use one economic expert for the Estates of David and Naava Applebaum, and Heidi Litle. We will provide you with expert reports before the end of January. Ms. Cohen did not have extensive medical treatment. We have produced her medical records which are less than a dozen pages. We will make her available in New York for a two-hour follow-up deposition by January 16, 2015 if you desire to confirm the present status of her injuries.

---

[1] As I stated in Court, my clients will not waive a jury and will not consent to a Master to decide damages.

[2] If the Court is open to a trial with additional claimants we would welcome added cases or be willing to include our clients in attacks that are in other Plaintiffs' proposals.

Shand Stephens
November 26, 2014
Page 2


       We ask that you consider this proposal and join us in recommending it to the Court. I am available to discuss the above next week.

Sincerely,

Mark S. Werbner
mwerbner@swtriallaw.com
(214) 939-8711


cc:    All Counsel (via email)