```
                                                                    3369
```

|     |                                                              |
|-----|--------------------------------------------------------------|
|  1  |           UNITED STATES DISTRICT COURT                       |
|     |           EASTERN DISTRICT OF NEW YORK                       |
|  2  |                                                              |
|     | - - - - - - - - - - - - - - - - - X                         |
|  3  |                                                              |
|  4  |                              :  04 CV 02799 (BMC)            |
|     | COURTNEY LINDE, et al.,         And all related cases        |
|  5  |         Plaintiffs,          :  04 CV 05449 (Litle)          |
|     |                                 04 CV 05564 (Almog)          |
|  6  |                              :  04 CV 00365 (Coulter)        |
|     |                                 05 CV 00388 (Afrial-Kurtzer) |
|  7  |    - against--               :  05 CV 03183 (Bennett)        |
|     |                              :  05 CV 03768 (Roth)           |
|  8  |                                 06 CV 01623 (Weiss)          |
|     | ARAB BANK, PLC,              :                               |
|  9  |                                 United States Courthouse     |
|     |         Defendant.           :  Brooklyn, New York           |
| 10  |                                                              |
|     |                              :  September 22, 2014           |
| 11  |                                 9:30 o'clock a.m.             |
| 12  | - - - - - - - - - - - - - - - - - X                         |
| 13  |                                                              |
|     |            TRANSCRIPT OF JURY TRIAL                          |
| 14  |       BEFORE THE HONORABLE BRIAN M. COGAN                    |
|     |       UNITED STATES DISTRICT JUDGE, and a jury.              |
| 15  |                                                              |
| 16  | APPEARANCES:                                                 |
| 17  | For the Linde and              OSEN, LLC                    |
|     | Coulter Plaintiffs:            By:  GARY M. OSEN, ESQ.       |
| 18  |                                                              |
|     |                                TURNER & ASSOCIATES, PLLC    |
| 19  |                                By:  CLYDE T. TURNER, ESQ.    |
| 20  | For the Litle,                 SAYLES WERBNER                |
|     | Bennett and Roth               By:  MARK S. WERBNER, ESQ.    |
| 21  | Plaintiffs:                                                  |
|     | For the Almog                  STONE, BONNER & ROCCO, LLP    |
| 22  | Plaintiffs:                    By:  JAMES P. BONNER, ESQ.    |
| 23  |                                MOTLEY RICE, LLC              |
|     |                                By: MICHAEL E. ELSNER, ESQ.   |
| 24  |                                    JODI FLOWERS, ESQ.        |
| 25  |                                                              |

```
         CMH      OCR      RMR      CRR      FCRR
```

3370

```
 1  A P P E A R A N C E S  (Continued)
 2  For the Defendant:              DLA PIPER US, LLP
                                    By:  SHAND STEPHENS, ESQ.
 3                                       ANTHONY COLES, ESQ.
                                         BRETT INGERMAN, ESQ.
 4                                       MARGARET CIVETTA, ESQ.
 5
 6  Court Reporter:                 Charleane M. Heading
                                    225 Cadman Plaza East
 7                                  Brooklyn, New York
                                    (718) 613-2643
 8
 9  Proceedings recorded by mechanical stenography, transcript
    produced by computer-aided transcription.
10
11
12                      *    *    *    *    *
13
14           (The following occurred in open court outside the
15  presence of the jury at 11:55 a.m.)
16           THE COURT:  Be seated, please.
17           I have convened just to note what's happened for
18  purposes of the record.  We have shown the parties a note we
19  received from the jury which we've marked as Court Exhibit
20  No. 5 requesting the transcript from Ronni Shaked on both
21  direct and cross and redirect regarding the Bus 19 bombing,
22  Hebrew University and Mortar Attack Number 24.
23           The parties have conferred and agreed upon the
24  transcript that is responsive to that request and we have
25  given that transcript to the jury marked as Court Exhibit
```

CMH        OCR        RMR        CRR        FCRR

1  No. 6.
2          Anything else we need to cover?
3          THE COURT:  All right.  Thank you.  We'll stand by.
4          MR. WERBNER:  Thank you.
5          MR. COLES:  Thank you, Your Honor.
6          (Court is in recess at 12:00 p.m. awaiting verdict
7  of the jury.)
8          (Continued on next page.)

