**OSEN LLC**
ATTORNEYS AT LAW
WWW.OSENLAW.COM

2 UNIVERSITY PLAZA, SUITE 201, HACKENSACK, NJ 07601        345 SEVENTH AVENUE, 21ST FLOOR, NEW YORK, NY 10001
T. 201.265.6400   F. 201.265.0303                          T. 646.380.0470   F. 646.380.0471

January 14, 2015

**VIA ECF**

Hon. Brian M. Cogan
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Linde v. Arab Bank, PLC*, 04-CV-2799 (BMC)(VVP) and related cases

Dear Judge Cogan:

We write in response and opposition to Defendant Arab Bank PLC's January 13, 2015 letter ("January 13 Letter," *Linde* ECF No. 1214).

**The First Damages Trial Should Not Be Truncated or Adjourned**

Plaintiffs' December 24, 2014 fact witness list (*Linde* ECF No. 1203) lists 47 fact witnesses for trial – including the individual Plaintiffs. Fourteen of these witnesses have already been deposed. Plaintiffs' fact witnesses consist of:

1. **16** individual Plaintiffs (8 of whom have already been deposed);

2. **17** fact witnesses at the crime scenes (6 of whom have already been deposed);

3. **9** treating physicians (none of whom have yet been deposed); and

4. **5** third-party witnesses relating to solatium or loss of companionship claims (none of whom have yet been deposed).

Defendant's January 7, 2015 submission (the "January 7 List", *Linde* ECF No. 1211) lists **88** additional witnesses the Bank claims it is entitled to depose (beyond the 47 witnesses Plaintiffs listed). Defendant has also served notice that it intends to move to exclude 13 of Plaintiffs' 47 listed witnesses,[1] but despite the schedule in place, inexplicably waited *4 weeks* to

---

[1] Specifically, on January 13, 2015, Defendant also served Plaintiffs with a letter (attached hereto as Exhibit A) asserting that "[u]nless Plaintiffs can more fully explain the relevance" of the crime scene fact witnesses, or "*are*

communicate its position to Plaintiffs or the Court.² With regard to discovery, Plaintiffs do not seek to unreasonably limit Defendant's discovery rights with respect to necessary fact witnesses not already deposed, and we remain ready to schedule promptly the depositions of the witnesses set forth on our December 24 list. However, we submit that Defendant's January 7 List is the Bank's latest strategic effort to unnecessarily delay the trial – the same strategy it has pursued for over a decade.

By way of example, Defendant's January 7 List is drawn largely from medical records, profile forms, and Plaintiff deposition testimony the Bank has possessed for years. Nonetheless, to date, the Bank has made *no* effort to submit letters of request (letters rogatory) for depositions of *any* non-parties in Israel. Nor has Defendant, to our knowledge, attempted to serve any subpoenas upon any physicians – even those located in the New York metropolitan area. In short, the Defendant has announced its intention to undertake more third-party discovery now than it has in the last decade combined, while simultaneously initiating *no* affirmative steps to secure that discovery. Instead, it has imposed a self-declared discovery moratorium until it is provided with interrogatory responses, and receives all additional documents it demands from treating physicians or other health care providers.

Fed. R. Civ. P. 26(b) does not entitle a party to *anything* that might be conceivably interesting or tangentially relevant, nor does it permit parties to exhaustively depose *all* persons who might conceivably have information about an issue. To the contrary, Rule 30(a)(2)(A)(1) imposes a presumptive 10 deposition limit. *See also Commodity Futures Trading Com'n v. Commod. Inv. Group, Inc.*, 2005 WL 3030816, at *1 (S.D.N.Y. Nov. 10, 2005) ("Although a witness might have discoverable information, a party is not always entitled to depose that individual.") Instead, a court should limit "the frequency or extent of discovery" where it determines that such discovery is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive ... [or where] the burden or expense of the proposed discovery outweighs its likely benefit." *S.E.C. v. Rajaratnam*, 622 F.3d 159, 181 (2d Cir. 2010) *citing* Fed. R. Civ. P. 26(b)(2)(C).

---

*willing to strike them from Plaintiffs' Fact Witness List*" the Bank plans to seek their exclusion. Notably, the Bank's position constitutes a blanket opposition to testimony from crime scene fact witnesses' testimony that could have been raised even before Plaintiffs' submitted their witness list, and certainly should have been raised promptly thereafter. Substantively, the Bank's position is nonsensical. Depositions of several fact witnesses have readily demonstrated that the crime scene witnesses are well positioned to provide relevant testimony to the jury regarding the circumstances of each attack, including their own perceptions and inferences regarding the impact of the attack and its immediate aftermath upon the victims.

