

**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York  10020-1104
www.dlapiper.com

Shand S. Stephens
shand.stephens@dlapiper.com
**T**  212.335.4594
**F**  212.335.4501

January 15, 2015

*VIA ECF*

Honorable Brian M. Cogan
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:    *Linde v. Arab Bank, PLC*, 04-CV-2799 (BMC) (VVP), and related ATA cases**

Dear Judge Cogan:

On behalf of Arab Bank, plc (the "Bank"), we write in response to the letter from Plaintiffs filed January 14, 2015 concerning scheduling and depositions for the damages trial. Plaintiffs' Letter opposes any adjustment in the schedule, but the Plaintiffs do not fairly address the difficulties at issue.

1.      Plaintiffs claim the schedule is practical because eight of the seventeen plaintiffs "have already been deposed" (Letter 1).  But this is simply misleading: none of the plaintiff depositions were on damage issues.  In the Pre-Trial Order, Plaintiffs represented to the Court that "the parties have not commenced or completed discovery on the issue of damages." (July 1, 2013 Joint Pre-Trial Order, at 9.)  At the November 7 conference, the Court held that "I also don't see any basis for finding that the defendant by not having done more damages discovery prior to today have somehow limited their right to discovery on damages issues."  (H'rg Tr. 11-7-14, 2:25 – 3:3.)  As the Court has recognized, Plaintiffs cannot bar the Bank from taking damages depositions without depriving the Bank of fundamental rights.  Indeed, Plaintiffs themselves urged the Court to bifurcate the proceedings so that liability was addressed before damages.

2.      Plaintiffs claim the schedule is practical because they have already selected witnesses they want to produce at trial, and that their witnesses make the Bank's additional witnesses "cumulative" or "redundant."  (Letter 3.)  But due process does not permit Plaintiffs to make that determination, nor is it sensible to exclude depositions of certain witnesses prior to document production on injuries and treatment, and prior to answers to interrogatories. Consider, for example, plaintiff Yossef Cohen.  Plaintiffs list one treating physician witness for his injuries.  (Pl. filing 12-24-14, ECF No. 1203, at 3.)  Yossef Cohen's profile form lists 10 additional treating physicians up to 2005.  There is no basis to bar the Bank from discovery on



Honorable Brian M. Cogan
January 13, 2015
Page Two

these treating physicians merely because Plaintiffs have decided that they would prefer the jury to know the facts from only one of many treating physicians.

3.     Plaintiffs claim the schedule is practical because they have "three teams of Plaintiffs' counsel" to attend depositions (Letter at 3), but Plaintiffs completely ignore the fact that documents and interrogatory answers will not be produced until February 17, and that there are only 24 days after that to translate and analyze those documents and use them in depositions, all of which are to be completed by March 13. That kind of compressed schedule is highly prejudicial to the Bank. The schedule does not take into account translation time, the need to have medical experts review the documents or conduct examinations, the need to obtain documents directly from non-parties, and the need to allow any time for resolution of disputes over objections to interrogatory answers or the completeness of document productions.

4.     Plaintiffs claim the schedule is practical because the Bank has not moved immediately for letters of request (letters rogatory) for depositions in Israel (Letter 2). But the motions will be made promptly as soon as documents are produced and interrogatories answered that provide the full basis for such motions, and it is not reasonable to move before that takes place. At this time the Bank does not even know which of the proposed witnesses Plaintiffs can make available for deposition without the need for letters of request under the Hague Convention.

Further, Plaintiffs seek the addition of four new Plaintiffs to the damages trial who were not part of the liability trial. Plaintiffs claim the current schedule can accommodate another four plaintiffs and all the additional witnesses and experts they would require (Letter 4-5), but this clearly is not accurate. And it makes no sense to say that discovery and trial for 21 plaintiffs takes no more than the time for 17 plaintiffs. The current schedule is already too short, and increasing the witnesses and claims by 25% without adjusting the schedule is not reasonable.

Moreover, there are legal barriers to simply amending the complaint at this late date when there is no explanation for the unexcused delay (*see* Jan. 13, 2015 letter at 4-5) and when offensive collateral estoppel could not be used. The Supreme Court has cautioned that "where the application of offensive estoppel *would be unfair to a defendant*, a trial judge should not allow the use of offensive collateral estoppel." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979) (emphasis added). The application of offensive estoppel is unfair to the defendant when the new plaintiffs deliberately failed to participate in a prior suit for tactical reasons. *See Parklane*, 439 U.S. at 331 (offensive estoppel should not be permitted "where a plaintiff could easily have joined in the earlier action"). Courts are unlikely to permit the offensive use of



Honorable Brian M. Cogan
January 13, 2015
Page Three

estoppel "if it appears that the later plaintiff stayed out of the first action solely in hopes of a one-way option at preclusion." Wright et al., *Federal Practice and Procedure* § 4465.1.  Offensive estoppel is easily abused if "individual plaintiffs are free to 'hang back' from consolidated litigation" and effectively "place themselves in a 'heads-I-win-tails-I-relitigate' position." Richard A. Epstein, *The Consolidation of Complex Litigation: A Critical Evaluation of the ALI Proposal*, 10 J. L. & COM. 1, 58-59 (1990). If such tactics are allowed to succeed, new claimants will be able to invoke collateral estoppel without having risked anything in the first litigation, while the defendant will have risked everything. This asymmetry of risk "might seem appropriate if we were confident the first result was correct," but "there can be little doubt that many cases are decided incorrectly." Michael J. Waggoner, *Fifty Years of* Bernhard v. Bank of America *Is Enough: Collateral Estoppel Should Require Mutuality But Res Judicata Should Not*, 12 REV. LITIG. 391, 410, 415 (1993).  Here the liability trial did not give the Bank a full and fair opportunity to litigate the issues, and it would compound all the problems of that trial to allow new plaintiffs to take advantage of the flawed trial verdict.  Allowing offensive estoppel against the Bank would be fundamentally unfair and should not even be considered without full briefing.

The Bank therefore urges the Court to adopt the approach set forth in our letter of January 13, 2015.

Respectfully submitted,

_____/s/_____

Shand S. Stephens

cc:  all counsel (via ECF)