UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------

COURTNEY LINDE, et al.,

                Plaintiffs,

  - against –

ARAB BANK, PLC,

                Defendant.

CV-04-2799 (BMC)(VVP)
and related cases[*]

--------------------------------------------------------------------

# DEFENDANT ARAB BANK PLC'S [PROPOSED] SUR-REPLY IN OPPOSITION TO PLANTIFFS' MOTION TO STRIKE THE EXPERT REPORT AND PRECLUDE THE TESTIMONY OF DR. MARC SAGEMAN

DLA Piper LLP (US)
1251 Avenue of the Americas
New York, N.Y. 10020
(212) 335-4500

Attorneys for Defendant Arab Bank plc

---

[*]     *Litle, et al. v. Arab Bank, PLC,* No. CV-04-5449 (E.D.N.Y. 2004) (BMC) (VVP); *Almog v. Arab Bank, PLC*, No. CV-04-5564 (E.D.N.Y. 2004) (BMC) (VVP); *Coulter, et al. v. Arab Bank, PLC,* No. CV-05-365 (E.D.N.Y. 2005) (BMC) (VVP); *Afriat-Kurtzer v. Arab Bank, PLC,* No. CV-05-388 (E.D.N.Y. 2005) (BMC) (VVP); *Bennett, et al. v. Arab Bank, PLC,* No. CV-05-3183 (E.D.N.Y. 2005) (BMC) (VVP); *Roth, et al. v. Arab Bank, PLC,* No. CV-05-3738 (E.D.N.Y. 2005) (BMC) (VVP); and *Weiss, et al. v. Arab Bank, PLC,* No. CV-06-1623 (E.D.N.Y. 2006) (BMC) (VVP).

# TABLE OF AUTHORITIES

                                                                                                       **Page(s)**

**Cases**

*In re Amtrak Sunset Ltd.*,
    121 F.3d 1421 (11th Cir. 1997) ...............................................................................3

*Barnes v. Owens-Corning Fiberglas Corp.*,
    201 F.3d 815 (6th Cir. 2000) ...................................................................................3

*Boim v. Holy Land Foundation*,
    549 F.3d 685 (7th Cir. 2008) ...................................................................................2

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010).....................................................................................................4

*Hollman v. Taser Int'l Inc.*,
    928 F. Supp. 2d 657 (E.D.N.Y. 2013) .....................................................................5

*Kawaauhau v. Geiger*,
    523 U.S. 57 (1998)...................................................................................................2

*Lyondell Chem. Co. v. Occidental Chem. Co.*,
    608 F.3d 284 (5th Cir. 2010) ...................................................................................5

*Nash v. Port Authority*,
    51 A.D.3d 337 (2008) ..............................................................................................3

*New York v. Solvent Chem. Co.*,
    453 F. App'x 42 (2d Cir. 2011) ...............................................................................6

*Paroline v. United States*,
    134 S. Ct. 1710 (2014)................................................................................... *passim*

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013)...................................................................................2, 4

*Sinkov v. Americor, Inc.*,
    419 F. App'x 86 (2d Cir. 2011) ...............................................................................3

*In re Terrorist Attacks*,
    714 F.3d 118 (2d Cir. 2013).....................................................................................2

**Other Authorities**

Restatement (Third) of Torts ................................................................................... 2-3

In their five-page opening brief asking for rejection of the expert report of Dr. Marc Sageman, Plaintiffs made only a skeletal presentation, offering few points or authorities. Their ten-page reply brief (*Linde* ECF No. 1300 ("Reply Br.")), by comparison, is replete with many new arguments that Defendant Arab Bank plc (the "Bank") has had no opportunity to address, as well as lengthy footnotes and citations to many new cases. To join issue on these points, and facilitate this Court's resolution of an issue of exceptional importance, the Bank respectfully asks the Court to consider the following additional points in sur-reply.

1. Plaintiffs assert that the Bank previously argued that *Paroline v. United States*, 134 S. Ct. 1710 (2014) was irrelevant to this ATA litigation. Reply Br. at 1. The key point, however, is that, over the Bank's objection, Plaintiffs repeatedly argued that *Paroline was relevant* to their ATA claims and required the adoption of relaxed standards of causation, and this Court agreed. *Paroline* was then used to craft the instruction to the jury allowing liability to be established without proof of "but for" causation. The necessary corollary, where there are numerous contributing wrongdoers, is allocation of responsibility in awarding recovery. *Id.*. at 1722-29.

