UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
COURTNEY LINDE, et al.                              :
                                                    :    Case No. CV 04 2799 (BMC)(VVP) *and all*
            Plaintiffs,                             :    *related cases*[*]
                                                    :
    -against-                                       :
                                                    :
ARAB BANK, PLC,                                     :
                                                    :
            Defendant.                              :
_____

# PLAINTIFFS' OPPOSITION TO DEFENDANT ARAB BANK PLC'S MOTIONS *IN LIMINE* TO SANITIZE THE DAMAGES TRIAL BY SEEKING TO EXCLUDE REFERENCE TO ITS OWN LIABILITY AND EVIDENCE OF THE ACTUAL TERRORIST ATTACKS THAT INJURED THE PLAINTIFFS

---

[*]   *Litle, et al. v. Arab Bank, PLC*, No. CV-04-5449 (E.D.N.Y. 2004) (BMC)(VVP); *Almog, et al. v. Arab Bank, PLC*, No. CV-04-5564 (E.D.N.Y. 2004) (BMC)(VVP); *Coulter, et al. v. Arab Bank, PLC*, No. CV-05-365 (E.D.N.Y. 2005) (BMC)(VVP); *Bennett, et al. v. Arab Bank, PLC,* No. CV-05-3183 (E.D.N.Y. 2005) (BMC)(VVP); *Roth, et al. v. Arab Bank, PLC,* No. CV-05-3738 (E.D.N.Y. 2005) (BMC)(VVP); and *Weiss, et al. v. Arab Bank, PLC,* No. CV-06-1623 (E.D.N.Y. 2006) (BMC)(VVP).

Over the weekend, Defendant filed twenty two (22) memoranda, several of them motions *in limine* seeking to sanitize the damages trial of any reference to its own liability and to sterilize the evidence relating to the three terrorist attacks that injured the Plaintiffs. Defendant's position is encapsulated in its assertion that "[i]f it is reversible error to allow evidence as to the Bank's misconduct, it is doubly so to allow it to become about terrorism or Hamas," Motion *in Limine* to Exclude Arguments, Evidence and References (*Linde* ECF No. 1353) (hereinafter "Mem.") at 4. Defendant therefore moves to exclude "any reference to the Bank having provided 'material support'" to Hamas or to terrorists, or doing so knowingly. Mem. at 3. In separate motions filed on August 7-9, Defendant also moves to sanitize the trial of most, if not all, evidence of the terrorist attacks that injured the Plaintiffs. For example, Defendant moves to exclude photographs of the scenes of the three terrorist attacks, autopsy reports and police reports (*Linde* ECF No. 1249), and the use of demonstratives that may assist the jury to understand what occurred during the Route 60 Attack (*Linde* ECF No. 1357).

A.   **SOLATIUM DAMAGES ARE APPROPRIATE UNDER THE ATA.**

It is clear from the foregoing that Defendant misapprehends the nature of the compensatory claims at issue in this trial. Among other forms of compensation,[1] most Plaintiffs (with the exceptions of the Estate of Abigail Litle and Yossef Cohen) seek solatium damages,[2] which are uniformly recognized as appropriate in ATA cases. *See*, *Smith ex. Rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 234–237 (S.D.N.Y. 2003); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD)(FM), 2012 WL 4711407, at *2, n.1 (S.D.N.Y. Oct. 3, 2012); *Knox v. Palestine Liberation Organization*, 442 F. Supp. 2d 62, 78 (S.D.N.Y. 2006);

---

[1]   These include, but are not limited to, wrongful death, losses of parental services due to wrongful death, lost earnings, and pain and suffering.

[2]   Solatium is defined as "Compensation; esp., damages allowed for hurt feelings or grief, as distinguished from damages for physical injury." BLACK'S LAW DICTIONARY 1397 (7th ed.1999).

*Ungar v. Palestinian Authority*, 304 F. Supp. 2d, 232, 271-72 (D.R.I. 2004); *Boim v. Quranic Literacy Institute*, No. 00 CV 2905, 2005 WL 433463, at *5 (N.D.Ill. Feb. 18, 2005). In order to determine a Plaintiff's solatium damages, a jury must consider 5 factors:

(1) whether the family member's death or injury was sudden and unexpected;

(2) whether the death was attributable to negligence or malice;

(3) whether the plaintiff has sought medical treatment for depression and related disorders resulting from their family member's death or injury;

(4) the nature (i.e. closeness) of the relationship between the plaintiff and his or her family member; and

(5) the duration of the plaintiff's mental anguish in excess of that which would have been experienced following the family member's natural death.

