UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
COURTNEY LINDE, et al.                    :
                                          :    Case No. CV 04 2799 (BMC)(VVP) *and all*
           Plaintiffs,                    :    *related cases*[*]
                                          :
    -against-                             :
                                          :
ARAB BANK, PLC,                           :
                                          :
           Defendant.                     :
_____

**PLAINTIFFS' OPPOSITION TO DEFENDANT ARAB BANK'S *DAUBERT* MOTION
TO EXCLUDE TESTIMONY OF PLAINTIFFS' PROPOSED EXPERT GIL KLEIMAN**

---

[*] *Litle, et al. v. Arab Bank, PLC*, No. CV-04-5449 (E.D.N.Y. 2004) (BMC)(VVP); *Almog, et al. v. Arab Bank, PLC*, No. CV-04-5564 (E.D.N.Y. 2004) (BMC)(VVP); *Coulter, et al. v. Arab Bank, PLC*, No. CV-05-365 (E.D.N.Y. 2005) (BMC)(VVP); *Bennett, et al. v. Arab Bank, PLC,* No. CV-05-3183 (E.D.N.Y. 2005) (BMC)(VVP); *Roth, et al. v. Arab Bank, PLC,* No. CV-05-3738 (E.D.N.Y. 2005) (BMC)(VVP); and *Weiss, et al. v. Arab Bank, PLC,* No. CV-06-1623 (E.D.N.Y. 2006) (BMC)(VVP).

Gil Kleiman served for more than 20 years in the Israel National Police ("INP"), during which time he was, *inter alia*: Sergeant Major in the Bomb Squad; Inspector-Prosecutor in the Traffic Unit, supervising more than hundreds of prosecutions of traffic accidents, including ones involving serious bodily injury; Chief Inspector in the Central Investigations Unit, investigating murders and other violent and serious crimes; and, for four years (during the Second Intifada), Foreign Press Spokesman, an operational role, in which he physically inspected the sites of more than one hundred terrorist attacks, while simultaneously coordinating his work with all Israeli government investigative agencies. As a result, Mr. Kleiman was physically present at the Café Moment and Bus 37 suicide bombings shortly after the bombs detonated, and he has participated in the investigations of these and dozens of other suicide bombings and terrorist shooting attacks.

In sum, Mr. Kleiman is a uniquely qualified law enforcement expert on terrorism investigations, and his opinions are both highly relevant and based on well-founded investigative methods. Even Defendant's rebuttal expert, Dr. Michael Baden, acknowledged as much, calling Mr. Kleiman a "very experienced investigator…" Baden Tr. at 37:19-21.[1]

Defendant offers five arguments in support of its motion to exclude Mr. Kleiman's testimony:

1. Howard Goldstein's estate is not a plaintiff in this damages trial and how long he was conscious is irrelevant to any issue presented in this case;

2. Kleiman is not qualified to opine on how long Howard Goldstein remained conscious, or to reconstruct the events in the Goldsteins' vehicle between the attack and the crash;

3. Kleiman's "methodology" is not scientific or reliable, as all he did was drive his car on Route 60 and opine that Howard Goldstein must have been conscious due to the topography and turns in that stretch of road;

---

[1] Dr. Baden later reiterated that opinion: "I think it's all, it sounds to me that he's a conscientious and experienced investigators [sic] of explosions, terrorist attacks …[.]" Baden Tr. at 75:9-75:15.

