UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
PHILIP LITLE, et al.,

                          Plaintiff,

     -against-

ARAB BANK, PLC,

                          Defendant.

04-CV-5449 (NG)(VVP)

------------------------------------------------------------------X
MICHAEL BENNETT, et al.,

                          Plaintiff,

     -against-

ARAB BANK, PLC,

                          Defendant.

05-CV-3183 (NG)(VVP)

------------------------------------------------------------------X
ARNOLD ROTH, et al.,

                          Plaintiff,

     -against-

ARAB BANK, PLC,

                          Defendant.

05-CV-3738 (NG)(VVP)

------------------------------------------------------------------X

```
-------------------------------------------------------------X
                                                             :
STEWART WEISS, et al.,                                       : 06-CV-1623 (NG)(VVP)
                                                             :
                         Plaintiff,                          :
                                                             :
        -against-                                            :
                                                             :
ARAB BANK, PLC,                                              :
                                                             :
                         Defendant.                          :
-------------------------------------------------------------X
                                                             :
JOSEPH JESNER, et al.,                                       : 06-CV-3869 (NG)(VVP)
                                                             :
                         Plaintiff,                          :
                                                             :
        -against-                                            :
                                                             :
ARAB BANK, PLC,                                              :
                                                             :
                         Defendant.                          :
-------------------------------------------------------------X
```

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE APPLICATION OF ATTORNEY JACKOB RAZ FOR ATTORNEYS' FEES

MOSES & SINGER LLP
*Attorneys for Jackob Raz*
405 Lexington Avenue, 12th Floor
New York, NY 10174
(212) 554-7800

4325050 018881.0101

Jackob Raz ("Mr. Raz"), by and through his undersigned attorneys, Moses & Singer LLP, respectfully submits this memorandum of law in further support of his application (1) for damages resulting from the breach of the March 2005 Agreement[1] among Mr. Raz and the law firms of Sayles Werbner P.C. and The David Law Firm P.C. (together, the "Firms"), in the amount of 10% of fees received by the Firms in connection with those Plaintiffs with whom Mr. Raz met one-on-one at the request of the Firms during the planning stages of the litigation; and (2) in quantum meruit, seeking compensation for the substantial legal services that he rendered on behalf of the Plaintiffs as Israeli counsel for the Firms beginning in 2007.

## I. PRELIMINARY STATEMENT

The March 2005 Agreement entered into by Mr. Raz and the Firms was limited in scope, and contemplated only that Mr. Raz would hire staff to perform administrative services on behalf of the Firms in Israel. *See* Raz Decl., Ex. B. Mr. Raz is seeking damages for the Firms' breach of the March 2005 Agreement in the amount of 10% of fees received in connection with the claims of those Plaintiffs with whom Mr. Raz met one-on-one at the request of the Firms during the planning stages of the Actions.[2] *See id.*, ¶25.

Beginning in 2007, Mr. Raz also – separately – served as Israeli counsel for the Plaintiffs, both Israeli and Dual Citizen Plaintiffs, at the request of the Firms, a significant expansion of his role that was neither contemplated nor addressed in the March 2005 Agreement. Mr. Raz is seeking compensation in quantum meruit for those legal services rendered by him for the benefit of the Firms, which unjustly enriched the Firms at Mr. Raz's expense.

---

[1] Capitalized terms not defined herein shall have meaning ascribed to them in the Memorandum of Law in Support of the Application of Attorney Jackob Raz for Attorneys' Fees (the "Moving Brief") (Dkt. No. 1577-8).

[2] The Firms point out that Mr. Raz's Moving Brief and supporting papers reflect the captions of the *Litle*, *Bennet*, *Roth*, *Weiss* and *Jesner* matters, but were filed in the *Linde* matter. Mr. Raz filed his papers in the *Linde* matter because the Court's March 27, 2019 Order authorizing the instant motion was entered on the *Linde* docket.

