UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------- x
                                                   :

LINDE, et al.,                                       :

                             Plaintiffs,    :          **MEMORANDUM AND ORDER**

     -against-                            :

                                                          :          04-CV-2799 (BMC) (PK)

ARAB BANK, PLC,                        :

                             Defendant.    :

                                                           :
----------------------------------------------------- x
                                                   :

LITLE, et al.,                                        :

                             Plaintiffs,    :

     -against-                            :          04-CV-5449 (BMC) (PK)

                                                          :

ARAB BANK, PLC,                        :

                             Defendant.    :

                                                          :
----------------------------------------------------- x
                                                  :

BENNETT, et al.,                          :

                             Plaintiffs,    :

     -against-                            :          05-CV-3183 (BMC) (PK)

                                                          :

ARAB BANK, PLC,                        :

                             Defendant.    :

                                                          :
----------------------------------------------------- x
                                                  :

ROTH, et al.,                                       :

                             Plaintiffs,    :

     -against-                            :          05-CV-3738 (BMC) (PK)

                                                          :

ARAB BANK, PLC,                        :

                             Defendant.    :

                                                          :
----------------------------------------------------- x
                                                  :

WEISS, et al.,                                    :

                             Plaintiffs,    :

     -against-                            :          06-CV-1623 (BMC) (PK)

                                                          :

ARAB BANK, PLC,                        :

                             Defendant.    :

                                                          :
----------------------------------------------------- x

```
------------------------------------------------------- x
                                                        :
JESNER, et al.,                                         :
                              Plaintiffs,               :
         -against-                                      :         06-CV-3869 (BMC) (PK)
                                                        :
ARAB BANK, PLC,                                         :
                              Defendant.                :
                                                        :
------------------------------------------------------- x
```

**Peggy Kuo, United States Magistrate Judge:**

Interested Party Jackob Raz is an Israeli attorney who was admitted *pro hac vice* on behalf of the Plaintiffs in *Linde et al. v. Arab Bank, PLC*, 04-CV-2799, *Litle, et al. v. Arab Bank, PLC,* 04-CV-5449; *Bennett, et al. v. Arab Bank PLC*, 05-CV-3183; *Roth, et al. v. Arab Bank, PLC*, 05-CV-3738; *Weiss, et al. v. Arab Bank, PLC*, 06-CV-1623; and *Jesner, et al. v. Arab Bank, PLC*, 06-CV-3869. Before the Court is Raz's Motion for Attorneys' Fees (the "Motion"). (*See* Dkt. 1577.) Raz filed the Motion on July 29, 2019. (Motion, Dkt. 1577.) Counsel for some of the Plaintiffs, The David Law Firm, P.C. and Sayles Werbner, P.C. (collectively, "the Firms"), filed their Memorandum in Opposition ("Opp. Mem."), on August 12, 2019. (Dkt. 1581.) Raz filed a reply Memorandum in Support ("Reply") on August 19, 2019. (Dkt. 1584.)[1] For the reasons discussed below, the Motion is granted in part and denied in part.

## I. FACTUAL BACKGROUND

### A. The Firms' Work

For more than a decade, the Firms pursued claims on behalf of two groups of Plaintiffs: (1) American citizens who asserted claims pursuant to the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333 *et seq.*, in the *Litle, Bennett, Roth, and Weiss* cases, and (2) Israeli citizens who asserted claims pursuant to the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350 *et seq.* in the *Jesner* case. (Opp. Mem. at 3; Declaration of Mark Werbner ("Werbner Decl.") ¶ 1, Dkt. 1582.) The ATS case was ultimately

---

[1] Raz filed the Motion on the case docket for *Linde, et al. v. Arab Bank, PLC* only, but it is undisputed that the parties' attorneys' fees agreement covered all of the above-referenced related cases.

1

dismissed in a decision affirmed by the U.S. Supreme Court in 2018, and the ATA cases resulted in confidential settlements. (Opp. Mem. at 2, 3.)

