UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
LINDE, et al.,                                              :
                                                            :
                    Plaintiffs,                             :
        -against-                                           :   **REPORT & RECOMMENDATION**
                                                            :
ARAB BANK, PLC,                                             :   04-CV-2799 (BMC) (PK)
                    Defendant.                              :
                                                            :
------------------------------------------------------------ x
LITLE, et al.,                                              :
                    Plaintiffs,                             :
                                                            :
        -against-                                           :
                                                            :
ARAB BANK, PLC,                                             :   04-CV-5499 (BMC) (PK)
                    Defendant.                              :
                                                            :
------------------------------------------------------------ x
BENNETT, et al.,                                            :
                    Plaintiffs,                             :
                                                            :
        -against-                                           :
                                                            :
ARAB BANK, PLC,                                             :   05-CV-3183 (BMC) (PK)
                    Defendant.                              :
                                                            :
------------------------------------------------------------ x
ROTH, et al.,                                               :
                                                            :
                    Plaintiffs,                             :
                                                            :   05-CV-3738 (BMC) (PK)
        -against-                                           :
                                                            :
ARAB BANK, PLC,                                             :
                    Defendant.                              :
                                                            :
------------------------------------------------------------ x

|  |  |  |
|---|---|---|
| WEISS, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | 06-CV-1623 (BMC) (PK) |
| -against- | : | |
| | : | |
| ARAB BANK, PLC, | : | |
| | : | |
| Defendant. | : | |
| ------------------------------------------------------------ x | | |
| JESNER, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -against- | : | 06-CV-3869 (BMC) (PK) |
| | : | |
| ARAB BANK, PLC, | : | |
| | : | |
| Defendant. | : | |
| ------------------------------------------------------------ x | | |

**Peggy Kuo, United States Magistrate Judge:**

The Court previously found that Interested Party Jackob Raz ("Raz"), an Israeli attorney who performed legal work on behalf of the Plaintiffs in *Linde et al. v. Arab Bank, PLC*, 04-CV-2799, *Litle, et al. v. Arab Bank*, PLC, 04-CV-5449; *Bennett, et al. v. Arab Bank PLC*, 05-CV-3183; *Roth, et al. v. Arab Bank, PLC*, 05-CV-3738; *Weiss, et al. v. Arab Bank, PLC*, 06-CV-1623; and *Jesner, et al. v. Arab Bank, PLC*, 06-CV-3869, is entitled to a *quantum meruit* award of reasonable attorneys' fees for legal work performed at the request of counsel for some of the Plaintiffs, *i.e.,* The David Law Firm, P.C. and Sayles Werbner, P.C. (collectively, "the Firms"). *See Linde v. Arab Bank, PLC*, No. 04-CV-2799 (BMC)(PK), 2020 WL 1536333, at *6 (E.D.N.Y. Mar. 31, 2020) (the "First Fee Order"), *R&R adopted*, No. 04-CV-2799 (BMC)(PK), 2020 WL 5200924 (E.D.N.Y. Sept. 1, 2020). Raz has now submitted a fee application for an award of $911,710.80. (*See* Memorandum of Law in Support of the Final Fee Application of Attorney Jackob Raz (the "Fee Application"), Dkt. 1591.) The Firms oppose it.

2

## BACKGROUND

The dispute between Raz and the Firms over Raz's entitlement to attorneys' fees is described in detail in the First Fee Order, and only facts relevant to the Fee Application are provided here.

Raz and the Firms entered into an agreement in 2005 ("Agreement") pursuant to which Raz would provide services related to claims brought by the Firms on behalf of American citizens asserting claims pursuant to the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333 *et seq.*, and on behalf of Israeli citizens asserting claims pursuant to the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350 *et seq.* In addition to the work described in the Agreement, Raz prepared plaintiffs for and represented them during depositions conducted in Israel. First Fee Order at *1-2. (Declaration of Jackob Raz dated July 13, 2019 ("First Raz Decl.") ¶¶ 29-30, 40-94, 96-130, Dkt. 1577-1 (listing depositions at which Raz represented the Firms' clients).)