3372

1  (The following occurred in open court outside the
2  presence of the jury at 2:00 p.m.)
3       THE COURT:  Okay.  We have marked a note from the
4  jury as Court Exhibit 7 which says:  We do not have
5  Exhibit 3592.  Transcript says this was admitted into
6  evidence.  Can we have this?
7       I think what the jury is referring to is that
8  Mr. Turner, in his questioning of the witness Shaked, said
9  this has already been admitted into evidence.  That was a
10  mistake.  It had not already been admitted into evidence.
11       What do you want to do, Mr. Turner.
12       MR. TURNER:  Well, I think that given the fact that
13  it's apostilled, given the fact that we used it, given the
14  fact that it was a simple error on my part as opposed to
15  actual, you know, it's not something that was just kind of
16  pulled out of the hat and never used during the course of the
17  trial, we ought to send it back.
18       THE COURT:  If that was the error, I would reopen
19  the record in a heartbeat and admit the document.  Indeed, I
20  would reopen the record in a heartbeat and admit the document
21  if I saw a foundation for it in the record.  The problem is
22  it's not apostilled.
23       MR. COLES:  It's not apostilled.
24       MR. OSEN:  We can double check that.
25       THE COURT:  I'm looking at it.  You can see if

CMH     OCR     RMR     CRR     FCRR

3373

1  you've got an apostille copy.  The one you gave to us is not
2  apostille and I don't think it's referred to, at least in
3  terms of authenticity, it's not referred to anywhere in the
4  record so I don't know what I can do with it.
5       MR. TURNER:  There's sort of a side issue too
6  because this is the Silwan cell and they were involved in the
7  Sheffield bombing and these people were all convicted at one
8  time for all of these various things and they handed me 3658
9  which they said was already in evidence, although I'm having
10 that checked now because they told me they don't show 3658
11 which is, in essence, the same conviction records apostilled,
12 but they're checking on that right now.
13      So, in other words, we may be able to tell them go
14 to this exhibit which is the same apostille conviction record.
15      MR. COLES:  I mean, just for the record, 3658 is not
16 in evidence itself and it is a different -- it refers, it
17 refers to Sheffield, not to the ones that 3592 refer to.
18      MR. TURNER:  They'll have an answer for that in just
19 a second.
20      THE COURT:  Well, I suppose the other thing I can do
21 would be to reopen the record.
22      MR. COLES:  We would object to that, Your Honor.  We
23 would object to that in a number of ways.  One, they had three
24 or four opportunities to put this into evidence.  They had an
25 opportunity to do it at trial.  They had the opportunity when

3374

they gave us the agreed upon exhibits. They had an opportunity when they reviewed our agreed upon exhibits. The record on that is closed. Further, it's not authenticated because it's not apostilled.

THE COURT: Well, that's why I would be reopening the record.

MR. COLES: And if you look at Shaked's testimony, there's no foundation set for the document.

THE COURT: Look, I completely agree with you. There's no basis to admit it now. I wouldn't just reopen the record and admit it. I would have to reopen the record and allow plaintiffs to offer some basis for admitting it. That would be the reopening of the record.

MR. COLES: I mean, our view is we should tell the jury that it's not admitted into evidence and, therefore, it's not in the jury room.

THE COURT: You know, what bothers me, Mr. Coles, is it's so obviously authentic. I understand the defendants have taken the approach here of fight on every front and we've had battles on authenticity in this case and making the plaintiffs dot I's and cross T's beyond any case that I've ever seen and that's the defendants' right, as I've said, but, you know, it still is a search for the truth. If there was some reason to doubt the document, I'd see what you mean, but there really isn't.

3375

1    MR. COLES:  Well, the federal rules give you reason
2 to doubt it and that's, I mean -- I don't need to respond to
3 what Your Honor just said.  It seems to me under the rules,
4 there is no basis for admitting this document.
5    THE COURT:  There isn't.  I am not going to simply
6 reopen the record and tell the jury that the document is now
7 admitted.  I won't do that.
8    MR. COLES:  And the position that Your Honor has
9 taken consistently through this case, if you have an
10 apostilled document, I'll take that.  You put plaintiffs to
11 their burden of getting apostille.  They got it for some.
12 They didn't get it for others.
13    THE COURT:  There were some documents that we
14 allowed in that were not apostilled when I felt that there was
15 an adequate basis for letting them in.
16    MR. OSEN:  Your Honor, PX 3336 which was the
17 conviction of the bomb maker Abdulla Barghuthi, that was
18 admitted by virtue of foundation through Mr. Shaked.  That
19 conviction also addresses the Hebrew University bombing and
20 Mr. Barghuthi's conviction for that bombing.
21    THE COURT:  So what is your point, that we should
22 tell the jury that Mr. Turner mistakenly referred to this
23 exhibit as being in evidence when, in fact, it was not
24 admitted, but similar information is contained in 3338?
25    MR. OSEN:  I would just say information pertaining