² Importantly, these are *precisely* the same type of witnesses the Court excluded from the initial trial on attribution/liability, in Phase 1 because the Court deemed the witnesses' testimony more relevant to a damages trial. The Bank now baselessly argues that the eyewitnesses to the attacks are not relevant to *either* trial. Testimony from individuals who witnessed the damage and destruction that took place at each attack is essential to help the jury understand the nature of the crimes at issue, the on-scene trauma, the location of victims, and the suffering that took place at the scene. While Defendant undoubtedly *prefers* a sanitized trial, the jury is entitled to hear this testimony in order to assess the level of shock, pain, suffering, and the emotional impact of each event.

In selecting the three attacks for the first damages trial, Your Honor plainly understood the number of claimants and the nature of their injuries, and Plaintiffs' December 5, 2014 submission set forth the relevant metrics in detail. *See* Exhibits A and A-1 to December 5, 2014 Joint Submission by all Parties (*Linde* ECF No. 1194). The number of witnesses on Plaintiffs' fact witness list is consistent with those prior disclosures.

As noted above, a court has the power to limit the number of depositions that may be taken in a lawsuit. *See* Fed. R. Civ. P. 26(b)(2)(A); 30(a)(2)(A)(1). *See also Calobrace v. American Nat. Can Co.*, 1995 WL 51575, at *1 (N.D. Ill. Feb. 6, 1995) (observing that Rules 26(b)(2) and 30(d)(2) "give this Court almost unlimited discretion in determining the number of depositions, the limits of a deposition, or whether additional depositions will be allowed."). Courts can also issue protective orders "…to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).[3]

Courts have also exercised their discretion to prohibit plainly cumulative and redundant depositions of medical professionals. In *Madison v. Jack Link Assocs. Stage Lighting & Productions, Inc.*, 297 F.R.D. 532, 535 (S.D. Fla. 2013), the court partially denied the defendant's motion to for leave to depose additional deponents, specifically concluding that the defendant could not depose a nurse until first completing a deposition of the treating physician, and thereafter demonstrating the need for the nurse's testimony. Here, Defendant fails to establish that its 88 listed witnesses offer non-duplicative testimony, or why it should be permitted to pursue such discovery until, at a minimum, it establishes genuine good cause and need for the additional discovery. Merely speculating that its entire list of witnesses might, theoretically, present possibly relevant information is not good cause, particularly given the pre-trial discovery schedule the Court has imposed.

Moreover, to whatever extent the Court permits Defendant to take depositions – both of Plaintiffs' witnesses and of Defendant's purported witnesses – all three teams of Plaintiffs' counsel are prepared to complete the necessary depositions in the time allotted by the Court for such pre-trial discovery depositions within the Court's trial management schedule. The process of deposing, for instance, the 33 individuals on Plaintiffs' witness list who have not yet been deposed is quite manageable. In 2007 and 2008, when Defendant deposed literally hundreds of

---

[3] *See also Fed. Housing Fin. Agency v. UBS Americas, Inc.*, 2013 WL 3284118, at *13 (S.D.N.Y. Jun. 28, 2013) ("When Rule 26 was amended again in 1993, the Advisory Committee observed that it wanted "to enable the court to keep tighter rein on the extent of discovery" in the face of "[t]he information explosion of recent decades," which "greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression." … The Rules and sound policy thus require that a court not simply allow discovery of all potentially relevant material, but weigh the likely benefit of the requested discovery against its anticipated burden, and limit the scope of discovery, and the burden of litigation, accordingly."); *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003) ("…although a party seeking a deposition need not demonstrate the propriety of its request, judges may prevent the proposed deposition when the facts and circumstances are such that it creates an inappropriate burden or hardship."); *Gelb v. Am. Tel. & Tel. Co.*, 813 F. Supp. 1022, 1034 (S.D.N.Y. 1993) ("The decision to limit the open and far-reaching discovery permitted under the Federal Rules of Civil Procedure is left to the discretion of the trial court in light of the relevant facts and circumstances of a particular case." (citing *Nixon v. Warner Comm.*, 435 U.S. 589, 599 (1978)).

Plaintiffs in Israel, the parties worked cooperatively to schedule and take as many as 40 depositions a week in Tel Aviv.