The Bank does not ask this Court to follow "the trend of states" only. Reply Br. at 1. It asks this Court to apply federal common law as articulated by the Supreme Court and federal appellate courts in numerous decisions. As a matter of law, allocation is required when there are numerous tortfeasors and none is a "but for" cause. Failure to do so, as the Supreme Court has held, would result in serious constitutional objections. *Paroline*, 134 S. Ct. at 1726.

2. Plaintiffs argue that joint and several liability applies because this is a case of intentional wrongdoing. Reply Br. at 3-6. But this Court refused to require a finding of intent to injure. It allowed the jury to impose liability based on a finding of "knowledge" of providing financial services to Hamas-affiliated entities and individuals and "foreseeability" of injury. That

is not sufficient to avoid apportionment. Plaintiffs rely on a Restatement provision in support of their argument, but the text of that provision explains that intent means a "desir[e] to cause consequences of [an] act" or substantial certainty that injury will occur. Reply Br. at 2; Restatement (Third) of Torts: Apportionment of Liab. § 12 cmt. b & reporter's note [hereinafter "Restatement"]. The Supreme Court likewise has held that intentional torts "generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). Plaintiffs concede that § 2339B does not require such intent.[1] Reply Br. at 5 n.7. In any event, the misconduct in *Paroline*, a criminal case, was intentional. The defendant deliberately downloaded and examined pornographic material, which itself directly injured the victim. That still did not justify failure to make a reasonable allocation of responsibility.

Plaintiffs' reliance on *Boim v. Holy Land Foundation*, 549 F.3d 685 (7th Cir. 2008), is misplaced. That divided decision—which cogent dissents accused of "re-writ[ing] tort law" (*id.* at 705 (Rovner, J., concurring and dissenting)) and discarding proximate causation (*id.* at 724 (Wood, J., concurring and dissenting))—has not been followed by the Second Circuit. *See Rothstein v. UBS AG*, 708 F.3d 82, 95-97 (2d Cir. 2013) (requiring proximate causation); *In re Terrorist Attacks*, 714 F.3d 118, 125 (2d Cir. 2013) (same). But most importantly, *Boim* predated the Supreme Court's ruling in *Paroline*. After *Paroline*, when "but for" causation is not required to establish liability (as *Boim III* held), allocation of damages *is* required. And *Boim* failed to acknowledge either "the nearly universal adoption of comparative responsibility" in American tort law, or the fact that when a court "relax[es] liability rules," as *Boim* did, the usual rule is that

---

[1] In their opposition to the Bank's post trial motion for a new trial, Plaintiffs argued that the Bank's contention that the Court erred by failing to require them to prove that the Bank acted with an "intent to harm" was "squarely at odds" with controlling precedent (*see Linde* ECF No. 1193 at 27); their current argument to the contrary, now that they secured a liability verdict without this proof, strains credulity.

"a defendant is liable only for a portion of the harm." Restatement § 1 cmt. a. Because the *Boim* court lacked *Paroline*'s guidance it failed to apply the "bedrock principle" that damages "should reflect the consequences of the defendant's own conduct," which must inform the damages phases of this case. *Paroline*, 134 S. Ct. at 1725.

      3. Plaintiffs argue that wrongful death is "indivisible." But *Paroline* held that even if a victim's injuries are indivisible, "treating [the defendant] as a proximate cause of all the victim's losses—especially in the absence of a workable system of contribution—stretches the fiction of aggregate causation to its breaking point." 134 S. Ct. at 1728-29. The Restatement explains that "a person [can be] severally liable to an injured person for an indivisible injury." Restatement § 11. Many cases, including terrorism cases, require apportionment for "indivisible" injures. For example, in *Nash v. Port Authority*, 51 A.D.3d 337 (2008), *rev'd on other grounds*, the Appellate Division affirmed the trial court's apportionment of liability between the World Trade Center's owner and actual terrorists. Many other cases apportion damages in wrongful death cases. *See, e.g.*, *Sinkov v. Americor, Inc.*, 419 F. App'x 86, 89-90 (2d Cir. 2011) (applying apportionment and holding this is "'an issue of fact for the jury'"); *In re Amtrak Sunset Ltd.*, 121 F.3d 1421, 1427 (11th Cir. 1997) (applying apportionment under federal law); *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 817-18 (6th Cir. 2000).

      It is not "arbitrary" to make such an allocation. Reply Br. at 2 n.4. *Paroline* holds that it is far more arbitrary to heap all damages on one small participant among hundreds or thousands. The law requires a fair estimate of responsibility, even if not scientifically precise. *Paroline*, 134 S. Ct. at 1728. Dr. Sageman provides one basis for making this allocation. Plaintiffs are free to cross-examine him before the jury. Plaintiffs were also free to name their own expert on this subject. The issue is for the jury to resolve, in its reasonable discretion.