*Smith ex. Rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d at 234.

While the third and fourth factors are inherently bound to the particular plaintiff's emotional state and relationship to the victim, the other three factors are intrinsically tied to the nature of the *defendant*'s conduct. As Judge Lamberth explained in *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 30 (D.D.C. 1998), solatium damages in terrorism cases are unique:

> Even where the death results from the most extreme forms of negligence, the primary visceral reaction is to the tragedy. **This is not the case with deaths resulting from terrorist attacks, in which the tragedy itself is amplified by the malice which inspired the event. The malice associated with terrorist attacks transcends even that of premeditated murder**. The intended audience of a terrorist attack is not limited to the families of those killed and wounded or even just Israelis, but in this case, the American public, for the purpose of affecting United States government support for Israel and the peace process. **The terrorist's intent is to strike fear not only for one's own safety, but also for that of friends and family, and to manipulate that fear in order to achieve political objectives. Thus the character of the wrongful act itself increases the magnitude of the injury. It thus demands a corresponding increase in compensation for increased injury.** (Emphasis added.)[3]

---

[3] Judge Lamberth also noted: "Courts have also recognized that in the long term, the sudden death of a loved one may manifest itself as 'a deep inner feeling of pain and anguish often borne in silence.' *Connell v. Steel Haulers, Inc.,* 455 F.2d 688 (8th Cir.1972). Individuals can react very differently even under similar circumstances; while some sink into clinical depression and bitterness, others attempt to salvage something constructive from their personal tragedy. Such constructive behavior should not be considered as mitigating solatium, but rather as an

During the upcoming damages trial, Plaintiffs will bear the burden of proving that Plaintiffs' family members' deaths or injuries were: (a) sudden and unexpected; (b) attributable to malice (not negligence); and (c) that the duration of each Plaintiff's mental anguish is in excess of that which would have been experienced following a family member's natural death or injury. All of these elements point to the inescapable conclusion that to prove their solatium damages, Plaintiffs must present evidence of the nature of the acts that caused their injuries.[4]

### B. *PESCATORE* DOES NOT REQUIRE THIS COURT TO SANITIZE THE DEFENDANT'S CONDUCT.

Much of the Defendant's argument rests on *dicta*[5] from *Pescatore v. Pan Am World Airways*, 97 F.3d 1 (2d Cir. 1996), which involved an appeal of damages awarded against Pan Am arising out of the terrorist bombing of Flight 103 in 1988. Liability in that case was bifurcated from damages, and during the liability trial, the jury found "that the deaths of the passengers and crew aboard Pan Am flight 103 were proximately caused by Pan Am's "willful misconduct." *Pescatore*, 97 F.3d at 3. The Second Circuit was troubled by the district court's instruction to the jury considering damages, which briefly described Pan Am's liability for "willful misconduct," because the Circuit concluded that the nature of Pan Am's conduct "was no longer at issue and thus not relevant."

---

equally compensable reaction, one in which courage to face their own mental anguish prevails in order to survive, and in some circumstances, to benefit another." *Id.* at 31.

[4]  As Judge Lamberth further noted: "Claims for mental anguish belong to the claimants and should reflect anticipated persistence of mental anguish in excess of that which would have been experienced following decedent's natural death. When death results from terrorism, the fact of death and the cause of death can become inextricably intertwined, thus interfering with the prospects for anguish to diminish over time." *Id.*

[5]  The Second Circuit, though critical of the trial court's jury instruction, did not hold it to be reversible error.

The court's reasoning in *Pescatore* was based on the particular nature of the claims brought in that case. In *Pescatore*, liability was governed by the Warsaw Convention,[6] which generally limited an air carrier's liability for damages to $75,000 per passenger. Article 25 of the Convention, however, permitted an exception to this damages cap for recovery of unlimited compensatory damages[7] provided the carrier's "willful misconduct" caused the damages.