  4.  Kleiman's opinion about how long Howard Goldstein remained conscious is pure speculation and unsupported by any facts; and

  5.  Kleiman's opinions about the Café Moment and Bus 37 attacks are irrelevant to the issue of Plaintiffs' damages in this case.[2]

## I. THE MANNER OF HOWARD GOLDSTEIN'S DEATH IS HIGHLY RELEVANT

The Court has ruled that evidence pertaining to the terrorist attacks themselves is relevant,[3] so Plaintiffs will not address those arguments. Obviously, the Estate of Howard Goldstein is not a Plaintiff in this trial, and counsel is not seeking damages for *his* pain and suffering. Plaintiffs Eugene and Lorraine Goldstein, however, *do* seek solatium damages based on: (1) the anguish, grief and loss associated with Howard Goldstein's death; (2) the added anguish and emotional distress resulting from witnessing Howard Goldstein's death; and (3) their own suffering, anguish and residual terror resulting not only from being shot repeatedly by AK-47s but also from careening across a two-lane, hilly road for 8.22 miles until their vehicle crashed and overturned in a drainage ditch. Mr. Kleiman offers highly relevant opinions, based on his professional training and experience, on "what happened" inside the vehicle in ways that will assist the jury in evaluating these solatium claims.

## II. MR. KLEIMAN IS HIGHLY QUALIFIED TO OFFER THE OPINIONS IN HIS REPORT

Defendant challenges Mr. Kleiman's qualifications to opine on the Route 60 Attack on several grounds:

---

[2] On August 12, four days after submitting its *Daubert* motion to exclude Mr. Kleiman, and before the date for Plaintiffs' Opposition, Defendant submitted a letter that largely reiterated the arguments set forth in its *Daubert* motion. To the extent Defendant raised any new arguments at all in its improperly filed letter, Plaintiffs will address them herein.

[3] "These plaintiffs are fully entitled to have evidence of the circumstances of these attacks." Aug. 11, 2015 Tr. at 5:18-19.

2

1. He is not an accident reconstructionist. (Ex. 2 at 193:18-20.)

2. He did not use an accident reconstructionist to assist him in this case.

3. He is not a medical doctor or a pathologist.

Defendant's attacks are strawmen and therefore entirely misplaced. Mr. Kleiman is proffered as a law enforcement expert. He has specialized training in ballistics, bomb disposal, homicide investigations and terrorist attacks. As noted above, he has also served as a police prosecutor who supervised numerous investigations of serious traffic accidents, including vehicular homicides. He has worked closely with accident reconstructionists on more than one hundred cases and worked routinely with pathologists, ballistics labs, forensic bomb units and counter-terrorism professionals on every level. Mr. Kleiman is self-evidently not offering medical opinions, and while aspects of his report may be analogized to accident reconstruction, his investigation extended far beyond the work typically undertaken by individuals in that field. This included, but was not limited to:

   a. Extensive search for records and witnesses (12 years after the fact);

   b. Review of hundreds of pages of police files;

   c. Cross-checking suspects' statements to the police against a contemporaneous IDF report, subsequent indictments and convictions, police ballistic reports and other materials;

   d. Analyzing a 2003 aerial map of the road and its angles and elevations against present road conditions, and cross-checking suspects' statements to the police against 2003 topography; and

   e. Cross-checking contemporaneous media accounts (including photos and video) against all the other available documentation listed above.

**A.   Mr. Kleiman Cannot Be Disqualified For Failing to Provide Opinions Defendant Would *Like* Him To Offer.**

In his expert report, Kleiman opines that "it is highly probable that Goldstein was alive,

3

conscious, and in control of the vehicle for at least 5-7 minutes after being struck by one or more 7.62x39mm rounds fired near the Yabrud underpass." (Report at 10.) The Bank takes him to task because he allegedly does not know certain facts about the attack, including:

1. "when Goldstein died or lost consciousness, or where on Route 60 that occurred" (Def. Mem. at 9);

2. where Howard Goldstein was shot, how many times he was shot, *or even if he was shot* (Def. Mem. at 10);

3. which of the two guns used in the attack was used to shoot him (Def. Mem. at 10);

4. the angle or force at which the bullet hit him (Def. Mem. at 10);

5. the damage the bullet or bullets caused (Def. Mem. at 10);

6. whether Howard Goldstein had any exit wounds from the bullet or bullets that struck him (Def. Mem. at 10);

7. whether, after being shot, Howard was able to see out of both eyes, whether he could hear, whether he could speak, or whether he had impaired motor skills (Def. Mem. at 10); and

8. whether Howard Goldstein slumped over the wheel, or Howard Goldstein's tongue was out of his mouth (Def. Mem. at 10).