In opposition to Mr. Raz's motion, the Firms do not deny that they are parties to the March 2005 Agreement with Mr. Raz. The Firms also do not deny that he rendered substantial legal services on behalf of both the Israeli Plaintiffs and the Dual Citizen Plaintiffs beginning in 2007, ultimately representing more than 70 Plaintiffs during the approximately 21 rounds of depositions that took place in Israel from 2007 to 2010.[3] Instead, the Firms seek to deny Mr. Raz the compensation that he so clearly earned based on a tortured reading of the March 2005 Agreement. First, the Firms argue that what they define as "Fee Provision 3"—that part of the March 2005 Agreement entitling Mr. Raz to "an additional 5% of the legal fee on any client [he] engage[d] in one on one client meetings at the request of the [Firms]"—only applies to those clients who signed formal engagement letters during their meeting with Mr. Raz. *See* Memorandum of Law of Sayles Werbner, P.C. and The David Law Firm, P.C. in Opposition to the Application of Jackob Raz for Attorneys' Fees ("Opposition Brief" or "Opp. Br.") (Dkt. No. 1581), pp. 6-8. This interpretation of the March 2005 Agreement is not supported by its plain language and, in any event, any ambiguities in the March 2005 Agreement must be construed against the Firms, as the drafters of that agreement.

The Firms also argue that Mr. Raz is not entitled to recover in quantum meruit for the legal services that he rendered on behalf of the Plaintiffs at the Firms' request beginning in 2007 because the March 2005 Agreement concerns the same subject matter as Mr. Raz's quantum meruit claim. *See id.*, pp. 8-10. However, as Mr. Raz's Moving Brief and supporting papers make clear, the March 2005 Agreement – which only dealt with his administrative role – did not

---

[3] Mr. Raz is in possession of documentary evidence, including deposition transcripts, related to 70 of the depositions at which he represented Plaintiffs. However, the Firms typically did not provide Mr. Raz with the transcripts of the depositions of the Plaintiffs that he represented (Raz Decl., n.3), and the actual number of Plaintiffs that Mr. Raz represented far exceeds 70. Mr. Raz typically represented two to three Plaintiffs per day during a round of depositions, and each of the 21 rounds of depositions lasted approximately 10 days. Mr. Raz thus represented hundreds of Plaintiffs from 2007 to 2010.

2

contemplate Mr. Raz's *legal* representation of the Plaintiffs and thus does not bar his claim in quantum meruit. Notably, the parties operated pursuant to the terms of the March 2005 Agreement for more than two years before Mr. Raz took on an expanded role, as evidenced by his appearance *pro hac vice* in the Actions and his representation of the Plaintiffs in preparation for and during their depositions.

Finally, the Firms make a series of irrelevant statements to cast doubt on Mr. Raz's veracity. They suggest that Mr. Raz failed to submit any invoices supporting the over $880,000 that the Firms allegedly reimbursed Mr. Raz for his overhead expenses (*see* Declaration of Mark Werbner in Opposition to Application of Jackob Raz for Attorneys' Fees [Dkt. No. 1582] at ¶4) and that he overstated the size of the staff that he employed to administer the Firms' claims (Opp. Br., p. 2). While again, wholly irrelevant to the instant application, those claims are demonstrably untrue, and if requested, Mr. Raz would eagerly provide the Court with evidence supporting the expenses incurred, including invoices and emails providing those invoices to Mr. David.[4] Further, the Firms reimbursed Mr. Raz for all of his expenses, and clearly had no doubt that the expenses were accurate and legitimate. Mr. David also represents that Mr. Raz "acknowledged [in a February 2018] phone call that the [March 2005] Agreement does not entitle him to a fee." Declaration of Jonathan David in Opposition to Declaration of Jackob Raz for Attorneys' Fees [Dkt. No. 1583] at ¶8. However, Mr. Raz and Mr. David primarily discussed Mr. Raz's entitlement to legal fees as a result of his *legal* representation of the Plaintiffs *beginning in 2007*, and Mr. David took the position that Mr. Raz "deserved nothing" and refused to discuss the matter further, necessitating the instant motion. *See* Raz Decl., ¶¶144-45.

---

[4] It bears noting that only Mr. Werbner represents that Mr. Raz provided no invoices documenting the expenses incurred. It was Mr. Raz's practice to send invoices to Mr. David rather than to Mr. Werbner, with whom he did not typically interact.

3

Mr. Raz respectfully requests that the Court award him damages for the Firms' breach of the March 2005 Agreement, as well as compensation in quantum meruit for the thousands of hours of legal work that he rendered on behalf of the Plaintiffs beginning in 2007.