B. **The March 2005 Agreement between Raz and the Firms**

On March 17, 2005, Raz and the Firms entered into an agreement by which Raz would represent the Firms' interests in Israel on behalf of "victims of terror residing in Israel in lawsuits filed in the U.S.A." (*See* "Agreement," Ex. B to the Declaration of Jackob Raz ("Raz Decl."), Dkt. 1577-3.) Pursuant to the Agreement,

> [Raz] shall be responsible for hiring employees for {responding to inquiries from potential new clients, scheduling appointments and signing up such clients on contracts provided by [the Firms] . . . in compliance with all applicable ethical standards}. Such employees shall further be responsible for maintaining professional client relations with clientele and assisting such clients with [sic] in complying with the various tasks requested by [the Firms] during the pendency of the litigation.

(Agreement ¶ 2.) The Agreement provided for two forms of compensation in exchange for this work. First, the Firms would "provide an advance and shall reimburse all reasonable approved office expense and overhead incurred in connection with the project." (*Id.* ¶ 4.) Second, the Agreement provided for fee-sharing between Raz and the Firms, as follows:

> [The Firms] shall also pay [Raz] 5% of the gross legal fee collected on all non-american [sic] citizen cases (defined as citizens of countires [sic] other than the U.S. who do not have U.S. citizenship and are not claiming on behalf of a U.S. citizen) retained by [the Firms] subsequent to the signing of this agreement. [Raz] shall not have a financial interest in U.S. citizen cases. However, if [the Firms] determine[] that a case would not have reached the litigation but for the efforts of [Raz] independent of any advertising efforts of [the Firms] then a fee interest may be awarded [Raz] in such U.S. citizen cases. Separately and additionally, [Raz] shall receive an additional 5% of the legal fee on any client [Raz] engages in one on one client meetings at the request of [the Firms].

(*Id.* ¶ 5.) Pursuant to the Agreement, Raz set up and ran an office in Israel (the "Israeli Office") on behalf of the Firms. From 2005 until 2012, he hired a total of 11 staff members to manage the Israeli Office tasks. (Raz Decl. ¶ 17.) The Israeli Office posted advertisements to attract potential clients, whom Raz then met with, and several agreed to join the class action. (*Id.* ¶ 25.) Raz

managed the staff, including paying their salaries and taxes, and handled the financial aspects of the litigation, such as reimbursement of expenses to the Plaintiffs. (*Id.* ¶¶ 18, 22.) The Israeli Office supported both Plaintiffs who were Israeli and those who had dual Israeli and American citizenship. (*Id.* ¶¶ 7, 23.) From 2005 through 2015, the Firms reimbursed Raz for his requested expenses in the amount of $880,600. (Werbner Decl. ¶ 4.)

### C. Raz's Legal Work on the Firms' Behalf

In February 2007, after Plaintiffs' depositions were ordered to take place in Israel, the Firms asked Raz to prepare the Plaintiffs in Hebrew for their depositions. (Raz Decl. ¶ 26.) These Plaintiffs included both Israeli citizens and those of dual U.S. and Israeli citizenship. (*Id.* ¶ 28.) Raz met with the Plaintiffs, explained the discovery process and deposition procedures and answered their questions. (*Id.* ¶ 27.) He attended the first round of depositions in a two-week period in May 2007, along with a lawyer from the Firms, Joel Israel; both lawyers were identified in the transcripts as representing Israeli as well as dual-citizen Plaintiffs. (*Id.* ¶¶ 29, 30.)