The Court granted Raz's Motion for Damages and Attorneys' Fees ("First Motion for Fees," Dkt. 1577) in part, finding that Raz was entitled to a *quantum meruit* award of reasonable attorneys' fees for performing those legal services. First Fee Order at *6 ("Accordingly, since the services required of Raz in the Agreement covered only administrative, rather than legal tasks, Raz is entitled to recover fees in *quantum meruit* for all legal tasks he performed at the behest of the Firms"). Because Raz did not keep contemporaneous time records for his work, which he stated was not standard practice in Israel, he was granted leave to conduct additional discovery on the number of hours he worked and the value of the work he performed, and to file this Fee Application. *Id.*

Raz bases his request for an award of $911,710.80 on his estimate that he worked 1,113.2 hours, billed at a rate of $700 per hour, plus 17% VAT. (Fee Application at 18; Supplemental Declaration of Jackob Raz dated May 27, 2021 ("Second Raz Decl."), Dkt. 1592; Detailed Chart of Time Claimed in Connection with Documented Depositions ("Raz Time Chart"), Dkt. 1592-1.)

3

The Firms contend that Raz only worked 155.88 compensable hours defending 61 depositions, and propose a "profit-per-hour" rate of approximately $25, or, alternatively, an hourly rate of $100, which would result in a fee award of $15,558.00.[1] (Opp. Mem. at 25; Declaration of James Bonner ("Bonner Decl.") ¶ 25, Dkt. 1595; Deposition Summary Pursuant to Fed. R. Evid. 1006 ("Firms Time Chart"), Ex. 18 to the Bonner Decl., Dkt. 1595-18.)

## DISCUSSION

### I. Quantum Meruit

District courts are afforded considerable discretion in determining what constitutes reasonable attorneys' fees. *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999) (analyzing reasonableness of fees in the context of enforcing retainer agreement); *see also Pettiford v. City of Yonkers*, 833 F. App'x 893, 895 (2d Cir. 2020) (assessing reasonableness in the context of determining charging lien). "[T]he value of an attorney's services in a *quantum meruit* claim is determined by: (1) the complexity of issues, (2) the nature of the services, (3) the time spent, (4) the amount involved, (5) the professional standing of counsel and (6) the results obtained." First Fee Order at *6 (*quoting In re Johns-Mansville Corp.*, No. 16-CV-7154 (PAE), 2017 WL 4339484, at *9 (S.D.N.Y Sept. 29, 2017); *see also D'Jamoos v. Griffith*, No. 00-CV-1361 (ILG)(CLP), 2008 WL 2620120, at *3 (E.D.N.Y. Feb. 29, 2008).

Fairness is the guiding principle in determining the value of services performed in *quantum meruit*, "[which] is a device used to prevent unjust enrichment of one party at the expense of another in the absence of a valid contract." *In re Johns-Mansville*, 2017 WL 4339484, at *9; *see also Pettiford*, 833 F. App'x at 895 (noting that the "overriding criterion" for determining the amount of an attorney's

---

[1] In their papers, the Firms continue to dispute whether Raz is entitled to any payment at all for his legal work. (*See, e.g.*, Memorandum of Law in Opposition to the Final Fee Application of Attorney Jackob Raz ("Opp. Mem.") at 5, Dkt. 1594 (requesting that the Court deny Raz's fee application because "Israeli ethics rules barred Mr. Raz from collecting hourly fees absent an unambiguous amendment of [Raz's agreement with the Firms]").) Because the Court already ruled in the First Fee Order that Raz was entitled to payment for legal services on a *quantum meruit* basis, it does not consider further arguments on this issue.

4

charging lien in *quantum meruit* "is that it be 'fair'") (quoting *Sutton v. N.Y.C. Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006)).