3376

1  to the Hebrew University bombing is in 3336.
2          THE COURT:  Whereas, the defendants think I should
3  just tell the jury there was an error and there's nothing
4  that's been admitted?
5          MR. COLES:  I don't think you have to say -- just
6  say the piece of evidence was not admitted.
7          THE COURT:  Well, they're looking at the transcript
8  where it's referred to as admitted.
9          MR. COLES:  Yes.
10         THE COURT:  I can't just --
11         MR. COLES:  That's fine.
12         THE COURT:  -- say nothing about that.
13         MR. COLES:  You can say it turns out when the
14 parties were getting together, that was not an exhibit that
15 was admitted.  I don't know that you need to put error on one
16 side or the other.
17         And 3336 is not mentioned at all in Shaked's
18 testimony so I don't think there's any basis for referring to
19 that.
20         MR. OSEN:  I'm sorry?
21         THE COURT:  No.  He doesn't want me to refer to 3336
22 specifically.  He just wants me to tell the jury that if
23 they're interested in finding additional evidence concerning
24 the Sheffield bombing, they should look elsewhere in the
25 record for it.

1        MR. OSEN:  The Hebrew University.

2        THE COURT:  Sorry.  The Hebrew University cafeteria
3   bombing, they should look elsewhere in the record for that.

4        MR. COLES:  I don't think we should be giving them
5   hints like that.  I think they have all the exhibits.  They
6   should go through them.

7        THE COURT:  No, but they were misled by an error and
8   what we all know as an error in the transcript.

9        MR. COLES:  I don't see them as being misled.
10  There's a document that would not have been admissible.  If
11  you look at the transcript, it's pretty clear it was being
12  used for 703 purposes and that's the way Mr. Turner phrased
13  the question.

14       MR. OSEN:  I don't think that's correct, Your Honor.
15  I think Mr. Turner assumed the document had already been
16  admitted amongst dozens of other convictions in the case.

17       The question here, there is doubt in the record that
18  Mr. Barghuthi was convicted for building the bomb for Hebrew
19  University.  There's no doubt in the record that other
20  individuals were convicted for their involvement in that same
21  attack.  The question is whether there's actual evidence in
22  the form of convictions in the jury room for that purpose and
23  we take that point, that that particular exhibit isn't in the
24  record.  So, the question is they have an obvious and
25  legitimate question about that particular exhibit and how it's

3378

1 phrased in the transcript.
2     THE COURT: I take it, Mr. Shaked is no longer in
3 New York.
4     MR. OSEN: No.
5     THE COURT: All right. Well, I'm certainly not
6 going to direct the jury to anything specific in the record.
7 I am going to tell them that if they wish to consider evidence
8 concerning this incident, they will have to look elsewhere in
9 the record, if at all, to find it. I am going to tell them
10 that without directing them because I think, it's really --
11 the jury wants information on this incident and it is not
12 improper for me to tell them that if there is, they should
13 look for it elsewhere beyond the exhibit that they were misled
14 unintentionally into thinking was admitted.
15     MR. COLES: That's not defendant's view as to what
16 you ought to tell the jury.
17     THE COURT: I understand. I am going to do it over
18 objection.
19     All right. Let's have the jury, please.
20     THE COURT: Everyone can sit. It's going to take a
21 while to line them up.
22     MR. TURNER: Your Honor, while we're waiting, I am
23 told we do have access to Mr. Shaked via telephone.
24     THE COURT: I'm not going to do that.
25     MR. TURNER: It would be a long flight back just for