**Defendant Seeks Unnecessarily Burdensome Discovery**

Paragraph 2(b) of the Court's December 10, 2014 Order's (*Linde* ECF No. 1197) states: "*...[D]efendant is cautioned that the Court will not allow unfettered and unnecessarily burdensome discovery, and considerations of proportionality will be applied to each proposed deposition to determine whether the likelihood of obtaining useful information from a witness warrants the time and expense of that witness's deposition.*" But, despite the Court's cautioning, the Bank has – predictably – proceeded in exactly the manner the Court warned against. Its January 13 Letter fails to demonstrate good cause to alter the schedule or damages trial structure, or even remotely justify its assertion that 88 additional fact witnesses possess useful information that "*warrants the time and expense of that witness's deposition.*" Instead, what the Bank's conduct *does* demonstrate is the need for the Court to impose clear limits on the abusive, duplicative discovery Defendant has previewed in service of its endless campaign to delay adjudication of this case. When that is added to the fact that, as noted above, the Bank has taken no measures to initiate discovery despite possessing information regarding many of its listed witnesses *for years*, it is plain that its request should be denied.

**The Four Additional Plaintiffs**

Despite Plaintiffs' efforts to meet and confer with defense counsel regarding the additional prospective plaintiffs, and despite multiple follow-up inquiries, the Bank's counsel provided no response on this issue until its January 13 Letter. At issue is the addition of four plaintiffs to the May trial (three for the Route 60 Attack[4] and one for the Café Moment Attack), a far cry from the 21 additional plaintiffs in the *Soler v. G&U, Inc.* case cited by the Bank.

With respect to the "new" Route 60 Attack plaintiffs, their appearance at this juncture is undeniably belated, but not untimely or burdensome.[5] Mrs. Honickman is a perfect example. She

---

[4] As we explained to the Court in a December 24, 2014 letter (*Linde* ECF. No. 1202), Mrs. Michal Honickman is pursuing claims in her individual capacity, and as the legal representative of the Estate of the decedent, Howard Goldstein. Thereafter, *Linde* counsel informed Defendant's counsel that after Mrs. Honickman retained us, Daniel Goldstein, Michal and Howard's son, also retained us. Daniel Goldstein was not physically present at the attack.

[5] Mrs. Honickman's, the estate's, and Daniel Goldstein's claims also properly relate back to the initial pleading under Fed. R. Civ. P. 15(c). *See* Rule 15(c)(1)(B) (an amendment relates back to the date of an original pleading where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading"). *See also Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (for a newly-added action to relate back, the "basic claim must have arisen out of the conduct set forth in the original pleading."). Furthermore, the Bank faces no actual material prejudice if Mrs. Honickman's and Daniel Goldstein's claims are included in the first trial. The Court has *already* ordered the Route 60 Attack to be included in the first damages trial, and if these plaintiffs commenced a new lawsuit, Defendant would be collaterally estopped from contesting its liability for the Route 60 Attack. *See Roe v. City of Waterbury*, 542 F.3d 31, 41 (2d Cir. 2008) ("The doctrine of offensive collateral estoppel permits a plaintiff to bar a defendant from re-litigating an issue

was physically present in the automobile at the time of the attack and is thus a material fact witness to the events surrounding the attack and the death of her husband. Although she suffered physical injuries in the attack, Mrs. Honickman's injuries were not so serious that she was required to undergo months of intensive care, treatment, or rehabilitation therapy. Consequently, her inclusion would not involve extensive medical records or treating physician testimony and she would inevitably be deposed in any event, given that she is a key eyewitness to the attack.

With respect to Daniel Goldstein, he was not present at the attack and sustained no physical injuries. We anticipate that the same expert witnesses who will testify about other Plaintiffs' emotional and economic injuries would likewise address Mrs. Honickman's and Mr. Goldstein's injuries and resultant damages.

We respectfully submit that judicial economy and efficiency may be best served by adding the four additional parties to the first damages trial. However, Plaintiffs do not want to take any steps that necessitate altering the trial schedule particularly given Defendant's persistent efforts to seize upon any available pretext to justify delay. Thus, while courts possesses tremendous discretion to add parties, and can even do so after entry of final judgment in a case,[6] we are also prepared to present and adjudicate these newly asserted claims at such time as the Court deems more appropriate and efficient.

**Conclusion**

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's request to truncate or adjourn the first damages trial, and enforce limitations on unnecessary depositions as indicated in the December 10, 2014 Order, together with such other and further relief as may be appropriate and in keeping with the Court's trial management schedule.

Respectfully yours,

/s/ Gary M. Osen

Attach.

cc:     All counsel

---

that was decided in a prior case against the defendant."). These new plaintiffs can easily satisfy all four elements of offensive collateral estoppel.

[6]     See *Armour v. Monsanto Co.*, 995 F. Supp. 2d 1273, 1283-84 (N.D. Ala. 2014) (collecting cases establishing that courts may add parties post-trial).