3

4. Plaintiffs say that there is no ATA authority for allocation of responsibility. Of course, this Court's own post-trial rulings at the liability phase adopt the *Paroline* standard explicitly. This was the first case to do so. The full consequences of *Paroline* now must be recognized and the totality of the opinion respected.

Plaintiffs cite statements during hearings on the ATA that courts must consider "shared liability" as well as "joint and several liability." Reply Br. at 6. This proves the Bank's point. Shared liability is the right approach when there are many wrongdoers and none is a "but for" cause. Joint and several liability applies to conspiracies or agreements, not proven or at issue here. The committee reports cited by Plaintiffs refer to liability down the whole line of causation. *See* Reply Br. at 7. When this was written, § 2339B of the ATA was not in existence. Congress was referring to imposing liability on killers, bombers, accomplices, and terrorist organizations. To hold the Bank liable and not account for these real targets of the legislation would undermine Congress's manifest purpose. By applying *Paroline*, this Court will comply with tort law precedent and do precisely what Congress expected.

5. Plaintiffs also mistakenly rely on *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010). As the Second Circuit explained in *Rothstein*, *Holder* involved plaintiffs' attempts "to donate [their own] funds directly to terrorist organizations" and thus did not concern the sort of more "remote and tenuous connections" involved in bank transfers of third party funds. 708 F.3d at 90. And, the Court pointed out, *Holder* addressed not the private § 2333(a) causes of action, but government action under the prophylactic § 2339B material support provision. A failed constitutional due process and First Amendment challenge to the material support statute says nothing at all about whether damages must be allocated in this case under the later decision in

4

*Paroline* and basic tort law principles.[2]

6. Finally, Plaintiffs argue that the Sageman Report is deficient and unpersuasive. Reply Br. at 8-10. The proper response to this argument is, of course, to allow Dr. Sageman to be cross-examined. *See*, *e.g.*, *Hollman v. Taser Int'l Inc.*, 928 F. Supp. 2d 657, 670 (E.D.N.Y. 2013) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination"). That would permit the jury to make the practical approximation that *Paroline* requires. This cannot be done with mathematical precision, as the Supreme Court explains. 134 S. Ct. at 1728. Failure to do this, however, would result in a violation of constitutional standards, as the Supreme Court noted. *Id.* at 1726.

Dr. Sageman has relied on evidence Plaintiffs tendered to the jury. Their evidence presented ample information on the many participants who were causally connected to their injuries and their relative roles, as well as the flow of money to these individuals, which Plaintiffs now cite in their brief. Reply Br. at 10. Nothing not produced from the Bank's files would, or could, disprove the fact that Plaintiffs themselves methodically developed at trial: that there were many parties responsible for their injuries—most notably, the terrorist operatives who actually conducted the attacks that injured them, and all of individuals and charities that Plaintiffs claimed formed the infrastructure of Hamas.

In *Paroline* itself, an expert was allowed to submit a report on allocation of responsibility. 134 S. Ct. at 1718. Many other cases allow the same thing. *See, e.g.*, *Lyondell Chem. Co. v. Occidental Chem. Co.*, 608 F.3d 284, 293-94 (5th Cir. 2010). The Second Circuit favors submission of expert testimony on such issues. For example, in *New York v. Solvent*

---

[2] Plaintiffs cite ATA cases in which damages were not apportioned. *See* Reply Br. at 3 n.5. The PLO or PA did not ask for allocation in those cases; however, and in any event, the plaintiffs in those cases alleged that the defendants' agents participated in the acts of terror that injured them.

5

*Chem. Co.*, 453 F. App'x 42, 48-49 (2d Cir. 2011), the Second Circuit discussed the allocation of cleanup costs at industrial sites among chemical manufacturers. The Second Circuit approved of the district court's allocation of damages for one of the pollution sites, which was explicitly based on the framework proposed by an expert witness.

Plaintiffs' motion to strike the report of Dr. Sageman should be denied.

Dated: July 23, 2015
      New York, New York

                              Respectfully submitted,

                              /s/
                            By: Shand S. Stevens
                            DLA PIPER LLP (US)
                            1251 Avenue of the Americas
                            New York, NY 10020-1104
                            (212) 335-4500
                            *Attorneys for Defendant Arab Bank plc*

**OF COUNSEL:**
Kevin Walsh
Douglas W. Mateyaschuk, II
Paul D. Schmitt