Thus, the liability trial jury's finding of "willful misconduct" was a condition precedent to even holding a damages trial – rather than awarding $75,000 per passenger – but the phrase was a term of art specific to the Warsaw Convention.[8] However, Pan Am did not stand accused, let alone was it found liable, of knowingly assisting the Libyan terrorists who blew up the aircraft; its "willful misconduct" consisted of instituting an "x-ray procedure [that] violated security requirements contained in an FAA regulation at issue in this case." *In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988*, 37 F.3d 804, 811 (2d Cir. 1994). Moreover, the plaintiffs' compensation claims were wrongful death claims, not the type of solatium claims (or damages) sought here and in other terrorism cases.

Whereas the Warsaw Convention was enacted to harmonize and *limit* damages across jurisdictions for injuries incurred during international air travel, the ATA serves a dramatically different purpose. As Judge Marrero noted in *Knox*:

> This Court agrees that the full range of damages should be available to persons entitled to bring actions under the ATA. As observed in the *Ungar* case, "Senator

---

[6] Convention for the Unification of Certain Rules Relating to International Transportation by Air, done at Warsaw, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11, reprinted at 49 U.S.C. app. § 1502 note (1988) (Hereinafter: "the Warsaw Convention").

[7] Punitive damages were not recoverable under the Warsaw Convention. *In Re Air Disaster at Lockerbie, Scotland on December 21, 1988* ("*Lockerbie I*"), 928 F.2d 1267 (2d Cir. 1991), *cert. denied*, 502 U.S. 920 (1991).

[8] Explaining his instruction concerning the liability jury's finding of "willful conduct," Judge Platt stated that "[t]his jury must be fully informed as to why damages are not limited to $75,000 in this trial." The Circuit, however, noted that "the Warsaw Convention's limitation on damages is not part of the ordinary citizen's frame of reference, and it is a remote contingency that jurors will limit damages to $75,000 for that reason." *Id.* at 17.

5

> Grassley, the bill's co-sponsor, indicated that 'it empowers victims with all the weapons available in civil litigation.' " *Ungar,* 304 F.Supp.2d at 265 (quoting *Antiterrorism Act of 1990: Hearing before the Subconm. On Intellectual Prop. & Judical Admin. Of the House Comm. On the Judiciary,* 102nd Congress 10 (1992)); *see also Boim v. Quranic Literacy Inst. and Holy Land Found. For Relief and Dev.,* 291 F.3d 1000, 1010 (7th Cir.2002) ("That [legislative] history, in combination with the language of the statute itself, evidences an intent to codify general common law tort principles and to extend civil liability for acts of international terrorism to the full reaches of traditional tort law.").

442 F. Supp. 2d at 77.

Much as Defendant would like to slip into the shoes of domestic airlines that were *victims* of international terrorism (albeit grossly negligent in their security measures), under the ATA, the Bank's numerous (knowing) acts of material support for Hamas in violation of 18 U.S.C. § 2339B constitute acts of international terrorism and hence trigger the *full reaches* of traditional tort law.[9]

### C.  A JURY INSTRUCTION ADVISING THE JURY OF DEFENDANT'S LIABILITY IS APPROPRIATE.

Plaintiffs do not agree that the jury should remain ignorant of the findings of the liability jury, but we do agree that no *evidence* should be presented at trial "that the Bank 'provided material support' to terrorists or that the Bank did so 'knowingly.'" Mem. at 3. As noted above, malice is a necessary element of Plaintiffs' solatium claims – and that includes both the malice of the *Defendant*[10] as well as the malicious nature of the terrorist attacks. However, Plaintiffs believe it would be confusing for the parties to inject argument or evidence about the

---

[9]  Defendant's reliance on *In re September 11 Litig.*, No. 21 MC 97(AKH), 2007 WL 3036439 (S.D.N.Y. Oct. 17, 2007) is similarly misplaced. Like the airline defendant in the *Pescatore* case, American Airlines was sued under a wrongful death statute (this time under Virginia law). Thus, while the 9-11 attack on the Pentagon was self-evidently a vicious act of terrorism, the airline was not being sued for knowingly supporting al Qaeda.