These are misguided arguments. To begin with, no autopsy was performed on Howard Goldstein, and he did not die on a time-stamped video camera. Nor has his body been exhumed. Therefore, no credible expert, can ever state at *exactly* what moment Howard Goldstein lost consciousness, let alone died. Contemporaneous news reports describe multiple gunshot wounds, but again, absent an autopsy or exhumation, no credible expert can confidently state *exactly* how many times he was shot or which bullet was fatal. Both parties' forensic pathology experts agree that the sole postmortem photo of the decedent (PX5001) did not indicate any visible exit wound of any kind on his face and that the victim's visible injuries were caused by a gunshot, not the car

4

crash. Mr. Kleiman can hardly be criticized for *not* offering opinions on matters: (1) that he was not asked to opine on; and (2) for which there is no available evidence.

**B.     Attacks on Mr. Kleiman's Methodology Are Meritless.**

Defendant's complaints about Mr. Kleiman's methodology are little more than a list of cross-examination questions – often criticizing him for failing to review evidence that does not (or no longer) exists or attacking his purported failure to investigate issues of little or no relevance to Mr. Kleiman's opinions. In the case of a more than twelve year old attack, in which no autopsy was performed, the original police reports and witness statements were not preserved by the police department, and the vehicle was long ago disposed of, Mr. Kleiman's methodology is challenged because he "was unable to locate any witness statements from the day of the attack, medical records, an autopsy report, or any forensic records for Howard Goldstein to support his conclusions." Def. Mem. at 10. It is similarly absurd to criticize Mr. Kleiman for failing to inspect the car driven by the Goldsteins when it no longer exists.

Mr. Kleiman was tasked with, *inter alia*, identifying the locations of the shooting and the rollover of the vehicle, tracing the path of the vehicle between those two points, and attempting to determine whether the vehicle could have traversed the 8.22 miles after the shooting if Howard Goldstein had lost consciousness and died instantly near the site of the shooting. Because the attack took place more than twelve years ago, he could not, by definition, offer an opinion on every variable during the course of the 8.22 mile journey. For example, based on the IDF's timeline of the attack, Mr. Kleiman can estimate how long the vehicle remained on the road and provide a reasonable estimate of the *average* speed of the vehicle during that time frame, but there is no way for him (or anyone) to gauge the vehicle's *precise* speed at the time it came under fire.

5

Defendant's other complaints are equally meritless. Below is a chart briefly summarizing the Bank's methodological objections and Plaintiffs' brief responses:

| **Defendant's Methodological Objection** | **Plaintiffs' Response** |
|---|---|
| He chose not to inspect the physical evidence from the attack | **This is simply false. Mr. Kleiman searched for all available evidence.** |
| He was unable to locate any witness statements from the day of the attack, medical records, an autopsy report, or any forensic records for Howard Goldstein to support his conclusions. | **The police files no longer contain any witness statements (other than Mrs. Honickman's – which contradicts the Bank's theory) and no autopsy was performed and no other medical records remain (if they ever existed).** |
| He never inspected or even tried to inspect the car driven by the Goldsteins or a similar car. | **The Goldsteins vehicle was totaled. Mr. Kleiman was able to confirm that it was a Volkswagen Polo Classic SDI (diesel) and that it was only sold in Israel with a manual transmission.** |
| He did not inspect the tires from the Goldsteins' car and does not know what condition they were in at the time of the attack. | **The Goldsteins' vehicle was totaled. Moreover, the tire pressure is largely irrelevant to the opinions Mr. Kleiman offers in this case.** |
| He does not know how much the Goldsteins' car weighed, either with or without four passengers. | **This is also largely irrelevant to the opinions Mr. Kleiman offers in this case, but the Bank can cross-examine him on this issue.** |
| He did not take measurements of the interior dimensions of the Goldsteins' vehicle, such as the distance from the passenger seat to the steering wheel, nor did he look the measurements up. | **This is also largely irrelevant to the opinions Mr. Kleiman offers in this case (i.e. he does not doubt that Eugene Goldstein could physically reach the steering wheel from the passenger seat), but the Bank can cross-examine him on this issue.** |
| He took no measurements of Route 60. | **Instead, he relied on archival aerial photographs and engineering computations of the distance and elevations of the road in 2003.** |