### A. Mr. Raz Is Entitled To Damages Based On The Firms' Breach Of The March 2005 Agreement

The Firms do not dispute that Mr. Raz performed his obligations under the March 2005 Agreement, or that he met one-on-one with potential Plaintiffs during the planning stages of the litigation, many of whom ultimately became Plaintiffs in the Actions. Instead, the Firms rely on a contrived reading of the March 2005 Agreement, arguing that its third prong, entitling Mr. Raz to "an additional 5% of the legal fees on any client [Mr. Raz] engage[d] in one on one meetings at the request of [the Firms]" must be interpreted "in light of the meaning that lawyers typically assign to [the] term ["engage"] in the specific context of a fee agreement," meaning to "secure the representation of [a] client." Opp. Br., pp. 6, 7. The Firms thus contend that Mr. Raz is entitled to no fee interest in the cases of those Plaintiffs with whom he met one-on-one, including at informative conferences organized by Mr. Raz to recruit potential Plaintiffs, because those Plaintiffs did not enter into written retainer agreements with the Firms during their meetings with Mr. Raz. *Id.* In making this argument, the Firms have at best identified an ambiguity in the March 2005 Agreement that must be construed against them, as drafters of the agreement.

"Courts will find a contract ambiguous if its terms 'could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Judd Burstein, P.C. v. Long*, 180 F. Supp. 3d 308, 312 (S.D.N.Y. 2016) (quoting *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010)). Where a contract is ambiguous, "New

York follows the well established *contra proferentem* principle which requires that 'equivocal contract provisions are generally to be construed against the drafter.'" *McCarthy v. Am. Int'l Grp., Inc.*, 283 F.3d 121, 124 (2d Cir. 2002) (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 67 (2d Cir. 2000)). The Firms do not dispute that they drafted the March 2005 Agreement based upon the previous agreement that they had executed with attorney Robbie Negbie, Mr. Raz's predecessor as administrator for the Plaintiff's claims in Israel. *See* Opp. Br., p. 3. The Firms similarly do not dispute Mr. Raz's contention that Mr. David presented the March 2005 Agreement to him on a take it or leave it basis, and that its terms were not negotiated by the parties. Raz Decl., ¶¶11-13. As a result, the Firms should not be able to benefit at Mr. Raz's expense from any ambiguity in an agreement that they drafted.

Black's Law Dictionary defines the term "engage" as "[t]o employ or involve oneself; to take part in; to embark on." Black's Law Dictionary (11th ed. 2019). "Fee Provision 3"— entitling Mr. Raz to an "additional 5% of the legal fee on any client [he] engage[d] in one on one client meetings at the request of the [Firms]"—is thus properly interpreted, based on both its plain language and the legal definition of the term "engage," as entitling Mr. Raz to a fee interest in the cases of those Plaintiffs with whom he "took part" in one-on-one meetings at the request of the Firms. *See* Raz Decl., ¶14. "Fee Provision 3" nowhere references an engagement or retention letter, and the Firms' argument that Mr. Raz's entitlement to compensation under each of the fee provisions of the March 2005 Agreement "hinges upon retention of a client" (Opp. Br., 7) is not supported by the text of the agreement itself, as only "Fee Provision 1" uses the term "retained." Raz Decl., ¶5.

Mr. Raz can establish, based on his own records and certain documents in possession of the Firms, that he met with numerous Dual Citizen Plaintiffs during the planning stages of the

5

litigation, and that those Dual Citizen Plaintiffs appeared in the litigation as a result of his involvement. *See* Raz Decl., ¶25. The March 2005 Agreement, by its terms, thus entitles Mr. Raz to a share of the fee recovered by these Dual Citizen Plaintiffs.