After the depositions concluded, the Firms asked Raz if he would agree to represent the Plaintiffs on his own in subsequent rounds of depositions, in order to save the Firms tens of thousands of dollars in travel costs and attorney time. (Raz Decl. ¶ 31.) Raz agreed to this, and the Firms prepared motions for Raz to be admitted *pro hac vice*; the moving papers listed captions for the *Litle, Bennett, Roth, Weiss,* and *Jesner* cases. (*Id.* ¶¶ 33, 34.) In support of his *pro hac vice* applications, one of the Plaintiffs' lawyers declared, "Obviously, it is expensive and time consuming for Plaintiffs' American counsel to travel to Israel to defend Plaintiffs' depositions. Furthermore, many of the Plaintiffs domiciled in Israel are also more comfortable conversing in Hebrew, rather than English. Mr. Raz lives in Israel, is fluent in Hebrew and is a member in good standing of the Israeli bar." ("*Pro Hac Vice* Motion," Ex. C to the Raz Decl., Declaration of James P. Bonner In Support of Plaintiffs' Motion to Admit Counsel *Pro Hac Vice* ¶¶ 3, 4, Dkt. 1577-4.)

3

The Court admitted Raz *pro hac vice* in docket orders in the *Roth* and *Litle* matters on May 23, 2007. The Firms filed a Notice of Appearance for Raz in the *Litle* matter on July 9, 2007. (*Litle* Dkt. 389.) Raz appeared as the only counsel of record for both ATA and ATS Plaintiffs in many subsequent rounds of depositions, from July 2007 through January 2010. (Raz Decl. ¶¶ 40 through 109, 113.) Raz represented Plaintiffs in a final round of depositions alongside a lawyer from the Firms, in order to expedite the depositions of 547 additional Plaintiffs. (*Id.* ¶¶ 112 through 129.) The Firms' lawyer explained that Raz had saved them tens of thousands of dollars for each round of depositions that Raz defended on his own. (*Id.* ¶ 113.) In total, Raz recalls assisting with or defending approximately 21 rounds of depositions, each of which lasted around two weeks, representing two or three Plaintiffs per day. (*Id.* ¶ 130.) During this time, Raz continued to perform his administrative duties for the Firms under the Agreement. (*Id.* ¶ 39.)

Raz also performed other tasks at the Firms' request, including providing legal opinions, seeking documents and other information from third parties, communicating with third parties on behalf of the Firms and Plaintiffs, and translating a communication to Plaintiffs. (*Id.* ¶¶ 131, 140.) In total, Raz estimates that he spent between 7,500 and 10,000 hours on the combined matters from 2005 to 2017. (*Id.* ¶ 148.)

**D. Case Outcomes and Disagreement Regarding Raz's Compensation**

The ATS case, *Jesner*, was ultimately dismissed, after the Supreme Court found that the Plaintiffs there had no cause of action. (Opp. Mem. at 1.) The Plaintiffs in the ATA cases reached a settlement agreement with the defendant. Raz read an online article about the settlement and inquired about it with his contact at the Firms, Jonathan David. (Raz Decl. ¶¶ 142, 143.) David refused to provide Raz any details concerning the settlement and denied that Raz earned any share in the legal fees awarded in conjunction with the settlement. (*Id.* ¶ 144.)

4

## II. DISCUSSION

### A. The Parties' Arguments

Raz argues that he is entitled to damages for breach of the Agreement in the amount of ten percent of the attorneys' fees associated with Plaintiffs with whom Raz met one-on-one at the request of the Firms. (Motion at 8, 11.) In addition, Raz seeks his reasonable costs and legal fees in *quantum meruit* for the legal services he provided, primarily preparing for and defending Plaintiffs' depositions. (*Id.* at 10.) He argues that the award in *quantum meruit* is necessary because the Agreement covered only administrative services and did not contemplate any legal work performed by him; Raz naturally assumed that he would receive additional compensation for the thousands of hours he spent on the cases from 2005 to 2017. (*Id.* at 10.)