Courts may apply the "lodestar" method to assist in calculating the fair and reasonable value of an attorney's services in *quantum meruit*. *D'Jamoos*, 2008 WL 2620120, at *4; *see also Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998) ("…the lodestar approach is sufficiently congruent with the criteria applicable under New York law"). The lodestar method, which is comprised of a reasonable hourly rate multiplied by a reasonable number of expended hours, results in a presumptively reasonable fee which can then be adjusted upward or downward based on other considerations. *D'Jamoos*, 2008 WL 2620120, at *4.

The fee applicant bears the burden of establishing entitlement to fees and documenting the reasonable number of expended hours and the reasonable hourly rate. *Id.* at *5 (citing *Garcia v. Teitler*, No. 04-CV-832 (JG)(SMG), 2004 WL 1636982, at *7 (E.D.N.Y. July 22, 2004)), *R&R adopted as modified*, No. 00-CV-1361 (ILG)(CLP), 2008 WL 2567034 (E.D.N.Y. June 26, 2008), *aff'd*, 340 F. App'x 737 (2d Cir. 2009)). In cases where there is a lack of contemporaneous time records, such lack is not an absolute bar to recovery; however, courts may consider the fact of insufficient documentation when estimating the reasonable fees to be paid. *Id.*

### A. *Reasonable Number of Expended Hours*

#### 1. **The Parties' Estimates**

Both parties base their calculations in part on the times recorded in transcripts of 86 depositions taken between March 19, 2007 and June 16, 2010. (Second Raz Decl. ¶ 11 n.1; Bonner Decl. ¶¶ 26-27; Firms Time Chart.) Some transcripts contain start and end times for the depositions, while some only indicate a start time.[2] (Raz Time Chart, n.3, 5-8; Bonner Decl. ¶ 26.) In addition, the

---

[2] Deposition transcripts for the following 11 individuals contain no end time: Avishi Gamzoletova, Eliat Cohen, Shalom Doev, Shifra Bachar, Shira Nemet, Eti Amir, Sharon Knafo, Shay Eigner, Rivka Barnovsky, Adiel Soudry, and Bluma Fogel.

5

Firms credit Raz for two depositions for which no transcripts were produced, but which are referenced in emails scheduling those depositions.[3] (*Id.*; Firms Time Chart.) These 88 depositions are referred to herein as the "Documented Depositions."

### a. *Raz's Estimate of Hours Reasonably Worked*

In addition to the time he spent at the Documented Depositions, Raz asserts that he met with each plaintiff about an hour before each deposition for a preparatory meeting; that on days with multiple depositions, he prepared plaintiffs between depositions; that following each day of depositions, he typically spent about an hour communicating with clients and counsel; that he spent two hours each day on round trip travel to the hotel where the depositions were conducted; and that he spent approximately five additional hours preparing for each round of depositions. (Second Raz Decl. ¶¶ 3-8.) Based on these calculations, Raz estimates that he spent 528 hours on work related to the Documented Depositions.

Raz also states that, in addition to the Documented Depositions, he defended approximately ninety more depositions, resulting in his performing an estimated additional 528 hours of legal services. (*Id.* ¶¶ 205-07). Raz states that he "cannot document [the additional depositions] because [the Firms have] not produced deposition transcripts or other relevant documents." (*Id.* ¶ 205.) In addition, Raz claims that while emails would show additional depositions, the Firms failed to retain or produce emails between Raz and Joel Israel, who scheduled Raz's depositions and coordinated his work. (Fee Application at 2; *see also* Deposition Transcript of Joel Israel 104:3-23, Ex. 1 to the Declaration of Megan Daneshrad ("Daneshrad Decl."), Dkt. 1591-3; Deposition Transcript of Heather Roberson 36:12-37:4, Ex. 2 to the Daneshrad Decl., Dkt. 1593-2.)