3379

1  this.
2          THE COURT:  I understand.  I mean, look, you can
3  call a professor from a university in New York and get a
4  foundation for this, but we're not going to do that.
5          (Jury enters.)
6          THE COURT:  All right, be seated, please.
7          Ladies and gentlemen, hello, by the way.
8          THE JURY:  Hello.
9          THE COURT:  We have your note that says:  We do not
10 have Exhibit 3592.  The transcript says this was admitted into
11 evidence.  Can we have this?
12         The simple answer is you're right but the transcript
13 is wrong.  It was not admitted into evidence.  So if you want
14 to find anything else, if it's there, about the university
15 bombing, you are going to have to look elsewhere in the
16 record.
17         All right.  Please continue your deliberations.
18         (Jury exits.)
19         THE COURT:  All right.  Stand by.
20         (Court is in recess at 2:15 p.m. awaiting verdict of
21 the jury.)
22         (Continued on next page.)
23
24
25

CMH     OCR     RMR     CRR     FCRR

3380

1  (The following occurred in open court at 4:15 p.m.
2  outside the presence of the jury.)
3  THE COURT:  Be seated, please.  I have received a
4  note from the jury which we've marked as Court Exhibit 8 that
5  says, We have reached a unanimous verdict.  It's signed by
6  Jill Rath as foreperson.
7  Is there any reason why we should not bring in the
8  jury and receive the verdict?
9  Plaintiffs?
10  MR. WERBNER:  No.
11  THE COURT:  Defendant?
12  MR. STEPHENS:  No, Your Honor.
13  THE COURT:  All right.  Let's have the jury, please.
14  (Jury enters.)
15  THE COURT:  All right.  Be seated, please.
16  Ladies and gentlemen, we have your note that says,
17  We have reached unanimous verdict.
18  Let me ask the foreperson, Ms. Rath, is that
19  correct, that you have reached a unanimous verdict?
20  THE FOREPERSON:  Yes.
21  THE COURT:  All right.  Please, hand the form to
22  Ms. Clarke.
23  All right.  Ladies and gentlemen, what I'm going to
24  do now is known as publishing the verdict.  That means I am
25  going to read it out loud.  It is very important that you

3381

1  listen carefully as I do this because either side has the
2  right to ask me to ask each of you individually, after I read
3  it, if it represents your true and accurate verdict, so please
4  listen carefully.
5          I am not going to read the question -- well, maybe I
6  will.  I will read the question at the top.
7          Taking each of the attacks listed below and
8  considering each one separately, please determine if
9  plaintiffs have proven by a preponderance of the evidence that
10 defendant is liable to plaintiffs.  For each alleged attack,
11 if any, for which you conclude defendant is liable to
12 plaintiffs, please place an X in the yes box provided below.
13 For each alleged attack, if any, for which you conclude
14 defendant is not liable to plaintiffs, please place an X in
15 the box provided below.
16          1.  March 28, 2001, bombing at Neve Yamin.
17          The jury checked yes.
18          2.  June 1, 2001, bombing at the Dolphinarium in Tel
19 Aviv.
20          The jury checked yes.
21          3.  August 9, 2001, bombing at Sbarro in Jerusalem.
22          The jury checked yes.
23          4.  December 1, 2001, bombing on Ben Yehuda Street.
24          The jury checked yes.
25          5.  December 12, 2001, attack on bus number 189 at

3382

1  Emmanuel.
2          The jury checked yes.
3          6.   March 7, 2002, attack at Atzmona.
4          The jury checked yes.
5          7.   March 10, 2002, bombing at Café Moment.
6          The jury checked yes.
7          8.   March 27, 2002, bombing at the Park Hotel,
8  Netanya.
9          The jury checked yes.
10         9.   May 7, 2002, bombing at the Sheffield Club,
11 Rishon Le-Zion.
12         The jury checked yes.
13         10.  September 19, 2002, bombing on bus number 4,
14 Alenby Street.
15         The jury checked yes.
16         11.  June 18, 2002, bombing on bus number 32-A, Patt
17 Junction, Jerusalem.
18         The jury checked yes.
19         12.  July 31, 2002, bombing of the Frank Sinatra
20 Cafeteria at Hebrew University.
21         The jury checked yes.
22         13.  January 29, 2003, shooting attack on Road 60.
23         The jury checked yes.
24         14.  March 5, 2003, bombing on bus number 37, Haifa.
25         The jury checked yes.