[10] Unlike Pan Am Airlines in the *Pescatore* case, Arab Bank was not found to have negligently failed to prevent the criminal act of a third party. The jury found that Arab Bank committed a criminal act. (18 U.S.C. § 2339B).

6

Defendant's liability into the damages trial, and therefore submit, for the Court's consideration, the following proposed initial jury instruction on this issue:

### DRAFT INITIAL JURY INSTRUCTION

This is a trial to determine the amount of monetary damages to be awarded to 17 victims who are Plaintiffs here today, who themselves were injured, or whose family members were injured or killed, in three terrorist attacks in 2002 and 2003. In a trial held in this same courtroom last year, a jury found that the Defendant, Arab Bank, knowingly provided substantial assistance to Hamas, a United States-designated terrorist organization, which the jury found was responsible for the attacks that you are going to hear described during this trial. Based on evidence presented, the first jury determined that Arab Bank violated the Anti-Terrorism Act and was legally responsible for each of these three terrorist attacks.

Your sole responsibility in this trial will be to determine the amount of monetary damages each Plaintiff is entitled to in order to fully compensate him or her for their injuries. At the conclusion of the case, after the parties have presented their evidence, I will instruct you on the law to apply to this case.

The proposed phrasing of the initial jury instruction accurately reflects the prior jury's verdict, and uses no statutory terms of art – such as "material support" – that might potentially confuse the jury. With such an instruction provided both at the beginning of the damages trial and (in some form) as part of the jury charge, the jury should have a sufficient bedrock understanding of the Defendant's previously established legal liability without the need for the parties to introduce arguments or evidence on that subject.

D.  **DEFENDANT'S DEMAND FOR A SANITIZED DAMAGES TRIAL DEVOID OF EVIDENCE OF TERRORIST ACTS SHOULD BE REJECTED.**

As noted above, the majority of the Plaintiffs are seeking solatium damages. The jury will therefore be required to evaluate, among other things, whether each Plaintiff's "mental anguish is in excess of that which would have been experienced following the family member's natural death" or injury. To do so, the jury needs to evaluate the evidence of what *actually occurred* and determine whether and to what extent the terrorist attacks "increase the magnitude of the injury."

*Flatow*, 999 F. Supp. at 30. Obviously, FRE 402 and 403 recognize a spectrum of evidence and call upon courts to weigh relevance against potential prejudice. Thus, for example, displaying 20 graphic photographs of suicide bombing victims at trial might be excessive, but a discrete number of photographs that illuminate specific facts, coupled with expert testimony on suicide bombings that helps the jury understand the sudden and unexpected nature of the bombings, the extent and specific *nature* of the malice involved and the precise ways such events differ from natural or even accidental deaths, is highly relevant and not unfairly prejudicial.[11]

The Bank's fervently disagrees and points instead to one of Your Honor's evidentiary ruling during the liability trial, urging the Court to apply the same FRE 403 analysis to similar demonstrative exhibits during the damages trial. Motion *in Limine* to Exclude Graphic and Unfairly Prejudicial Exhibits at 2. (*Linde* ECF No. 1358) (Trial Tr., Aug. 18, 2014, 303:12-304:16). The colloquy Defendant cites related to a demonstrative exhibit depicting the ball bearings and screws used by Hamas in the commission of various suicide attacks:

> THE COURT: It's really not necessary and unduly prejudicial. If indeed you are going to have an expert testify that this is a signature of Hamas to use screws and ball bearings as opposed to other terrorist groups -- and I haven't seen that in the expert's report -- but if you think you got that from the expert, then you can have the police witness testify and describe the nature of the ball bearings and screws. Juries know what ball bearings and screws are, they don't need to see the jar.