| | |
|---|---|
| He did not calculate maximum speed at which a car can be traveling around a turn without crashing, to determine the minimum speed at which a car would need to be traveling to get up a particular hill. | **Such calculations depend on road surface conditions, prior speed of the vehicle and the driver's application of the brakes, but the Bank can cross-examine him on this issue.** |
| He did not pressure test the gas or brake pedals to see whether Howard Goldstein's foot could have remained on the gas and/or brake pedals sufficient to allow Eugene to drive the car. | **Mr. Kleiman's report considers scenarios wherein he *assumed* Howard Goldstein's foot was pressed on the gas *or* brake pedal, but the Bank can cross-examine him on this issue.** |
| He did not speak to any of the eyewitnesses to the attack (Eugene, Lorraine, or Michal). | **Had Mr. Kleiman interviewed the Plaintiffs, the Bank would now be complaining that he unfairly influenced their trial testimony.** |
| When he spoke with Dudi Binyamin, the Israeli police officer who was the investigator at the scene of the attack, Kleiman did not even bother to ask Binyamin whether Howard Goldstein lost consciousness immediately. | **Mr. Binyamin did not and could not know the answer to that question.** |
| He personally drove along Route 60, nearly 12 years after the accident – absent the stress of gunfire – in a different make and model than the car driven by the Goldsteins. | **In every respect, Mr. Kleiman drove the road under better driving conditions than the Goldsteins did on June 20, 2003. He was not fired upon; was driving on an improved road; without four gunshot wounds in his chest (Eugene), glass in his eye (Michal), or a body slumped over the steering wheel. Nor was he downshifting in a car without being able to reach the clutch. Admittedly, he did not attempt to crash his vehicle.** |
| He did not reconstruct the conditions of the attack by getting a car of the same model as the Goldsteins, having four people sit in it as they drove on Route 60, have the driver pretend to lose consciousness, and have someone else try to reach over and steer the car. | **In every respect, Mr. Kleiman drove the road under better driving conditions than the Goldsteins did on June 20, 2003. He was not fired upon; was driving on an improved road; without four gunshot wounds in his chest (Eugene), glass in his eye (Michal), or a body slumped over the steering wheel. Nor was he downshifting in a car without being able to reach the clutch. Admittedly, he did not attempt to crash his vehicle.** |

7

| | |
|---|---|
| He did not test whether Eugene could have pressed down and let up on Howard's right knee in order to accelerate and decelerate the car. | **The Bank can cross-examine him on why he did not attempt such a simulation into oncoming traffic.** |
| He did not actually take his hands off of the steering wheel to test whether it was possible to do so and remain on the road, and he never actually lost control of the car to determine what would happen. | **The Bank can cross-examine him on why he did not attempt to crash his vehicle.** |
| He did not record how many times he had to shift gears while driving Route 60, nor does he know how many times the driver of the Goldsteins' vehicle shifted. | **Mr. Kleiman was able to confirm that it was a Volkswagen Polo Classic SDI (diesel) and that it was only sold in Israel with a manual transmission, but he tested the road under vastly more favorable conditions to determine whether the vehicle – had it been an automatic transmission – could have traversed all 8.22 miles in the manner the Bank maintains. The Bank can cross-examine him on his assessments.** |
| His "reconstruction" cannot be tested, let alone peer-reviewed. | **Nothing prevented the Bank from retaining its own experts to measure the road, evaluate the turns, crash vehicles or otherwise attempt to simulate the events of June 20, 2003 as they saw fit. Moreover, this kind of expert opinion is highly unlikely to be "peer-reviewed" for self-evident reasons.** |