### B. The March 2005 Administrative Services Agreement Does Not Apply To Mr. Raz's Rendering Of Legal Services, And Does Not Bar Him From Recovering In Quantum Meruit

The Firms argue that Mr. Raz cannot recover compensation for the legal services that he rendered on behalf of the Plaintiffs at the request of the Firms because the March 2005 Agreement governs his entitlement to compensation. However, the cases on which the Firms rely, stating the general rule that one cannot recover in quantum meruit "if the parties have a valid, enforceable contract that governs *the same subject matter as the quantum meruit claim.*" (Opp. Br., p. 9) (quoting *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005)) (emphasis added)) are inopposite here, as the March 2005 Agreement, by its terms, is limited in scope and does not contemplate the legal services rendered by Mr. Raz. *See also, e.g., In re LIBOR-BASED Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 483 (S.D.N.Y. 2014) (declining to dismiss quantum meruit claim where the swap contracts in question required defendants to pay plaintiffs the prescribed floating rate of return using the LIBOR reported by the British Bankers' Association, but did not clearly cover the matter at issue—namely, whether the defendants were permitted to manipulate LIBOR itself and thereby depress the amount they were required to pay plaintiffs); *Kreiss v. McCown DeLeeuw & Co.*, 37 F. Supp. 2d 294, 301-02 (S.D.N.Y. 1999) (holding that stockholders agreement governing the stockholders' rights in connection with ownership of stock, including rights of transfer, sale and registration, did not bar quantum meruit claim concerning the specific subject of whether or in what amount the plaintiffs were entitled to receive stock options and equity).

The March 2005 Agreement provides that Mr. Raz

6

> shall be responsible for *hiring employees* for {responding [sic] to inquiries from potential new clients, scheduling appointments and signing up such clients on contracts provided by [the Firms]…in compliance with all applicable ethical standards}. [sic]. *Such employees* shall further be responsible for maintaining professional client relations with clientele and assisting such clients with in [sic] complying with the various tasks requested by [the Firms] during the pendency of the litigation.

Raz Aff., Ex. B at ¶2 (emphasis added). Further, the March 2005 Agreement provided that Mr. Raz's

> name and letterhead shall be used in various communications with clients and/or third parties as the Israeli associate counsel of [the Firms] on this litigation project.

*Id.*, ¶3. The March 2005 Agreement did not specify any larger role for Mr. Raz in representing the Firms' clients. Indeed, the Firms admit as much in their Opposition Brief. *See* Opp. Br., pp. 3-4 (noting that "Paragraph 2 of the [March 2005 Agreement] *required Mr. Raz to hire employees* responsible for 'responding to inquiries from potential new clients, scheduling apointments and signing up such clients on contracts provided by" the Firms and noting that "*Mr. Raz's staff* was 'responsible for maintaining professional client relations with clientele and assisting such clients…in complying with the various tasks requested by" the Firms) (quoting Raz Aff., Ex. B at ¶2) (emphasis added).

As set forth in detail in Mr. Raz's moving papers, the parties operated under the March 2005 Agreement, with Mr. Raz providing solely administrative services to the Firms, until 2007, when depositions of the Plaintiffs began in Israel. Raz Decl., ¶¶31-39. Thereafter, on or about May 15, 2007, Mr. Raz moved for admission *pro hac vice* in the Actions at the request of the Firms, and thereafter began serving as Israeli counsel for the Plaintiffs, in addition to his role as administrator pursuant to the March 2005 Agreement. *See* Raz Decl., Exs. C and D. Mr. Raz has received no compensation for his legal work on behalf of the Plaintiffs, and the Firms have

7

been unjustly enriched as a result. Mr. Raz is thus entitled to compensation in quantum meruit for his substantial legal work on behalf of the Plaintiffs.

## CONCLUSION

For all of the foregoing reasons and those set forth in his moving papers, Mr. Raz respectfully requests that the Court award him damages for the Firms' breach of the March 2005 Agreement, in the amount of 10% of fees received by the Firms in connection with the claims of those Plaintiffs in the Actions with whom Mr. Raz met one-on-one at the request of the Firms; and (2) his reasonable costs and legal fees in quantum meruit for the legal services that he rendered as Israeli counsel for the Firms and the Plaintiffs in the Actions.

Dated: August 19, 2019
      New York, New York

                                             MOSES & SINGER LLP
                                             *Attorneys for Jackob Raz*

                                   By: _____
                                          David Lackowitz
                                          Megan H. Daneshrad
                                          405 Lexington Avenue
                                          New York, New York 10174
                                          (212) 554-7800

4325050 018881.0101