The Firms oppose both the requests for a percentage of the fees, and for expenses and reasonable fees in *quantum meruit*. They argue that the plain meaning of the Agreement precludes Raz's argument that he is entitled to ten percent of the fees associated with the settling Plaintiffs. Their argument hinges on the word "engages" in the last sentence of the fee provision: "Separately and additionally, [Raz] shall receive an additional 5% of the legal fee on any client [Raz] engages in one on one client meetings at the request of [the Firms]." (Agreement ¶ 5; Opp. Mem. at 6-8.) They argue that "engages" in the context of the fee provision clearly means to *retain* a new client during the one-on-one meeting, not simply to meet with the person at the request of the Firms, as Raz claims. (Opp. Mem. at 6-8.) To interpret it as "taking part" in one-on-one meetings, as Raz suggests, would mean that Raz could potentially get an outsized fee award for a routine client meeting that lasts only a few minutes. (*Id.* at 8 n.3.) The Firms would never have agreed to such a generous fee-sharing provision for such "*de minimis* service." (*Id.* at 8.)

The Firms argue that Raz cannot rest his claim for fees on any other provisions of the fee-sharing clause. *Jesner*, the ATS case brought on behalf of non-American Plaintiffs, was ultimately

5

unsuccessful, so there is no fee from which Raz can recover "5% of the gross legal fee collected on all non-[A]merican citizen cases." (Agreement ¶ 5; Opp. Mem. at 6.) Furthermore, there are no American citizen Plaintiffs for whom the Firms determined that a "case would not have reached the litigation but for the efforts of [Raz] independent of any advertising efforts of [the Firms]." (Agreement ¶ 5; Opp. Mem. at 6.)

The Firms also argue that Raz is not entitled to damages in *quantum meruit* because the Agreement already governs Raz's compensation for his legal services, the same subject matter as his unjust enrichment claim. (Opp. Mem. at 8-10.)

### B. Choice of Law

Although the Agreement does not contain a choice-of-law provision, the parties have assumed that New York law applies. "New York courts seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute." *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 301 (2d Cir. 2000). Since the cases against Arab Bank were prosecuted in New York and the Court has retained jurisdiction over this fee dispute, the undersigned will apply New York law.

### C. Breach of Contract

To support a claim of breach of contract under New York law here, there must be an agreement, adequate performance by Raz, breach by the Firms, and damages. *See, e.g., Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). "The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent," and the best evidence of intent in a written agreement is the language of the agreement itself. *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (2002). Accordingly, a written agreement that is clear on its face is enforced according to its plain meaning. *Id.* A contract is ambiguous if one of its terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the

customs, practices, usages and terminology as generally understood in the particular trade or business." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) (internal quotations omitted). Under New York law, "whether the language of a contract is unambiguous, and if so, what construction is proper, are legal questions." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992). "The language of a contract is not made ambiguous simply because the parties urge different interpretations." *Id.* at 428.

The parties disagree as to the meaning of the term "engages" in the final sentence of the fee-sharing provision in the Agreement. While the provision could have been better worded, the Court agrees with the Firms that "engages" has a plain meaning of "retains" in the context of the entire Agreement. The Agreement's fee-sharing provision first discusses cases involving non-Americans: Raz will receive five percent of the gross legal fee for all non-American Plaintiffs who join the litigation after the date of the Agreement, without a requirement that Raz do any work to bring in those clients. The Agreement then states that Raz "shall not have a financial interest in U.S. citizen cases," except that an unspecified amount of fees "may" be awarded if the Firms determine that the plaintiff joined the litigation because of Raz's efforts, "independent of any advertising efforts of" the Firms. Then "[s]eparately and additionally," Raz is entitled to ("shall") receive an additional five percent fee on any client – both American and non-American – as long as it is a client Raz "engages in one-on-one meetings at the request of [the Firms]." (Agreement ¶ 5.) Because the event that triggers fee-sharing with Raz in the previous two scenarios is new clients joining the litigation through different means, a logical reading of the third provision is that it, too, provides a possible route to new clients joining the litigation and thereby entitling Raz to an interest in any fee award. Interpreting "engages" here to mean merely "took part in," as Raz urges (Reply at 5), gives the provision the absurd result that any time the Firms requested Raz to meet with a client other than in a group setting – even on a minor or administrative issue – the Firm would be giving up an