---

[3] The two additional depositions credited to Raz for which no transcripts were available are for Ori Shoseyov and Israel Pinchasi. (Firms Time Chart.) Raz does not include these depositions in his claimed time. (Raz Time Chart.) The Firms explain that they did not order deposition transcripts for all depositions conducted "because the cost of obtaining the transcripts outweighed their benefit." (Bonner Decl. ¶ 27.)

6

Finally, Raz claims to have performed an additional 57.2 hours of legal work unrelated to depositions. (Fee Application at 5; Second Raz Decl. ¶ 223.) He describes the work to include rendering legal advice, drafting and translating documents, and reviewing litigation materials, but submits no supporting documentation. (*Id.* ¶¶ 209-223.)

Based on these three categories of work, Raz estimates that he performed approximately 1,113.2 hours of legal services for the Firms. (*Id.* ¶ 224.)

### b. *The Firms' Estimate of Hours Reasonably Worked*

Of the 88 Documented Depositions, the Firms argue that any legal services provided by Raz prior to his *pro hac vice* admission to this Court should not be counted because such work constitutes "administrative" services for which Raz was already paid under the Agreement, not "legal" services meriting further compensation. (Bonner Decl. ¶¶ 24-26; Firms Time Chart at 1 n.2.) Therefore, the Firms take the position that Raz is only entitled to compensation for the 61 depositions which occurred "post-June 2007." (Opp. Mem. at 1, 8.)

For these 61 depositions, the Firms credit Raz for the length of the depositions, as reflected in the deposition transcripts which indicate start and end times. For the depositions without a stated end time, the Firms credit Raz with 1 hour and 55 minutes of work—the average time of a Recorded Deposition. (Bonner Decl. ¶ 29; Firms Time Chart.)

The Firms credit Raz for 45 minutes of witness preparation time per deposition. They do not count his travel time. (Bonner Decl. ¶ 30; Opp. Mem. at 9.)

Finally, the Firms argue that Raz is not entitled to compensation for the 528 hours that Raz claims he worked on depositions for which records are not available; the Firms state that these 90 depositions "*never occurred.*" (Opp. Mem. at 10 (emphasis in original).)

7

2. **Analysis**

Based on the records provided, I find that Raz was present for 87 of the 88 Documented Depositions.[4] Transcripts for 74 of these depositions indicate start and end times, reflecting a total of 140 hours and 32 minutes spent in these depositions. (*See* Firms Time Chart.) For the 11 depositions with no stated end time and 2 depositions for which only scheduling emails are available, I accept the Firms' methodology of applying an average time of 1 hour and 55 minutes, resulting in an additional 24 hours and 55 minutes.

I find no basis for excluding the depositions which occurred before Raz was admitted *pro hac vice* to this Court. Raz was already admitted to practice law in Israel, and the Firms stated in their application for Raz's admission, dated May 15, 2007, that he "has already assisted [the Firms] in preparing certain Plaintiffs for their depositions, and he has attended a number of those depositions." (Decl. of James Bonner in Support of Plaintiffs' Motion to Admit Counsel Pro Hac Vice ¶ 5, Dkt. 372.) All the work done in connection with preparing, attending, and defending the depositions constitutes legal services. The Firms present no indication that the work Raz performed "post-June 2007" (Opp. Mem. at 1, 8) was materially different from the work he did before the Court granted him admission on May 23, 2007. (*See* docket orders in *Roth*, *Little*.) For example, the Firms described Raz's role at depositions conducted on May 15 and 17, 2007 as "Defended," not merely "Present." (Firms Time Sheet at 3-4.) Although the Firms argue that Raz intended for his work related to depositions to be covered by the Agreement rather than to be separately compensated as legal services (Opp. Mem. at 24-25), his failure to characterize such work as "administrative services" on bills

---

[4] The Firms contend that Raz was not present at all for some of the depositions. (Firms Time Chart at 2 n.9.) However, Raz submitted documentation demonstrating that he was present for the depositions of all of these individuals except one (David Mimran). (*See* Deposition Appearance Pages, Exs. A-J to the Suppl. Daneshrad Decl., Dkts. 1600-01-1600-10.)