3383

```
 1              15.   March 7, 2003, shooting attack at Kiryat Arba.
 2                    The jury checked yes.
 3              16.   April 30, 2003.  Bombing at Mike's Place,
 4   Tel Aviv.
 5                    The jury checked yes.
 6              17.   March 18, 2003, bombing on bus number 6,
 7   French Hill, Jerusalem.
 8                    The jury checked yes.
 9              18.   June 11, 2003, bombing on bus number 14A, Jaffa
10   Road, Jerusalem.
11                    The jury checked yes.
12              19.   June 20, 2003, shooting attack on Road 60.
13                    The jury checked yes.
14              20.   August 19, 2003, bombing on bus number 2,
15   Jerusalem.
16                    The jury checked yes.
17              21.   September 9, 2003, bombing at Café Hillel,
18   Jerusalem.
19                    The jury checked yes.
20              22.   October 22, 2003, shooting attack in
21   Tell Rumeida.
22                    The jury checked yes.
23              23.   January 29, 2004, bombing on Bus Number 19,
24   Jerusalem.
25                    The jury checked yes.
```

3384

1          24.  September 24, 2004, mortar attack on Neve
2  Dekalim.
3               The jury checked yes.
4               It is signed by the foreperson and dated today.
5               Would either side like me to poll the jury?
6               MR. STEPHENS:  Yes, Your Honor.
7               MR. TURNER:  No.
8               THE COURT:  All right.  Let me ask each of you,
9  starting with Mr. Somersell.
10              Is the verdict as I have read it your true and
11 accurate verdict?
12              THE JUROR:  Yes, Your Honor.
13              THE COURT:  Ms. Whitson?
14              THE JUROR:  Yes, Your Honor.
15              THE COURT:  Ms. Taylor?
16              THE JUROR:  Yes.
17              THE COURT:  Ms. Coleman?
18              THE JUROR:  Yes.
19              THE COURT:  Ms. Lee-Wong?
20              THE JUROR:  Yes.
21              THE COURT:  Mr. Rodrigues?
22              THE JUROR:  Yes.
23              THE COURT:  Ms. Douglas?
24              THE JUROR:  Yes.
25              THE COURT:  Ms. Rath?

3385

1         THE JUROR:  Yes.

2         THE COURT:  Ms. Stiell?

3         THE JUROR:  Yes.

4         THE COURT:  Ms. Romero?

5         THE JUROR:  Yes.

6         THE COURT:  And Mr. Errecalde?

7         THE JUROR:  Yes.

8         THE COURT:  All right.

9         Ladies and gentlemen, as I told you when I gave you
10 the instructions, I have no view on right or wrong in this
11 case.  The verdict was entirely up to you, so I am not going
12 to comment on it being right or wrong, but what I can tell you
13 is that the way you went about this case was really a model.

14         We saw you, through your questions, go through
15 everything very deliberately and more importantly, we saw you
16 throughout the case listening to everything that came into
17 evidence, which is a very difficult thing over a trial this
18 long.

19         I will tell you, I have not said this to any other
20 jury and I've had many long trials, you all did it right.  The
21 process you went through was just the way it is supposed to be
22 and it vindicates the reason that we have this process.  There
23 is no other country in the world, not even the UK, that would
24 put this kind of case to a jury, but we trust our fellow
25 citizens to have good judgment, and to be very careful and

3386

1   deliberate, and to come up with a result which is the product
2   of reason and consideration and that is what you did here.
3           So, we thank you for your service.  We hope you got
4   something out of it and you are dismissed.  Thank you very
5   much.
6           THE JURY:  Thank you.
7           (Jury exits.)
8           THE COURT:  All right.  Be seated, please.
9           Obviously, this case is a long way from over.  To
10  some extent, I feel like we were like the chimpanzee in the
11  evolutionary chain that begins this law but we have not
12  finished our work here by a long shot.
13          My inclination is for everyone to take a breather
14  and set a status conference in a couple of weeks, maybe a few
15  weeks, and let you all think about where you want to go next
16  according to the trial management plan and other possibilities
17  and then, we will communicate on that when we next meet.
18          Does that sound okay?
19          MR. STEPHENS:  Yes, Your Honor.
20          MR. WERBNER:  Yes, sir.
21          THE COURT:  Okay.
22          Thank you all again for your hard work.  I very much
23  appreciate it.
24          You all are dismissed.
25          (Matter concluded.)