---

[11] The Defendant describes Plaintiffs' exhibits in lurid terms, but Plaintiffs do not intend to show the jury every photograph in every document or every second in every video. Moreover, in some cases, redactions may be appropriate to protect the privacy of the victims or to avoid exposing the jury to certain graphic content *unnecessarily*. In fact, in most cases (both civil and criminal), courts have admitted crime scene and accident scene photos. *See*, *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53 (S.D.N.Y. 2001) ("Here, the graphic nature of the photographs will have limited prejudicial effect because they will not be introduced during the liability phase of the trial.") (admitting graphic images of plaintiff's injuries); *Hogland v. Town & Country Grocer of Fredericktown Missouri, Inc.*, No. 3:14CV00273 JTR, 2015 WL 4197652, *2 (E.D.A.K. 2015) ("even 'gruesome' photographs may be admissible 'if they tend to shed light on any issue, to corroborate testimony, or if they are essential in proving a necessary element of a case, are useful to enable a witness to testify more effectively, or enable the jury to better understand the testimony.' …. Under Fed. R. Evid. 401, the post-accident photographs of the parties' vehicles are clearly relevant and certainly probative as to … claims for damages for the injuries they sustained in the accident." (internal citations omitted); *Manuel v. Traditional Sporting Goods, Inc.*, Civil Action No. 5:09–CV–406–KSF, 2011 WL 6369839, *2 (E.D.K.Y. 2011) ("given the lack of any eyewitnesses to the accident itself, the Court finds that the probative value of these photographs outweighs this prejudicial effect.").

>MR. ELSNER: Your Honor, first, I didn't know that the jury would know what they were and I thought it was more descriptive and I didn't think it was particularly prejudicial.
>
>THE COURT: It is particularly prejudicial. It is the weapon that maims and dismembers people in full relief to the jury. . . . [p]hysical depiction is unnecessary.

*Id*.

During the liability trial, while the nature of Hamas's suicide bombings was relevant for a variety of reasons, the Court was understandably concerned that the danger of unfair prejudice outweighed the probative value of this proposed demonstrative exhibit. However, Defendant transforms that ruling into "law of the case" and seeks to now sweepingly *extend* it to the damages trial, where the nature of "the weapon that maims and dismembers people" is one of the central facts that impacts certain Plaintiffs' damages.

Understandably, Defendant desires a bifurcated trial structure wherein the liability trial excluded nearly all evidence of the consequences of its conduct and the damages trial will exclude all evidence of its complicity in those events. Plaintiffs do not believe that this was, or is, the Court's intention, and excluding all such evidence during the damages phase would be manifestly unfair to the Plaintiffs. Instead, as it did during the liability trial, the Court should evaluate each piece of evidence to assess its probative value.

Plaintiffs will be prepared to address this issue fully at tomorrow's final pre-trial conference.

For the reasons stated above, we respectfully request that Defendant's various Motion *in Limine* seeking to sanitize the damages trial be denied.

Dated: August 10, 2015
Hackensack, NJ

                Respectfully submitted

                OSEN LLC

By:   /s/ Gary M. Osen
       Gary M. Osen, Esq.
       Ari Ungar, Esq.
       Aaron Schlanger, Esq.
       2 University Plaza, Suite 201
       Hackensack, New Jersey 07601
       (201) 265-6400

       KOHN, SWIFT & GRAF, P.C.
       Steven M. Steingard, Esq.
       Stephen H. Schwartz, Esq.
       Neil L. Glazer, Esq.
       One South Broad Street, Suite 2100
       Philadelphia, PA 19107
       (215) 238-1700

       ZUCKERMAN SPAEDER LLP
       Shawn P. Naunton, Esq.
       399 Park Avenue
       New York, NY 10022
       (646) 746-8655

       TURNER & ASSOCIATES, P.A.
       C. Tab Turner, Esq.
       4705 Somers Avenue, Suite 100
       North Little Rock, AR 72116
       (501) 791-2277

       Attorneys for *Linde* Plaintiffs

       MOTLEY RICE LLC
       Michael Elsner, Esq.
       John M. Eubanks, Esq.
       28 Bridgeside Boulevard
       P.O. Box 1792
       Mount Pleasant, SC 29465
       (843) 216-9000

       Attorneys for *Almog* Plaintiffs

SAYLES WERBNER
Mark S. Werbner, Esq.
4400 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
(214) 939-8700

HEIDEMAN NUDELMAN & KALIK, P.C.
Richard D. Heideman, Esq.
Noel J. Nudelman, Esq.
Tracy Reichman Kalik, Esq.
1146 19th Street, NW, Fifth Floor
Washington, DC 20036
(202) 463-1818

STONE BONNER & ROCCO LLP
James P. Bonner, Esq.
145 West 45th Street
New York, New York 10036
(212) 239-4340

Attorneys for *Litle* Plaintiffs