### III.  MR. KLEIMAN'S OPINIONS REGARDING THE CAFÉ MOMENT AND BUS 37 BOMBINGS ARE RELEVANT

Defendant argues that "Mr. Kleiman's opinions as to the Café Moment and Bus 37 attacks are irrelevant and should be excluded under Rules 401 through 403 and because they fail to meet Rule 702's requirement that expert testimony must 'help the trier of fact to understand the evidence or to determine a fact in issue.'" In support of this argument, Defendant cites

8

*Pescatore v. Pan Am World Airways*, 97 F.3d 1 (2d Cir. 1996), which Your Honor has already held is inapposite. *See* August 11, 2015 Conference Tr. 5:12-17, 17:19-22.

As Your Honor noted during that conference, "These plaintiffs are fully entitled to have evidence of the circumstances of these attacks. … as a general matter, recreating the circumstances of the attacks is what this trial is all about." Tr. 5:18-20, 5:22-24. Your Honor further noted:

> The plaintiffs not only have the right but the necessity to demonstrate the circumstances of the attacks so they can argue their impact on the plaintiffs. Most, and probably all, of the jurors that we're going to have, have never seen a terrorist attack close up, so it's very hard for them to know what kind of injuries, physical and emotional, might result. Plaintiffs have the right to offer evidence to allow them to mentally recreate the scene so that they can intelligently ascertain damages caused by the attack. [Tr. 6:11-20.]

As noted above, Mr. Kleiman is an experienced former INP investigator, bomb squad member and instructor and has physically inspected the sites of more than one hundred terrorist attacks, including the Café Moment and Bus 37 bombings. As a former INP Foreign Press Spokesman, Mr. Kleiman routinely provided the press with information regarding terrorist attacks, including describing their aftermath. As Your Honor noted, the jurors "have never seen a terrorist attack close up," Tr. 6:125-16, and Mr. Kleiman is among the most qualified individuals to describe and explain to the jurors the cause of the attack and the specifics as to what is depicted in various photographs from their aftermath. Accordingly, his testimony is highly relevant and will help the jury understand the evidence that it is being presented with.

## IV. CONCLUSION

For the reasons set forth above, we respectfully request that Defendant's *Daubert* Motion to Exclude Testimony of Plaintiffs' Proposed Expert Gil Kleiman be denied.

9

Dated: August 13, 2015
Hackensack, NJ

Respectfully submitted,

OSEN LLC

By: /s/ Gary M. Osen
Gary M. Osen, Esq.
Ari Ungar, Esq.
Aaron Schlanger, Esq.
2 University Plaza, Suite 201
Hackensack, New Jersey 07601
(201) 265-6400

KOHN, SWIFT & GRAF, P.C.
Steven M. Steingard, Esq.
Stephen H. Schwartz, Esq.
Neil L. Glazer, Esq.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700

ZUCKERMAN SPAEDER LLP
Shawn P. Naunton, Esq.
399 Park Avenue
New York, NY 10022
(646) 746-8655

TURNER & ASSOCIATES, P.A.
C. Tab Turner, Esq.
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
(501) 791-2277

Attorneys for *Linde* Plaintiffs

MOTLEY RICE LLC
Michael Elsner, Esq.
John M. Eubanks, Esq.
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
(843) 216-9000

Attorneys for *Almog* Plaintiffs

SAYLES WERBNER
Mark S. Werbner, Esq.
4400 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
(214) 939-8700

HEIDEMAN NUDELMAN & KALIK, P.C.
Richard D. Heideman, Esq.
Noel J. Nudelman, Esq.
Tracy Reichman Kalik, Esq.
1146 19th Street, NW, Fifth Floor
Washington, DC 20036
(202) 463-1818

STONE BONNER & ROCCO LLP
James P. Bonner, Esq.
145 West 45th Street
New York, New York 10036
(212) 239-4340

Attorneys for *Litle* Plaintiffs