7

additional five percent of its fees for that client. Given that the scope of Raz's work under the Agreement was purely administrative, there is hardly any context in which Raz could interact with a client "in one-on-one meetings" under the Agreement, other than bringing in that person as a new Plaintiff, that could reasonably lead to his sharing in legal fees. Seen in that light, "engages" should be given its more legal meaning of establishing a formal relationship with a new client, rather than its informal meaning of merely participating in a meeting.

Because it is undisputed that Raz did not sign up any new clients in one-on-one meetings requested by the Firms, he is not entitled to share in any attorneys' fees award as a result of this provision. In addition, Raz does not allege that he is entitled to a fee award based on his retaining new clients independently, and there is no fee award involving the non-American Plaintiffs, because their case was dismissed. Accordingly, the Firms did not breach the Agreement by not sharing any of the fee award with Raz.

### D. *Quantum Meruit*

*Quantum meruit*, meaning "as much as he deserves," is the measure of liability for breach of an implied-in-law or quasi contract under New York law. The purpose of a quasi contract is to prevent a party's unjust enrichment. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005). "In order to recover in quantum meruit under New York law, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Id.* (internal quotations omitted).

Raz seeks recovery in *quantum meruit* for the deposition work he completed at the Firms' request from July 2007 through January 2010, as well as other legal work related to discovery or other issues in the case, through 2017. It is undisputed that Raz performed these services dutifully and in good faith, and that the Firms accepted those services. Where the claimant performed work

8

at a defendant's behest, even if that defendant did not receive a benefit from the work, courts have found the second element of a *quantum meruit* claim is satisfied. *Pulver Roofing Co. v. SBLM Architects, P.C.*, 884 N.Y.S.2d 802, 827 (4th Dep't 2009); *see also Learning Annex Holdings, LLC v. Cashflow Techs., Inc.*, 652 F. App'x 67, 70 (2d Cir. 2016). Here, it is enough that the Firms asked Raz to act as counsel during the depositions, even if Raz's services were rendered to Plaintiffs, who received the direct benefit. In addition, the Firms did receive a benefit from his work; Raz evidently saved the Firms thousands of dollars in travel costs and attorney time. (*See, e.g., Pro Hac Vice* Motion.) As to the third prong, Raz expected to be compensated for his work. (Motion at 10; Raz Decl. ¶¶ 144, 146.)

The Firms argue that the Agreement already covers the work for which Raz is seeking recovery in *quantum meruit,* and, therefore, Raz is not entitled to such recovery. (Opp. Mem. at 8-10.) A claimant cannot recover in *quantum meruit* if the scope of a valid, enforceable contract between the parties covers the dispute between them. *Mid-Hudson*, 418 F.3d at 175*; see also Clark-Fitzpatrick, Inc. v. Long Island R.R Co.*, 516 N.E.2d 190, 193 (1987). A claimant must show that the "additional services are so distinct from the contractual duties that it would be unreasonable for the defendant to assume that they were rendered without expectation of further pay." *Mid-Hudson*, 418 F.3d at 176 (internal quotations and brackets omitted).