8

submitted pursuant to the Agreement merely reinforces the legal, rather than administrative, nature of the work.[5]

Accordingly, I find Raz reasonably spent 165 hours and 27 minutes participating in depositions.

With regard to time spent in overall preparation and follow-up to the depositions, I find, in the absence of contemporaneous time records, that Raz's estimates are excessive. *See, e.g.*, *Presse v. Morel*, 645 F. App'x 86, 87-88 (2d Cir. 2016) (based on "imprecise nature of [counsel's] accounting," no abuse of discretion in reducing claimed number of hours); *see also Pettiford*, 833 F. App'x at 896 (no abuse of discretion where district court made an across-the-board reduction in the attorney's requested hours based on unclear or insufficient time records). Accordingly, I credit him for only one hour of preparation and follow-up time for each of the 87 depositions.

I also find that two hours of roundtrip travel time for each of the 49 days that Raz participated in depositions is reasonable.

While Raz claims to have defended ninety additional depositions beyond those discussed above, he provides no documentation, instead placing blame on the Firms for failing to produce transcripts for all depositions or emails showing the scheduling of additional depositions. (Fee Application at 2 ("The best evidence of the hours worked by Mr. Raz is therefore unavailable as a result of the Firms' own conduct.")) However, the Firms were under no obligation to order transcripts for all depositions. Raz, as the party seeking fees, bears the burden of properly documenting the basis for his request and could have documented the occurrence of the depositions himself (even without ordering the transcripts). Moreover, to the extent that there were scheduling emails reflecting plans

---

[5] The Firms also claim that Raz "previously admitted…that the work that he performed in this action prior to the time he obtained *pro hac vice* admission and appeared as counsel was undertaken pursuant to the terms of the contingent-fee provisions in the Raz Agreement." (Bonner Dec. ¶ 24 (citing First Raz Decl. at ¶¶ 16-39).) However, noting his chronology of activities under a descriptive heading does not convert legal services into administrative tasks.

9

for Raz to attend additional depositions, Raz would have been a party to those communications and should have retained them to prove his participation. Raz has not produced *any* other forms of reconstructed records, such as personal calendar entries, dated receipts showing his presence at the location of the depositions, or even the names of the deponents. The absence of any records of these 90 additional depositions leads credence to the Firms' contention that these depositions did not occur at all. (*See* Opp. Mem. at 10.)

Accordingly, I find no basis to award Raz fees related to depositions for which no documentation has been submitted.

Similarly, with regard to his claim for 57.2 hours of "additional legal services," Raz provides only his personal recollection of the tasks performed and hours expended, with no supporting evidence. (Second Raz Decl. ¶¶ 209-223.)

Accordingly, I find that the reasonable amount of compensable time for Raz's legal services is 165 hours and 27 minutes in depositions, 87 hours of preparation time, and 98 hours of travel time.

**B.** *Hourly Rate*

A reasonable hourly rate is determined by looking at prevailing rates in the community for "lawyers of reasonably comparable skill, experience, and reputation." *Larsen v. JBC Legal Grp., P.C.*, 588 F. Supp. 2d 360, 363 (E.D.N.Y. 2008), *as amended* (Dec. 18, 2008). The Second Circuit has clarified that for purposes of determining a reasonable hourly rate, the "community" is the district in which the court sits. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). A court may use an out-of-district rate, or a rate somewhere between that charged in the district and out of the district, "if it is clear that a reasonable, paying client would have paid those higher rates." *Id.* There is a presumption, however, that a client would hire counsel who charges rates consistent with the prevailing in-district rate. *Id.*