Here, Raz's legal work was distinct from the scope of work set forth in the Agreement. The Agreement clearly sets out Raz's responsibilities as "hiring employees" for a variety of tasks related to potential new clients, such as responding to their inquiries, scheduling appointments and signing them up using contracts provided by the Firms. (Agreement ¶ 2.) "Such employees" are responsible for additional client relations, including complying with "various tasks" requested by the Firms. Raz warrants that his law office will "conduct business in compliance with all applicable governing law and ethical standards in Israel," and "understands that its name and letterhead shall be

9

used in various communications … as the Israeli associate counsel" of the Firms on this litigation. (*Id.* ¶¶ 1, 3.) Nothing else is required of Raz in the Agreement.[2]

The work Raz performed in defending the depositions was clearly legal in nature, such that the Firms, for the purpose of permitting him to act as counsel during the depositions, applied to the Court for Raz to be admitted *pro hac vice* in the litigation on May 15, 2007. (*See, e.g., Pro Hac Vice* Motion, Dkt. 372.) Thus, the Firms' own actions, along with the limited scope of the Agreement, support the conclusion that the legal services the Firms asked Raz to perform beginning in 2007 were so distinct from the administrative services required by the Agreement that it was unreasonable for the Firms to assume that Raz was providing then without expecting to be further paid.

Accordingly, since the services required of Raz in the Agreement covered only administrative, rather than legal tasks, Raz is entitled to recover fees in *quantum meruit* for all legal tasks he performed at the behest of the Firms.[3]

"[T]he value of an attorney's services in a *quantum meruit* claim is determined by: (1) the complexity of issues, (2) the nature of the services, (3) the time spent, (4) the amount involved, (5) the professional standing of counsel and (6) the results obtained. *In re Johns-Mansville Corp.*, No. 16-CV-7154 (PAE), 2017 WL 4339484, at *9 (S.D.N.Y. Sept. 29, 2017). Raz did not keep contemporary time records for his work on the cases, because keeping such records is not standard practice in Israel, where lawyers do not typically bill by the hour. (Raz Decl. ¶ 147.) He also states

---

[2] The Firms seemed to recognize the limited services necessary in the early stages of litigation because the Agreement anticipates only being in effect "until the date of the ruling on the motion to dismiss for ATCA [ATS] cases. After the ruling, the parties shall negotiate a new agreement which shall reflect the role for [Raz] needed by [the Firms] at that time." (Agreement ¶ 6.) The parties do not indicate when that date turned out to be, and in any event, no renegotiation seems to have occurred.

[3] Although Raz appears to seek additional fees for the translation of a letter, this task was not legal in nature, and arguably fell under the administrative functions of the Agreement. (Raz Decl. ¶ 140.) Accordingly, he may not seek fees associated with this translation.

10

that he was not provided transcripts of the depositions in which he participated as counsel and did not separately keep track of which depositions he participated in or the time he spent in each one. Raz therefore requests the ability to conduct discovery to determine how many depositions he participated in, and how many hours he performed legal, as opposed to administrative, services. (Motion at 11.) As necessary, he requests that the Court hold an inquest to determine the reasonable fees he is owed. (*Id.*)

The Court grants Raz leave to conduct discovery concerning the number and length of each deposition in which he participated and any other legal work he performed at the Firms' request. The Court reserves ruling on whether an inquest will be held to determine the amount of the award in *quantum meruit*.

### III. CONCLUSION

Based on the foregoing, the Court finds that Raz is not entitled to any share in the fee award pursuant to the Agreement, but that he is entitled to a *quantum meruit* award of reasonable attorneys' fees for legal work he performed at the Firms' request. Raz is granted leave to conduct discovery to determine the hours he worked, and to submit a further application for a specific amount of fee award in *quantum meruit*. Upon review of the relevant documents, Raz is directed to provide the Firms with documentation to support his time estimates and the value of the work he performed. If there is a dispute as to the value of Raz's work in *quantum meruit*, Raz may then file a supplemental brief for the fees he believes should be awarded, along with appropriate supporting documentation.

Raz and the Firms shall exchange all relevant documents by no later than June 1, 2020. Within 45 days of the production of such documents, Raz shall file any further application for attorneys' fees. Any response by the Firms shall be filed within 21 days of the application. No reply

is permitted.  If the Court determines that an inquest is necessary, one will be scheduled upon review of the application.

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
March 31, 2020