10

"The prevailing rates for attorneys in the E.D.N.Y. are approximately $300 to $450 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 per hour for junior associates." *Id.* (quotation, citations, and alterations omitted); *see also LG Cap. Funding, LLC v. 5Barz Int'l, Inc.*, No. 16-CV-2752 (KAM)(JO), 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019). The hourly rate of a solo practitioner is based on the court's assessment of the sole practitioner's skill, expertise, and reputation as compared to attorneys of comparable skill, expertise, and reputation in the same district. *See Saldana v. New Start Grp., Inc.*, No. 14-CV-4049 (CBA)(RLM), 2016 WL 3683530, at *3 (E.D.N.Y. July 6, 2016) ("[T]he Second Circuit has cautioned district courts against 'treat[ing] an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate,' and has instead urged the courts to compare solo practitioners to attorneys of comparable skill, expertise, and reputation.") (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 97 n.6 (2d Cir. 2006)); *see also Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d, 281, 299 (E.D.N.Y. 2013) ("Although solo practitioners rarely command the fees of partners in law firms, 'courts should not automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner.'") (quoting *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 143 n.6 (2d Cir. 2007)). Solo practitioners in this District are generally awarded between $300 and $400 per hour. *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-02214 (DG)(AKT), 2021 WL 4255361, at *14 (E.D.N.Y. Aug. 19, 2021), *R&R adopted*, No. 20-CV-02214 (DG)(AKT), 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021) (collecting cases).

Raz proposes an hourly base rate of $700. In support of this rate, Raz submitted the Declaration of David Martin (the "Martin Decl."), an experienced attorney who formerly practiced in the United States and has practiced in Israel for 40 years and is a purported expert on attorneys' fees. (Ex. 3 to the Daneshrad Decl., Dkt. 159-3.) Martin states that Raz received a law degree in 1995 and a master's degree in commercial law in 1999 from Tel Aviv University. (*Id.* ¶ 9.) Raz has operated his

11

own law firm, Raz Law Offices, since 1997, primarily as a solo practitioner. (*Id* ¶ 11; Deposition Transcript of Jackob Raz ("Raz Dep. Tr.") 10:2-24, Ex. 4 to the Daneshrad Decl., Dkt. 1593-4.) He primarily handles commercial litigation, including a successful defense against the seizure of a soccer stadium by the city of Tel Aviv and his appeal of a personal injury settlement on behalf of a sports organization. (*Id.* 15:10-16:16, 17:10-18:22.) As a reserve officer, Raz has also served as a criminal judge in the Military Courts of Israel approximately one day per week for the last 19 years. (*Id.* 23:12-21; Martin Decl. ¶ 10.) Raz states that he has adjudicated cases related to criminal matters, including terrorism, in this capacity and received an award for his contribution to the military. (Raz Dep. Tr. 28:6-30:11; 21:5-12.) Martin describes Raz's judicial role as "on the same level as a US Federal District Court." (Martin Decl. ¶ 10.)

The Firms argue that a more appropriate rate is $25 per hour, which reflects a "profit-per-hour" rate that takes into account that the Firms were already paying Raz's overhead and expenses under the Agreement. (Opp. Mem. at 3-4.) In support, they submit the Declaration of Eliezer Pnei-Gil ("Pnei-Gil Decl."), Chairman of the National Legal Fees Committee of the Israel Bar Association and purported expert on legal fees. (Ex. 7 to the Bonner Decl., Dkt. 1595-7.)

In the alternative, the Firms suggest a rate of $100 per hour, which they contend is the market hourly rate in Israel of 400 to 500 Israeli shekels. (Opp. Mem. at 4; Pnei-Gil Decl. ¶ 29.)

I find both parties' proposed rates unreasonable. At the time of his work on the depositions, Raz had between 12 and 16 years of experience as an attorney, primarily as a solo practitioner in commercial litigation. This background supports a presumptively reasonable hourly rate of $300 to $400, similar to other solo practitioners in this District. Although Raz appears to have primarily worked on commercial litigation matters in his career, and he does not profess any specialized knowledge or training in ATA or ATS matters, Raz does have prior experience with criminal terrorism

12

matters through his military service. Accordingly, I find that $350 per hour is a reasonable rate for Raz's legal services.

Raz additionally requests to be compensated for travel time at his reasonable hourly rate for legal work for two hours of travel per day of depositions. "Travel time is appropriately reimbursed at one-half of the hourly rate of legal work, in accordance with established court custom." *Rudler v. MLA L. Offs., Ltd.*, No. 19-CV-2170 (EK)(LB), 2021 WL 4755521, at *4 n.8 (E.D.N.Y. July 1, 2021), *R&R adopted as modified*, No. 19-CV-2170 (EK)(LB), 2021 WL 4398087 (E.D.N.Y. Sept. 27, 2021) (citation and quotation omitted). Accordingly, the presumptively reasonable rate for Raz's travel time is $175 per hour.

### C. *Additional Quantum Meruit Factors*

Having determined the number of hours worked by Raz and a presumptively reasonable rate, I turn to the additional *quantum meruit* factors.

In support of his request for a fee above the prevailing market rate in this District, Raz argues that the Arab Bank litigation involved novel legal matters and was exceptionally complex. (Fee Application at 9.) He notes that cumulatively, the Arab Bank claims involved many hundreds of millions of dollars. (*Id.* at 5.) Raz also asks the Court to consider that his work saved the Firms a significant amount of money because they did not have to travel to Israel for each deposition. (*Id.* at 8-9.)

The Firms argue that the additional *quantum meruit* factors weigh against Raz because the ATS claims were dismissed, and most plaintiffs deposed in Israel did not recover any amount. (Opp. Mem. at 3.) They also contend that Raz's role in the depositions was "routine and repetitive" and that he was a "neophyte who learned everything he knew about depositions" by observing Joel Israel. (*Id.* at 6, 10; *see also* Declaration of Mark Werbner ("Werbner Decl."), Ex. 13 to the Bonner Decl. ¶ 5

13

(describing the depositions as "so scripted and inconsequential that it was not necessary for an experienced U.S. litigator to defend them."))

While I find that the Arab Bank litigation involved complex and novel legal matters, there is no evidence that Raz played any role in preparing or briefing those issues. Raz describes his legal work as primarily related to depositions of plaintiffs in Israel and does not mention his role, if any, in the appeal to the Supreme Court of the *Jesner* case.

On the other hand, I do not agree with the Firms that preparing for and defending depositions is so simple that the nature of such services justifies a fee reduction. And while Raz worked on depositions for ATS claims that were dismissed, he also represented dual citizens in Israel whose ATA claims were settled for an undisclosed amount; thus, the results obtained do not weigh for or against a reduction in fees.

On balance, I find that the remaining *quantum meruit* factors do not change the presumptively reasonable hourly rate and number of hours.

## II.     Value-Added Tax and Interest

Raz requests that a VAT of 17% be applied to his fee award. (Fee Application at 12.) Raz does not cite any law in support of this request, and the Court is not aware of any. Accordingly, I decline to apply the requested VAT.

Raz also requests "statutory interest" but cites no statute and makes no argument for imposing interest on his fees. (*Id.* at 18.) The Firms argue that any prejudgment interest is discretionary, rather than mandatory, for *quantum meruit* claims. (Opp. Mem. at 22 (citing *John Harris P.C. v. Tobin*, 807 F. App'x 20, 25 n.3 (2d Cir. 2020)).) Because Raz has not cited any basis for the Court to exercise its discretion and impose prejudgment interest, I decline to do so.

**CONCLUSION**

Based on the foregoing, I respectfully recommend that the Court award Raz $105,507.50 in attorneys' fees, reflecting 252 hours and 27 minutes of work at an hourly rate of $350 and 98 hours of travel time at an hourly rate of $175.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

SO ORDERED:

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
November 28, 2023